UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY  :
COMMISSION,                   :
    Plaintiff,                :
                              :
         v.                    :            3:01CV378(AHN)
                              :
BEAUTY ENTERPRISES, INC.,     :
    Defendant.                :

## RULING ON DEFENDANT'S IN LIMINE MOTIONS TO EXCLUDE PLAINTIFF'S EXPERTS' TESTIMONY

EEOC brings this action on behalf of twenty-three Hispanic individuals of Puerto Rican origin (collectively "Charging Parties"), and others similarly situated, alleging that defendant Beauty Enterprises, Inc.'s ("BEI") English-only workplace rule constitutes an unlawful employment practice and national-origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a)(1), Title I of the Civil Rights Act of 1991, the Civil Rights Act of 1871, 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60(a)(1). BEI asserts that its policy of requiring its employees to speak only English while performing their jobs does not violate the employment discrimination statutes because the rule is justified by business necessity in that it eases ethnic tension and promotes safety in the workplace.

Pending before the court are BEI's in limine motions to preclude the testimony of EEOC's expert witnesses, Dr. Roseann

Dueñas Gonzalez ("Dr. Gonzalez"), a linguist, [dkt. # 69] and

Earnest F. Harper ("Mr. Harper"), a safety engineer [dkt. # 67].

For the following reasons, BEI's motions are both denied.

BACKGROUND

For purposes of this motion, the court relies on the

following factual background, which is based on the reports,

affidavits, and the Daubert hearing testimony of Dr. Gonzalez and

Mr. Harper, as well as the parties' legal memoranda.

BEI is a closely held, 30-year-old Connecticut corporation

with its principal office in Hartford, Connecticut.  It operates

as a wholesale distributor of beauty products designed primarily

for African-Americans and other ethnic minorities.  In addition

to its warehouse in Hartford, BEI has warehouses in Alabama,

Michigan, New York, and Maryland.  It employs a total of 325

people, approximately 150 of whom work at the Hartford warehouse

on either a permanent or temporary basis.

In general terms, the job function of BEI employees is

either to pull, check, pack, or ship cosmetic products that are

stored on shelves, primarily by using an alphanumeric code that

is assigned to each product.  In particular, "order pullers" pull

products that have been ordered according to a "pick list";

"order checkers" verify that the correct products have been

picked; "order packers" consolidate the products into boxes for

shipping; and, "palletizers" take the boxes to a shipping area.

BEI's warehouse employees are subject to an English-only workplace rule that requires them to speak only in English on company premises while working.  The rule does not apply when employees are at lunch or on break, or when they are working off-premises.  The rule has been in effect since around 1980, when some African-American employees accused some Hispanic employees of making derogatory comments about them in Spanish.  It became a written policy in March 2001.

The Charging Parties, who oppose the rule, are twenty-three present or former BEI employees who work or worked at the Hartford warehouse and comprise approximately one-third of BEI's workforce at that facility.  They are Hispanic, native Spanish speakers, and have varying degrees of English proficiency.  All of the Charging Parties were educated in Puerto Rico, and, with one exception, were born there as well.  Approximately one-third of the remaining employees are non-Spanish/non-English native speakers[1] and approximately two-thirds are English-only native speakers.

To support its claim of unlawful discrimination, EEOC relies, in part, on the opinions of Dr. Gonzalez, a linguist. According to Dr. Gonzalez, BEI's English-only rule unnecessarily and unfairly discriminates against the Charging Parties based on

---

[1] The non-Spanish/non-English native speakers are primarily Russian, Italian, Bangladeshi, Guyanese, Vietnamese, East Indian, and Polish.

their Hispanic national origin.  EEOC also relies on the opinions

of Mr. Harper, a safety engineer, who opines that BEI's English-

only rule is not necessary to promote workplace safety.  BEI

moves to exclude the testimony of these two witnesses on the

grounds that it is not admissible under the Federal Rules of

Evidence and Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579

(1993).

### STANDARD

A district court's discretion to admit expert testimony is

controlled by Fed. R. Evid. 702, 703 and 403.  See United States

v. Dukagjini, 326 F.3d 45, 51 (2d Cir. 2003).  Its decision to

admit or exclude expert testimony may be reversed only on a

finding of abuse of discretion.  See General Elec. Co. v. Joiner,

522 U.S. 136, 142-43 (1997).  In Daubert, the Supreme Court made

clear that under Rule 702, district courts are charged with "the

task of ensuring that an expert's testimony both rests on a

reliable foundation and is relevant to the task at hand."

Daubert, 509 U.S. at 597.  See also Wills v. Amerada Hess Corp.,

379 F.3d 32, 48 (2d Cir. 2004) ("the district court must consider

both the reliability and relevance of the proffered testimony").

Daubert's reliability requirement "applies to all aspects of

the expert's testimony: the methodology, the facts underlying the

expert's opinion, the link between the facts and the conclusion,

et alia." Pugliano v. United States, 315 F. Supp.2d 197, 199 (D.

Conn. 2004) (quoting Heller v. Shaw Indus., 167 F.3d 146, 155 (3d

-4-

Cir. 1999)).  To decide whether an expert's analysis is reliable,
the court must rigorously examine the data on which the expert
relies, the method by which his or her opinion is drawn from
applicable studies and data, and the application of the data and
methods to the case at hand.  See id. (citing Amorgianos v.
National R.R. Passenger Corp., 303 F.3d 256, 265 (2d Cir. 2002)).
"The proponent of the testimony must present enough evidence to
demonstrate the scientific validity of the research supporting
the conclusions so that the court can determine whether the
testimony is well-founded."  Id.  "A minor flaw in an expert's
reasoning or a slight modification of an otherwise reliable
method will not render an expert's opinion per se inadmissible.
The judge should only exclude the evidence if the flaw is large
enough that the expert lacks 'good grounds' for his or her
conclusions."  Id. (citing Amorgianos, 303 F.3d at 267).

        The second part of the Daubert inquiry, relevance, asks
whether an expert's scientific, technical, or other specialized
knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue.  "As with any other
relevant evidence, the court should exclude expert testimony if
its prejudicial effect substantially outweighs its relevance.  In
addition, the district court should not admit testimony that is
'directed solely to lay matters which a jury is capable of
understanding and deciding without the expert's help.'" United
States v. Mulder, 273 F.3d 91, 101 (2d Cir. 2001) (citations

omitted).  See also United States v. Hall, 93 F.3d 1337, 1343

(7th Cir. 1996) (reasoning that although "the district court is

not compelled to exclude all expert testimony that may in some

way overlap with matters within the jury's experience    . . .

[i]f the proffered testimony duplicates the jury's knowledge,

[then] Rule 403 might counsel exclusion . . . to avoid the risk

of unduly influencing the jury").

    Also, because a portion of the Charging Parties' case rests

on their assertion that the Enlgish-only rule has a disparate

impact on them because of their Hispanic national origin, it is

helpful to keep in mind the essential elements of a disparate

impact case.  "Disparate impact claims involve three stages of

proof."  Robinson v. Metro-North Commuter R.R. Co., 267 F.3d 147,

160 (2d Cir. 2001).  First, a claimant must make a prima facie

showing of disparate impact.  Id.  This requires a plaintiff to

establish by a preponderance of the evidence that the employer

"uses a particular employment practice that causes a disparate

impact on the basis of race, color, religion, sex, or national

origin."  Id. (quoting 42 U.S.C. § 2000e-2(k)(1)(A)(i)).  "To

make this showing, a plaintiff must (1) identify a policy or

practice, (2) demonstrate that a disparity exists, and (3)

establish a causal relationship between the two."  Id. (citation

omitted).  If the plaintiff makes a prima facie showing of

disparate impact, the burden shifts to the employer "to

demonstrate that the challenged practice or policy is 'job

related for the position in question and consistent with business

necessity.'"  Id. at 161 (citation omitted).  If the employer

fails to demonstrate a business justification for the policy or

practice, then the plaintiff prevails.  However, if the employer

succeeds in establishing a business justification, then the

burden shifts back to the plaintiff "to establish the

availability of an alternate policy or practice that would also

satisfy the asserted business necessity, but would do so without

producing the disparate effect."  Id. (citations omitted).  Also,

because language-based discrimination is not per se unlawful,

EEOC must prove that language is connected to national origin.

See 29 C.F.R. § 1606.1 (2005) (defining national origin

discrimination broadly as including cultural or linguistic

characteristics of a national origin group).  See also Mark

Colon, Line Drawing, Code Switching, and Spanish as Second-Hand

Smoke:  English-Only Workplace Rules and Bilingual Employees, 20

Yale L. & Pol'y Rev. 227, 232 (2002) (finding that "lower courts

have construed 'national origin' broadly, to include at least

some underlying personal characteristics, such as accent and

height, that are often highly correlated with national origin")

(citing cases).

DISCUSSION

I.   Dr. Gonzalez's Testimony

     EEOC intends to offer Dr. Gonzalez to testify as an expert

on four points that relate to its disparate impact claim: (1)

-7-

whether English language skills are used and required for
carrying out warehouse job duties at BEI; (2) the phenomenon of
codeswitching -- the unconscious alternation of two languages in
the same conversation; (3) whether or not the English-only rule
achieves its purported goals; and, (4) the stigmatization caused
by the rule.  BEI objects to all but the codeswitching portion of
Dr. Gonzalez's testimony.  It argues that the remainder of her
testimony is either unreliable or irrelevant, or both.

     A.    Whether English is Required in the Workplace

It is Dr. Gonzalez's opinion that "[t]here is no linguistic
evidence to support the implementation of an English-only policy
. . . [because] the warehouse jobs [are] not language dependent
and the English required for carrying them out [is] minimal."
She also concludes that "BEI's warehouse job duties can be
performed by workers with limited English-speaking, reading, and
writing capabilities because they are routinized, manual labor
jobs."

Although BEI does not contest that this portion of Dr.
Gonzalez's opinion is reliable, it does object to this testimony
on the ground that it is not relevant.  Specifically, BEI
contends that Dr. Gonzalez did not use any specialized linguistic
knowledge to formulate her opinion.  It claims that she did
nothing more than observe and analyze the job tasks and that her
testimony is merely a factual recounting of what goes on in the
workplace.  Thus, BEI asserts that her testimony is not relevant

because it is duplicative of the facts presented by the testimony

of the Charging Parties.  The court does not agree.

Expert testimony is relevant if it is based on the expert's

scientific, technical, or other specialized knowledge and will

assist the trier of fact to understand the evidence or to

determine a fact in issue.  See Mulder, 273 F.3d at 101.

However, testimony that is "directed solely to lay matters which

a jury is capable of understanding and deciding without the

expert's help," is not relevant.  See id. (internal citation

omitted).

Contrary to BEI's assertion, Dr. Gonzalez employed

specialized linguistic tools and knowledge to formulate her

opinion that English is not necessary to perform the warehouse

jobs at BEI.  This conclusion is based on her observations of BEI

employees performing their job functions on the work site, her

interviews with the Charging Parties describing the manner in

which they perform their jobs, and a language-use questionnaire

that the Charging Parties completed.  During her fact-finding

investigation she observed that the Charging Parties routinely

used numbers, not language, to locate products, check orders for

accuracy, and to replace simple English phrases.  For instance,

when an ordered item was not in stock, the Charging Parties would

use a "0" rather than words to indicate that fact.  Based on the

totality of the factual information that she gathered, Dr.

Gonzalez was able to conclude that "[e]mployees rely on numbers,

codes, colors, memorization, demonstration, and visual

observation[,]" as opposed to verbal communication, to accomplish

their tasks and that "[t]he BEI workplace is essentially a manual

labor environment that is non-language dependent."

   Dr. Gonzalez's testimony would be helpful to the trier of

fact's understanding of the evidence.  Merely because the factual

foundation of her testimony might overlap with the testimony of

the Charging Parties, with regard to the actual use of language

on the job, does not mean it is cumulative or irrelevant.  A

district court is not compelled to exclude relevant expert

testimony "that may in some way overlap with matters within the

jury's experience." Hall, 93 F.3d at 1344.  Indeed, the factual

portion of her testimony describing the actual use of language

skills in the workplace is necessary to an understanding of her

opinion that the job tasks at BEI are not language dependent.

See Joiner, 522 U.S. at 146 (recognizing that "[t]rained experts

commonly extrapolate from existing data") (citation omitted).

Indeed, if her testimony lacked this type of factual basis, it

would be inadmissible as lacking an adequate foundation.  See,

e.g., Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 420

(3d Cir. 2002) ("district court abuses its discretion if it

admits expert testimony that lacks an adequate factual basis").

Thus, Dr. Gonzalez's testimony on the issue of the need for

language in the BEI workplace is not irrelevant or merely

duplicative factual evidence.  Its admission is proper under Rule
702 and it would not be overly prejudicial to BEI under Rule 403.

    B.    <u>Effect of BEI's English-only Rule in the Workplace</u>

It is also Dr. Gonzalez's opinion that BEI's English-only
rule does not achieve its purported goal of easing ethnic tension
and promoting workplace safety because the rule (1) is arbitrary,
unclear and subjectively enforced, (2) hampers the Charging
Parties' ability to learn English, and (3) hinders workplace
safety and efficiency.  BEI claims that this portion of Dr.
Gonzalez's testimony is unreliable and would not assist a trier
of fact.  The court disagrees.

There is no merit to BEI's objection that Dr. Gonzalez's
testimony impermissibly relies on the deposition testimony of the
Charging Parties.  To be reliable, Rule 702 requires expert
testimony to be grounded on sufficient facts.  This objection
goes to the weight of her opinion, not its admissibility.  <u>See</u>,
<u>e.g.</u>, <u>Microfinancial, Inc. v. Premier Holidays Intern.</u>, 385 F.3d
72, 81 (1st Cir. 2004) ("When the factual underpinning of an
expert's opinion is weak, it is a matter affecting the weight and
credibility of the testimony -- a question to be resolved by the
jury.") (quoting <u>International Adhesive Coating Co. v. Bolton
Emerson Int'l</u>, 851 F.2d 540, 545 (1st Cir. 1988)).

There is also no merit to BEI's reliability-based objection
to Dr. Gonzalez's opinion that the English-only rule impedes the
Charging Parties' ability to learn English, which, in turn,

-11-

perpetuates the potential for ethnic tension that can arise
between workers who speak different languages.  Her opinion is
detailed, clear, straightforward, and based on her uncontested
knowledge and experience in language policy and planning.  Dr.
Gonzalez relies on well-recognized and accepted principles of
Second Language Acquisition Theory ("SLA Theory"), to conclude
that restrictive language rules impede a person's ability to
learn a second language.  According to SLA Theory, "[s]econd
language learners typically can acquire vocabulary in the second
language more rapidly if they understand the meaning or 'deep
structure' of the word or concept first."  Based on this
recognized SLA Theory, Dr. Gonzalez concludes that native Spanish
speakers at BEI would improve their English proficiency if they
were allowed to first learn their jobs in their native language
because repeated exposure to the English word and its Spanish
equivalent would enable them to eventually comprehend the English
word or concept without reference to the Spanish word.  This
testimony would assist a trier of fact to understand Dr.
Gonzalez's opinion that restrictive language policies do not
promote second language acquisition, but rather prolong
dependence on a foreign language.  See Hall, 93 F.3d at 1345
(reasoning that social science expert opinion is relevant where
it shows that a commonly held belief might be incorrect).  Her
opinion will also assist the jury in determining whether or not
the rule actually contributes to ethnic tension by perpetuating

the conflict that can exist between workers who speak different languages.  BEI's objections to this testimony, which are based on the truth or falsity of Dr. Gonzalez's conclusions, also fail because such objections go to the weight of her testimony, not to its admissibility.  See, e.g., American & Foreign Ins. Co. v. General Elec. Co., 45 F.3d 135, 138 (6th Cir. 1995) (noting that under Daubert the court is not to concern itself with the truth or falsity of an expert's conclusions).  Thus, because the court finds that Dr. Gonzalez's opinion is relevant, this portion of her opinion is admissible.

Further, her opinion that BEI's English-only rule does not promote workplace safety or productivity, is also relevant.  Dr. Gonzalez states that prohibiting employees from speaking in their native language slows communication and is marked by excessive hedging, repeated information, false starts, and requests for confirmation by the speaker.  In her view, if the Charging Parties were permitted to speak Spanish to one another, they would be able to communicate ideas more rapidly and with more assurance and that the rule actually impedes an employee's reaction time during, for example, an emergency.  This testimony would also help a jury to understand how the rule might affect the efficiency and productivity of the Charging Parties.  BEI's objections that this portion of Dr. Gonzalez's opinion should not be admitted because she is neither a safety expert nor a productivity expert and that it contradicts the other part of her

opinion -- that BEI is not a language-dependent workplace -- goes
to the weight of Dr. Gonzalez's testimony and not to its
admissibility.

     C.    <u>Correlation Between Language and National Origin and
the English-Only Rule's Effect on Individuals</u>

Finally, Dr. Gonzalez's testimony is offered to show the
correlation between language and national origin and the
stigmatization and other harmful effects of the English-only
rule. It is Dr. Gonzalez's opinion that (1) there is an
"inextricable link between language use and ethnic identity";
(2) that from a socio-linguistic perspective "language is the
most vital characteristic of ethnic/national origin identity";
and (3) that BEI's English-only rule stigmatizes linguistic
minorities and has harmful effects on the Charging Parties and
others similarly situated.  BEI objects to this portion of her
testimony and argues that it is unreliable and irrelevant.  In
particular, BEI contends that Dr. Gonzalez's opinion is
unreliable because she is not a psychologist and her conclusions
are based solely on the Charging Parties' subjective feelings.
BEI also submits that Dr. Gonzalez's opinion is duplicative and
unnecessary because the jury will hear the Charging Parties'
direct testimony regarding their feelings of stigmatization.  The
court finds no merit to these objections.

Dr. Gonzalez's opinion regarding the correlation between
language and national origin is admissible because it is both

reliable and relevant.  Her opinion, while not based on a formal
scientific method, is properly grounded, well-reasoned, and not
speculative.  Dr. Gonzalez relies on scholarly publications in
the fields of sociolinguistics, ethnolinguistics, and linguistic
anthropology which indicate that "a person's language is
inextricably linked with his or her national origins, and self-
identity" and that this is particularly true with respect to
Spanish-speaking Hispanics.  This correlation is fundamental to
EEOC's claim of national origin discrimination.

    Dr. Gonzalez's testimony as to stigmatization is also
relevant to EEOC's claim of disparate impact because it will help
the jury understand how the Charging Parties' employment was
disproportionately affected by the English-only rule and that the
Charging Parties' feelings of stigmatization are not unique.
See, e.g., Garcia v. Spun Steak Co., 998 F.2d 1480, 1485-86 (9th
Cir. 1993) (finding "that a disparate impact case may be based
upon a challenge to a practice or policy that has a significant
adverse impact on the 'terms, conditions, or privileges' of the
employment of a protected group under [Title VII]").  Contrary to
BEI's objection, Dr. Gonzalez does not merely rely on the
Charging Parties' subjective feelings to reach her conclusions.
Rather, she uses the Charging Parties' subjective feelings only
to show that their feelings are the same as those reported by
other sociolinguists and linguists about similar restrictive
language situations.  Because her testimony would assist a trier

of fact, this portion of Dr. Gonzalez's testimony is relevant,
and therefore, also admissible.

II.  Mr. Harper's Testimony

EEOC intends to offer Mr. Harper to testify as a safety
expert on three points: (1) whether BEI's English-only rule is
necessary to promote safety in the workplace; (2) to provide a
general description and evaluation of BEI's safety program;
(3) to identify alternative safety strategies that would be less
onerous than the English-only rule.  It is Mr. Harper's opinion
that there is "no safety, health or operational (i.e. equipment
safety) reason for . . . [BEI] to implement an English-only
Policy or rule."  He also opines that BEI does not have "an
effective safety program," and that BEI can implement alternate
safety strategies that are less onerous than the rule.  BEI
submits that Mr. Harper's opinions are not admissible, in part,
because they are unreliable.  Specifically, it contends that the
methodology Mr. Harper used to formulate his conclusions is
impermissibly based on his experience alone.  BEI argues that Mr.
Harper's experience-based methodology lacks the Daubert
reliability factors, such as testability, peer review,
publication, rate of error, and degree of acceptance.  See
Daubert, 509 U.S. at 589-95.  The court disagrees.

Nothing under the Federal Rules of Evidence or Daubert
suggests that experience alone cannot provide a sufficient
foundation for expert testimony.  See Fed. R. Evid. 702, Advisory

-16-

Committee Notes, 2000 Amendments.  "To the contrary . . . in certain fields, experience is the predominant, if not sole, basis for a great deal of reliable expert testimony."  Id.  (citation omitted).  See also Kumho Tire Co. v. Carmichael, 526 U.S. 137, 150 (recognizing "there are many different kinds of experts, and many different kinds of expertise) (citation omitted).  Because experience may give an expert "'specialized' knowledge . . . based on sufficient practical or work experience [possessed] in the field about which the [expert] is testifying . . . [such testimony] need not be based on testing or experiments . . ." Lauria v. National R.R. Passenger Corp., 145 F.3d 593, 599 (3d Cir. 1998).  Thus, "the factors identified in Daubert may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony."  Kumho Tire 526 U.S. at 150 (citation and quotes omitted).

Here, BEI mistakenly asserts that Mr. Harper's opinion is not reliable because his methodology is just his experience as a safety engineer.  As Kumho Tire instructs, even though the reliability of his testimony cannot be assessed under the specific factors set out in Daubert, his testimony is nevertheless reliable in light of his extensive, specialized experience in the field of workplace safety.  Mr. Harper currently holds the position of Site Safety and Forensics Engineer at Hewlett Packard ("HP"), where he has been employed

for 37 years.  During his employment at HP, he also held a number

of other safety-related positions.  Additionally, Mr. Harper is a

Certified Safety Professional and Board Certified Forensics

Examiner.  He has more than 30 years of experience in industrial

safety, accident reconstruction, human factors (the study of

people in their work environment, performing a task), loss

prevention, code compliance and design safety in machinery,

processes, products and buildings.  As a result of this

experience, Mr. Harper is familiar with applicable federal and

state safety codes and regulations, including Uniform and

International Fire and Building Codes, National Electrical Code,

and OSHA.

In this case, Mr. Harper used his specialized experience in

safety to assess BEI's safety program, which he accomplished by

conducting a thorough, on-site investigation of BEI's Hartford

warehouse, and reviewing interrogatories, depositions, OSHA logs,

job descriptions, photos, and the BEI employee policy manual.

Based on the totality of the information he obtained, Mr. Harper

concluded that the English-only rule was not necessary for

workplace safety.  Contrary to BEI's argument, simply because Mr.

Harper's conclusion is not amenable to analysis under the <u>Daubert</u>

factors, that does not make his opinion unreliable.  As noted in

<u>Kumho Tire</u>, the <u>Daubert</u> inquiry for reliability is a "flexible

one" and does not "constitute a definitive checklist or test."

<u>See</u> <u>Kumho</u>, 526 U.S. 150 (citation omitted).  In fact, the

-18-

"[Daubert] factors do not all necessarily apply even in every
instance in which the reliability of scientific testimony is
challenged." Id. at 151. Because the liberal thrust of Rule 702
encourages admission of expert testimony, see Daubert, 509 U.S.
at 588 (quoting Beech Aircraft Corp. v. Rainey, 488 U.S. 153, 169
(1988)), BEI's objections as to the admissibility of his
testimony are challenges that more appropriately go to the weight
of Mr. Harper's testimony and can be explored on cross-
examination at trial.

Mr. Harper's opinion is also relevant. Merely because he
bases his opinion, in part, on facts to which the Charging
Parties will testify does not mean that it will not assist the
trier of fact. See United States v. Brawner, 173 F.3d 966, 969
(6th Cir. 1999) (reasoning that the test for admissibility is not
necessity but whether the opinion will assist the trier of fact)
(citing Fed. R. Evid. 702). See also Canino v. HRP, Inc., 105 F.
Supp.2d 21, 28 (S.D.N.Y. 2000) (reasoning that doubts about the
usefulness of an expert's testimony should be resolved in favor
of admissibility) (citing McCullock v. H.B. Fuller Co., 61 F.3d
1038, 1043-44 (2d Cir. 1995)). His testimony will help the jury
understand, from a safety perspective, the significance or lack
of significance of certain features of the BEI workplace.
Moreover, for the jury to fully understand his conclusion that
the English-only rule is not necessary for workplace safety, Mr.
Harper will need to explain the facts on which that opinion

-19-

rests.  He must explain to the jury that the reason he believes

the English-only rule is unnecessary for workplace safety is

because there are bilingual managers at BEI and the safety

hazards there are related to material mishandling, not

communication failures.  Moreover, Mr. Harper's testimony would

assist a trier of fact because it bridges the analytical gap

between the average juror's common knowledge of workplace safety,

e.g., that fire hazards in the BEI warehouse are unsafe, with the

specialized knowledge of a safety expert who can identify other

hidden dangers, such as uneven walls and exit routes, hidden exit

signs, and high storage racks, and explain how these hazards are

best addressed by measures other than the English-only rule.

Accordingly, because the court finds that Mr. Harper's testimony

is also relevant, it is admissible.

### CONCLUSION

For the reasons given above, BEI's motions to preclude the

testimonies of Dr. Roseann Dueñas Gonzalez [dkt. # 69] and

Earnest F. Harper [dkt. # 67] are both DENIED.

So ordered this 23rd day of March, 2005, at Bridgeport,

Connecticut.


/s/ Alan H. Nevas

Alan H. Nevas
Senior United States District Judge