UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
_____
EQUAL EMPLOYMENT OPPORTUNITY )
COMMISSION,                          )
              Plaintiff,             )
         -against-                   )
BEAUTY ENTERPRISES, INC.,            )
and ESSENTIAL TEMPORARIES, INC.      )
              Defendants             )
_____)
MIGUEL ANGEL ALVAREZ,                )    Civil Action No. 301CV378AHN
WILLIAM TORRES, LUZ ANDUJAR,         )
EVA DIAZ, WALESKA MIRANDA,           )
JOSE LINARES and HAROLD ACOSTA       )
              Plaintiff-Intervenors, )    August 12, 2005
         -against-                   )
BEAUTY ENTERPRISES, INC.,            )
              Defendant              )
_____)
LUZ ANDUJAR and                      )
WALESKA MIRANDA                      )
              Plaintiff-Intervenors, )
         -against-                   )
ESSENTIAL PERSONNEL, INC.,           )
              Defendant              )
_____)
```

**PLAINTIFF, EEOC'S MEMORANDUM IN SUPPORT OF PROPOSED
DISPARATE IMPACT JURY INSTRUCTION**

Plaintiff, Equal Employment Opportunity Commission ("EEOC") files this Memorandum in Support of its Proposed Disparate Impact Jury Instruction and respectfully requests that this Court adopt the EEOC's jury instruction proposal on the claim of disparate impact in this case.[1]

The EEOC has reviewed Beauty Enterprises, Inc.'s ("Beauty Enterprises") Proposed Jury instruction on the disparate impact claim and believes that the only major area of dispute between the parties' instructions involves the application of the EEOC regulations, 29 C.F.R.

---

[1] Pursuant to the Pre-Trial Order, the EEOC will submit proposed jury instructions on the additional claims it has brought against Beauty Enterprises, including disparate treatment, harassment, retaliation, discriminatory and constructive discharge, as well as proposed instructions on damages.

§1606 *et seq*. (the "Regulations"), to the first prong of the disparate impact analysis. To assist the Court in its consideration of this issue and in response to BEI's argument in note 2 to its Proposed Instruction, the EEOC submits this Memorandum in Support of its Disparate Treatment Jury Instruction setting forth its position on this matter. As to the other disagreements on the characterization of the law regarding the second and third prongs of the disparate impact analysis, our Proposed Instruction counters BEI's points in relevant footnotes with references to applicable law without the need for extended response. The following is submitted in support of the EEOC's position on the Court's instruction on disparate impact.

### *EEOC Regulations Define National Origin Broadly and Include a Presumption that English-only Rules have an Adverse Impact Based on National Origin*

EEOC Regulations define national origin broadly and state that Title VII's prohibition against national origin discrimination includes, but is not limited to, "the denial of equal employment opportunity" to individuals with the "linguistic characteristics of a national origin group." 29 C.F.R. §1606.1. *See also e.g.* Garcia v. Spun Steak, Co., 998 F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid that an individual's primary language can be an important link to his ethnic culture and identity."); Carino v. Univ. of Okla. Bd. of Regents, 750 F.2d 815, 819 (10th Cir. 1984)(discrimination based on "national origin and related accent" unlawful under Title VII). Further, EEOC Regulation 29 C.F.R §1606.7(a) provides that English-only rules presumptively have an adverse impact based on national origin. Under the Regulations, English-only rules that apply at all times are presumed to violate Title VII, 29 C.F.R. §1606.7(a), and

rules that apply at certain times are permissible only "where the employer can show that the rule is justified by business necessity." 29 C.F.R. §1606.7(b). [2]

Many reasons underlie Section 1606.7's presumption that English-only rules have adverse effects on the terms and conditions of employment of non-native English speakers, including bilingual individuals. *See generally* Gutierrez v. Municipal Court, S.E. Judicial Dist., Los Angeles, 838 F.2d 1031, 1040 (9th Cir. 1988)(agreeing with EEOC guidelines "that English-only rules generally have an adverse impact on protected groups"), *vacated as moot*, 490 U.S. 1016 (1989); EEOC v. Synchro-Start Products, Inc., 29 F. Supp. 2d 911, 913-914 (N.D. Ill. 1999)(deferring to English-only Regulations and presumption of disparate impact). A review of some of these reasons set forth below provides the Court support for granting the Regulations deference and applying them to the disparate impact instruction.

First, regardless of an employee's English skills, English-only rules may "create an atmosphere of inferiority, isolation, and intimidation" that produces a "discriminatory working environment." 29 C.F.R. §1606.7(a); *see also* Garcia v. Spun Steak, Co., 13 F.3d 296, 298 (9th Cir. 1993)(Reinhardt, J., dissenting from denial of rehearing en banc)(agreeing with EEOC that "being forbidden under penalty of discharge to speak one's native tongue generally has a pernicious effect"). English-only rules, like BEI's, that prohibit Hispanic employees from speaking Spanish in the workplace "not only make[] the individual feel uncomfortable, but [are] tantamount to intimidating him or her" and are "punitive." EEOC v. Premier Operator Services, Inc., 113 F.Supp.2d 1066, 1070 (N.D. Tex. 2000)(citing expert testimony of professor of linguistics and Hispanic language and culture). The cumulative testimony of the 23 Hispanic Class Members as well as expert testimony during the trial of this case will support the EEOC's

---

[2] The EEOC intends to present evidence at trial that BEI's English-only rule, put in writing for the first time *after* the EEOC filed suit against it, was applied "off the clock," during lunch and breaks, despite BEI's insistence that it only applied "on the clock."

allegation that BEI's English-only rule made a class of Hispanic employees feel - at the very least - uncomfortable and intimidated, and that the rule forced them to work in the type of atmosphere that the EEOC Regulations seek to eliminate.

Second, English-only rules adversely impact employees with limited or no English skills – a category that often includes employees mislabeled "bilingual" – by denying them a privilege enjoyed by native English speakers: the opportunity to converse at work, for either business or social purposes.[3] *See* Spun Steak, 998 F.2d at 1488 (stating that "non-English speakers cannot enjoy the privilege of conversing on the job if conversation is limited to a language they cannot speak," and conceding that an English-only rule applied to non-English speakers might have adverse effect). In this case, despite BEI's arguments that it only hires individuals who speak, read and understand English, trial testimony will show that BEI has hired many individuals with little or no English language skills, testing their English language abilities simply by asking applicants, "do you speak English?" and thereafter getting an enthusiastic "yes" from many potential employees who just wanted work. As a result of its imprecise and severely ineffective method of discerning English language ability (for jobs that the EEOC contends do not require any English language skills whatsoever), BEI knowingly hired many Hispanic Class Members that have little or no English language skills, and yet subjected them to its unnecessary English-only rule.

Third, English-only rules create barriers to employment for employees with limited or no English skills. *See* 45 Fed. Reg. 85632 (Dec. 29, 1980) (goal of national origin guidelines "is to protect employees from discriminatory employment practices and to remove unnecessary

---

[3] Because approximately 10.3 million Americans currently speak little or no English, English-only rules have the potential of denying millions of Americans the opportunity to converse at work. *See* EEOC Compliance Manual at Section 13.V. & n. 42 (citing US Census); Census 2000 Summary File 3 (SF 3), QT-P17 Ability to Speak English: 2000, available at www.factfinder.census.gov.

4

barriers, such as the broad speak English-only rules, which result in denial of employment opportunities"). One barrier is hiring, another barrier is job retention. Otherwise qualified job applicants may not be hired or be able to maintain their jobs simply because of their inability to comply with unnecessary English-only rules. The EEOC will present evidence at trial that certain Hispanic Class Members were in fact unable to comply with the English-only rule and were therefore terminated for speaking Spanish. Although the EEOC has not brought a hiring discrimination claim in this case, BEI has set forth clearly in its English-only rule: "All job applicants must be able to read, write and speak English." For a class of jobs that require minimal language skills (using *any* language) it is not difficult to see why the EEOC Regulation is particularly applicable here: this situation is precisely the type of employment barrier Section 1606.7 seeks to prohibit. *See* Testimony of Dr. González, Daubert Hearing, March 4, 2004 (explaining through "job analysis" that BEI jobs require little, if any, language skills – spoken, written, read or understood – regardless of actual language used).

Fourth, English-only rules prevent bilingual employees whose first language is not English from speaking in their most effective language. *See* Premier Operator, 113 F.Supp.2d at 1073. (English-only rules "disproportionately burden national origin minorities because they preclude many members of these groups from speaking" their most effective language but "rarely, if ever, hav[e] that effect on non-minori[ties]"). Furthermore, the risk of discipline and termination for violating English-only rules falls disproportionately on bilingual employees as well as persons with limited English skills. As the EEOC noted when adopting Section 1606.7, "it is common for individuals whose primary language is not English to inadvertently change from speaking English to speaking their primary language." 45 Fed. Reg. at 85635. This unconscious switching from one language to another, known as "code switching," will be

5

described by the sociolinguistics expert in this case, Dr. González, who will explain that bilingual speakers cannot turn "off" their native language and turn "on" their English like a light switch. There is often no choice involved in language use for bilinguals and this is particularly true for Puerto Ricans whose actual language or "code," *is* code-switching – frequently switching between Spanish and English in conversation as a way of speaking. *See* Testimony of Dr. González, Daubert Hearing, March 4, 2004. (describing that the Hispanic Class Members who are Puerto Rican are code-switchers). Therefore, even bilingual employees are "faced with the very real risk of being reprimanded or []losing their jobs if they violate [][an] English-only rule, even if such non-compliance [is] inadvertent." Premier Operator, 113 F. Supp.2d at 1070.

### *The EEOC Urges the Court to Grant its Regulations Deference*

The EEOC urges the Court to grant deference to its Regulations on national origin and apply them as recommended to the disparate impact jury instruction. The EEOC is the agency charged with the administration, interpretation and enforcement of Title VII and in that regard its regulations are entitled to great deference. Albemarle Paper Co. v. Moody, 422 U.S. 405, 431 (1975); Gilardi v. Schroeder, 833 F.2d 1226, 1232 (7th Cir. 1987)("This Court is also bound to give substantial weight to the EEOC's interpretation of the statute that it administers."). Also, the Regulations are supported by legislative history[4] and were thoroughly considered prior to

---

[4] Contrary to the Court's finding in Garcia v. Spun Steak, Co., 998 F.2d 1480, 1490, legislative history exists and supports the validity of the EEOC's national origin regulations. The only legislative history addressing English-only policies arose during Congress' 1991 amendment of Title VII. That amendment clarified the standard for establishing disparate impact claims. *See* 42 U.S.C. §2000e-2(k)(1)(A). In discussing the proposed amendment, Senator De Concini stated that some of his constituents had complained about being disciplined or terminated for using non-English languages at work. *See* 137 Cong. Rec. S15472-01, S15489 (daily ed. Oct. 30, 1991). Senator Kennedy assured him that that EEOC's guidelines at §1606.7, which the EEOC adopted in 1980, provided an "effective method for dealing with the problem," had "worked well during the past eleven years," and would be consistent with the amendments to Title VII. Id. Because Congress was aware of the EEOC's regulations when amending Title VII and left the EEOC's interpretation intact, its regulations are entitled to deference. *See* U.S. v. Rutherford, 442 U.S. 544, 544 & n.10 (1979)(agency interpretation is entitled to greater deference when Congress is aware of interpretation but has not tried to change it when amending statute in other respects.).

their implementation.[5]  See General Elec. Co. v. Gilbert, 429 U.S. 125, 141-142 (1976)(level of deference owed to EEOC's Title VII guidelines depends upon "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade")(internal quotations omitted).  Finally, the EEOC's national origin regulations are consistent with its long-standing position that English-only rules generally have an adverse impact based on national origin – a position articulated over thirty years ago by the EEOC.[6]

### *EEOC's Disparate Impact Instruction Requires a Finding of Discrimination for Blanket English-only Rules but Only Includes an Inference of Discrimination where a Limited English-only Rule is at Issue*

The EEOC Regulations state that when applied at all times, Speak English-only rules are a burdensome term and condition of employment and are presumed to violate Title VII.  29 C.F.R. §1606.7(a).  The Regulations, however, do not mandate judgment for plaintiffs who challenge English-only rules that apply only at certain times.  Instead, Section 1606.7 merely takes the "modest step" of "creat[ing] an *inference* that the foreign national is disadvantaged" by such a rule.  Synchro-Start Products, Inc., 29 F. Supp.2d , at 914.  Accordingly, if the only evidence before the jury were that an English-only rule applied in the workplace, then the plaintiff would prevail.  See Id.  However, an employer could avoid liability by showing business

---

[5] The EEOC published the proposed guidelines in the Federal Register, noting that the Fifth Circuit had recently decided Garcia v. Gloor, 618 F.2d 264 (5th Cir. 1980)(English-only rule did not have disparate impact on bilingual employee), and that 13% of the population had a non-English background and might be affected by English only rules.  See Id.  (this percentage has dramatically increased).  After receiving more than 250 comments on its proposed national origin guidelines, many concerning the proposed English-only rules, the EEOC issued its final guidelines.  See  45 Fed. Reg.  85632, 85634 (Dec. 29, 1980).

[6] The EEOC first articulated its position on English-only rules in 1970.  See e.g., Commission Decision 71-446 (1970), CCH EEOC Decisions ¶6173, 2 FEP Cases 1127, 1128 (English-only rule denied "Spanish surnamed American employees…a term, condition, or privilege of employment enjoyed by other employees: to converse in a familiar language with which they are most comfortable").  Since then, the Commission has consistently adhered to its view that English-only rules have a disparate impact.  See e.g. 29 C.F.R. §1606.7; Compliance Manual, at Section 13.V.C. (discussing English-only policies); EEOC v. Premier Operator Services, Inc., 113 F. Supp. 2d 1066; EEOC v. Synchro-Start Products, Inc., 29 F. Supp. 2d 911.

7

necessity for the rule. *See* 29 C.F.R. §1606.7(b); <u>Gutierrez</u>, 838 F.2d at 1040 ("The EEOC guidelines, by requiring that a business necessity be shown before a limited English-only rule may be enforced, properly balance the individual's interest in speaking his primary language and any possible need of the employer to ensure that in particular circumstances only English shall be spoken."), *vacated as moot*, 490 U.S. 1016. Thus, Section 1606.7 merely operates to avoid the need for courts to determine, on a case-by-case basis and through the length and cumulative testimony of witnesses, the impact of English-only rules – particularly given the pre-examined and underlying bases described above for the EEOC Regulations. Thus, the EEOC requests the Court adopt this modest and practical approach.

***BEI'S Reliance on <u>Garcia v. Spun Steak</u> is Misplaced Given that the 9th Circuit's Decision not to Follow EEOC Guidance was Fundamentally Flawed***

<u>Garcia v. Spun Steak</u> is the only published circuit court opinion to reject the EEOC's Regulations and is based on flawed reasoning.[7] <u>Spun Steak</u> - relevant only to bilingual employees - erroneously assumes bilingual employees can readily comply with English-only rules, *see* <u>Spun Steak</u> 998 F.2d, at 1487, and fails to take into account that the ability of a bilingual person to speak only English is not a matter of preference. The jury will hear extensive testimony from both the Hispanic Class Members and from Dr. González, that code-switching, particularly as this phenomenon applies to Puerto Ricans (like the Hispanic Class Members) is unconscious, and the actual "code" – or manner of speech for Puerto Ricans. Furthermore, even

---

[7] The Fifth Circuit has held that an English-only rule does not have a disparate impact on bilingual employees, but that case was decided before the Commission issued Section 1606.7, which the court specifically noted. *See* <u>Garcia v. Gloor</u>, 618 F.2d 264, 268 n.1 (5th Cir. 1980). The Fourth Circuit has affirmed a lower court decision rejecting Section 1606.7, but the Fourth Circuit's decision was unpublished and failed to address the disparate impact holding. *See* <u>Long v. First Union Corp. of Va.</u>, 894 F.Supp. 933 (E.D. Va. 1995)(English-only rule had no disparet impact on bilingual plaintiffs), *aff'd*, No.95-1986, 1996 WL 281954 (4th Cir. May 29, 1996). Finally, the Eleventh Circuit has affirmed an unpublished lower court opinion upholding an English-only rule, but the lower court failed to address Section 1606.7 and the Eleventh Circuit's decision was unpublished. <u>Gonzalez v. Salvation Army</u>, 1991 WL 11009376 (M.D. Fla. June 3, 1991)(rule served legitimate purpose of allowing supervisors and co-workers to understand what was being said in work area), *aff'd,* No. 91-3588, 985 F.2d 578 (unpublished table decision)(Feb. 1, 1993).

8

if the ability to speak English were a matter of preference or something a bilingual individual could choose, the ability to comply with a discriminatory rule cannot negate a finding of adverse impact. "Some of the most objectionable discriminatory rules are the least obtrusive in terms of one's ability to comply: being required to sit in the back of the bus, for example." *See* Premier Operator, 113 F. Supp.2d at 1075, *citing* Spun Steak, 13 F.3d at 298 (Reinhard, J. dissenting from denial en banc).[8]

### *Conclusion*

For these reasons, the EEOC respectfully requests that the Court grant due deference to its Regulations and accept its jury instruction as written.

Respectfully submitted,

_____
R. Liliana Palacios
Senior Trial Attorney
MA BBO 647078; Ct. Fed. Bar. ct22358
U.S. Equal Employment Opportunity Commission
JFK Federal Building, Room 475
Boston, MA 02203-0506
(617) 565-3188 - Rosa.Palacios@eeoc.gov

---

[8] The Supreme Court recognized this principle, holding in Brown v. Board of Education, 347 U.S. 483 (1954), that the segregation of school children based on race is unlawful, despite the ability of African American children to comply with segregation rules by attending separate schools.

**CERTIFICATE OF SERVICE**

I, R. Liliana Palacios, hereby certify that on this 12th day of August, 2005, I caused a copy of the above document to be mailed, postage prepaid, to:

Julia Morris Paul
Marte, Plepler, Falkenstein, Keith, Meggers & Paul, P.C.
113 East Center St.
Manchester, CT 06040

Barbara E. Gardner, Esq.
843 Main St., Ste. 1-4
Manchester, CT 06040

Richard Robinson, Esq.
Pullman & Comley, LLC
90 State House Square
Hartford, CT 06103-3702

Evette Soto-Maldonado , Esq.
Jackson Chin, Esq.
Puerto Rican Legal Defense and Education Fund
99 Hudson St., 14th Floor
NY, NY 10013-0000

Valeria Calafiore, Esq.
Clifford Chance US LLP
31 West 52 Street
New York, NY 10019

_____
R. Liliana Palacios
Senior Trial Attorney