UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Plaintiff,
-against-

BEAUTY ENTERPRISES, INC., and ESSENTIAL TEMPORARIES, INC.
Defendants

MIGUEL ANGEL ALVAREZ, WILLIAM TORRES, LUZ ANDUJAR, EVA DIAZ, WALESKA MIRANDA, JOSE LINARES and HAROLD ACOSTA
Plaintiff-Intervenors,
-against-

BEAUTY ENTERPRISES, INC.,
Defendant

LUZ ANDUJAR and WALESKA MIRANDA
Plaintiff-Intervenors,
-against-

ESSENTIAL PERSONNEL, INC.,
Defendant

Civil Action No. 301-CV-378 (AHN)

September 8, 2005

**PLAINTIFFS-INTERVENORS' AMENDED PROPOSED JURY INSTRUCTION NO. 13**

Plaintiff-Intervenors, Luz Andujar, Eva Diaz, Waleska Miranda, Jose Linares and Harold Acosta, by and through their counsel, submit the following Amended Proposed Jury Instruction No. 13, as an amendment to Proposed Jury Instruction No. 13 submitted jointly by all Plaintiffs on September 7, 2005, pursuant to this Court's Pre-Trial Order. Plaintiffs-Intervenors respectfully submit that Amended Instruction No. 13 contains all of the substantive law on

disparate impact as submitted by the EEOC to this Court on August 11, 2005,[1] and is amended only to reflect Plaintiffs-Intervenors' claims. Although Plaintiffs-Intervenors had timely submitted this proposed instruction to the EEOC for inclusion in the joint filings of the Proposed Jury Instructions dated September 7, 2005, the EEOC inadvertently omitted Plaintiffs-Intervenors' revisions to Proposed Instruction No. 13.

For the convenience of the Court, Plaintiffs-Intervenors are also providing a redline version of the proposed amendment herein compared against Proposed Instruction No. 13 as jointly submitted to the Court on September 7, 2005.

Respectfully submitted,

Jackson Chin (phv0493)
Puerto Rican Legal Defense & Education Fund
99 Hudson Street
New York, New York 10013
(212)219-3360
(212)431-4276 (fax)

Valeria Calafiore (phv0494)
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019
(212)878-8381
(212)878-3175 (fax)

*Attorneys for Plaintiffs-Intervenors Luz Andujar, Eva Diaz, Waleska Miranda, Jose Linares, and Harold Acosta.*

[1] Plaintiffs-Intervenors had joined in the EEOC's August 11, 2005 submission concerning the law applicable to disparate impact claims.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT *as proposed August 11, 2005, and amended to include reference to Plaintiffs-Intervenors' claims.***

In this case, the EEOC and Plaintiffs-Intervenors (collectively referred to as "Plaintiffs") have sued Beauty Enterprises alleging it discriminated against a class of its Hispanic employees in a variety of different ways during the course of their employment. EEOC has brought claims of national origin discrimination under a federal civil rights law referred to as "Title VII." Plaintiffs-Intervenors have also brought claims of discrimination on the basis of their being Hispanic under Title VII, 42 U.S.C. § 1981 (the Civil Rights Act of 1866) referred to as "Section 1981," and the Connecticut Fair Employment and Practices Act, Conn. Gen. Stat. §§ 46a-60(a)(1) and (4) referred to as the "Connecticut Fair Employment Act." Title VII and the Connecticut Fair Employment Act prohibit employment discrimination on the basis of national origin[2] and specifically prohibit national origin discrimination under three different theories advanced by the Plaintiffs in this case: (1) disparate impact,[3] (2) disparate treatment,[4] and (3) harassment.[5] Plaintiffs-Intervenors have also advanced additional claims of discrimination under Section 1981, which prohibits racial discrimination in the making and enforcement of a contract, on the theories of disparate treatment, harassment, and retaliation.[6] Each of the claims made by

---

2 Claims under the Connecticut Fair Employment Act are governed by the same analysis as claims under Title VII. *See Levy v. Comm'n on Human Rights and Opportunities*, 236 Conn. 96, 103 (1996).

3 42 U.S.C. §2000e-2(k)(1)(A); 29 C.F.R. §§1606.2, 1606.7; Griggs v. Duke Power Co., 401 U.S. 424 (1971); Connecticut v. Teal, 457 U.S. 440 (1982); Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001); Malve v. Potter, 320 F.3d 321 (2nd Cir. 2003).

4 42 U.S.C. §2000e-2(m); 29 C.F.R. §1606.2; McDonnell Douglas v. Green, 411 U.S. 792 (1973); Texas Dept. of Comm. Affs. v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

5 29 C.F.R. §1606.8; Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

6 *See* 42 U.S.C. § 1981(b); See also H.R. Rep. No. 102-40(I) at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (stating that in the context of employment discrimination, the list of conduct set forth in Section 1981(b) would include, without limitation, claims of harassment, discharge, demotion, promotion, transfer, retaliation and hiring); *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir. 1984) (retaliation claims actionable under section 1981); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 692-

Plaintiffs-Intervenors under Section 1981 and the Connecticut Fair Employment Statute is subject to the same analysis applicable to the claims under Title VII.[7] For purposes of Section 1981, Hispanic individuals are considered a class protected under the statute on the basis of race,[8] and throughout these instructions any reference to "national origin" is deemed to refer to the employees Hispanic descent protected under Section 1981. Further, the making and enforcement of a contract under Section 1981 encompasses not only the making, but also the performance, modification, and termination of contract, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.[9]

I will instruct you on each of these claims and other discrimination claims brought by the EEOC and Plaintiffs-Intervenors, [10] but at the outset you should know that by definition, national origin discrimination can include discrimination because of a person's place of origin, or because a person has the physical, cultural or linguistic characteristics of a particular national origin.[11] In this regard, you may find that prohibiting employees from speaking their native language in the workplace is discriminatory under Title VII,[12] and any other laws applicable to this case as provided for by these instructions.

---

93 (2d Cir. 1998) (same); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (recognizing harassment claims under Section 1981).

7 *See e.g. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000).

8 *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987); *Shaare Tefila Congregation v. Cobb,* 481 U.S. 615 (1987).

9 *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000); *see also supra* n. 5.

10 The EEOC and Plaintiffs-Intervenors have also alleged claims of retaliation and discriminatory and constructive discharge in this case.

11 29 C.F.R. §1606.7. *See also e.g.* Garcia v. Spun Steak Co., 998 F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid that an individual's primary language can be an important link to his ethnic culture and identity."); Hernandez v. New York, 500 U.S. 352, 371 (1991)( It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis); Carino v. Univ. of Okla. Bd. of Regents, 750 F.3d 815, 819 (10th Cir. 1984)(discrimination based on "national origin and related accent" unlawful under Title VII).

12 *See* Spun Steak at 1489. (not foreclosing prospect that in some circumstances English-only rules can violate Title VII); Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980)(recognizing in discussion that an English-only rule can have an adverse effect upon persons who do not speak English or have difficulty speaking English).

Before I instruct you on the claim of disparate impact, you should recall that Beauty Enterprises has admitted that it has an English-only rule. There is no dispute about this fact. There is a dispute among the parties, however, about when the rule applies. The EEOC says that Beauty Enterprises' English-only rule applied to the Hispanic employees at all times during the work day – even during lunch and breaks. Beauty Enterprises says the rule applied only while "on the clock," and that the Hispanic employees were free to speak Spanish at lunch and breaks. Based on your review of the evidence, you will have to decide whether Beauty Enterprises' English-only rule applied at all times or only at certain times.

The finding that you make on when the rule applies is important to Plaintiffs' disparate impact claim because if you find that Plaintiffs' have proven to you that Beauty Enterprises' English-only rule applied at all times, then you must find that Beauty Enterprises has violated Title VII and the Connecticut Fair Employment Act, and must find for the Plaintiffs on their disparate impact claim.[13] This is because the law assumes that an English-only rule that applies at all times in the workplace is a burdensome term and condition of employment and presumptively violates Title VII.[14]

However, if you find that Beauty Enterprises' English-only rule applies only during certain times, then you are required to follow the disparate impact analysis as I will now explain.

By way of background, you should understand that through their disparate impact claim, Plaintiffs argue that Beauty Enterprises discriminated against its Hispanic employees because its seemingly neutral English-only rule had a disparate impact on these employees on the basis of national origin. A neutral rule that impacts a certain group and is unrelated to measuring job

---

13 Claims under the Connecticut Fair Employment Act are governed by the same analysis as cleims under Title VII. *See Hudson v. IBM Corp.*, 620 F.2d 351, 354 (2d Cir. 1980); *Levy v. Comm'n on Human Rights and Opportunities*, 236 Conn. 96, 103 (1996).

14 29 C.F.R. §1606.7(a).

capability can be discriminatory regardless of whether the employer intended to discriminate.[15] Therefore, when you analyze the disparate impact claim, you must focus on the consequences or results of the English-only rule on the Hispanic employees and not the employer's intent to discriminate. The employer's intent to discriminate will only be an issue in Plaintiffs' disparate treatment claim, on which I will instruct you later.

Disparate impact claims are analyzed in a three-step burden shifting test. In a disparate impact claim, the Plaintiffs first bear the burden of proving that Beauty Enterprises' English-only rule had a disparate impact on the Hispanic employees based on their national origin.[16] Second, if Plaintiffs are able to demonstrate a disparate impact on the Hispanic employees, the burden then shifts to Beauty Enterprises to defend itself against Plaintiffs's claim, by proving that its English-only rule is job-related for each of the positions held by the Hispanic employees in question and consistent with business necessity. [17] Third, and only if Beauty Enterprises demonstrates its job-relatedness and business necessity defense, Plaintiffs can still prevail if they show that Beauty Enterprises could have used some other less discriminatory method to meet its business needs.[18]

As to the first step, I remind you that Beauty Enterprises has admitted it has an English-only rule. Thus, Plaintiffs do not have to prove as part of their proof on the first step of this analysis that the English-only rule caused a disparate impact on the Hispanic employees. This is because you may infer that the Hispanic employees are automatically disadvantaged in their

---

15 Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971).

16 EEOC v. Beauty Enterprises, Inc. 361 F. Supp.2d 11, 15 (D.CT. 2004)('To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate a disparity exists, and (3) establish a causal connection between the two.'), *citing* Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001).

17 42 U.S.C. §2000e-2(k)(1)(A)(i); Griggs v. Duke Power Co., 401 U.S. 424 (1971);Dothard v. Rawliston, 433 U.S. 321, 331, n. 14 (1977).

18 42 U.S.C. §2000e-2(k)(1)(A)(ii); Robinson v. Metro North R.R. Co., 267 F.3d 147, 161 (2nd Cir. 2001).

employment because of national origin as a result of Beauty Enterprises' English-only rule.[19] As a result, I instruct you to continue on to step two of the disparate impact analysis.

As to the second prong of the claim, Beauty Enterprises, in its defense, alleges that its English-only rule is job-related and consistent with its business necessity. Specifically, Beauty Enterprises has argued that it implemented its rule to promote harmony and avoid racial tensions among its racially and ethnically mixed workforce, as well as for safety and efficiency. Beauty Enterprises also alleges it requires all employees to read, write, and speak English and as such, alleges that its English-only rule is job-related given that all employees can presumably comply.

To prove this defense, Beauty Enterprises has the burden of proving two things: (1) that its English-only rule is job-related: in other words, that it is necessary for the performance of the jobs held by the Hispanic employees, and (2) that its English-only rule is justified by business necessity. When I say Beauty Enterprises has to prove to you that the English-only rule is job-related or necessary for the performance of the jobs held by the Hispanic employees, you should realize that the rule includes a requirement that individuals speak, read, and understand English. Thus, you should focus on this requirement that Beauty Enterprises has said is job-related and then determine based on your understanding of the jobs as described by the fact and expert witnesses during this trial, whether the Company's English-only rule is in fact job-related.

I would like you to understand the meaning of "business necessity." Business necessity means that Beauty Enterprises must prove to you that its business purposes – here, "to promote harmony and avoid tensions among the Company's racially and ethnically mixed workforce, as well as for safety and efficiency" – is necessary to safe and efficient job performance.[20] It cannot

---

19 EEOC v. Synchro-Start Products, 29 F. Supp. 2d 911, 914 (N.D. Ill. 1999).

20 Dothard v. Rawlison, 433 U.S. 321, 331, n. 14 (1977)(stating that in analysis of minimum height and weight standards with disparate impact on women that "'the touchstone' is business necessity;' a discriminatory employment practice must be shown to be necessary to safe and efficient job performance to survive a Title VII challenge.").

simply articulate any business necessity – it must be necessary to safe and efficient job performance at its facilities. If you do not find that Beauty Enterprises has put forth enough evidence that (1) its English-only rule is job-related *and* (2) justified by business necessity (you must find both)[21], then Plaintiffs prevail. However, if you find that Beauty Enterprises did meet its burden, then you must move on to the third prong of the disparate impact analysis.

As to the third prong of the disparate impact claim analysis, Plaintiffs argue that even if Beauty Enterprises is able to prove that its English-only rule is job-related and justified by business necessity, Beauty Enterprises failed to consider alternatives in addressing its alleged business necessity that would have had less of an impact on the Hispanic employees than the English-only rule. If you find that the Plaintiffs have demonstrated that Beauty Enterprises failed to consider alternative policies that would have also satisfied its business necessity without producing the adverse effects alleged to have been created by the English-only rule, then you must find that the Plaintiffs have succeeded on their claim that Beauty Enterprises' English-only rule violates the Federal civil rights law, Title VII, and the Connecticut Fair Employment Act.

**GIVEN AS REQUESTED:______**
**GIVEN AS MODIFIED:________**
**REFUSED:____________________**

________________________________________
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

---

21 *See* 42 U.S.C. §2000e-2(k)(1)(A)(i) ("An unlawful employment practice based on disparate impact is established under this title only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** ***as proposed August 11, 2005*2005, as amended to reflect Plaintiffs-Intervenors' claims.***

In this case, EEOC[1] hasthe EEOC and Plaintiffs-Intervenors (collectively referred to as "Plaintiffs") have sued Beauty Enterprises alleging it discriminated against a class of its Hispanic employees in a variety of different ways during the course of their employment. EEOC has brought claims of national origin discrimination under a federal civil rights law referred to as "Title VII." Title VII prohibitsPlaintiffs-Intervenors have also brought claims of discrimination on the basis of their being Hispanic under Title VII, 42 U.S.C. § 1981 (the Civil Rights Act of 1866) referred to as "Section 1981," and the Connecticut Fair Employment and Practices Act, Conn. Gen. Stat. §§ 46a-60(a)(1) and (4) referred to as the "Connecticut Fair Employment Act." Title VII and the Connecticut Fair Employment Act prohibit employment discrimination on the basis of national origin[1] and specifically prohibits national origin discrimination under three different theories advanced by the EEOCPlaintiffs in this case: (1) disparate impact, [2] (2) disparate treatment, [3] and (3) harassment. [4] Plaintiffs-Intervenors have also advanced additional claims of discrimination under Section 1981, which prohibits racial discrimination in the making and enforcement of a contract, on the theories of disparate treatment, harassment, and

[1] Plaintiff-Intervenors join in support of the EEOC's Proposed Jury Instruction and seek application of the proposed instruction to the state law disparate impact claims they have alleged.

[1] Claims under the Connecticut Fair Employment Act are governed by the same analysis as claims under Title VII. *See Levy v. Comm'n on Human Rights and Opportunities*, 236 Conn. 96, 103 (1996).

[2] 42 U.S.C. §2000e-2(k)(1)(A); 29 C.F.R. §§1606.2, 1606.7; Griggs v. Duke Power Co., 401 U.S. 424 (1971); Connecticut v. Teal, 457 U.S. 440 (1982); Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001); Malve v. Potter, 320 F.3d 321 (2nd Cir. 2003).

[3] 42 U.S.C. §2000e-2(m); 29 C.F.R. §1606.2; McDonnell Douglas v. Green, 411 U.S. 792 (1973); Texas Dept. of Comm. Affs. v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

[4] 29 C.F.R. §1606.8; Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

retaliation.[5]

Each of the claims made by Plaintiffs-Intervenors under Section 1981 and the Connecticut Fair Employment Statute is subject to the same analysis applicable to the claims under Title VII.[6] For purposes of Section 1981, Hispanic individuals are considered a class protected under the statute on the basis of race,[7] and throughout these instructions any reference to "national origin" is deemed to refer to the employees Hispanic descent protected under Section 1981. Further, the making and enforcement of a contract under Section 1981 encompasses not only the making, but also the performance, modification, and termination of contract, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.[8]

I will instruct you on each of these claims and other discrimination claims brought by the EEOC,[5] and Plaintiffs-Intervenors,[9] but at the outset you should know that by definition, national origin discrimination can include discrimination because of a person's place of origin, or because a person has the physical, cultural or linguistic characteristics of a particular national origin.[6][10]

[5] *See* 42 U.S.C. § 1981(b); See also H.R. Rep. No. 102-40(I) at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (stating that in the context of employment discrimination, the list of conduct set forth in Section 1981(b) would include, without limitation, claims of harassment, discharge, demotion, promotion, transfer, retaliation and hiring); *Choudhury v. Polytechnic Institute of New York*, 735 F.2d 38, 44 (2d Cir. 1984) (retaliation claims actionable under section 1981); *Hawkins v. 1115 Legal Service Care*, 163 F.3d 684, 692-93 (2d Cir. 1998) (same); *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004) (recognizing harassment claims under Section 1981).

[6] *See e.g. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000).

[7] *See Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987); *Shaare Tefila Congregation v. Cobb*, 481 U.S. 615 (1987).

[8] *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 68 (2d Cir. 2000); *see also supra* n. 5.

[5][9] The EEOC hasand Plaintiffs-Intervenors have also alleged claims of retaliation and discriminatory and constructive discharge in this case.

[6][10] 29 C.F.R. §1606.7. *See also e.g.* Garcia v. Spun Steak Co., 998 F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid that an individual's primary language can be an important link to his ethnic culture and identity."); Hernandez v. New York, 500 U.S. 352, 371 (1991)( It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis); Carino v. Univ. of Okla. Bd. of Regents, 750 F.3d 815, 819 (10th Cir. 1984)(discrimination based on "national origin and related accent" unlawful under Title VII).

In this regard, you may find that prohibiting employees from speaking their native language in the workplace is discriminatory under Title VII.[7] ,[11] and any other laws applicable to this case as provided for by these instructions.

Before I instruct you on the claim of disparate impact, you should recall that Beauty Enterprises has admitted that it has an English-only rule. There is no dispute about this fact. There is a dispute among the parties, however, about when the rule applies. The EEOC says that Beauty Enterprises' English-only rule applied to the Hispanic employees at all times during the work day – even during lunch and breaks. Beauty Enterprises says the rule applied only while "on the clock," and that the Hispanic employees were free to speak Spanish at lunch and breaks. Based on your review of the evidence, you will have to decide whether Beauty Enterprises' English-only rule applied at all times or only at certain times.

The finding that you make on when the rule applies is important to the EEOCPlaintiffs's disparate impact claim because if you find that the EEOC hasPlaintiffs' have proven to you that Beauty Enterprises' English-only rule applied at all times, then you must find that Beauty Enterprises has violated Title VII and the Connecticut Fair Employment Act, and must find for the EEOCPlaintiffs on itstheir disparate impact claim.[12] This is because the law assumes that an English-only rule that applies at all times in the workplace is a burdensome term and condition of employment and presumptively violates Title VII.[8][13]

[7] *See* Spun Steak at 1489. (not foreclosing prospect that in some circumstances English-only rules can violate Title VII); Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980)(recognizing in discussion that an English-only rule can have an adverse effect upon persons who do not speak English or have difficulty speaking English).

[11] *See* Spun Steak at 1489. (not foreclosing prospect that in some circumstances English-only rules can violate Title VII); Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980)(recognizing in discussion that an English-only rule can have an adverse effect upon persons who do not speak English or have difficulty speaking English).

[12] Claims under the Connecticut Fair Employment Act are governed by the same analysis as cleims under Title VII. *See Hudson v. IBM Corp.*, 620 F.2d 351, 354 (2d Cir. 1980); *Levy v. Comm'n on Human Rights and Opportunities*, 236 Conn. 96, 103 (1996).

[8] [13] 29 C.F.R. §1606.7(a).

However, if you find that Beauty Enterprises' English-only rule applies only during certain times, then you are required to follow the disparate impact analysis as I will now explain.

By way of background, you should understand that through ~~its~~their disparate impact claim, ~~the EEOC argues~~Plaintiffs argue that Beauty Enterprises discriminated against its Hispanic employees because its seemingly neutral English-only rule had a disparate impact on these employees on the basis of national origin. A neutral rule that impacts a certain group and is unrelated to measuring job capability can be discriminatory regardless of whether the employer intended to discriminate.~~[9]~~[14] Therefore, when you analyze the disparate impact claim, you must focus on the consequences or results of the English-only rule on the Hispanic employees and not the employer's intent to discriminate. The employer's intent to discriminate will only be an issue in ~~the EEOC's~~Plaintiffs' disparate treatment claim, on which I will instruct you later.

Disparate impact claims are analyzed in a three-step burden shifting test. In a disparate impact claim, the ~~EEOC~~Plaintiffs first bear~~s~~ the burden of proving that Beauty Enterprises' English-only rule had a disparate impact on the Hispanic employees based on their national origin.~~[10]~~ [15]

Second, if ~~the EEOC is~~Plaintiffs are able to demonstrate a disparate impact on the Hispanic employees, the burden then shifts to Beauty Enterprises to defend itself against ~~the EEOC's~~Plaintiffs' claim, by proving that its English-only rule is job-related for each of the

~~[9]~~ [14] Griggs v. Duke Power Co., 401 U.S. 424, 432 (1971).

~~[10] EEOC v. Beauty Enterprises, Inc. 361 F. Supp.2d 11, 15 (D.CT. 2004)('To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate a disparity exists, and (3) establish a causal connection between the two.'), *citing* Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001).~~

[15] EEOC v. Beauty Enterprises, Inc. 361 F. Supp.2d 11, 15 (D.CT. 2004)('To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate a disparity exists, and (3) establish a causal connection between the two.'), *citing* Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001).

positions held by the Hispanic employees in question and consistent with business necessity. [~~11~~16] Third, and only if Beauty Enterprises demonstrates its job-relatedness and business necessity defense, ~~the EEOC~~Plaintiffs can still prevail if ~~it~~they show~~s~~ that Beauty Enterprises could have used some other less discriminatory method to meet its business needs.[~~12~~17]

As to the first step, I remind you that Beauty Enterprises has admitted it has an English-only rule. Thus, ~~the EEOC does~~Plaintiffs do not have to prove as part of ~~its~~their proof on the first step of this analysis that the English-only rule caused a disparate impact on the Hispanic employees. This is because you may infer that the Hispanic employees are automatically disadvantaged in their employment because of national origin as a result of Beauty Enterprises' English-only rule.[~~13~~18] As a result, I instruct you to continue on to step two of the disparate impact analysis.

As to the second prong of the claim, Beauty Enterprises, in its defense, alleges that its English-only rule is job-related and consistent with its business necessity. Specifically, Beauty Enterprises has argued that it implemented its rule to promote harmony and avoid racial tensions among its racially and ethnically mixed workforce, as well as for safety and efficiency. Beauty Enterprises also alleges it requires all employees to read, write, and speak English and as such, alleges that its English-only rule is job-related given that all employees can presumably comply.

To prove this defense, Beauty Enterprises has the burden of proving two things: (1) that its English-only rule is job-related: in other words, that it is necessary for the performance of the jobs held by the Hispanic employees, and (2) that its English-only rule is justified by business necessity. When I say Beauty Enterprises has to prove to you that the English-only rule is job-

[~~11~~16] 42 U.S.C. §2000e-2(k)(1)(A)(i); Griggs v. Duke Power Co., 401 U.S. 424 (1971); Dothard v. Rawliston, 433 U.S. 321, 331, n. 14 (1977).

[~~12~~17] 42 U.S.C. §2000e-2(k)(1)(A)(ii); Robinson v. Metro North R.R. Co., 267 F.3d 147, 161 (2nd Cir. 2001).

[~~13~~18] EEOC v. Synchro-Start Products, 29 F. Supp. 2d 911, 914 (N.D. Ill. 1999).

related or necessary for the performance of the jobs held by the Hispanic employees, you should realize that the rule includes a requirement that individuals speak, read, and understand English. Thus, you should focus on this requirement that Beauty Enterprises has said is job-related and then determine based on your understanding of the jobs as described by the fact and expert witnesses during this trial, whether the Company's English-only rule is in fact job-related.

I would like you to understand the meaning of "business necessity." Business necessity means that Beauty Enterprises must prove to you that its business purposes – here, "to promote harmony and avoid tensions among the Company's racially and ethnically mixed workforce, as well as for safety and efficiency" – is necessary to safe and efficient job performance.[14][19] It cannot simply articulate any business necessity – it must be necessary to safe and efficient job performance at its facilities. If you do not find that Beauty Enterprises has put forth enough evidence that (1) its English-only rule is job-related *and* (2) justified by business necessity (you must find both)[15][20], then ~~EEOC~~Plaintiffs prevail~~s~~. However, if you find that Beauty Enterprises did meet its burden, then you must move on to the third prong of the disparate impact analysis.

As to the third prong of the disparate impact claim~~'s~~ analysis, ~~the EEOC argues~~Plaintiffs argue that even if Beauty Enterprises is able to prove that its English-only rule is job-related and justified by business necessity, Beauty Enterprises failed to consider alternatives in addressing its alleged business necessity that would have had less of an impact on the Hispanic employees than the English-only rule. If you find that the ~~EEOC~~Plaintiffs ha~~s~~ve demonstrated that Beauty

~~14~~ 19 Dothard v. Rawlison, 433 U.S. 321, 331, n. 14 (1977)(stating that in analysis of minimum height and weight standards with disparate impact on women that "~~'~~'the touchstone' is business necessity;' a discriminatory employment practice must be shown to be necessary to safe and efficient job performance to survive a Title VII challenge.").

~~15~~ 20 *See* 42 U.S.C. §2000e-2(k)(1)(A)(i) ("An unlawful employment practice based on disparate impact is established under this title only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question **and** consistent with business necessity.")(emphasis added).

Enterprises failed to consider alternative policies that would have also satisfied its business necessity without producing the adverse effects alleged to have been created by the English-only rule, then you must find that the ~~EEOC~~Plaintiffs ha~~s~~ve succeeded on ~~its~~their claim that Beauty Enterprises' English-only rule violate~~d~~s the Federal civil rights law, Title VII~~.~~

~~**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**~~
~~**DISPARATE IMPACT** ***as proposed August 11, 2005******Plaintiff Intervenors joined in the EEOC's submission of this Proposed Instruction as applicable to their federal and state claims.*~~

~~Additional authority cited in support: 42 U.S. C. §1981(b); H.R. Rep. No. 102-104(I) at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (stating that in the context of employment discrimination, the list of conduct set forth in Section 1981(b) would include, without limitation, claims of harassment, discharge, demotion, transfer, retaliation and hiring); Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 44 (2nd Cir. 1984)(retaliation claims actionable under Section 1981); Patterson v. County of Oneida, 375 F.3d 206, 226 (2nd Cir. 2004)(recognizing harassment claims under 1981); Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987)(in support of argument that Hispanic is a race under Section 1981); Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987)(same). *See also* Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 103 (1996)(claims under~~, and the Connecticut Fair Employment Act ~~are governed by the same analysis as claims under Title VII)~~.

**CERTIFICATE OF SERVICE**

This is to certify that the foregoing document was caused to be mailed on this 8th day of September to the following counsel of record:

Rosa Liliana Palacios, Esq.
Equal Employment Opportunity Commission
JFK Federal Building – Room 475
Boston, MA02203-0506

Richard C. Robinson, Esq.
Brian C. Roche, Esq.
Pullman & Comley
90 State House Square
Hartford, CT 06103-3702

Barbara E. Gardner, Esq.
843 Main St., Ste. 1-4
Manchester, CT 06040

Julia Morris Paul
Marte, Plepler, Falkenstein, Keith, Meggers & Paul, P.C.
113 East Center St.
Manchester, CT 06040

Valeria Calafiore (phv0494)

---

origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question **and** consistent with business necessity.")(emphasis added).