UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY ) <br> COMMISSION, ) <br>            Plaintiff, ) <br>    -against- ) <br> ) <br> BEAUTY ENTERPRISES, INC., ) <br> and ESSENTIAL PERSONNEL, INC. ) <br>            Defendants ) <br> _____) <br> MIGUEL ANGEL ALVAREZ, ) <br> WILLIAM TORRES, LUZ ANDUJAR, ) <br> EVA DIAZ, WALESKA MIRANDA, ) <br> JOSE LINARES and HAROLD ACOSTA ) <br>            Plaintiff-Intervenors, ) <br>    -against- ) <br> ) <br> BEAUTY ENTERPRISES, INC., ) <br>            Defendant ) <br> _____) <br> LUZ ANDUJAR and ) <br> WALESKA MIRANDA ) <br>            Plaintiff-Intervenors, ) <br>    -against- ) <br> ) <br> ESSENTIAL PERSONNEL, INC., ) <br>            Defendant ) <br> _____) | Civil Action No. 301-CV-378 (AHN) <br><br><br> September 8, 2005 |

**PLAINTIFF'S PRE-TRIAL EXPERT SUBMISSIONS**

      Pursuant to this Court's Pre-trial Order in the above-captioned case, Plaintiff, the Equal Employment Opportunity Commission, ("EEOC") files the following pre-trial submissions on behalf of two expert witnesses whose testimony has already been deemed admissible by this Court's decision in <u>EEOC v. Beauty Enterprises</u>, 371 F.Supp.2d 11 (2005).  The EEOC intends to call both Dr. Roseann Dueñas González and Mr. Ernest Harper as expert witnesses at trial in support of its and Plaintiff-Intervenors' claims.

As to both Dr. González and Mr. Harper, the EEOC submits the following: (1) biographical sketches of both experts; (2) brief summaries of the opinions to be expressed with a summary of the basis for the opinion of both experts; and (3) a list of the materials on which both experts intend to rely. The submissions relevant to Dr. González and Mr. Harper are included in this filing as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively.

        Respectfully submitted,

_____
R. Liliana Palacios
Senior Trial Attorney
MA BBO 647078; Ct. Fed. Bar. ct22358
EEOC Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203-0506
Tel: (617) 565-3188; Fax: (617) 565-3196

## CERTIFICATE OF SERVICE

I, R. Liliana Palacios, hereby certify that on this 8th day of September 2005, I caused a copy of the above document to be mailed, postage prepaid, to:

Julia Morris Paul
Marte, Plepler, Falkenstein, Keith, Meggers & Paul, P.C.
113 East Center St.
Manchester, CT 06040

Barbara E. Gardner, Esq.
843 Main St., Ste. 1-4
Manchester, CT 06040

Richard Robinson, Esq.
Pullman & Comley, LLC
90 State House Square
Hartford, CT 06103-3702

Jackson Chin, Esq.
Puerto Rican Legal Defense and Education Fund
99 Hudson St., 14th Floor
NY, NY 10013-0000

Valeria Calafiore, Esq.
Clifford Chance US LLP
31 W. 52nd St.
NY, NY 10019-6131

                                                                                                  _____
                                                                                                   R. Liliana Palacios
                                                                                                   Senior Trial Attorney

**EXHIBIT A**
**PRE-TRIAL EXPERT SUBMISSION:  DR. ROSEANN DUEÑAS GONZÁLEZ**

*Biographical Sketch*

Dr. Roseann Dueñas González is a full professor of English at the University of Arizona, where she has been a faculty member and administrator for 30 years.  Dr. González is also the founder and Director of the National Center for Interpretation, Testing, Research, and Policy, at the University of Arizona.  Dr. González is a nationally known and recognized expert linguist who specializes in the field of sociolinguistics, language policy and foreign language testing.  Dr. González has been previously qualified and testified as an expert witness in both federal and state courts, and in both civil and criminal matters providing opinions on linguistic and cultural issues, language policies and language testing, among other linguistics related issues.

Dr. González also directed the Federal Court Interpreter Certification Project sponsored by the Administrative Office of the United States Courts in Washington for 20 years.  She is the designer of the federal court interpreter certification testing model which continues to be used by the federal government and has been emulated by all state courts in the United States who certify interpreters.  Dr. González is also the creator, founder and Director of the Agnese Haury Institute for Interpretation at the University of Arizona (formerly the Summer Institute for Court Interpretation) which was established in 1983.

Dr. González is the author of Fundamentals of Court Interpretation: History, Policy and Practice; Language Ideologies, Critical Perspectives on the Official English Movement, Volume I: Education and the Social Implications of Official Language, and Volume II: History, Theory and Policy.  She has published extensively on language policy, English-only issues, interpreter testing, and English as a Second Language, language acquisition and testing, among other topics.

4

She is a graduate of the University of Arizona, where she received a BA in English Education, a MA in English as a Second Language and a Ph.D. in Linguistics.

*Summary of Opinions, and Bases Therefore, to be Expressed at Trial*

Based on her education, knowledge and experience in Linguistics and its relevant sub-fields, the EEOC will offer Dr. González to testify about four matters. These four matters are: (1) the English language skills used and required for carrying out warehouse job duties at BEI; (2) code-switching - the unconscious alternation of two languages such as English and Spanish in one linguistic episode or between linguistic episodes in the same conversation - and the effect of Beauty Enterprises' English-only rule on monolingual Spanish, limited-English proficient, bilingual and monolingual English speaking workers; (3) an evaluation of whether or not Beauty Enterprises' policy and practice achieved its purported goals; and, (4) the correlation of language to national origin, and the effect of Beauty Enterprises' English-only rule on the Class Members.

In summary, Dr. González' opinions relative to each of the aforementioned matters are as follows: (1) Beauty Enterprises is not a language dependent workplace, meaning the Class Members' jobs could be carried out through the use of limited language and reliance on non-verbal communication such a matching, use of colors, gestures, and so forth. In this regard, Dr. González concludes that there is no linguistic evidence to support the implementation of an English only rule; (2) Beauty Enterprises' English-only rule has no effect on monolingual English speakers. However, she opines that the Class Members fall into two groups: (a) limited or non-English speakers who are incipient bilinguals (Spanish/English) and (b) Spanish dominant/bilinguals who rely on Spanish or a code-witching (mixed Spanish/English) repertoire to communicate. Code-switching is automatic and unconscious – something that cannot be controlled or extinguished by an English-only rule. Thus, she opines the Class Members are

5

affected by the English-only rule; (3) Beauty Enterprises' English-only rule did not achieve its stated goals of promoting racial harmony, business efficiency, and safety in the workplace, and (4) Dr. González opines that based on the research in her field that there is an inextricable link between language use and ethnic identity and language is the most vital characteristic of ethnic/national origins identity.  Further she concludes that Beauty Enterprises' English-only rule stigmatizes linguistic minorities and has harmful effects on the Class Members which flows from the constant discipline, disempowerment, humiliation, loss of dignity, social segregation and isolation, the likely exclusion from future employment, high levels of workplace and other forms of stress and the psychic and emotional changes related to those stresses when a linguistic or ethnic minority faces what they perceive to be discrimination based on his or her native language use on the job or in society.

Dr. González' opinions are based on reliable principles and methods that are relevant to the case before the jury.  Specifically, her opinions are based on a case study she conducted which included her review of all the depositions in this case, all of the substantive pleadings, all of the documentary evidence provided by both parties, personal observation of the Beauty Enterprises facility, as well as in depth interviews with the Class Members.  She also relied upon a comprehensive set of peer reviewed references cited in her Report, other un-cited fundamental texts in her areas of expertise, and her vast education, knowledge and experience in the areas of Linguistics (including accepted research methods) and relevant sub-fields.

Dr. González has submitted an expert report in this case which was generated using "an extensive review of relevant articles, citations, and books related to the topics at issue," examining the BEI job descriptions and tasks for their linguistic and communicative properties and, examining job forms using the, "Chall Qualitative Assessment" of text difficulty, among

other research activities.  Id.  She relied on a personal interview technique using a standardized sociolinguistic language use questionnaire in the interview of Class Members and used sociolinguistically accepted role plays with them to elicit language samples.  She also consulted with one of her peers, Dr. Roger Shuy, "one of the most renowned sociolinguists in the United States" on her research approach, in addition to using various research texts to create the questionnaire based on widely-accepted methods of data collection.  The language sample elicited from the interviewees was validated through Dr. González' site visit and observation of the BEI workplace, reading and analyzing BEI documents, and BEI management depositions.

Based on her extensive education, knowledge, and experience in language testing, Dr. González was also able to arrive at an informal evaluation of the Class Members' language abilities using the OPI (Oral Proficiency Instrument) scale.  Her methods used in analyzing BEI's policy were comprehensive and consistent with several widely accepted standards.  Finally, Dr. González stated that her opinions in her report, "are based on my specialized linguistic knowledge and the reliable technical and scientific methods and theories used to generate data by linguists."

Further information regarding Dr. González opinions can be found in Plaintiff, EEOC's Memorandm in Opposition to BEI's Motion to Exclude the Expert Testimony of Dr. Roseann Dueñas González, dated May 28, 2004; Dr. González' Expert Report, submitted to the Court as an exhibit to the Defendant's Motion to Exclude Dr. González' testimony, and the Transcript of the Daubert Hearing, dated March 4, 2005.

*List of Materials on which Expert Intends to Rely at Trial*

Dr. González may rely on any of the following materials at trial:  (1) her academic vita; (2) her expert report, all appendices (A-J) attached thereto, and bibliographical entries; (3) errata

submitted for Appendix E to her expert report; (4) her Affidavit dated May 20, 2004; (5) the OPI (Oral Proficiency Instrument) notes; and (6) Beauty Enterprises' Policy Manual.

**EXHIBIT B**
**PRE-TRIAL EXPERT SUBMISSION:  MR. EARNEST F. HARPER**

*Biographical Sketch*

Earnest F. Harper has been an employee of Hewlett Packard Company ("HP") for over 38 years where he has always held positions in the area of product, process, industrial workplace safety, accident reconstruction and loss prevention.  He is one of HP's principal electrical, safety, forensics, and code experts and is one of the original creators of HP's Corporate Safety and Product Safety programs.  He currently holds the titles of Site Safety and Forensics Engineer, and Laser Safety Officer at HP.  Mr. Harper is also the founder and President of Industrial Safety Consulting Service, through which he has gained additional safety related experience including experience outside the workplace setting.  Mr. Harper has been previously qualified and testified as an expert witness in both federal and state courts on a variety of safety related matters.

Prior to joining HP, Mr. Harper was a member of the U.S. Navy where he remained on active duty for 9 years and thereafter served as an Officer of the U.S. Naval Reserve for over 20 years until his honorable retirement.  In the U.S. Navy, Mr. Harper held several safety Naval Officer Billet Classifications as a Safety Engineer, Aviation Safety Officer and Staff Aviation Safety Officer.

Mr. Harper is a graduate of George Fox University and has obtained varied additional safety related training from Institutes such as Harvard's School of Public Health, the University of Southern California and the University of Michigan at Ann Arbor, among others.  Mr. Harper is a Board Certified Safety Professional (CSP), a Board Certified Forensic Examiner (BCFE) and a Diplomate of the American College of Forensic Engineering and Technology (DACFET).  In 1994, he was selected as a "Fellow" of the American College of Forensic Engineers and in 2001

he was elevated "Fellow of the Society" of the American Society of Safety Engineers – the ASSE's highest award for contributions to the field, the community and the profession.

*Summary of Opinions and Bases Therefore to be Expressed at Trial*

Based on his vast experience, EEOC will offer Mr. Harper to testify about three matters: (1) whether BEI's English only policy is necessary for safety in its facility; (2) to provide a description and evaluation of BEI's safety program in general, and (3) to identify less onerous alternatives available to BEI in meeting safety goals. Mr. Harper's opinions as to each matter, respectively can be summarized as follows: (1) that there is no safety, health or operational reason for BEI to implement an English only policy, (Harper Report, at 2); (2) that BEI's safety problems indicate a failure of the management system and lack of a coordinated safety program and not a failure of the employee workforce, id., and, (3) that there are multiple communication strategies available to BEI for safety purposes. Id.

Mr. Harper's reliable opinions are based on his vast experience and are relevant to the case before the jury. Mr. Harper's opinions are based on his over 40 years of safety related experience – including his knowledge of state and federal safety codes, regulations and standards. His opinions are also based on his review of the following: the Beauty Enterprises facility; all the depositions in this case; all of the substantive pleadings, all of the documentary evidence admitted by both parties; photographs and video taken of the Beauty Enterprises facility as well as notes recording the visit to the facility, review of safety related interviews with the Class Members resulting from a safety questionnaire, review of the Company's OSHA 100 logs and calculations made based on this compilation of accident data.

Further information regarding Mr. Harper's opinions can be found in Plaintiff, EEOC's Memorandum in Opposition to BEI's Motion to Exclude the Expert Testimony of Mr. Earnest

10

Harper, dated May 28, 2004; Mr. Harper's Expert Report, submitted to the Court as an exhibit to the Defendant's Motion to Exclude Mr. Harper's testimony, and the Transcript of the Daubert Hearing, dated March 4, 2005.

*List of Materials on which Intend to Rely at Trial*

Mr. Harper may rely on any of the following materials at trial: (1) his curriculum vitae; (2) his expert report, including all injury rate calculations and state and/or federal regulations, codes and standards cited therein; (3) summaries of interviews with Class Members; (4) his Affidavit dated May 27, 2004; (5) Beauty Enterprises' OSHA 100 Logs 1990-present; (6) Photographs and/or videos of the site visit to Beauty Enterprises' facility; (7) Beauty Enterprises' Policy Manual; (8) sketch of Beauty Enterprises facility; (9) OSHA citations to Beauty Enterprises August 3, 2001 and September 13, 2002.