UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) | |
| Plaintiff, | ) | |
| -against- | ) | |
| | ) | |
| BEAUTY ENTERPRISES, INC., and ESSENTIAL TEMPORARIES, INC. | ) | |
| Defendants | ) | |
| MIGUEL ANGEL ALVAREZ, | ) | Civil Action No. 301-CV-378 (AHN) |
| WILLIAM TORRES, LUZ ANDUJAR, | ) | |
| EVA DIAZ, WALESKA MIRANDA, | ) | |
| JOSE LINARES and HAROLD ACOSTA | ) | |
| Plaintiff-Intervenors, | ) | September 7, 2005 |
| -against- | ) | |
| | ) | |
| BEAUTY ENTERPRISES, INC., | ) | |
| Defendant | ) | |
| LUZ ANDUJAR and | ) | |
| WALESKA MIRANDA | ) | |
| Plaintiff-Intervenors, | ) | |
| -against- | ) | |
| | ) | |
| ESSENTIAL PERSONNEL, INC., | ) | |
| Defendant | ) | |

## PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

Plaintiffs, the Equal Employment Opportunity Commission ("EEOC") and

Plaintiff-Intervenors, by and through their counsel submit the following Proposed Jury

Instructions, Nos. 1- 38 pursuant to this Court's Pre-Trial Order.

## INDEX OF PLAINTIFFS' PROPOSED JURY INSTRUCTIONS

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1**
**DEPOSITION TESTIMONY**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2**
**ROLE OF THE EEOC IN ENFORCEMENT OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3**
**ROLE OF THE PLAINTIFF-INTERVENORS AND OTHER PARTIES IN THE EEOC LAWSUIT**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4**
**STATEMENT OF PLAINTIFFS' CLAIMS**

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5**
**NATIONAL ORIGIN, DEFINED**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6**
**LANGUAGE AS NATIONAL ORIGIN**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7**
**ENGLISH-ONLY RULES – WHEN APPLY AT ALL TIMES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8**
**ENGLISH-ONLY RULES – WHEN APPLY AT CERTAIN TIMES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9**
**ENGLISH-ONLY RULES – NOTICE OF RULE**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10**
**ENGLISH-ONLY RULES – IMPACT ON NON-ENGLISH SPEAKERS**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11**
**ENGLISH-ONLY RULES – EFFECT ON THE LIMITED ENGLISH PROFICIENT**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12**
**BILINGUALISM**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005*

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**
**DISPARATE TREATMENT**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15**
**DEFENSE TO DISPARATE TREATMENT AND PROOF OF PRETEXT – DEFINED**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 16**
**TITLE VII PROHIBITS HARASSMENT ON THE BASIS OF NATIONAL ORIGIN**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17**
**NATIONAL ORIGIN HARASSMENT – ENGLISH-ONLY RULE**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18**

**ELEMENTS OF PROOF OF HOSTILE WORK ENVIRONMENT**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 19**
**WORKPLACE HARASSMENT– TOTALITY OF THE CIRCUMSTANCES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 20**
**HARASSMENT - WHEN OWNER OR CORPORATE OFFICER IS A HARASSER**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21**
**RETALIATION**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 22**
**RETALIATION – CAUSAL CONNECTION**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 23**
**DISCRIMINATORY DISCHARGE**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 24**
**CONSTRUCTIVE DISCHARGE**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 25**
**DAMAGES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 26**
**DAMAGES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 27**
**DAMAGES – WAGES AND BENEFIT LOSS**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 28**
**MITIGATION OF DAMAGES – EMPLOYER BEARS BURDEN OF PROOF**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 29**
**DAMAGES – SELF EMPLOYMENT AS MITIGATION**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 30**
**DAMAGES – PREJUDGEMENT INTEREST**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 31**
**COMPENSATORY DAMAGES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 32**
**DAMAGES – DIFFICULTY CALCULATING NO OBSTACLE**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 33**
**DAMAGES – PUNITIVE DAMAGES**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 34**
**FRONT PAY**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 35**
**TEMPORARY WORKERS ARE BEAUTY ENTERPRISES EMPLOYEES UNDER TITLE VII**

**TAX CONSEQUENCES NO. 36**

**LEGAL STANDARDS FOR CLAIMS UNDER**
**THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT (CFEPA) AND 1981 NO. 37**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 38**
**RETIREMENT PLAN LOSS**

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 1**
**DEPOSITION TESTIMONY**


During the trial certain testimony will be presented to you through a deposition. A deposition is a compilation of the sworn, recorded answers to questions asked of a witness in advance of trial by one or more of the attorneys for the parties in this case. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness' testimony may be presented, under oath, in the form of a deposition. This deposition testimony is entitled to the same consideration and is to be judged by you as to credibility as if the witness had been present and had testified from the witness stand in court.



**AUTHORITY:**  *Fifth Circuit Pattern Jury Instructions Civil* §2.23 (2005)(as modified). *See also* Goldwater v. Ginzburg, 261 F.Supp. 784 (S.D.N.Y. 1966), *aff'd,* 414 F.2d 324 (2nd Cir. 1969).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____


_____
        The Honorable Alan H. Nevas
        UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2**
**ROLE OF THE EEOC IN ENFORCEMENT OF TITLE VII OF THE 1964 CIVIL**
**RIGHTS ACT, AS AMENDED**

The EEOC is an agency of the United States government charged with the administration, interpretation and enforcement of Title VII of the 1964 Civil Rights Act, as amended, (the "Civil Rights Act"), the law under which some of the claims in this lawsuit arise. If a person feels discriminated against in the workplace, he or she is entitled to file a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). A person who files a charge with the EEOC is called a "Charging Party." A Charging Party may file a claim on his/her own behalf, and may include claims that the discrimination to which they were subjected affects a larger class or group of employees. The filing of a charge with the EEOC is a prerequisite for filing a discrimination lawsuit under the federal law.

When the EEOC receives a charge of employment discrimination, it has the responsibility to investigate the claim of discrimination. If, at the conclusion of the investigation, the EEOC determines there is reasonable cause to believe discrimination occurred, it will advise the parties of its findings and is then required to make a good faith attempt to resolve the discrimination claim through the informal means of conciliation and persuasion.

If the matter cannot be resolved, then the EEOC has the authority to enforce Title VII of the Civil Rights Act through the filing of a lawsuit against the employer. This is the procedure the EEOC has followed and this is why the EEOC is a Plaintiff in this case. In this lawsuit, the EEOC seeks to vindicate the public policy of the United States, sometimes called the public interest. EEOC also seeks a remedy for the Charging Parties and for all other similarly situated persons harmed by the discrimination identified as "claimants." As the EEOC is the Plaintiff, Charging Parties and claimants will be collectively referred to as "Class Members."

**Plaintiffs' Proposed Jury Instructions**                                          6

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 2**
**ROLE OF THE EEOC IN ENFORCEMENT OF TITLE VII OF THE 1964 CIVIL**
**RIGHTS ACT, AS AMENDED** *CONTINUED*


**AUTHORITY:** Adapted from Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e et seq.; General Telephone Co. of the Northwest, Inc. v. EEOC, 446 U.S. 318, 331 (1980)(the EEOC exists to advance the public interest in preventing and remedying employment discrimination). *See also* EEOC v. Waffle House, Inc., 534 US 279, 285 (2002).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____


_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE


**Plaintiffs' Proposed Jury Instructions**                                    7

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3**
**ROLE OF THE PLAINTIFF-INTERVENORS AND OTHER PARTIES IN THE EEOC LAWSUIT**

There are twenty-three (23) individuals involved in this case whose interests are represented by the EEOC.  They are:  (1) Harold Acosta; (2) Miguel Angel Alvarez; (3) Luz Andujar; (4) Margarita Aponte; (5) Julio Benabe; (6) Brenda Berrios; (7) Maria De Jesus; (8) Eva Diaz; (9) Marie Garcia; (10) Rosa Green; (11) Jose Linares; (12) Ruth Lugo; (13) Jorge Maldonado; (14) Waleska Miranda; (15) Angel Oliveras; (16) Cecilia Ortiz; (17) Madelyn Perez; (18) Gloribel Ramos; (19) Rosa Rojas; (20) Eric Rivera; (21) Mariana Rivera; (22) William Torres; and (23) Lissette Santos.  Collectively they will be referred to as "Class Members."  Each of these individuals has filed a timely charge of discrimination with the EEOC or has been properly identified by the EEOC as a claimant in this case.  Also, of this group, seven (7) individuals are "Plaintiff-Intervenors" and may be referred to as such throughout the trial.  These individuals have intervened in the EEOC lawsuit as Plaintiffs.  Charging Parties have the right - however not the obligation - to intervene under the Civil Rights Act in order to maintain their status as full and independent Plaintiffs in a case.  Plaintiff-Intervenors are:  Harold Acosta, Miguel Angel Alvarez, Luz Andujar, Eva Diaz, Jose Linares, Waleska Miranda, and William Torres.

**AUTHORITY:**  42 U.S.C. 2000e-(5)(f)(1)("The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission…"); Fed. R. Civ. P. 24(a); Truvillion v. King's Daughter's Hospital, 614 F.2d 520, 525 (5th Cir. 1980)(holding that a private plaintiff's sole avenue of redress is intervention if EEOC sues); McClain v. Wagner Elec. Corp., 550 F.2d 1115, 1119 (8th Cir. 1977)(same).  *See also* EEOC v. Mr. Gold, Inc., 223 F.R.D. 100, 103 (E.D.N.Y. 2004) *quoting* EEOC v. Venator Group, No. 99 Civ. 4758 (ASG)(KN), 2001 WL 246376, at *5 (S.D.N.Y. Mar. 13, 2001)(EEOC has a duty to "identify all the claimants affected by discrimination, and ··· [to] 'investigat[e], litigat[e], and, if possible settl [e] claims.")

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 3**
**ROLE OF THE PLAINTIFF-INTERVENORS AND OTHER PARTIES IN THE EEOC**
**LAWSUIT** *CONTINUED*


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4**
**STATEMENT OF PLAINTIFFS' CLAIMS**

The Equal Employment Opportunity Commission, ("EEOC") has filed this action on behalf of the Class Members under Title VII of the Civil Rights Act, against the Defendant, Beauty Enterprises, Inc. ("Beauty Enterprises"). Plaintiff-Intervenors have intervened in this action, alleging that Beauty Enterprises discriminated against them on the basis of their national origin and race, Hispanic, as described by the EEOC. Plaintiffs allege that Beauty Enterprises discriminated against the Class Members on the basis of their national origin in a number of ways. First, Plaintiffs allege that Beauty Enterprises maintains an illegal English-only rule that had a disparate or adverse impact on Hispanic employees. Second, Plaintiffs allege that Hispanic employees were treated differently from non-Hispanic employees because of the way the English-only rule was enforced, that is called unlawful disparate or different treatment. Third, Plaintiffs allege that Beauty Enterprises' supervisors enforced the English-only rule in such a draconian, humiliating and harassing manner against the Hispanic employees that it constituted national origin harassment because it created a hostile work environment for the Hispanic employees. Fourth, the EEOC alleges that Beauty Enterprises retaliated against the Hispanic employees because they opposed the English-only rule and its enforcement, because they believed in good faith that the rule was unlawful. Plaintiffs also argue Beauty Enterprises retaliated against the Hispanic employees who participated in a public hearing on workplace discrimination and filed EEOC charges against Beauty Enterprises. Finally, Plaintiffs allege that Beauty Enterprises is responsible for the constructive discharge of some of the Hispanic employees who felt the workplace became so intolerable given the aforementioned

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 4**
**STATEMENT OF PLAINTIFF EEOC'S CLAIMS** *CONTINUED*

discrimination, and that that Beauty Enterprises is responsible for the discriminatory discharge of other Hispanic employees whose termination was related to the English-only rule.

Plaintiffs claim that the Hispanic employees who were fired or constructively discharged are entitled to recover back-pay, plus interest, from the date that they were terminated, through the date of this trial.  In addition, Plaintiffs claim that the Hispanic employees are entitled to recover front pay, pecuniary damages, compensatory damages including out of pocket expenses, compensation for past and future non-pecuniary losses, compensatory damages for their emotional distress, and other affirmative relief necessary to eradicate the effects of Beauty Enterprises' illegal employment practices, including but not limited to rightful reinstatement. Individuals who were not terminated or constructively discharged but were subject to an unlawful English-only rule, retaliation, and/or hostile work environment are entitled to compensatory damages.

Plaintiffs also assert that Beauty Enterprises acted with malice or with reckless indifference to the Hispanic employees' civil rights.  For this reason, Plaintiffs also contend that the Hispanic employees are entitled to punitive damages.

**AUTHORITY:**  EEOC Complaint, March 12, 2001; Plaintiff-Intervenor complaints dated as follows:  Alvarez and Torres, April 9, 2001; Andujar, Miranda, and Diaz November 30, 2001; Acosta and Linares, May 22, 2002

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                    11

**PLAINTIFF'S PROPOSED JURY INSTRUCTION NO. 5**
**NATIONAL ORIGIN, DEFINED**


The definition of national origin under the Civil Rights Act is broad and includes an

individual's ancestry, place of origin, or his/her physical, cultural or linguistic characteristics.


**AUTHORITY:**  EEOC Regulations, 29 C.F.R. §1606.1 (2005); Garcia v. Spun Steak, Co., 998
F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid that an individual's primary language can
be an important link to his ethnic culture and identity.");  Carino v. Univ. of Okla. Bd. of
Regents, 750 F.2d 815, 819 (10th Cir. 1984)(discrimination based on "national origin and related
accent" unlawful under Title VII).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____


_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 6**
**LANGUAGE AS NATIONAL ORIGIN**

      The primary language of an individual is often an essential characteristic of national

origin.

**AUTHORITY:** EEOC Regulations, 29 C.F.R. §1606.7 (2005). *See also* 29 C.F.R. §1606.1
(2005); Garcia v. Spun Steak, Co., 998 F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid
that an individual's primary language can be an important link to his ethnic culture and
identity."); Carino v. Univ. of Okla. Bd. of Regents, 750 F.2d 815, 819 (10th Cir.
1984)(discrimination based on "national origin and related accent" unlawful under Title VII).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

                                             _____
                                              The Honorable Alan H. Nevas
                                            UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 7**
**ENGLISH-ONLY RULES – WHEN APPLY AT ALL TIMES**

A rule requiring employees to speak only English at all times in the workplace is a

burdensome term and condition of employment and presumptively violates Title VII.  Therefore,

if you find the Beauty Enterprises' English-only rule applied at all times you must find for the

Plaintiffs.

**AUTHORITY:**  EEOC Regulations, 29 C.F.R. §1606.7(a)(2005).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 8**
**ENGLISH-ONLY RULES – WHENAPPLY AT CERTAIN TIMES**

An employer may have an English-only rule that applies at certain times only if justified

by business necessity.

**AUTHORITY:**  EEOC Regulations, 29 C.F.R. §1606.7(b)(2005).

**GIVEN AS REQUESTED:** _____
**GIVEN AS MODIFIED:** _____
**REFUSED:** _____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 9**
**ENGLISH-ONLY RULES – NOTICE OF RULE**

An employer that implements an English-only rule justified by business necessity should inform its employees of the general circumstances when speaking only in English is required and of the consequences of violating the rule. Therefore if you find that Beauty Enterprises failed to notify its employees of the rule and takes an adverse employment decision against any individual based on a violation of the rule, you can consider this as evidence of national origin discrimination.

**AUTHORITY:** EEOC Regulations, 29 C.F.R. §1606.7(c)(2005).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 10**
**ENGLISH-ONLY RULES – IMPACT ON NON-ENGLISH SPEAKERS**

       English-only rules impact non-English speakers much more heavily than monolingual

English speakers.

**AUTHORITY:**  <u>EEOC v. Synchro-Start Products, Inc</u>., 29 F. Supp. 2d 911, 912 (N.D. Ill. 1999).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                       17

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 11**
**ENGLISH-ONLY RULES –  EFFECT ON THE LIMITED ENGLISH PROFICIENT**


      English-only rules violate Title VII in situations where the employee cannot readily

adhere to the rule.  Abiding by the rule is not simply a matter of preference.  This is the case for

employees whose primary language is not English and for employees who are non-English

speakers.


**AUTHORITY:**  *See* <u>Garcia v. Gloor</u>, 618 F.2d 264, 270 (5th Cir. 1980), *cert. denied,* 449 U.S. 1113 (1981); <u>Garcia v. Spun Steak</u>, 998 F.2d 1480, 1488 (9th Cir. 1993); <u>EEOC v. Synchro-Start Products, Inc</u>., 29 F. Supp. 2d 911, 913 (N.D. Ill. 1999).  *See also generally* <u>EEOC v. Premier Operator Services, Inc</u>., 113 F. Supp.2d 1066 (N.D. Tex. 2000).



**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____


                            _____
                                The Honorable Alan H. Nevas
                              UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 12**
**BILINGUALISM**

The term "bilingual" is not a uniform category. In that regard, you should not assume that because someone is identified as bilingual that this means this individual speaks both languages equally proficiently or speaks either language proficiently at all.

**AUTHORITY:** *See* Hernandez v. U.S. 500 US 352, 370 (1991)("Bilinguals, in a sense, inhabit two communities, and serve to bring them closer. Indeed, some scholarly comment suggests that people proficient in two languages may not at times think in one language to the exclusion of the other. The analogy is that of a high-hurdler, who combines the ability to sprint and to jump to accomplish a third feat with characteristics of its own, rather than two separate functions. This is not to say that the cognitive processes and reactions of those who speak two languages are susceptible of easy generalization, for even the term "bilingual" does not describe a uniform category. It is a simple word for a more complex phenomenon with many distinct categories and subdivisions.")(citations omitted). *See also generally* Christian A. Garza, *Measuring Language Rights Along a Spectrum,* 110 Yale L. J. 379 (2000).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                    19

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005\**

In this case, EEOC[1] has sued Beauty Enterprises alleging it discriminated against a class of its Hispanic employees in a variety of different ways during the course of their employment. EEOC has brought claims of national origin discrimination under a federal civil rights law referred to as "Title VII." Title VII prohibits employment discrimination on the basis of national origin and specifically prohibits national origin discrimination under three different theories advanced by the EEOC in this case: (1) disparate impact,[2] (2) disparate treatment,[3] and (3) harassment.[4] I will instruct you on each of these claims and other discrimination claims brought by the EEOC,[5] but at the outset you should know that by definition, national origin discrimination can include discrimination because of a person's place of origin, or because a person has the physical, cultural or linguistic characteristics of a particular national origin.[6] In this regard, you may find that prohibiting employees from speaking their native language in the workplace is discriminatory under Title VII.[7]

---

[1] Plaintiff-Intervenors join in support of the EEOC's Proposed Jury Instruction and seek application of the proposed instruction to the state law disparate impact claims they have alleged.

[2] 42 U.S.C. §2000e-2(k)(1)(A); 29 C.F.R. §§1606.2, 1606.7; Griggs v. Duke Power Co., 401 U.S. 424 (1971); Connecticut v. Teal, 457 U.S. 440 (1982); Robinson v. Metro North R.R. Co., 267 F.3d 147 (2nd Cir. 2001); Malve v. Potter, 320 F.3d 321 (2nd Cir. 2003).

[3] 42 U.S.C. §2000e-2(m); 29 C.F.R. §1606.2; McDonnell Douglas v. Green, 411 U.S. 792 (1973); Texas Dept. of Comm. Affs. v. Burdine, 450 U.S. 248 (1981); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

[4] 29 C.F.R. §1606.8; Meritor Savings Bank, FSB v. Vinson, 477 U.S. 57, 64 (1986); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998).

[5] The EEOC has also alleged claims of retaliation and discriminatory and constructive discharge in this case.

[6] 29 C.F.R. §1606.7. *See also e.g.* Garcia v. Spun Steak Co., 998 F.2d 1480, 1487 (9th Cir. 1993)("It cannot be gainsaid that an individual's primary language can be an important link to his ethnic culture and identity."); Hernandez v. New York, 500 U.S. 352, 371 (1991)( It may well be, for certain ethnic groups and in some communities, that proficiency in a particular language, like skin color, should be treated as a surrogate for race under an equal protection analysis); Carino v. Univ. of Okla. Bd. of Regents, 750 F.3d 815, 819 (10th Cir. 1984)(discrimination based on "national origin and related accent" unlawful under Title VII).

[7] *See* Spun Steak at 1489. (not foreclosing prospect that in some circumstances English-only rules can violate Title VII); Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980)(recognizing in discussion that an English-only rule can have an adverse effect upon persons who do not speak English or have difficulty speaking English).

**Plaintiffs' Proposed Jury Instructions**                                            20

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005\**

      Before I instruct you on the claim of disparate impact, you should recall that Beauty

Enterprises has admitted that it has an English-only rule.  There is no dispute about this fact.

There is a dispute among the parties, however, about when the rule applies.  The EEOC says that

Beauty Enterprises' English-only rule applied to the Hispanic employees at all times during the

work day – even during lunch and breaks.  Beauty Enterprises says the rule applied only while

"on the clock," and that the Hispanic employees were free to speak Spanish at lunch and breaks.

Based on your review of the evidence, you will have to decide whether Beauty Enterprises'

English-only rule applied at all times or only at certain times.

      The finding that you make on when the rule applies is important to the EEOC's disparate

impact claim because if you find that the EEOC has proven to you that Beauty Enterprises'

English-only rule applied at all times, then you must find that Beauty Enterprises has violated

Title VII and find for the EEOC on its disparate impact claim.  This is because the law assumes

that an English-only rule that applies at all times in the workplace is a burdensome term and

condition of employment and presumptively violates Title VII.[8]

      However, if you find that Beauty Enterprises' English-only rule applies only during

certain times, then you are required to follow the disparate impact analysis as I will now explain.

      By way of background, you should understand that through its disparate impact claim,

the EEOC argues that Beauty Enterprises discriminated against its Hispanic employees because

its seemingly neutral English-only rule had a disparate impact on these employees on the basis of

national origin.  A neutral rule that impacts a certain group and is unrelated to measuring job

---

[8] 29 C.F.R. §1606.7(a).

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005\**

capability can be discriminatory regardless of whether the employer intended to discriminate.[9]

Therefore, when you analyze the disparate impact claim, you must focus on the consequences or

results of the English-only rule on the Hispanic employees and not the employer's intent to

discriminate. The employer's intent to discriminate will only be an issue in the EEOC's

disparate treatment claim, on which I will instruct you later.

Disparate impact claims are analyzed in a three-step burden shifting test. In a disparate

impact claim, the EEOC first bears the burden of proving that Beauty Enterprises' English-only

rule had a disparate impact on the Hispanic employees based on their national origin.[10]  Second,

if the EEOC is able to demonstrate a disparate impact on the Hispanic employees, the burden

then shifts to Beauty Enterprises to defend itself against the EEOC's claim, by proving that its

English-only rule is job-related for the positions in question and consistent with business

necessity.[11] Third, and only if Beauty Enterprises demonstrates its job-relatedness and business

necessity defense, the EEOC can still prevail if it shows that Beauty Enterprises could have used

some other less discriminatory method to meet its business needs.[12]

As to the first step, I remind you that Beauty Enterprises has admitted it has an English-

only rule. Thus, the EEOC does not have to prove as part of its proof on the first step of this

analysis that the English-only rule caused a disparate impact on the Hispanic employees. This is

because you may infer that the Hispanic employees are automatically disadvantaged in their

---

[9] <u>Griggs v. Duke Power Co</u>., 401 U.S. 424, 432 (1971).
[10] <u>EEOC v. Beauty Enterprises, Inc</u>. 361 F. Supp.2d 11, 15 (D.CT. 2004)('To make this showing, a plaintiff must (1) identify a policy or practice, (2) demonstrate a disparity exists, and (3) establish a causal connection between the two.'), *citing* <u>Robinson v. Metro North R.R. Co</u>., 267 F.3d 147 (2nd Cir. 2001).
[11] 42 U.S.C. §2000e-2(k)(1)(A)(i); <u>Griggs v. Duke Power Co</u>., 401 U.S. 424 (1971);<u>Dothard v. Rawliston</u>, 433 U.S. 321, 331, n. 14 (1977).
[12] 42 U.S.C. §2000e-2(k)(1)(A)(ii); <u>Robinson v. Metro North R.R. Co</u>., 267 F.3d 147, 161 (2nd Cir. 2001).

**Plaintiffs' Proposed Jury Instructions**                                                    22

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005\**

employment because of national origin as a result of Beauty Enterprises' English-only rule.[13]

As a result, I instruct you to continue on to step two of the disparate impact analysis.

As to the second prong of the claim, Beauty Enterprises, in its defense, alleges that its

English-only rule is job-related and consistent with its business necessity.  Specifically, Beauty

Enterprises has argued that it implemented its rule to promote harmony and avoid racial tensions

among its racially and ethnically mixed workforce, as well as for safety and efficiency.  Beauty

Enterprises also alleges it requires all employees to read, write, and speak English and as such,

alleges that its English-only rule is job-related given that all employees can presumably comply.

To prove this defense, Beauty Enterprises has the burden of proving two things: (1) that

its English-only rule is job-related: in other words, that it is necessary for the performance of the

jobs held by the Hispanic employees, and (2) that its English-only rule is justified by business

necessity.  When I say Beauty Enterprises has to prove to you that the English-only rule is job-

related or necessary for the performance of the jobs held by the Hispanic employees, you should

realize that the rule includes a requirement that individuals speak, read, and understand English.

Thus, you should focus on this requirement that Beauty Enterprises has said is job-related and

then determine based on your understanding of the jobs as described by the fact and expert

witnesses during this trial, whether the Company's English-only rule is in fact job-related.

I would like you to understand the meaning of "business necessity."  Business necessity

means that Beauty Enterprises must prove to you that its business purposes – here, "to promote

harmony and avoid tensions among the Company's racially and ethnically mixed workforce, as

---

[13] <u>EEOC v. Synchro-Start Products</u>, 29 F. Supp. 2d 911, 914 (N.D. Ill. 1999).

**Plaintiffs' Proposed Jury Instructions**                                                    23

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005*\*

well as for safety and efficiency" – is necessary to safe and efficient job performance.[14]  It cannot

simply articulate any business necessity – it must be necessary to safe and efficient job

performance at its facilities.

 If you do not find that Beauty Enterprises has put forth enough evidence that (1) its

English-only rule is job-related *and* (2) justified by business necessity (you must find both)[15],

then EEOC prevails.  However, if you find that Beauty Enterprises did meet its burden, then you

must move on to the third prong of the disparate impact analysis.

 As to the third prong of the disparate impact claim's analysis, the EEOC argues that even

if Beauty Enterprises is able to prove that its English-only rule is job-related and justified by

business necessity, Beauty Enterprises failed to consider alternatives in addressing its alleged

business necessity that would have had less of an impact on the Hispanic employees than the

English-only rule.   If you find that the EEOC has demonstrated that Beauty Enterprises failed to

consider alternative policies that would have also satisfied its business necessity without

producing the adverse effects alleged to have been created by the English-only rule, then you

must find that the EEOC has succeeded on its claim that Beauty Enterprises' English-only rule

violated the Federal civil rights law, Title VII.

---

[14] Dothard v. Rawlison, 433 U.S. 321, 331, n. 14 (1977)(stating that in analysis of minimum height and weight standards with disparate impact on women that "'the touchstone' is business necessity;' a discriminatory employment practice must be shown to be necessary to safe and efficient job performance to survive a Title VII challenge.").
[15] *See*  42 U.S.C. §2000e-2(k)(1)(A)(i) ("An unlawful employment practice based on disparate impact is established under this title only if a complaining party demonstrates that a respondent uses a particular employment practice that causes a disparate impact on the basis of race, color, religion, sex, or national origin and the respondent fails to demonstrate that the challenged practice is job related for the position in question **and** consistent with business necessity.")(emphasis added).

**Plaintiffs' Proposed Jury Instructions**                                                              24

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 13**
**DISPARATE IMPACT** *as proposed August 11, 2005\**

*\*Plaintiff Intervenors joined in the EEOC's submission of this Proposed Instruction as applicable to their federal and state claims.*  Additional authority cited in support:  42 U.S. C. §1981(b); H.R. Rep. No. 102-104(I) at 92 (1991), reprinted in 1991 U.S.C.C.A.N. 549, 630 (stating that in the context of employment discrimination, the list of conduct set forth in Section 1981(b) would include, without limitation, claims of harassment, discharge, demotion, transfer, retaliation and hiring); Choudhury v. Polytechnic Institute of New York, 735 F.2d 38, 44 (2nd Cir. 1984)(retaliation claims actionable under Section 1981); Patterson v. County of Oneida, 375 F.3d 206, 226 (2nd Cir. 2004)(recognizing harassment claims under 1981); Saint Francis College v. Al-Khazraji, 481 U.S. 604 (1987)(in support of argument that Hispanic is a race under Section 1981); Shaare Tefila Congregation v. Cobb, 481 U.S. 615 (1987)(same).  *See also* Levy v. Comm'n on Human Rights and Opportunities, 236 Conn. 96, 103 (1996)(claims under Connecticut Fair Employment Act are governed by the same analysis as claims under Title VII).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**
**DISPARATE TREATMENT**

To prevail on a claim of intentional discrimination, Plaintiffs must prove by a preponderance of the evidence that Beauty Enterprises had a reason or motive to discriminate against the Class Members. The Plaintiffs must prove, either directly or indirectly, that there is evidence of intentional discrimination. Direct evidence would include oral or written statements showing a discriminatory motive for Beauty Enterprises' treatment of the Class Members. Direct evidence also could include evidence of remarks or actions that, if believed, directly prove that the Class Members' membership in a protected class was a factor in Beauty Enterprises' decision to implement a rule which targets Hispanic employees because of their national origin.

Indirect or circumstantial evidence would include proof of a set of circumstances that would allow one to reasonably believe that Class Members' membership in a protected class was a motivating factor in Beauty Enterprises' treatment of the Class Members.

To establish discrimination by using indirect evidence, Plaintiffs must prove the following, referred to as a *prima facie case*:

(1)     the aggrieved Class Member is Hispanic;

(2)     that he or she satisfactorily performed the duties of his or her position;

(3)     that he or she was subject to an adverse employment action, and

(4)     that the adverse employment action occurred under circumstances giving rise to an inference of discrimination on the basis of national origin.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 14**
**DISPARATE TREATMENT** *CONTINUED*


**AUTHORITY:** 42 U.S.C. §2000e-2(m); <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248 (1981); Devit, Blackmar and Wolff, Federal Jury Practice and Instructions, §104.03 (1987 & Supp. 1993); <u>Adeniji v. Administration for Children Service, NYC</u>, 43 F.Supp. 2d 407(SDNY 1999); <u>Nweke v. Prudential Ins. Co. of America</u>, 25 F. Supp. 2d 203, 225 (S.D.N.Y. 1998)(noting that elements of Section 1981 claims are identical to Title VII disparate treatment claims); <u>Dept. of Transp. v. Commission on Human Rights and Opportunities</u>, 272 Conn. 457, 464 n.9 (2005).




**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____




_____
          The Honorable Alan H. Nevas
          UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15**
**DEFENSE TO DISPARATE TREATMENT AND PROOF OF PRETEXT – DEFINED**

Once Plaintiffs have established a *prima facie* case, then Beauty Enterprises must defend itself against a presumption of discrimination established by the Plaintiffs by setting forth a legitimate, non-discriminatory reason for its discriminatory conduct. Beauty Enterprises need not prove that its actions were non-discriminatory, it need only advance a nondiscriminatory reason for its action.

If you find that Beauty Enterprises has articulated a legitimate, non-discriminatory reason for its discriminatory conduct, Plaintiffs may still establish that the Class Members' membership in a protected class was a motivating factor in the adverse action against the Class Members by showing that Beauty Enterprises' articulated reason for the adverse action was a "pretext" or a cover-up for discrimination. Plaintiffs may show pretext by showing the reasons offered by Beauty Enterprises are not worthy of belief or by introducing evidence that contradicts or disproves Beauty Enterprises' stated reasons for its adverse action against the Class Members. You must also consider whether any meritorious reason was actually relied upon or whether it was an after-the-fact justification manufactured in order to avoid liability. If it was not actually relied upon at the time of the termination decision it is a pretext.

The issue of whether Plaintiffs have shown that Beauty Enterprises' reasons are a pretext for national origin discrimination is a question of fact that you will be called upon to decide. In making this finding, you may consider to what extent Beauty Enterprises' factual positions have remained consistent during the course of the EEOC's investigation and judicial process, or whether the alleged non-discriminatory purpose was stated only after the allegation of discrimination.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 15**
**PROOF OF PRETEXT – DEFINED *CONTINUED***

Specifically, you are being asked to decide whether Beauty Enterprises' articulated reason(s) for imposing its English only rule and taking adverse action against the Class Members is unworthy of belief. If you find that the reason(s) is/are not worthy of belief or that the Class Member's national origin was a motivating factor was the factor that motivated Beauty Enterprises' adverse actions against the Hispanic employees, then Plaintiffs have established that the reason is a "pretext" for national origin discrimination. In order to prove pretext the Plaintiffs are not required to show that the Hispanic employees' national origin was the sole factor in Beauty Enterprises' decisions, the must only show that either or both of these factors played a role in its decisions. If you find "pretext" for discrimination exists in this case, then Plaintiffs have succeeded in their disparate treatment claim against Beauty Enterprises.

**AUTHORITY:** St. Mary's Honor Center v. Hicks, 113 S. Ct. 2742 (1993); Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); Furnco Constr. Corp. v. Waters, 438 U.S. 567 (1978); Lloyd v. Georgia Gulf Corp., 961 F.2d 1190 (5th Cir. 1992). Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000); Byrnie v. Town of Cromwell, Bd. of Ed., 243 F.3d 93, 101-102 (2nd Cir. 2001). *See also* DeMarco v. Holy Cross High School, 4 F.3d 166, 171 (2nd Cir. 1993); Schmitz v. St. Regis Paper Co., 811 F.2d 131, 132 (2nd Cir. 1987)(per curiam)(holding that shift in justifications given at trial which indicated an after-the-fact rationalization by the defendant could be sufficient to prove pretext)(citations omitted).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                    29

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 16**
**TITLE VII PROHIBITS HARASSMENT ON THE BASIS OF NATIONAL ORIGIN**

Title VII's prohibition against national origin discrimination in the workplace includes a

prohibition against harassment on the basis of national origin.

**AUTHORITY:** EEOC Regulations, 29 C.F.R. §1606.8 (2005) Faragher v. City of Boca Raton, 524 U.S. 775, 786-787 (1998); Burlington Industries, Inc. v. Ellerth, 524 U.S. 742, 761 (1998) (The majority's analysis in both *Faragher* and *Ellerth* drew upon the liability standards for harassment on other protected bases.  It is therefore clear that the same standards apply).  *See also* Harris v. Forklift Sys., Inc. 510 U.S. 17, 21 (1993)("The phrase 'terms, conditions, or privileges of employment evinces a congressional intent to strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment."); Gotfryd v. Book Covers, Inc., No. 97 C 7696, 1999 WL 20925 at *5 (N.D. Ill. Jan. 7, 1999).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                        30

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 17**
**NATIONAL ORIGIN HARASSMENT – ENGLISH-ONLY RULE**

An English-only rule can create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a hostile and discriminatory working environment.

**AUTHORITY:** Garcia v. Spun Steak, Co., 998 F.2d 1480, 1489 (9th Cir. 1993)("we can envision a case in which such rules are enforced in such a draconian manner that the enforcement itself amounts to harassment"); Rivera v. Baccarat, 1997 WL 777887, *5 (S.D.N.Y. Dec 15, 1997) Unreported Decision (same).  *See also generally*  EEOC Regulations, 29 C.F.R. §1606.7 (a)(2005)(English only rules may "create an atmosphere of inferiority, isolation and intimidation based on national origin which could result in a discriminatory working environment.")

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18**
**ELEMENTS OF PROOF OF HOSTILE WORK ENVIRONMENT**

In determining whether Class Members have been subjected to a hostile work environment on the basis of national origin, Plaintiffs must prove five things. First, it must be proven that the Class Members were subjected to unwanted or unwelcome harassment. This means that the Class Members did not encourage or otherwise consent to the treatment of which they complain.

Second, the harassment at issue must be on the basis of national origin. Plaintiffs must show that the harassing conduct based on national origin affected the Hispanic employees' employment and changed their work experience in a negative way. Plaintiffs must show that the conduct was sufficiently serious or widespread to create a general working environment that a reasonable person would find hostile, offensive or abusive and that the individual Class Members found the environment to be hostile, offensive or abusive. As part of the evaluation in determining a hostile work environment, a broad range of conduct can contribute to the creation of a hostile work environment. Evidence of remarks, innuendoes, ridicule, and intimidation on the basis of national origin can support a finding of a hostile work environment. Harassment can be either severe **or** pervasive; there is no magic number of incidents to constitute a hostile work environment. Factors that may be considered in determining whether the environment was hostile or abusive include the frequency of the conduct; however, a single act of harassment, if egregious enough, is enough to constitute a hostile work environment.

Third, based on the totality of the circumstances, i.e. looking at all of the facts of the case presented, the Plaintiffs must prove that the harassment was sufficiently severe or pervasive so as to alter the conditions of the employment of the Class Members and create a hostile work

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18**
**ELEMENTS OF PROOF OF HOSTILE WORK ENVIRONMENT** *CONTINUED*

environment.  Fourth, the Hispanic employees must show that the national origin harassment of which they complain is both subjectively - meaning they themselves found it offensive - and objectively offensive - meaning that a reasonable person would find it hostile or abusive. Finally, the Hispanic employees must show that there is some legal basis that supports that Beauty Enterprises should be responsible for this national origin harassment.

There are several ways in which Beauty Enterprises can be held responsible for the alleged national origin harassment.  The law states that where the national origin harassment is perpetrated by co-workers, Beauty Enterprises will be liable if it either provided no reasonable avenue for complaint to the Hispanic employees or knew of the harassment but did nothing about it.  In this regard, Beauty Enterprises can defend itself against a claim of co-worker harassment only if it can show that it either didn't know about the harassment (knowledge of harassment is imputed through knowledge or participation of a company supervisor) or if it can show that although it knew of the harassment, it took reasonable steps to remedy the harassment.  Only you will be able to determine whether the steps taken, if any, were reasonable.

If the harassment was perpetrated by a supervisor, Beauty Enterprises will be liable if a supervisor took an adverse action against the Hispanic employee as part of the harassment.  An adverse action can include a change in position, pay, failure to promote or any other action that disadvantaged the Hispanic employee in the workplace.  It is important to note, however, that if you find that the Hispanic employees were subject to discriminatory harassment and a supervisor was involved in the harassment *but* the Hispanic employee did not suffer any adverse action as

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 18**
**ELEMENTS OF PROOF OF HOSTILE WORK ENVIRONMENT *CONTINUED***

described above, then Beauty Enterprises has the opportunity to defend itself against the claim.

Beauty Enterprises can only defend itself against a claim of supervisor harassment where there

has been no adverse action against the complaining employee if it can prove two things: (1) that

it exercised reasonable care to prevent and correct promptly any harassment; and (2) the

employee unreasonably failed to take advantage of any preventive or corrective opportunities

provided by the employer or to otherwise avoid harm.

.

**AUTHORITY:** Faragher v. City of Boca Raton, 524 U.S. 775, 787-789 (1998); Oncale v.
Sundower Offshore Servs., Inc., 523 U.S. 75 (1998); Feingold v. New York, 366 F.3d 138 (2nd
Cir. 2004).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 19**
**WORKPLACE HARASSMENT– TOTALITY OF THE CIRCUMSTANCES**

The objective hostility of a work environment depends on the totality of the circumstances.  Thus, in order to determine whether Plaintiffs have established a hostile work environment claim, you may consider factors including but not limited to the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

**AUTHORITY:** *See* Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993); Faragher v. City of Boca Raton, 524 U.S. 775, 787-789 (1998); Terry v. Ashcroft, 336 F.3d 128, 148 (2nd Cir. 2003); Dawson v. County of Westchester, 373 F.3d 265, 272 (2nd Cir. 2004)

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 20**
**HARASSMENT - WHEN OWNER OR CORPORATE OFFICER IS A HARASSER**

If Plaintiffs prove the existence of a hostile work environment on the basis of national

origin, the employer is liable if it is shown that the president, owner, or other corporate officer,

of Beauty Enterprises was involved in the harassment.  Because Robert Cohen is the owner and

president of Beauty Enterprises and has held those titles through the implementation and

enforcement of the English only rule and related harassment, I therefore instruct you to find

Beauty Enterprises liable for national origin harassment if you find Robert Cohen has harassed

any of the Hispanic employees on the basis of their national origin.  Similarly if you find that

Rocco Piccirillo and/or Larry Sussman –Vice Presidents of Beauty Enterprises, engaged in

national origin harassment, I also instruct you to find that Beauty Enterprises is liable for

unlawful harassment of the Hispanic employees.

**AUTHORITY:** Faragher v. City of Boca Raton, 524 U.S. 775, 788-790 (1998) *citing* Harris v.
Forklift Sys., Inc., 510 U.S. 17, 19 (1993)(individual charged with creating the abusive
atmosphere was the president of the corporate employer who was indisputably within that class
of an employer organization's officials who may be treated as the organization's proxy.  Also
*citing* Torres v. Pisano, 116 F.3d 625, 634-635, and n. 11 (2nd Cir. 1997) (noting that a supervisor
may hold a sufficiently high position "in the management hierarchy of the company for his
actions to be imputed automatically to the employer"), *cert. denied*, 522 U.S. 997, 118 S.Ct. 563,
139 L.Ed.2d 404 (1997).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                              36

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21**
**RETALIATION**

Title VII of the Civil Rights Act, as well as Section 1981 and the Connecticut Fair

Employment Act, prohibit Beauty Enterprises from discriminating against an employee because

he or she has opposed the company's English-only rule or for opposing any other practice that

the employee, in good faith, believes to be discrimination. You should note that the employee's

opposition does not have to be a formal complaint; it could be speaking out about or objecting to

the English-only rule. Thus, if you find that Beauty Enterprises retaliated against any employee

for opposing its English-only rule – formally or informally – you must find that they have

violated Title VII of the Civil Rights Act, as well as Section 1981 and the Connecticut Fair

Employment Act.

Beauty Enterprises is also prohibited by law from retaliating against any employee who

filed a charge of discrimination with the EEOC, any employee who testified, assisted or

participated in any manner in a related investigation, proceeding or hearing. For example, the

public hearing held in May of 2000 entitled, "Latinos and Workplace Discrimination" that was

held at the Hartford legislative building and which several Hispanic employees attended and/or

participated in is considered "protected conduct" under the Civil Rights Act. Therefore, if you

find that Beauty Enterprises took any adverse action against any Class Member for attending

and/or participating in this hearing, you must find that Beauty Enterprises retaliated against the

Hispanic employee in violation of the Civil Rights Act.

In order to establish a *prima facie* retaliation claim under Title VII, Plaintiffs must establish that

the Class Member made a complaint about conduct that he or she believed in good faith to be

discriminatory; that he or she was subjected to an adverse employment action at the time

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 21**
**RETALIATION *CONTINUED***

of, or after the complaint; and that there is a causal connection between the Class Member's

complaints and the adverse employment action.  It is important to note that the Class Member

does not have to show that what he or she complained about was actually unlawful.  It is enough

if the Class Member reasonably believed that Beauty Enterprises' conduct was unlawful and that

discrimination existed.

Once a *prima facie* case is established, the burden of articulating some non-

discriminatory reason falls upon Beauty Enterprises.  If Beauty Enterprieses articulates a

legitimate non-retaliatory reason for its action, then the Plaintiffs assume the burden of showing

that the reasons given were a pretext for retaliation or that Beauty Enterprises' reasons are

unworthy of belief or pretext for discrimination, as you have already been instructed.

**AUTHORITY:** 42 U.S.C. §2000e-3a; Robinson v. Shell Oil Co., 519 U.S. 337, 346
("maintaining unfettered access to  [Title VII's] remedial mechanisms" is primary purpose of
retaliation clause); Cruz v. Coach Stores, Inc., 202 F.3d 560, 566 (2nd Cir. 2000)(setting forth
standard); McMenemy v. City of Rochester, 241 F.3d 279, 282-85 (2nd Cir. 2001)(same).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                      38

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 22**
**RETALIATION – CAUSAL CONNECTION**

Timing between the protected activity and the adverse employment action is a factor to

be considered in determining whether retaliation has occurred.

**AUTHORITY:** <u>Cifra v. Gen. Elec. Co.</u>, 252 F.3d 205, 217 (2nd Cir. 2001)("The causal
connection needed for proof of a retaliation claim can be established indirectly by showing that
the protected activity was closely followed in time by the adverse action."); <u>Gorman-Bakos v.</u>
<u>Cornell Coop. Extension</u>, 252 F.3d 545, 554 (2nd Cir. 2002)(stating however that court has not
drawn a bright line to define the outer limits beyond which a temporal relationship is too
attenuated to establish a causal relationship).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 23**
**DISCRIMINATORY DISCHARGE**

Plaintiffs allege that certain Class Members allege that they were terminated in violation

of Title VII, Section 1981 and the Connecticut Fair Employment Practice laws.  Those Class

Members alleging that they were subjected to discriminatory discharge must show that he or she

was performing his or her duties satisfactorily at the time of discharge, that he or she was

discharged and that his or her discharge occurred under circumstances giving rise to an inference

of discrimination.  If the Class Member makes out this case, Beauty Enterprises must then

articulate a legitimate nondiscriminatory reason for the discharge.  If Beauty Enterprises does so,

then the Class Member can prove that Beauty Enterprises' explanation is unworthy of credence

or pretext for discrimination, as you have already been instructed.

**AUTHORITY:**  McLee v. Chrystler Corp., 109 F.3d 130, 134 (2nd Cir. 1997); Reeves v.
Sanderson Plumbing Prods., Inc., 530 U.S. 133 (2000).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 24**
**CONSTRUCTIVE DISCHARGE**

Where an employee's working conditions become so intolerable due to actions by the employer or action at the place of employment about which the employer knew or should have known about, and as a result the employee feels compelled to resign his or her employment, that resignation is known as a "constructive discharge."

A constructive discharge is treated the same as if the employer had actually fired the employee for unlawful reasons. In determining whether a resignation is truly "compelled," you should determine whether a reasonable person in the shoes of the employee would have felt compelled to resign.

Here, if you find that a reasonable person in the shoes of a Class Member alleging constructive discharge would have considered the working conditions at Beauty Enterprises so intolerable that she would have felt compelled to quit, then you must find that the Class Member was constructively discharged by Beauty Enterprises.

**AUTHORITY:** Pennsylvania State Police v. Suders, 542 U.S. 129 (2004); Petrosino v. Bell Atlantic, 385 F.3d 210 (2nd Cir. 2004).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
                    The Honorable Alan H. Nevas
                    UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                    41

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 25**
**DAMAGES**

If the Plaintiffs' claims against Beauty Enterprises are proven by a preponderance of the evidence and the Class Members are entitled to recover money from Beauty Enterprises, you must determine the damages to which each of the Class Members is entitled. You should not interpret the fact that I have given instructions about the Class Members' damages as an indication in any way that I believe that Plaintiffs should or should not win this case. It is your task first to decide whether Beauty Enterprises is liable. I am instructing you on damages only so that you will have guidance in the event you decide that Beauty Enterprises is liable.

**AUTHORITY:** *Fifth Circuit Pattern Jury Instructions Civil*, §15.1 (2005). (As adapted).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 26**
**DAMAGES**


If an employee is unlawfully terminated, either directly or constructively by being forced

to resign, the employee may recover post-resignation damages, including both back-pay and, in

fitting circumstances, front-pay, as well as compensatory and punitive damages.


.


**AUTHORITY:** 42 U.S.C. §2000e-5(g); <u>Pennsylvania State Police v. Suders</u>, 542 U.S. 129
(2004); <u>Johnson V. Railway Express Agency</u>, 421 U.S. 454, 460 (1975)(discussing Section 1981
damages).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
                    The Honorable Alan H. Nevas
                    UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 27**
**DAMAGES – WAGES AND BENEFIT LOSS**

If you find that a Class Member was terminated unlawfully, either by a constructive

discharge or directly, Beauty Enterprises is responsible for all wage and benefit losses that result

from its unlawful discrimination, at least until the time of judgment.  The guiding principle is

that the employee should be made whole, that is, put in the same financial position her or she

would have been in had he or she not been terminated.  An award of back-pay should therefore

be offset by any wages that the employee earned after the discharge, or could have been earned

with reasonable due diligence after the illegal discharge, regardless of whether they were actually

earned.

I instruct you however, that no deduction or offset should be made for unemployment or

other state funded benefits received by the Class Member

**AUTHORITY:** EEOC v. Joint Apprenticeship Committee of the Joint Indust. Bd. of the Elec.
Ind., 164 F.3d 89,100-103 (2nd Cir. 1998).  It has been the practice of several courts in this circuit
to not permit unemployment benefits to be subtracted from a plaintiff's back pay award since a
deduction relieves defendant from the consequences of its unlawful actions. *See* Shannon v.
Fireman's Fund Ins. Co., 136 F. Supp. 2d 225, 232 (S. D.N.Y. 2001); Maturo v. National
Graphics, Inc., 722 F. Supp. 916, 927 (D. Ct. 1989); Meschino v. I.T.T., 661 F. Supp. 254, 260
(S.D.N.Y. 1987); Bonura v. Chase Manhattan Bank, N.A., 629 F.Supp. 353,361-62 (S.D.N.Y.),
aff'd, 795 F.2d 276 (2d Cir. 1986) (*citing* EEOC v. Kallir, Philips, Ross Inc., 420 F.Supp. 919,
925 (S.D.N.Y. 1976)), aff'd 559 F.2d 1203 (2d Cir.) *cert. denied* , 434 U.S. 920 (1977), 54
L.Ed.2d 277) (declining to deduct unemployment insurance from back pay), *compare* Dailey v.
Societe Generale, 108 F.3d 451 (2d Cir. 1997), establishes that the district court has discretion to
deduct unemployment compensation benefits from a plaintiff's back pay award.

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                                      44

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 28**
**MITIGATION OF DAMAGES – EMPLOYER BEARS BURDEN OF PROOF**

A Class Member seeking damages need not have made all the efforts s/he possibly could have made to find new employment; rather, s/he need only have engaged in a reasonable and good faith search. Beauty Enterprises bears the burden of showing that a terminated employee did not adequately mitigate his or her damages. This means that it is Beauty Enterprises' burden to show that an employee it unlawfully discharged did not make reasonable efforts to obtain alternative employment.

.

**AUTHORITY:** <u>NLRB v. Thalbo Corp</u>., 171 F.3d 102, 112 (2nd Cir. 1999); <u>Clarke v. Frank</u>, 960 F.2d 1146, 1152 ("The employer bears the burden of proving that suitable work existed, and that the employee did not make reasonable efforts to obtain it.").

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
    The Honorable Alan H. Nevas
    UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 29**
**DAMAGES – SELF EMPLOYMENT AS MITIGATION**

Self-employment is an adequate and proper way for an injured Class Member to attempt to mitigate the loss of wages. A person is not required to look for other employment while s/he is reasonably engaged in self-employment. Self- employment should be treated like any other interim employment in measuring back pay liability.

**AUTHORITY:** Heinrich Motors, Inc. v. N.L.R.B., 403 F.2d 145, 148 (2d Cir.1968) *citing* N.L.R.B. v. Cashman Auto Co., 223 F.2d 832, 836 (1st Cir.1955); Carden v. Westinghouse Elec. Corp., 850 F.2d 996, 1005 (3d Cir. 1988).

**GIVEN AS REQUESTED:_____**
**GIVEN AS MODIFIED:_____**
**REFUSED:_____**

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 30**
**DAMAGES – PREJUDGEMENT INTEREST**

As part of an award, you may, to make a Class Member whole for her losses, award a

Class Member pre-judgment interest – interest on money wrongfully withheld from his or her

from the date she or he was terminated to the date of judgment. If you find that a Class Member

was unlawfully terminated and was deprived of income and benefits as a result, you should

award her interest on the value of that lost income.

**AUTHORITY:** Reed v. A.W. Lawrence & Co., Inc., 95 F.3d 1170, 1183 (2nd Cir. 1996). *See also* Sands v. Runyon, 28 F.3d 1323, 1328 (2nd Cir. 1994); Saulpaugh v. Monroe Comm. Hosp., 4 F.3d 134, 145 (2nd Cir. 1993)(Title VII authorizes prejudgment interest to prevent the defendant "from attempting to enjoy an interest-free loan for as long as it can delay paying")(internal quotation marks omitted), *cert denied*, 510 U.S. 1164 (1994). *See also generally* EEOC v. Wooster Brush Co. Employees Relief Ass'n., 727 F.2d 566, 578 (6th Cir. 1984)(discussing cases).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 31**
**COMPENSATORY DAMAGES**

The Plaintiffs have alleged that, as a result of Beauty Enterprises' discrimination, the Class Members have endured pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience and loss of enjoyment of life. These damages are called compensatory damages. The purpose of compensatory damages is to make the Class Members whole – that is, to compensate them for the damages that they have suffered and/or will, in all reasonable probability, suffer in the future, as a consequence of Beauty Enterprises' discrimination. Compensatory damages include expenses which the Hispanic employees have incurred and/or will in all reasonable probability incur as a consequence of Beauty Enterprises' discrimination.

The Plaintiffs have the burden of proving any compensatory damages by a preponderance of the evidence. If the Plaintiffs do not establish that a Class Member has experienced pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience and loss of enjoyment of life because of Beauty Enterprises' conduct, then the Plaintiffs cannot recover compensatory damages on behalf of that Class Member.

If you determine that the Plaintiffs have proven by a preponderance of the evidence that the Class Members have experienced pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience and loss of enjoyment of life, you may award the Hispanic employees damages for those injuries. No evidence of the monetary value of such intangible things as pain and suffering has been, or needs to be, introduced into evidence. No exact standard exists for fixing the compensation to be awarded for these elements of damages. The damages that you award must be fair compensation – no more, no less.

**Plaintiffs' Proposed Jury Instructions**                                      48

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 31**
**COMPENSATORY DAMAGES *CONTINUED***

When considering the amount of monetary damages to which the Class Member may be entitled, you should consider the nature, character, and seriousness of any pain and suffering, mental anguish, humiliation, embarrassment, emotional distress, anxiety, inconvenience and loss of enjoyment of life that Class Member felt.  You must also consider its extent or duration, as any award you make must cover the damages endured by the Hispanic employees since the wrongdoing, to the present time, and even into the future if you find as fact that the proofs presented justify the conclusion that the Hispanic employees' emotional distress and its consequences have continued to the present time or can reasonably be expected to continue in the future.  The damages you award should be fair in light of the evidence.  The fact that a Class Member may be unusually emotionally sensitive and incur great emotional harm from discriminatory conduct will not absolve Beauty Enterprises from responsibility for the greater emotional harm because Beauty Enterprises takes its victims as it finds them.


**AUTHORITY:** 42 U.S.C. §1981a(b)(3); Robinson v. Metro North R.R. Co., 267 F.3d 147, 160 (2nd Cir. 2001); Williamson v. Handy Button Machine Co., 817 F.2d 1290, 1294 (7th Cir. 1987); EEOC Policy Guidance on Damages Provisions of the 1991 Civil Rights Act, 8 FEP Manual 405:7091.


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____


_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 32**
**DAMAGES – DIFFICULTY CALCULATING NO OBSTACLE**

If damages are appropriate, injured Hispanic employees are entitled to damages even if they are difficult to calculate.  While damages do not have to be calculated using mathematical precision, Plaintiffs must provide sufficient evidence to take the amount of damages out of the realm of speculation and conjecture.  Justice and public policy require, however, that a wrongdoer shall bear the risk of uncertainty which his own wrong has created and which prevents precise computation of damages.

.

**AUTHORITY:** Bigelow v. RKO Radio Pictures, 327 U.S. 251, 264-65 (1946).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 33**
**DAMAGES – PUNITIVE DAMAGES**

Plaintiffs also seek punitive damages from Beauty Enterprises.   The purpose of an award of punitive damages is first, to punish a wrongdoer, and second, to deter Beauty Enterprises and other companies and individuals from similar conduct in the future.

Under all the claims made by the Plaintiffs in this case, the law allows an award of punitive damages against Beauty Enterprises if it demonstrates that Beauty Enterprises engaged in discriminatory practice or practices with malice or with reckless indifference to the federally protected rights of aggrieved individual(s).  If you find that Beauty Enterprises discriminated against the Class Members in violation of Title VII, Section 1981 or the Connecticut Fair Employment Act, and acted with malice or reckless indifference to the federally protected rights of the Class Members, you may award punitive damages.  An act or failure to act is done with malice if it is prompted by ill will or spite towards the aggrieved individual/s/.

An award of punitive damages does not require showing egregious or outrageous discrimination or retaliation.  The relevant inquiry is whether Beauty Enterprises had bad motive or intent towards its Class Members or whether Beauty Enterprises knew or showed reckless indifference for whether the alleged discriminatory conduct was prohibited by Title VII, Section 1981 or the Connecticut Fair Employment Act.  An act is undertaken in reckless disregard if Beauty Enterprises or one or more of its employees knew or should have known that the consequences of its actions would be to discriminate.  The Plaintiffs must show by a preponderance of the evidence that Beauty Enterprises knew its conduct violated the law or that Beauty Enterprises acted with reckless disregard for whether its conduct was unlawful.

However, you may not award punitive damages if it has been proven by a preponderance of the evidence that Beauty Enterprises made a good-faith effort to comply with the law prohibiting national origin discrimination and retaliation.

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 33**
**DAMAGES – PUNITIVE DAMAGES** *CONTINUED*

If you find that Beauty Enterprises acted with malice or reckless disregard and did not make a good faith effort to comply with the law, then, you may, but are not required to, award punitive damages if you find it is appropriate to punish Beauty Enterprises or to deter Beauty Enterprises and others from similar conduct in the future.

Whether or not to make an award of punitive damages is within the province of the jury. In fixing an amount of punitive damages, if any, you should consider the following questions: How offensive was the conduct?; What was the nature and extent of the harm done?; What was Beauty Enterprises' conduct after it was put on notice of the discriminatory conduct claimed by the Plaintiffs and Class Members?; What amount is needed considering Beauty Enterprises' financial condition to prevent future repetition?  The extent to which a particular sum will adequately deter or prevent future misconduct may depend on the financial resources of the defendant against which damages are awarded.  Therefore, if you find that punitive damages should be awarded against Beauty Enterprises, you may consider the financial resources of the company in fixing the amount of such damages.

**AUTHORITY:** Kolstad v. American Dental Ass'n, 527 U.S. 526 (1999); EEOC v. Wal-Mart Stores, Inc., 187 F. 3d 1241, 1244-45 (10th Cir. 1999); Cush-Crawford v. Adchem Corp., 271 F.3d 352 (2nd Cir. 2001); Johnson v. Railway Express Agency, 421 U.S. 454, 460 (1975)(Section 1981 allows recovery of compensatory damages and punitive damages); Wade v. Orange County Sheriff's Office, 844 F.2d 951, 955 (2nd Cir. 1988)(affirming award of compensatory damages for humiliation).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDG

**Plaintiffs' Proposed Jury Instructions**                                                   52

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 34**
**FRONT PAY**

If you find the Beauty Enterprises discriminated against the Class Members because of their national origin by the implementation of its English-only rule, and/or retaliated against the Class Members because they opposed the English-only rule and/or filed charges of discrimination with the EEOC, and if you find that it is not feasible for Beauty Enterprises to immediately place the Class Members into available positions, then you must determine an amount that is fair to compensate the Class Members for all future lost wages which they will, with reasonable certainty, not earn in the future because of Beauty Enterprises' illegal conduct.

Lost future wages require one to project the amount of wages and other benefits the Class Members would have, with reasonable certainty, earned if Beauty Enterprises had not discriminated against them. Lost future wages, or front pay, begin to run from the date of judgment and continue to the date on which the Class Members will, with reasonable certainty, obtain a position which is substantively equivalent to the position which they would have had if Beauty Enterprises had not terminated them. Therefore, projecting lost future wages is necessarily speculative because it requires intelligent guesswork as to the amount of salary and benefits that an individual would likely earn, and, it requires intelligent guesswork to project in the future the period of time that such individuals will suffer such losses.

In calculating future lost wages, you must subtract from the amount of future lost wages the amount of earnings and benefits, if any, that the Class Member would likely receive from other employment during this time. Since an award of future lost wages requires that payment

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 34**
**FRONT PAY** *CONTINUED*

be made now for a loss that the Class Members will not actually suffer until some future date,

you must determine the present worth in dollars of such future lost wages.

**AUTHORITY:** Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843 (2001) and cases cited therein; Robinson v. Metro- North Commuter RR, 267 F.3d 147 (2d Cir. 2001).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                                      54

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 35**
**TEMPORARY WORKERS ARE BEAUTY ENTERPRISES EMPLOYEES UNDER**
**TITLE VII**

The Class Members that were placed by temporary agencies, AAA or Essential, to work

at Beauty Enterprises are for purposes of this case, employees of Beauty Enterprises.  In that

regard, Beauty Enterprises owes the same federal and state law duties not to discriminate or

retaliate to all of its employees - whether permanent or temporary.

**AUTHORITY:**  Joint Stipulations of Uncontested Facts, No. 11 (Filed September 7, 2005).  *See also generally* Magnuson v. Peak Technical Services, Inc., 808 F. Supp. 500 (D. VA. 1992), *affirmed*, 420 F.3d 1244 (4th Cir. Va. 1994); Amarnare v. Merrill Lynch, 611 F. Supp. 344, 349, *affirmed*, 770 F.2d 157 (2nd Cir. 1985).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                          55

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 36**
**TAX CONSEQUENCES**

If you find in favor of Plaintiffs and award the Class Members damages, you may award

an additional amount for the tax consequences of receiving a lump sum award which will be

taxed at a higher rate than if the Plaintiffs had earned the same money over their normal work

life.


**AUTHORITY:**  Norfolk v. Western Railway Co. v. Liepelt, 444 U.S. 490 (1980).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
                    The Honorable Alan H. Nevas
                    UNITED STATES DISTRICT JUDGE

**Plaintiffs' Proposed Jury Instructions**                                    56

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 37**
**LEGAL STANDARDS FOR CLAIMS UNDER THE CONNECTICUT FAIR**
**EMPLOYMENT PRACTICES ACT (CFEPA) AND 1981**


The same legal standards apply to claims filed under the Connecticut Fair Employment

Practices  Act (CFEPA) and §1981 as to claims under Title VII.  Therefore, determinations made

with respect to Plaintiff-Intervenors' discrimination claims for employment discrimination,

hostile environment, harassment, constructive discharge, and retaliation that are filed under

Connecticut's employment discrimination statute and §1981 are to be treated as the same as those

made under Title VII.


**AUTHORITY:**  Sedotto v. Borg-Warner Protective Services Corp., 94 F.Supp.2d 251, 268
(D.Conn.,2000);  Newtown v. Shell Oil Co., 52 F.Supp.2d 366 (D. Conn.1999); Gorman v.
Earmark, Inc., 968 F. Supp. 58 (D.Conn. 1997);  Levy v. Comm'n on Human Rights and
Opportunities, 236 Conn. 96 (1996); Proctor v. MCI Communications Corp., 19 F.Supp.2d 11,
14, n.1 (D. Conn. 1998); McLee v. Chrysler Corp., 109 F.3d 130, 134 (2nd Cir. 1997).


**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

**PLAINTIFFS' PROPOSED JURY INSTRUCTION NO. 38**
**RETIREMENT PLAN LOSS**

Awards for lost retirement plan benefits are compensation for past economic loss. If you find that any Class Member was denied compensation for lost profit sharing plan benefits (or 401K or other retirement benefits), you may award such benefits as he or she would have earned but for Beauty Enterprises' conduct in order to make the Class Member whole.

**AUTHORITY:** <u>Sharkey v. Lasmo</u>, 214 F.3d 371, 374-375 (2nd Cir. 2000).

**GIVEN AS REQUESTED:**_____
**GIVEN AS MODIFIED:**_____
**REFUSED:**_____

_____
The Honorable Alan H. Nevas
UNITED STATES DISTRICT JUDGE

Respectfully submitted on behalf of Plaintiffs,
with the approval and consent of Plaintiff-Intervenors,


_____
R. Liliana Palacios
Senior Trial Attorney
EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION
MA BBO 647078; Ct. Fed. Bar. ct22358
EEOC Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203-0506
Tel: (617) 565-3188; Fax: (617) 565-3196


## CERTIFICATE OF SERVICE

I, R. Liliana Palacios, hereby certify that on this 7th day of September 2005, caused a copy of the above document to be mailed, postage prepaid, to all attorneys of record in this matter.


_____
R. Liliana Palacios
Senior Trial Attorney