## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>    PLAINTIFF<br><br>VS.<br><br>BEAUTY ENTERPRISES, INC.,<br>AAA INDUSTRIAL TEMPORARIES, INC.,<br>ESSENTIAL TEMPORARIES, INC.,<br><br>    DEFENDANT | CIVIL ACTION<br>NO. 3:01-CV-378 (AHN) |
| MIGUEL ANGEL ALVAREZ and<br>WILLIAM TORRES,<br><br>    PLAINTIFF-INTERVENORS,<br><br>v.<br><br>BEAUTY ENTERPRISES, INC.,<br><br>    DEFENDANT | SEPTEMBER 13, 2005 |

### **DEFENDANT, BEAUTY ENTERPRISES, INC.'S AMENDED PROPOSED VOIR DIRE QUESTIONS**

On September 12, 2005, the Defendant, Beauty Enterprises, Inc. ("BEI"), filed its proposed voir dire questions in this action. After filing this material, the undersigned discovered two typographical errors. They include an error in the title of the document which stated "Defendant, Beauty Enterprises, Inc.'s Proposed Voir [sic] Questions".

Moreover, proposed voir dire question number 20 contained the unnecessary phrase "the nature of this task." This filing corrects both of those errors. In all other respects, this submission is identical to that filed with the Court on September 12, 2005.

Pursuant to the Court's March 17, 2005 Pretrial Order, the Defendant, Beauty Enterprises, Inc. ("BEI"), hereby submits its Amended Proposed Voir Dire Questions in anticipation of jury selection, which is scheduled to go forward on September 15, 2005, in the above-referenced action.

1.  The defendant in this case is a company based in Hartford known as Beauty Enterprises. The company is a distributor of beauty products manufactured by other companies. It distributes – sells - these products at wholesale to retailers who in turn sell them to consumers. The products it distributes to retailers are designed for the black consumer. Does anyone come here knowing anything about Beauty Enterprises? Has anyone heard anything about Beauty Enterprises? Does anybody have any views, negative or positive, about a company that distributes beauty products designed for the black consumer?

2.  The plaintiff in this case is a government agency named the Equal Employment Opportunity Commission. It's often referred to by its initials – EEOC. Does anybody here know anything about the EEOC?

3.      The EEOC was created by an Act of Congress to enforce one of the principal laws involved in this case, a federal law known as Title VII of the Civil Rights Act of 1964.  Title VII, in general terms, is the law that prohibits discrimination in employment on account of race, religion, national origin and other conditions.  Given what it is and what it does, would you be more inclined to favor the EEOC over Beauty Enterprises in this case?  Would you be more inclined to find against the EEOC in this case given what it is and what it does?

4.      One of the ways the EEOC works is that people who think they've been discriminated against in the employment context on account of, say, national origin, file complaints with the EEOC, which the EEOC then investigates.  And if the EEOC concludes that there's reasonable cause to believe that complaining person is right, it will sue in its own name on the person's behalf.  And that's what's happened here.  My question to you is this:  will the fact that the EEOC has investigated this claim and made a reasonable cause finding influence you in any way, positively or negatively, if you are a juror deciding this case?

5.      A number of the folks on whose behalf the EEOC is suing in this case also hired their own lawyers and formally became plaintiffs – even though the EEOC

was suing on their behalf. Would the fact that these folks hired their own lawyer influence the way you look at their claims?

6.  The EEOC and the people on whose behalf they are suing claim that Beauty Enterprises discriminated against them on account of their national origin. Does anyone here have any feelings about the law against national origin discrimination in employment that might make it difficult for them to be fair and impartial jurors in this case?

7.  The national origin of the people on whose behalf the EEOC is suing are all Hispanic; almost all of them are from Puerto Rico? Does anyone here have any feelings about Hispanics, generally, or Puerto Ricans in particular that might make it difficult for them to be fair and impartial to both parties and decide the case based solely on the evidence and the law as I describe it to you?

8.  The claim of discrimination in this case largely concerns a rule that Beauty Enterprises has that says in substance that if employees are going to speak while they're on the clock – working – they've got to speak in English. You'll hear this referred to as the English only rule or policy during the course of this trial. Has anybody worked in a place that has an English only rule? [For those that have, what thoughts do you have, if any, about the rule?] Does anyone here come to this court

today with any thoughts or feelings about English only rules?  Has anyone here ever read anything about them?  Has anyone here thought about whether they're legal or not?  Has anyone here thought about whether having an English only rule is a good thing or a bad thing for employers or employees?

9. Spanish is the native language of the people on whose behalf the EEOC is suing.  Is there anyone here who's native language is something other than English or has a family member or close friend who's native language is other than English?  [As to those people who say yes]; do you come to this court today with any experiences in your life involving you or that family member or friend that might make you feel particularly sympathetic to folks in America whose native language is not English?

10. Do you have any feelings coming into court today about how English should be taught to immigrant youngsters whose native language is not English?

11. Do you have any feelings when you go to the ATM machine and it asks you whether you want it to use English or Spanish?

12. Has anyone here had any experiences supervising or working with someone whose native language was something other than a language you spoke?

[For those who have], How were you able to communicate with them, and them with you? Would that experience influence the way you looked at this case?

13. Beauty Enterprises, the parties agree, is a successful corporation, and while the plaintiff here is a government agency, the people on whose behalf they're suing are individuals? Do you have any feelings sitting here today about whose generally right in cases where individuals sue a successful corporation? Can you be equally fair to both corporations and individuals suing them?

14. Beauty Enterprises is being sued for its conduct as an employer in this case, and, the people on whose behalf the EEOC is suing are or were Beauty Enterprises' employees? Do you come to this court with sympathies for one party or another based solely on their status as employees or employer?

15. Is there anything that might make it difficult for you to be as impartial as you'd like to be given that one side is basically employees and the other their employer?

16. Does anyone here own their own businesses? Does anyone have any close friends or family members that do? What, if any, feelings do you have about folks who own their own businesses?

17. Is anyone here an employee? For those that are, have you ever sued your employer? Have you or anyone in your family or a close friend ever filed a discrimination claim against his or her employer? Details.

18. Have you served on a jury before? (Describe nature of the action, whether they rendered a verdict, what the verdict was, whether they were the foreperson, how they perceived the deliberations process and the manner in which they participated in the process (talked a lot, debated a lot, didn't say much, didn't debate much, influenced others, influenced by others).

19. Has anyone here who hasn't served on a jury been in situations where they had to decide if someone was telling the truth or if what they were saying was accurate? Describe the situation and explain what they considered in reaching their decision?

20. Your probably going to have to decide who to believe in whole or in part in this case? Is there anything about doing this task that would be difficult or uncomfortable for you?

21. The evidence in this case will be that the employees on whose behalf the EEOC is suing worked in Beauty Enterprises warehouses in Hartford, that the

merchandise Beauty sold was in that warehouse and that the warehouse employees were given customer orders to fill by picking the products from the shelves, checking whether the order was properly picked and packing it for shipping. The evidence will also show that there is not only a shipping operation going on there, but there's also a receiving operation. Does anyone here have any experience with a warehouse workplace like this?

22. At the end of the case, after the evidence is over and the lawyers make their closing arguments, I'm going to instruct you on the law you're to apply here and tell you that you have to follow that law, whether you like it or not, and whether you disagree with it or not? Is there anyone here who would find it difficult to follow my instruction and apply a law you didn't like or one you disagreed with?

23. One of the things I'm going to tell you then (and that I'm about to tell you now) is that you aren't to make a judgment about how you're going to vote during the plaintiff's case or when the plaintiff finishes its case; that you're supposed to wait until after the defendant presents its case, the lawyers deliver their closing arguments and I instruct you on the law before you start thinking about how you're going to vote. Is there anyone here who wouldn't be able to wait and do this?

24. One of the things the EEOC is seeking here on behalf of the employees is money damages. If the EEOC did not prove to you by a preponderance of the evidence that one or more or any employee was entitled to money, would you have any difficulty sending them home with nothing?

25. During some portions of this case, it may be necessary to utilize interpreters for certain of the witnesses who primarily speak Spanish. Is there anyone here who speaks Spanish? If so, do you understand that if you disagreed with the accuracy of the interpreter's interpretation, you could not correct that interpretation and in fact, would have to accept it as being accurate? Would this impact your ability to sit on this jury?

          **THE DEFENDANT**
          **BEAUTY ENTERPRISES, INC.**

          By: /s/_____
               Richard C. Robinson (ct04321)
               Brian C. Roche (ct17975)
               Pullman & Comley, LLC
               90 State House Square
               Hartford, CT 06103
               Telephone: (860) 541-3333
               Facsimile: (860) 424-4370

**CERTIFICATION**

      Pursuant to Fed. R. Civ. P. Rule 5 (b), I hereby certify that a copy of the above was mailed on the date hereon to all counsel and pro se parties of record.

    Rosa Lilliana Palacios, Esq.
    525 FDR Avenue
    Plaza Las Americas, Suite 1202
    San Juan, Puerto Rico 00918-8001

    Markus L. Penzel, Esq.
    EEOC - Boston Area Office
    J.F.K. Federal Building, Room 475
    Boston, MA 02203-0506

    Barbara E. Gardner
    843 Main Street, Suite I-4
    Manchester, CT  06040

    Julia Morris Paul
    Marte, Plepler, Falkenstein, Keith, Meggers & Paul, P.C.
    113 East Center Street
    Manchester, CT  06040

    Evette Soto-Maldonado, Esq.
    Jackson Chin, Esq.
    Puerto Rican Legal Defense and Education Fund
    99 Hudson St., 14th Floor
    New York, NY 10013

Valeria Calafiore, Esq.
Clifford Chance US LLP
31 West 52 Street
New York, NY 10019

                                          /s/ _____
                                          Richard C. Robinson
                                          Brian C. Roche

Bridgeport/65094.1/BCR/571926v2