UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY     :
COMMISSION,                      :
    Plaintiff,                  :
                                :
        v.                  :     Civil NO. 3:01CV378(AHN)
                                :
BEAUTY ENTERPRISES, INC.,        :
    Defendant.                  :

## RULING AND ORDER ON JURY INSTRUCTIONS

This case involves a "speak English only" policy that was instituted in 1980 by defendant Beauty Enterprises, Inc. ("Beauty"), whereby its approximately 150 employees must speak only English at its Hartford, Connecticut warehouse.  In March 2001, the Equal Employment Opportunity Commission ("EEOC") brought this action on behalf of 23 current and former Beauty employees alleging that Beauty's English-only rule violates Title VII of the Civil Rights Act of 1964.  Seven of those current or former employees have also intervened as plaintiffs and filed individual claims against Beauty under Title VII, 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60(a)(1) and (4).  The EEOC and plaintiff-intervenors (collectively "the Charging Parties") seek to recover damages and injunctive relief prohibiting Beauty from enforcing the rule.[1]  Beauty maintains that the policy does not

---

[1] Henceforth, references to the EEOC's positions regarding the jury instructions in this litigation also refer to the positions

discriminate on the basis of national origin and that it has a valid business justification for the rule.

In general terms, the job function of Beauty's warehouse employees is either to pull, check, pack, or ship cosmetic products that are stored on shelves. They do so primarily by using an alphanumeric code that is assigned to each product. In particular, "order pullers" pull products that have been ordered according to a "pick list"; "order checkers" verify that the correct products have been picked; "order packers" consolidate the products into boxes for shipping; and, "palletizers" take the boxes to a shipping area.

The Charging Parties allege that Beauty applies its English-only policy to all of these employees, and that it does so in an abusive, hostile, and humiliating manner. They claim that the rule is enforced more frequently and more aggressively against Hispanics. The Charging Parties also allege that many of Beauty's Hispanic employees are not bilingual, and that the English-only rule denies those employees a privilege enjoyed by native English speakers -- the opportunity to talk at work for either business or social purposes.

Beauty, on the other hand, alleges that it has not extended

---

adopted by the plaintiff-intervenors unless otherwise noted.

a privilege to its employees to engage in social conversations or small talk while they are on the clock, and that its employees have little time while they are at work to engage in non-work-related conversation. Beauty further claims that all of its employees are capable of using English to engage in the kind of small talk that time allows, even though the Hispanic employees may prefer to speak in Spanish.

Neither the Charging Parties nor Beauty has filed a dispositive motion and the case has been scheduled for a jury trial. Because of the complexity of Title VII's burden-shifting mechanism in employment discrimination cases and the unsettled nature of the law regarding English-only workplace rules, the court requested that the parties submit proposed jury instructions on the disparate impact claim. The Charging Parties and Beauty did so and the court held oral argument on October 3, 2005.

Essentially, the parties agree that the three-step, burden-shifting test described in 42 U.S.C. § 2000e-2(k)(1)(A) and Robinson v. Metro-North Commuter R.R., 267 F.3d 147 (2d Cir. 2003) applies in this case: the first step requires the plaintiff to make a prima facie showing of a disparate impact; in the second step, the burden shifts to the defendant to demonstrate that its practice or policy is job-related and consistent with

3

business necessity; the third step shifts the burden back to the
plaintiff to demonstrate that the employer had available an
alternative practice that would achieve the same business
necessity.  See id. at 160.

The parties disagree, however, as to what the Charging
Parties must demonstrate to make a prima facie showing of a
disparate impact.  The Charging Parties argue that the court
should defer to the EEOC's guideline, 29 C.F.R. § 1606.7 ("the
Guideline"),[2] and instruct the jury that with regard to the first
step, they need only show that an English-only workplace rule

_____

[2] The EEOC Guideline for English-only workplace rules is as
follows:

(a) When applied at all times.  A rule requiring employees to
speak only English at all times in the workplace is a
burdensome term and condition of employment.  The primary
language of an individual is often an essential national
origin characteristic.  Prohibiting employees at all times, in
the workplace, from speaking their primary language or the
language they speak most comfortably, disadvantages an
individual's employment opportunities on the basis of national
origin.  It may also create an atmosphere of inferiority,
isolation and intimidation based on national origin which
could result in a discriminatory working environment.
Therefore, the Commission will presume that such a rule
violates title VII and will closely scrutinize it.

(b) When applied only at certain times. An employer may have a
rule requiring that employees speak only in English at certain
times where the employer can show that the rule is justified
by business necessity.

29 C.F.R. § 1606.7 (citation omitted).

4

exists.  In other words, they submit that they need not show that Beauty's rule had a significant and adverse impact on Hispanic employees to make out a prima facie case.  They also claim that Beauty should not be permitted to present evidence that the rule does not have a significant, adverse impact on Beauty's employees.  Beauty argues that the Guideline does not find support in the text of Title VII and that the court should not instruct the jury that the existence of an English-only rule relieves the Charging Parties of their burden of showing a significant, adverse impact.  It urges the court to adopt the test established by the Ninth Circuit in <u>Garcia v. Spun Steak Co.</u>, 998 F.2d 1480 (9th Cir. 1993).

For the reasons set forth below, the court declines to defer to the Guideline and will instruct the jury substantially as follows:[3]

> The EEOC, the individual plaintiffs, and Beauty all agree that Beauty requires its employees to speak only English while at work.  You must decide whether the rule and the way it is enforced are permissible under Title VII of the Civil Rights Act of 1964.

> The EEOC and the individual plaintiffs contend that the

---

[3] Obviously, the jury instructions may be modified in accordance with the evidence presented at trial, but the law set forth in this instruction will be the law of the case for the disparate impact claim.  Citations to the relevant authorities have been set forth in brackets for the benefit of the parties.  The actual jury instructions will not contain the citations.

rule and its enforcement have a disparate impact on the Hispanic employees of Beauty.  To succeed on this claim, the EEOC and the individual plaintiffs do not need to show that Beauty intended to discriminate against Hispanics or employees of any other nationality.  Disparate impact claims are concerned with whether employment policies or practices that are neutral on their face and were not intended to discriminate nevertheless have a disparate effect on a protected group.  [Robinson v. Metro-North Commuter R.R., 267 F.3d 147, 160 (2d Cir. 2003).]

Disparate impact claims under Title VII are analyzed under a three-step burden-shifting test.  You must follow these instructions carefully and consider only one step of the test at a time.

Step One -- Prima Facie Showing

First, you must determine whether the EEOC and the individual plaintiffs have made a prima facie showing of disparate impact.  In this regard, you must determine if Beauty's English-only policy has a substantial and adverse impact on Beauty's Hispanic employees that is different than its impact on the general employee population at Beauty. [Garcia v. Spun Steak Co., 998 F.2d 1480, 1486 (9th Cir. 1993).]  The EEOC and the individual plaintiffs must make this showing by a preponderance of the evidence.

When considering if Beauty's English-only rule has a significant, adverse impact on Hispanic employees, you may consider the frequency and severity with which Beauty applies its rule.

If you find that the EEOC and the individual plaintiffs have, by a preponderance of the evidence, shown this substantial and adverse impact, then you must move on to Step Two of the inquiry.  If you find that the EEOC and the individual plaintiffs have failed to meet this burden, then your inquiry on this claim is over.  Do not proceed to Step Two -- your verdict on this claim must be for Beauty.

Step Two -- Job-Relatedness and Business Necessity

If you find that the EEOC and the individual plaintiffs have made a prima facie showing that Beauty's English-only

policy has a disparate impact on Beauty's Hispanic employees, then the burden shifts to Beauty to prove by a preponderance of the evidence that the rule is job-related for the positions in question and consistent with business necessity. [Robinson, 267 F.3d at 160.]

For Beauty to show that the English-only rule is consistent with business necessity and job-related, Beauty must show more than that its English-only policy is consistent with mere expediency. [Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 97 (2d Cir. 2003).]   Beauty cannot satisfy this burden simply by demonstrating that the English-only rule is convenient or beneficial to its business.  Instead, Beauty must show that the asserted business necessity is vital to the business.[4]  [Conroy, 333 F.3d at 97.]

If you find that Beauty has proven by a preponderance of the evidence that its English-only rule is job-related and consistent with a business necessity, then the burden shifts to Beauty in Step Three.  If you find that Beauty has failed to prove by a preponderance of the evidence that the English-only rule is job-related and consistent with business necessity, do not proceed to Step Three.  Your inquiry is complete and your verdict on this claim will be entered for the EEOC and the individual plaintiffs.

Step Three -- Available Alternatives

If you find that Beauty has satisfied its burden of proving by a preponderance of the evidence that its English-only policy is job-related and consistent with business necessity, the burden shifts to the EEOC and the individual plaintiffs to establish the availability of an alternative policy or practice that would also satisfy the asserted business necessity, but would do so without producing the disparate effect.  [Robinson, 267 F.3d at 160.]

---

[4] The court will follow the definition of "business necessity" adopted in Conroy v. N.Y. State Dep't of Corr. Servs., 333 F.3d 88, 97 (2d Cir. 2003).  Although Conroy explored the concept of "business necessity" in the context of an Americans with Disabilities Act claim, the reasoning of the court is also applicable to this disparate impact claim.

The EEOC and the individual plaintiffs have the burden of demonstrating that Beauty has available an alternative to its English-only policy, and that the alternative satisfies a business necessity.  If the EEOC and the individual plaintiffs prove by preponderance of the evidence that such an option is available, then your verdict on this claim will be for the EEOC and the individual plaintiffs.  If the EEOC and the individual plaintiffs do not show that Beauty has available an alternative policy that also satisfies the business necessity, then your verdict on this claim will be entered for Beauty.

Because of the unsettled nature of the law on this issue, the court believes that these proposed jury instructions would be appropriate for interlocutory review by the Second Circuit. Thus, if any of the parties seek review of this order, upon timely motion the court will certify the issue as appropriate for review under 28 U.S.C. § 1292(b).

<u>DISCUSSION</u>

In fashioning the jury instructions, the court has determined that deference will not be given to the Guideline. The jury will not be instructed that the mere existence of an English-only workplace rule relieves the Charging Parties of the burden of proving that the rule has a significant, adverse impact on the terms and conditions of their employment.  In so doing, the court is persuaded by, <u>inter alia</u>, the reasoning and logic of the Ninth Circuit, the only court of appeals that has squarely

8

addressed the issue.[5]  See Spun Steak, 998 F.2d at 1480.

The facts in Spun Steak are similar to those in this case. The Spun Steak Company produced poultry and meat products for wholesale distribution.  More than two-thirds of its workers spoke Spanish, with varying degrees of proficiency in English. After an incident in which two employees made racist comments in Spanish about two coworkers, Spun Steak's president adopted a speak English-only rule in the workplace.  Employees were free to speak Spanish during lunch and breaks.  See id. at 1483.  After the rule was adopted, Spun Steak issued warning letters to two employees for speaking Spanish on the job.  The two employees, whose positions required them to remove poultry or meat from a conveyor belt and place it in containers, were no longer permitted to work next to each other.  See id.  The employees sued Spun Steak, alleging that the enforcement of the English-only rule violated Title VII because it imposed a burdensome term or condition of employment that fell disproportionately on Hispanics.  See id. at 1485.  The district court granted the plaintiff's motion for summary judgment.

_____

[5] Before Spun Steak, the Ninth Circuit had deferred to the Guideline and enjoined the Los Angeles Municipal Court's English-only policy in Gutierrez v. Municipal Court of Southeast Judicial Dist., 838 F.2d 1031 (1988), but that decision was later vacated as moot, see 490 U.S. 1016 (1989), and thus had no precedential value when the same court considered Spun Steak five years later.

The Ninth Circuit reversed the district court, finding that the plaintiffs had failed to make a prima facie showing that Spun Steak's English-only rule had an "adverse" and "significant" effect on the company's employees.  See id. at 1486.  The court noted the general policy of giving deference to EEOC guidelines and did not "reject . . . lightly" the plaintiff's invitation to do so.  Id. at 1489.  Nonetheless, it concluded that the text and legislative history of Title VII provide no indication that Congress intended a presumption that English-only workplace rules violate Title VII.  The court thus reversed the district court and ordered it to enter summary judgment for the employer on most of its claims.  However, the court observed that "[a] genuine issue of material fact exists as to whether there are one or more employees . . . with limited proficiency in English who were adversely impacted by the policy," and remanded these claims for further proceedings.  Id. at 1490.  The court thus acknowledged that whether Spun Steak's policy imposed a significant, adverse impact on Spanish-speaking employees could pose a factual question for resolution by a jury.

Since the Ninth Circuit decided Spun Steak, five district courts have considered the issue of whether deference should be given to the Guideline.  Two of them deferred to the Guideline. Three did not.  Each of the decisions considered the deference to

10

be accorded to the Guideline in a slightly different procedural context.  In none of these cases was an appeal taken.

In <u>Cosme v. Salvation Army</u>, 284 F.Supp. 2d 229 (D. Mass. 2003), the plaintiff alleged that she had been discharged because she spoke Spanish on the job in violation of her employer's English-only workplace rule.  The plaintiff framed her cause of action not as a disparate impact claim, but as a disparate treatment claim, and argued that the Guideline rendered her employer's English-only workplace rule discriminatory per se. The court, without analyzing the merits of the EEOC's interpretation of Title VII, declined to defer to the Guideline and granted the employer's motion for summary judgment.

In <u>Kania v. Archdiocese of Phila.</u>, 14 F.Supp. 2d 730 (E.D. Pa. 1998), a clergyman imposed an English-only rule on his staff. The plaintiff, an employee of the church, complained about the policy to the clergyman's secretary, and the employee was fired. The plaintiff alleged that the clergyman's stated reason for her dismissal, her failure to properly clean his room, was pretextual, and that he had, in fact, fired her in retaliation for voicing opposition to a policy that was unlawful under Title VII, as interpreted by the Guideline.

The court rejected the Guideline because "Title VII

explicitly provides the burden of proof applicable to disparate impact cases." Id. at 735.  In so doing, it noted that the EEOC's interpretation of Title VII as set forth in the Guideline was at variance with the statute itself and as such was outside the scope of the agency's interpretive authority.  See id. at 735-36.  The court ruled that the plaintiff had failed to establish, as a matter of law, that the English-only rule discriminated against her, but held that, because she reasonably believed the rule was discriminatory, her protest against it was a protected activity, and her retaliation claim survived summary judgment.  See id. at 737.

Unlike Cosme and Kania, the court in Long v. First Union Corp., 894 F. Supp. 933 (E.D. Va. 1995), considered the deference to be accorded to the Guideline in the context of a Title VII disparate impact claim.  In Long, four bank tellers who spoke both Spanish and English, challenged their employer's English-only workplace rule and alleged that it constituted discrimination and harassment on the basis of their national origin with respect to the terms, conditions, and privileges of employment, and created a hostile work environment.  See id. at 939.

On summary judgment, the court refused to defer to the

Guideline, finding that "[t]he EEOC's determination that the mere existence of an English-only policy satisfies the plaintiff's burden of proof is not consistent with the drafting of the statute but is rather agency-created policy." Id. at 940.  It ruled that the plaintiff was required to establish a prima facie case of discrimination. See id.  The court determined that, as a matter of law, the plaintiffs could not succeed on their disparate impact claim because they were bilingual and thus could speak to each other while at work, and thus were not adversely affected by the rule. See id. at 941.  Following the logic of Spun Steak, the court reasoned that Title VII did not create a substantive right to speak one's native language in the workplace and, because the rule created no communication barrier, it did not have a disparate impact on Spanish-speaking employees.

Two district courts have given deference to the Guideline. In EEOC v. Synchro-Start Prods., Inc., 29 F.Supp. 2d 911 (N.D. Ill. 1999), a class of plaintiffs brought a Title VII disparate impact claim against an employer who had a rule requiring only English be spoken "during working hours." Id. at 912.  The plaintiffs alleged that the employer had failed "to explain to its employees what consequences would or could flow from violating the rule." Id.  The court denied the employer's motion to dismiss the action, reasoning that "[b]ecause any English-only

13

rule unarguably impacts people of some national origins (those from non-English speaking countries) much more heavily than others, it is easy to imagine a set of facts consistent with the . . . allegations that would entitle EEOC to relief." Id. (citation and footnote omitted)

The court distinguished Spun Steak and Garcia v. Gloor, 618 F.2d 264 (5th Cir. 1980) (upholding an employer's English-only rule before the EEOC promulgated the Guideline), on the grounds that the plaintiffs in those cases had some ability to speak English, whereas Synchro-Start's English-only rule was applied to employees who spoke no English or whose ability to speak English was limited. See Synchro-Start, 29 F.Supp. 2d at 913. But the court noted that "it [was] possible to impose liability across a broader spectrum -- perhaps even as to those bilingual employees who can readily comply with the English-only rule and still enjoy the privilege of speaking on the job." Id. (internal citations omitted). The court endorsed the Guideline, emphasizing that deference was due to such administrative interpretations that were within the agency's knowledge and expertise, and strongly challenged Spun Steak's characterization of the Guideline as an improper effort to override legislative intent. See id. at 914. While Spun Steak and its progeny found no support for the Guideline in the text of Title VII, the Synchro-Start court

14

viewed the Guideline as properly creating an "evidentiary . . . tie-breaker," that merely permits plaintiffs to avoid reliance on "conclusory self-serving statements of the Spanish-speaking employees or . . . expert testimony of psychologists" to prove a significant, adverse impact.  Id. (quoting Spun Steak, 998 F.2d at 1490) (Boochever, J., dissenting).

The second decision that deferred to the Guideline was EEOC v. Premier Operator Servs., 113 F.Supp. 2d 1066 (N.D. Tex. 2000). Premier Operator Systems connected long-distance phone calls. Many of the company's clients spoke Spanish, and Premier required its operators to be bilingual.  See id. at 1068.  Premier instituted a particularly stringent language policy that banned the use of any language other than English

> at all times, including the time during free moments
> operators had between calls, during lunch, in the
> employee break room, when making personal telephone
> calls, and before and after work if inside the
> building.  Under [Premier Operator's] policy, the only
> time it was acceptable to speak Spanish was when
> assisting a Spanish-speaking customer.

Id. at 1069.  The employees were required to sign a memo that described this policy as a condition of further employment.  Six employees refused to sign the memo and were immediately terminated.  The EEOC sued Premier, alleging that the English-only workplace rule violated Title VII's prohibitions against disparate treatment, retaliation, and disparate impact.  See id.

15

at 1076.

At a bench trial before a U.S. Magistrate Judge, the court heard the testimony of current and former employees, as well as expert testimony of a professor of linguistics and Hispanic culture, who described the phenomenon of "code-switching" whereby individuals who speak two languages unconsciously alternate back and forth between those languages. See id. at 1070. The court credited the expert testimony, and in so doing rejected the circuit's conclusion in Gloor that exclusively speaking one language was merely "a matter of preference" for bilingual speakers. See id. at 1074 (citing Garcia v. Gloor, 618 F.2d 264, 270 (5th Cir. 1980)).

The court did not address the way in which the Guideline interacted with Title VII's burden-shifting mechanism for disparate impact claims, but it did endorse the Guideline, emphasizing that deference was due to agency interpretations of statutes that Congress charged them to enforce. See id. The court distinguished both Spun Steak and Gloor by noting that, in those cases, "the legality of English-only rules involved prohibitions confined to the work area, excluding free time and break areas," whereas in the case before it the rule applied at all times. See id. The court also rejected the conclusions

16

reached by those courts -- that the ease with which bilingual speakers complied with the rule rendered them less burdensome -- and noted that "some of the most objectionable discriminatory rules are the least obtrusive in terms of one's ability to comply:  being required to sit in the back of the bus for example." Id. at 1075 (quoting Spun Steak, 13 F.3d at 298 (Reinhardt, J., dissenting from rehearing en banc)).

The Premier Operator court thus ruled in favor of the affected employees, finding that the English-only policy had been harshly implemented and enforced in that it caused Hispanic employees to be "embarrassed and humiliated, intimidated, alienated, rejected, and doubtful about their future job prospects." Id. at 1072.

In sum, the six courts[6] that have examined the question of

_____

[6] The Second Circuit has not considered the issue, nor have any district courts in this circuit done so in a published opinion. One district court recently considered an English-only workplace rule in an unpublished opinion, but did not reach the issue of whether deference should be shown to the Guideline. See EEOC v. Sephora USA, LLC, No. 03-cv-8821, 2005 U.S. Dist. LEXIS 20014 (S.D.N.Y. Sept. 13, 2005).  The employer, a retailer of cosmetics, prohibited employees who worked on the sales floor from speaking in languages other than English during business hours when clients were present.  Except for this one narrow exception, the retailer permitted its employees to speak whatever language they chose.  See id. at *5.  The EEOC, and five plaintiff-intervenors, challenged the rule on a disparate impact theory.  The court noted that paragraph (b) of the Guideline might apply because the employer's English-only policy only applied at certain times.  But the court "decline[d] to decide

whether deference should be accorded to the Guideline have reached different conclusions. Moreover, because of the procedural postures in which the issue was presented and decided, these cases provide little guidance on the issue presently before the court. Indeed, in analyzing the appropriateness of the Charging Parties' and defendant's proposed jury instructions, the court is largely writing on a blank slate.

A. <u>The Guideline</u>

In enacting Title VII, Congress did not confer authority on the EEOC to promulgate administrative regulations governing English-only workplace policies. <u>See</u> <u>Albemarle Paper Co. v. Moody</u>, 422 U.S. 405, 431 (1975). The EEOC issued the guidelines to provide its interpretation of Title VII. <u>See</u> <u>id</u>. at 430-31. But the Supreme Court has explained that, although such guidelines do not have the force of law, they are nonetheless "entitled to great deference." <u>Id</u>. at 431. Accordingly, courts

_____

whether that aspect of the guidelines is a proper interpretation of Title VII, and instead follow[ed] the example of <u>Fierro v. Saks Fifth Avenue</u>, 13 F. Supp. 2d 481, 488 (S.D.N.Y. 1998) and proceed[ed] directly to the real issues presented by plaintiffs' claims, by simply conceding in the abstract the existence of a prima facie case." <u>Id</u>. at *14-15. The court concluded that the plaintiffs' claims failed at the second stage of the inquiry, as the employer had demonstrated as a matter of law a business necessity for the rule -- that customers view salespersons speaking English on the floor as more friendly and approachable. <u>See</u> <u>id</u>. at *23.

18

are instructed to defer to an EEOC interpretative guideline
unless there are "compelling indications that it is wrong."
Espinoza v. Farah Mfg. Co., 414 U.S. 86, 94 (1973).

In 1980, the EEOC issued the Guideline in question
pertaining to English-only workplace rules.  See 45 Fed. Reg.
85,632 (Dec. 29, 1980).  The Guideline distinguishes between
English-only workplace rules that apply "at all times," see 29
C.F.R. § 1606.7(a), and those that apply "only at certain times,"
see § 1606.7(b).  If an English-only rule applies at all times,
then the EEOC will "will presume that such a rule violates
[T]itle VII and will closely scrutinize it." § 1606.7(a).
However, an "employer may have a rule requiring that employees
speak only in English at certain times where the employer can
show that the rule is justified by business necessity."
§ 1606.7(b).

Between the time the EEOC promulgated the Guideline in 1980
and the time Congress amended Title VII in 1991, only one
published opinion considered how the Guideline interacted with
the burden-shifting test developed by the Supreme Court in
Albemarle, see 422 U.S. at 425.  That decision, Gutierrez v.
Municipal Court of Southeast Judicial District, 838 F.2d 1031
(9th Cir. 1988), however, was vacated as moot by the Supreme
Court, see 490 U.S. 1016 (1989).  Thus, at the time that Congress

19

codified the three-step burden shifting test in 1991, no authority existed for replacing the first step of the test, the prima facie showing of disparate impact, with the EEOC's rules as described in the Guideline.[7]

   B.   The Amended Text of Title VII

   Congress's 1991 amendments to Title VII codified the burden-shifting test established by the Supreme Court in Albemarle, 422 U.S. at 425, for disparate impact cases.  Thus, according to the revised statute, an employment practice may be found unlawful under a disparate impact theory if:

---

[7] The court is not by persuaded by EEOC's argument that its Guideline is supported by the legislative history of Title VII because Congress knew of the EEOC's interpretation and did not alter it.  The EEOC, in reliance on United States v. Rutherford, 442 U.S. 544, 554 n.10 (1979), contends that Congress, when it amended Title VII in 1991 to codify the burden-shifting test for disparate impact claims, knew that the EEOC interpreted Title VII as prohibiting English-only workplace rules, and because Congress did not alter the rule, implicitly agreed with it.  However, the sparse legislative history, consisting of a remark made by Senator Kennedy when the bill was under consideration, does not support the EEOC's contention.  Senator Kennedy's statement that he believed the amendments to Title VII would not disturb the EEOC's English-only workplace regulations, see 137 Cong. Rec. S15489 (daily ed. Oct. 30, 1991), does not amount to the type of legislative history envisioned by Rutherford.  More significant, at the time Congress was considering the bill, no court had ruled that the EEOC's Guideline relieved the plaintiff of the burden of showing that an English-rule had a significant and adverse effect on certain employees.  Thus, it can hardly be said that the agency's interpretation had been "fully brought to the attention of the public and the Congress . . ." Rutherford, 442 U.S. at 554 n.10.

(I) a complaining party demonstrates that a respondent uses
a particular employment practice that causes a disparate
impact on the basis of race, color, religion, sex, or
national origin and the respondent fails to demonstrate that
the challenged practice is job related for the position in
question and consistent with business necessity . . .
42 U.S.C. § 2000e-2(k)(1)(A).

According to the unambiguous language of this statute, the
finder of fact must consider <u>both</u> whether a policy creates a
disparate impact <u>and</u> whether it is job-related and consistent
with business necessity.  The statute lays out an orderly,
sequential process for the jury to consider these matters through
a burden-shifting test.

The Charging Parties argue, however, that the court should
disregard this statute and instruct the jury in accordance with
the Guideline.  They submit that the jury should be instructed
that if Beauty's English-only rule applies at all times, it "must
find that Beauty Enterprises has violated Title VII and find for
the [Charging Parties] on the disparate impact claim . . .
because the law assumes that an English-only rule that applies at
all times in the workplace is a burdensome term and condition of
employment and presumptively violates Title VII."  Or, if the
jury determines that Beauty's English-only rule is not a blanket
prohibition on speaking English, the Charging Parties want the
jury to be instructed that they do "not need to prove as part of
[their] proof on the first step of [the] analysis that the

English-only rule caused a disparate impact on the Hispanic
employees . . . because [the jury] may infer that the Hispanic
employees are automatically disadvantaged in their employment
because of national origin as a result of Beauty Enterprises's
English-only rule."

The Charging Parties' proposed jury instructions cannot be
reconciled with the plain language of 42 U.S.C. § 2000e-
2(k)(1)(A).  The proposed charge goes beyond the statute itself
by essentially creating an irrebuttable presumption, such that
Beauty could not offer evidence showing that its English-only
rule does not have a significant and adverse impact.  Thus, based
on the Charging Parties' view of the law, Beauty would not be
able to challenge the EEOC's presumption, even if the jury found
that the rule only applied at certain times.  Under the EEOC's
proposed instructions, Beauty would only be able to defend its
policy on the grounds of business necessity, not by also showing
that the policy was not actually burdensome as applied.  Because
the Charging Parties' approach requires the jury to presume that
Beauty's rule has a significant and adverse impact, rather than
allowing it to make such a determination based on evidence
showing how Beauty applied and enforced the rule, the Charging
Parties, in essence, use the Guideline as more than an
"evidentiary . . . tie-breaker."  <u>Synchro-Start</u>, 29 F.Supp. 2d at

913.  Rather, they use it to impose a new standard that renders even non-blanket English-only rules categorically burdensome, regardless of the individual circumstances of a given case. There is nothing in Title VII that supports the proposition that Congress considered such workplace rules to be burdensome per se.

    C.  <u>Considerations of Judicial Economy</u>

The court also is not persuaded by the Charging Parties' argument that the Guideline should be granted deference for reasons relating to judicial economy.  Essentially, the Charging Parties maintain that the Guideline merely operates to avoid the need for them to prove, through lengthy, cumulative, and possibly self-serving testimony of the affected employees, how the English-only rule impacted the terms and conditions of their employment.  Even though this argument has some support in the case law, <u>see</u> <u>Spun Steak</u>, 998 F.2d at 1490 (Boochever, J., dissenting), the Charging Parties' proposed jury instructions go further than merely obviating the need for subjective testimony. To the contrary, the proposed jury instruction essentially imposes a blanket rule that an employer's English-only policy always has a significant and adverse effect on national origin minorities without giving any consideration to whether the rule in the particular factual context was actually burdensome.  Such a blanket rule is particularly inappropriate here in light of the

23

stark factual disputes relating to how aggressively and how often the English-only policy is enforced; whether the defendant's enforcement of the rule is consistent with the reasons it has cited for enacting the rule; and whether the employees have the time or inclination to make small talk on the job anyway.

This conclusion is illustrated by the different factual scenarios in two of the cases in which the EEOC challenged an English-only rule as violative of the Guideline. In Premier Operator, the employer, who had hired his employees specifically because they could speak both Spanish and English, prohibited his employees from speaking Spanish at all times, including free moments between calls, during lunch, and before and after work, if they were inside the building. See Premier Operator, 113 F.Supp. 2d at 1069. The policy was so strictly enforced that the employer admitted he had planned to install a public telephone outside of the building "so that Hispanic employees would have to go outside to make personal phone calls during which they might speak Spanish." Id. at 1069. The severity of the rule and the ill will with which Premier enforced it stand in marked contrast to the policy the EEOC challenged in EEOC v. Sephora USA, LLC, No. 03-cv-8821, 2005 U.S. Dist. LEXIS 20014 (S.D.N.Y. Sept. 13, 2005). In Sephora, a retailer of cosmetics merely prohibited employees who worked on the sales floor from speaking in

languages other than English during business hours when clients
were present.  Sephora's policy permitted employees to speak
whatever languages they chose at all other times.  See id. at *5.
Under the Guideline, the EEOC would treat both employers'
English-only rules the same:  in each case the rule would
presumptively have an adverse impact on the terms and conditions
of employment.  If both of these cases were tried to a jury the
EEOC would have the jury instructed that the English-only rules
presumptively had an adverse impact on the employees' working
conditions.  The jury would not be allowed to consider any
evidence of how the rule actually affected the terms and
conditions of employment.  These different factual scenarios
demonstrate that the EEOC's blanket rule ignores the reality
that, depending on its structure and enforcement, an English-only
workplace rule could impose a significant burden on employees or
no real burden at all.  For this reason, evidence that describes
how such a rule affects employees should not be withheld from the
jury, yet the EEOC's blanket rule would do just that.

    Moreover, the evidence that the Charging Parties would be
required to adduce to show how Beauty's English-only policy is
actually implemented would not inevitably consist of "conclusory
self-serving statements."  Spun Steak, 998 F.2d at 1490
(Boochever, J., dissenting).  While the witnesses might offer

inherently subjective testimony that the rule caused them to feel isolated, the jury would be required to make an objective determination from all the evidence as to whether the severity of the rule and its enforcement had a significant adverse impact on the terms and conditions of employment.

In sum, the Charging Parties' proposed jury instructions are not supported by the text or legislative history of Title VII. Therefore, the court will not defer to the Guideline. <u>See</u> <u>Espinoza</u>, 414 U.S. at 94 (holding that deference need not be given to an EEOC interpretive guideline if there are compelling reasons showing that it is wrong). The question of whether Beauty's English-only policy has a significant adverse effect on its Hispanic employees should not be determined by a blanket rule crafted by the EEOC, but by the jury based on the facts of this particular case.

D. <u>Prima Facie Showing of Disparate Impact</u>

Inasmuch as the court has decided not to defer to the Guideline, the court's instruction with regard to the Charging Parties' prima facie case also follows <u>Spun Steak</u>, the only court that has detailed what must be shown to make a prima facie case of disparate impact to challenge an English-only policy.[8]  Not

---

[8] The other cases that considered the issue of what a plaintiff must prove to make a prima facie case involved different

only is the <u>Spun Steak</u> test consistent with the Second Circuit's disparate impact test as articulated in <u>Robinson</u>, 267 F.3d at 160, it is also consistent with Supreme Court precedent and the language of Title VII.

In <u>Robinson</u>, 267 F.3d at 160, the court describes in detail what a plaintiff must demonstrate to make a prima facie showing of disparate impact and thereby shift the burden to the employer to justify the challenged employment practice.  A plaintiff must (1) identify a policy or practice, (2) demonstrate that a disparity exists, and (3) establish a causal relationship between the two.  <u>See</u> <u>id</u>.  As a general rule, a disparity is almost always shown through statistical evidence.  <u>See</u> <u>id</u>.  In this case, however, the Charging Parties do not intend to introduce statistical evidence to show a disparity.  Instead, because the jury will not be instructed in accordance with the Guideline, the Charging Parties will be required to prove disparate impact, presumably through the testimony of Hispanic employees who would describe how the rule impacts them, as well as expert testimony

---

procedural contexts and offer little guidance to the court. <u>Cosme</u> and <u>Kania</u> involved disparate treatment and retaliation claims, respectively, and not a disparate impact claim.  The <u>Synchro-Start</u> and <u>Premier Operator</u> courts both deferred to the Guideline, which this court has declined to do.  The <u>Long</u> court granted the employer's motion for summary judgment, finding that the employer had demonstrated a clear business necessity as a matter of law.

from a linguist who would describe the phenomenon of code-switching.  According to <u>Spun Steak</u>, this and the Charging Parties' other evidence will satisfy the burden of proving the prima facie case of disparate impact, if it shows:

> [1] the existence of adverse effects of the policy, . . .
> [2] that the impact of the policy is on terms, conditions, or privileges of employment of the protected class, . . .
> [3] that the adverse effects are significant, and . . .
> [4] that the employee population in general is not affected by the policy to the same degree.

<u>Spun Steak</u>, 998 F.2d at 1486.

<u>Spun Steak</u>'s approach largely conforms with the Second Circuit's <u>Robinson</u> test for establishing a disparate impact. <u>Spun Steak</u>'s fourth requirement, that the employee population in general is not affected by the policy to the same degree, mirrors <u>Robinson</u>'s second prong, which requires the showing of an actual disparity in treatment between different national origin groups. <u>Spun Steak</u>'s second requirement, that the impact of the policy be on the "terms, conditions, or privileges of employment," parallels the general requirements of a Title VII claim as described in 42 U.S.C. § 2000e-2(a).[9]

The principal difference between <u>Robinson</u> and <u>Spun Steak</u> is

---

[9] The statute provides that "[i]t shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of . . . national origin . . ."  42 U.S.C. § 2000e-2(a).

in the third requirement of the Spun Steak test:  Spun Steak
explicitly requires the plaintiff to demonstrate that the action
is adverse and significant, while Robinson does not.
Nonetheless, the adversity of the employer's action is obviously
necessary to the cause of action and is clearly implicit in the
Robinson test.  It is less clear, however, that Robinson requires
the disparate impact to be significant.

Spun Steak's requirement that the adverse effects of the
policy be "significant" is, however, consistent with the tests
established by the Supreme Court for disparate impact claims.
Specifically, in Connecticut v. Teal, 457 U.S. 440 (1982), the
Court held that "[t]o establish a prima facie case of
discrimination [by disparate impact], a plaintiff must show that
the facially neutral employment practice had a significantly
discriminatory impact."  Id. at 446.  Also, in Wards Cove Packing
Co. v. Atonio, 490 U.S. 642 (1989), the Court explained that in a
disparate impact inquiry, the central issue "is whether an
employment practice has a significant, adverse effect on an
identifiable class of workers."  Id. at 670.  Thus, because the
Spun Steak four-part formulation is consistent with Second
Circuit and Supreme Court precedent, the court's instruction
requires the Charging Parties to satisfy their burden of proof by
demonstrating that the disparate impact on Beauty's Hispanic

employees is both adverse and significant.  If that burden is sustained, the inquiry then shifts to Beauty to justify its policy on the grounds of business necessity and job-relatedness.

<u>INTERLOCUTORY APPEAL</u>

In determining how the jury will be instructed with regard to the Charging Parties' prima facie case, the court has been faced with significant, yet unsettled, questions of law. Although the Supreme Court has insisted that interlocutory appeals be entertained sparingly, this case involves extraordinary circumstances that render such an appeal appropriate, and thus the requirements for an interlocutory appellate review are satisfied.

The mechanism for interlocutory appeals is set forth in 28 U.S.C. § 1292(b):

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.  The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order . . . .

This statute imposes a two-prong test.  First, the issue of law must be controlling and the subject of a substantial ground for

difference of opinion.  Second, as a procedural matter, an interlocutory appeal must materially advance the ultimate termination of the litigation.  The court is satisfied that both prongs of the test have been met.

    A.  <u>Issues of Law</u>

    This ruling describes the conflicting authorities and precedents that may govern the Charging Parties' burden of proving a prima facie case: the <u>Spun Steak</u> line of cases that reject the Guideline and the <u>Synchro-Start</u> line of cases that embrace them.  The cases are irreconcilable and represent a "substantial ground for difference of opinion."  The Second Circuit has not decided the issues and there are few, if any, hints in Second Circuit case law as to how it would do so.

    Moreover, the legal questions to be certified are controlling.  Further development of the factual record is not necessary to frame these issues, as the Charging Parties and Beauty both agree that the latter maintains an English-only workplace policy.  The precise contours of that policy and the burden it may impose on Beauty's Hispanic workers will be fleshed out at trial and have no bearing on the predicate legal question of whether the court should defer to the Guideline in its jury instructions.

B.  <u>Procedural Necessity</u>

The court also believes that an instructive Second Circuit opinion on these legal issues would "materially advance the ultimate termination of the litigation."  This case has progressed down an unusual procedural path.  Although the applicable law is unsettled, no party has filed a dispositive motion.  The court thus encountered the issues for the first time on the eve of trial.

At that time, the court requested that the parties submit proposed jury instructions to establish the framework in which the parties' cases will be presented to the jury.  This framework is especially important in the instant case because of the complex burden-shifting mechanism detailed in 42 U.S.C. § 2000e-2(k)(1)(A).  In accordance with the jury instructions the court establishes today, the Charging Parties must present the testimony of aggrieved employees and, if they so choose, expert testimony in linguistics, to make a prima facie showing that Beauty's English-only policy has a significant, adverse impact on its Hispanic employees.  However, were the Second Circuit to reject this court's instructions and adopt the position of the Charging Parties, the English-only rule's significant and adverse impact would be established as a matter of law without such evidence, and the disparate impact inquiry would shift to the

32

second step, which involves consideration of Beauty's business necessity defense.  A clarification of the law at this point would avoid weeks of testimony that might be deemed irrelevant upon post-judgment appeal.

The parties have estimated that the trial will last approximately four weeks.  The Charging Parties and Beauty intend to call 45 fact witnesses between them.  The controversial issues presented in this case and the hardship for jurors to serve on a jury for such an extended period of time have, and will, render jury selection in this case difficult and time-consuming.[10]  More than four-and-a-half years have already elapsed since the EEOC first filed suit in March 2001.  If, after a four-week trial on the merits, this court were reversed on appeal because of an improper jury instruction, this litigation would doubtless be drawn out for several more years.  A clarification of the law at this stage of the litigation would likely prevent the expenditure of scarce judicial resources and attorneys fees on another trial.

For these reasons, on timely motion of any party, the court will certify for interlocutory appeal to the Second Circuit the question of what the Charging Parties must show to make out a

---

[10]  The Court has already spent one day in an unsuccessful attempt to seat a jury in this case because of the large number of members of the venire who held strong opinions of English-only workplace rules.

prima facie case of disparate impact.

CONCLUSION

For the foregoing reasons, the court will instruct the jury that the Charging Parties must prove that Beauty's English-only rule has a significant and adverse impact on its Hispanic employees, and may not merely rely on the EEOC Guideline to make a prima facie showing.

SO ORDERED this 25th day of October, 2005, at Bridgeport, Connecticut.

/s/_____
                    Alan H. Nevas
              United States District Judge