**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) ) ) |
| Plaintiff, | ) |
| v. | ) 301CV00378(AHN) ) May 10, 2007 |
| BEAUTY ENTERPRISES, INC., AAA INDUSTRIAL TEMPORARIES, INC., and ESSENTIAL TEMPORARIES, INC., | ) ) ) **DECLARATION OF R. LILIANA** |
| Defendants. | ) **PALACIOS-BALDWIN IN SUPPORT** ) **OF PLAINTIFFS' MOTION TO** ) **ENFORCE THE SETTLEMENT** |
| MIGUEL ANGEL ALVAREZ, WILLIAM TORRES, HAROLD ACOSTA, and JOSE LINARES, | ) **AGREEMENT** ) ) ) |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| BEAUTY ENTERPRISES INC., | ) |
| Defendant. | ) |
| LUZ M. ANDUJAR, WALESKA MIRANDA, and EVA DIAZ, | ) ) ) |
| Plaintiff-Intervenors, | ) |
| v. | ) |
| BEAUTY ENTERPRISES, INC., and ESSENTIAL TEMPORARIES, INC. | ) ) |
| Defendants. | ) |

NYA 826153.3

R. LILIANA PALACIOS-BALDWIN declares under penalty of perjury, as follows:

1. I am a Senior Trial Attorney with the Equal Employment Opportunity Commission ("EEOC") in the Boston Area Office, and have been lead counsel for the EEOC in the above-captioned matter since the commencement of this litigation.

2. I am fully familiar with the facts and proceedings in this case. In connection with the settlement of this case, I acted as lead counsel on behalf of all plaintiffs[1] ("Plaintiffs"), and have personal knowledge of all the facts and circumstances surrounding Plaintiffs' settlement with Defendant.

3. I submit this declaration in support of Plaintiffs' Motion to Enforce the Settlement Agreement for entry of an order:

> (i) Enforcing the settlement of this litigation reached between Plaintiffs and Defendant as described below and in the accompanying Memorandum of Law in Support of Plaintiffs' Motion to Enforce the Settlement Agreement;
>
> (ii) Directing Defendant to take all necessary and proper steps to effect and comply with the terms of that settlement agreement; and
>
> (iii) Granting Plaintiffs such other and further relief as the Court determines is just and equitable.

4. The EEOC commenced this litigation against Beauty Enterprises, Inc. ("Defendant" or "Beauty") on March 12, 2001, alleging various acts of discrimination against certain of Defendant's current and former employees in violation of Title VII of the Civil Rights Act of 1964, as amended.

5. The central allegations of discrimination arose out of Defendant's implementation and enforcement of an English-only policy ("Policy"), which Plaintiffs alleged was unlawful.

---

[1] Throughout this declaration and the accompanying papers in support of Plaintiffs' Motion to Enforce the Settlement, all actions I undertook in connection with the settlement of the case, are to be deemed the actions of all Plaintiffs herein, even where not specifically indicated.

6. A jury trial of the case was set to begin on September 19, 2005, with Judge Alan H. Nevas presiding. (See Docket No. 90). In an effort to settle this matter without litigation, prior to the above scheduled trial date, I sent Defendant a draft written settlement agreement (the "Consent Decree"), to which Defendant did not respond.

7. Following the unsuccessful jury empanelment on September 15, 2005, trial was adjourned to January 17, 2006. (See Docket No. 120). Thereafter, on or about October 25, 2005, Defendant sent the EEOC a response to its draft Consent Decree, and settlement discussions meaningfully began among the parties. I took the lead in these settlement negotiations for all Plaintiffs in the case.

8. On November 2, 2005, after receipt of Defendant's first response to the draft Consent Decree, counsel for all Plaintiffs and Defendant (the "Parties") participated in a status conference call with Judge Nevas during which they communicated to the Court that settlement negotiations were proceeding constructively. As a result, Judge Nevas referred the Parties to Magistrate Judge Holly J. Fitzsimmons for a settlement conference, which was scheduled for December 14, 2006. With the settlement conference pending, Judge Nevas further adjourned the trial date to March 28, 2006. (See Docket Nos. 144-145). In the interim, Defendant and I continued to negotiate the terms of the Consent Decree in furtherance of a potential settlement of the case.

9. After having made some progress in private discussions, on December 14, 2006 the Parties appeared in Court to participate in their settlement conference before Judge Fitzsimmons. At this conference, the Parties made significant progress concerning the prospective settlement, and agreed to continue negotiating outside of court, and report their progress back to the Court as soon as possible.

NYA 826153.3

10. In the months that followed, I continued to participate in various settlement meetings and discussions (in person, by telephone, and by written correspondence) with Defendant and because of the Parties' continued progress towards settlement, the Parties jointly moved to again adjourn the trial date. (See Motion for Continuance of Trial, dated February 10, 2006, attached hereto as Plaintiffs' Exhibit 1). Because of these ongoing settlement discussions, the motion was granted and the trial date was again postponed. (See Docket Nos. 150-151). However, this time no new trial date was put on the Court's calendar.

11. The ongoing settlement discussions between the Parties revolved around two primary terms. First, the Parties needed to reach agreement on mutually acceptable language for the policy that would replace Defendant's contested English-only Policy ("Revised Policy"). Second, the Parties needed to reach agreement on the monetary relief that Plaintiffs would receive as part of the settlement. Intending to find a mutually acceptable resolution, the Parties continued working on each of these issues with that goal in mind. (See, e.g., E-mail to Judge Fitzsimmons dated March 29, 2006, attached hereto as Plaintiffs' Exhibit 2).

12. By the Spring of 2006, the Parties, after working on drafts of the Consent Decree and Revised Policy, were able to reach agreement on the language of the revised Policy. (See, e.g., E-mail to the Parties dated April 10, 2006, attached hereto as Exhibit 3, and Revised Policy, attached hereto as Plaintiffs' Exhibit 11). However, with respect to the second element – the monetary award – Defendant became adamant that if it were to agree to provide monetary relief to settle the matter, it would require those class members that continued to be in his employ at the time of settlement to either resign or not receive any settlement award at all. Because Plaintiffs viewed this request as retaliatory in nature, and therefore unacceptable, settlement negotiations broke down.

13. Notwithstanding, given the great progress made toward settlement, the Parties agreed to participate in a final settlement conference before Judge Fitzsimmons, before setting a new trial date and moving forward with the litigation. The Parties were in agreement, and communicated to Judge Nevas, that if the case would not settle at this final conference, then the Parties would confer with the Court about the immediate reinstatement of proceedings in the litigation at the status conference scheduled to be held following the settlement conference. (See, e.g., E-mail to the Parties dated May 15, 2006, attached hereto as Plaintiffs' Exhibit 4).

14. The settlement conference before Judge Fitzsimmons at the United States District Court for the District of Connecticut, in Bridgeport, was then set for May 30, 2006, to be followed – immediately after – by the aforesaid status conference before Judge Nevas. (See Docket Nos. 153-154).

15. On May 30, 2006, all Parties appeared at the settlement and status conference. Defendant appeared with three of its legal representatives, namely Robert Cohen, Defendant's President and Chief Executive Officer, Larry Sussman, Defendant's Vice President, and Rocco Piccirillo, another Vice President of Defendant, as well as its counsel of record, Richard Robinson. I participated in the settlement conference on behalf of the EEOC, together with Elizabeth Grossman, Regional Attorney of the EEOC's New York District Office, as well as counsel of record for Plaintiff-Intervenors, Valeria Calafiore, Jackson Chin, and Barbara Gardner.[2] The settlement conference and the status conference took place in Judge Nevas' courtroom, with Judge Fitzsimmons and Judge Nevas respectively presiding each conference.

---

[2] Some other individuals assisting either the Court or the attorneys of record were also present at the conference.

16. Prior to the beginning of the settlement conference, Defendant represented to me that, except for the two terms on which the Parties had not been able to reach agreement (namely the amount of monetary relief that Defendant would pay in settlement of the lawsuit, and the ability of the class members who were still Defendant's employees to receive any portion of the settlement award while they were still employed by Defendant) (the "Two Outstanding Terms"), and minor edits which needed to be implemented to reflect the Parties' previously reached agreement, the Defendant could accept the EEOC's Consent Decree. The Defendant also agreed that it would have to select the proper individuals to assume the roles required by the Decree (namely that of independent monitor and trainer), and that it had no objections to the Revised Policy brought to the settlement conference, on which the Parties had spent time working on and finalizing prior to that date. The Defendant also confirmed that the Consent Decree could be finalized easily if the Parties were able to reach agreement on the Two Outstanding Terms. Defendant later made this same representation to both Judge Nevas and Judge Fitzsimmons in front of all present in Judge Nevas' courtroom.

17. At the settlement conference, after many discussions and major concessions by all Parties on the Two Outstanding Terms, a final settlement agreement was reached and announced to Judge Fitzsimmons and Judge Nevas. The Parties agreed that Defendant would pay $325,000 in full settlement of the litigation. A sum which represented less than a third of the monetary award Plaintiffs sought, and even excluded the significant attorney's fees accrued to certain Plaintiffs during the course of the litigation. The Parties' agreed that those members of Plaintiffs' class that were still employed by Defendant would receive their settlement award through a deferred payment mechanism (the "Deferred Payment Vehicle"). In addition, the Parties agreed that Defendant would implement the Revised Policy, in accordance with a draft

circulated between the Parties during the conference. (See Plaintiffs' Ex. 11). The Parties also agreed that they would reflect these agreed upon terms in a final consent decree by revising the previous draft Consent Decree.

18. With regards to the Deferred Payment Vehicle, the Parties agreed that it would consist of an investment or other type of deferred payment mechanism that would allow the award money to be transferred in the recipient's name, but would not allow the recipient to cash out the money until conclusion of the recipient's employment with Defendant. The Parties agreed that they would research and identify the best mechanism to effect this deferred payment term, which affected only four (the "Current Employees") of the twenty-three members in Plaintiffs' class.

19. At the conclusion of the settlement conference and the status conference, the Parties also communicated to and confirmed with Judge Nevas and Judge Fitzsimmons that there were no other material issues to be resolved in the Consent Decree and that the weeks following would be dedicated to identifying the most appropriate Deferred Payment Vehicle, and to memorializing in the Consent Decree the terms of the settlement reached in Court that day.

20. In view of the settlement reached between the Parties that day, reinstatement of the proceedings on the Court's calendar, despite being one of the items on the agenda of the status conference (see Plaintiffs' Ex. 4), did not occur. Indeed, the Court agreed that in view of the settlement, once the Consent Decree was filed with the Court, it would vacate its Order dated October 25, 2005.[3]

---

[3] This agreement was also reflected in the revisions to the Consent Decree drafted after the May 30, 2006, conference.

7

21. In the months that followed, I worked with Defendant towards finalizing the Consent Decree, including all details surrounding implementation of the settlement. This involved several telephonic communications and sometimes written correspondence. (See, e.g., EEOC's letter dated June 16, 2006, attached hereto as Plaintiffs' Exhibit 5).

22. On July 24, 2006, I provided Defendant with a revised draft of the Consent Decree that needed only to be updated with the selection of the Deferred Payment Vehicle, the individual awards to be provided to each class member, and the selection of the various individuals to fulfill the roles required by the Consent Decree. (See Draft Consent Decree, attached hereto as Plaintiffs' Exhibit 12). However, the Parties were not yet able to finalize the Consent Decree, because at that time we were still trying to identify the best Deferred Payment Vehicle, as well as the individuals who would assume the roles required by the Consent Decree.

23. With Defendant's agreement, I communicated to Judge Fitzsimmons that the memorialization of the settlement was close to completion and that the Parties only required a bit more time to finalize the aforementioned issues. (See E-mail to Judge Fitzsimmons dated July 24, 2006, attached hereto as Exhibit 6).

24. The Parties continued to work towards completion of the Consent Decree, and on August 29, 2006, I informed Judge Nevas on behalf of all Parties that I was hopeful everything could be completed by the end of September 2006. (See E-mail dated August 29, 2006, attached hereto as Plaintiffs' Exhibit 7).

25. Despite some difficulties in identifying the best Deferred Payment Vehicle that would appropriately serve that term of the settlement, after several months of research, Defendant suggested the use of a 401k plan. (See E-mail dated December 16, 2006, attached hereto as

Plaintiffs' Exhibit 14). Given the lack of other feasible alternatives, Plaintiffs agreed with Defendant that the most appropriate mechanism would consist of placing the awards of the Current Employees in individual 401k accounts sponsored by Defendant. Because the amount of disbursement to two of the Current Employees exceeded the 401k maximum contribution amount for the year 2006, Defendant agreed to fund the maximum amount by the end of December 2006, and the remainder in October 2007. In addition, Defendant agreed that one of the Current Employees, Ms. Perez, would receive her award immediately, as she was not eligible for the 401k solution.

26. At the same time, the Parties identified individuals at the firm of Pullman and Comley as the proper individuals to fill the roles of independent consultant and trainer, as required by the Consent Decree.

27. On December 11, 2006, I received a call from Judge Fitzsimmons' Chambers, and I informed the Court that it was the Parties' intention to file the Consent Decree before the end of the year 2006, and that "I was waiting for a letter from Rick on a specific proposal on the 401k for the [Current Employees] and that Rick had mentioned wanting to discuss some issues on the Consent Decree prior to execution." (See E-mail dated December 11, 2006, attached hereto as Plaintiffs' Exhibit 8). Defendant provided the letter concerning the 401(k) solution on December 14, 2006, and confirmed in that letter that it appeared "to be a suitable way of resolving *the unresolved issue* concerning monetary relief for three of the four currently employed claimants." (Plaintiffs' Ex. 14) (emphasis added).

28. On December 21, 2006, I participated in a call with Defendant's counsel to confirm how to finalize the Consent Decree of July 24, 2006 (Plaintiffs' Ex. 12). Defendant's counsel

confirmed that no outstanding issues remained, and we both agreed that I would update the Consent Decree to reflect the final details and provide him an execution copy for Defendant's signature as soon as possible. With the issue concerning memorialization of the settlement now fully completed, Defendant also requested that the Current Employees go to Defendant's business department as soon as possible to commence the process of enrollment in the 401k program, so that Defendant could start making the due payments into the program.

29. Notwithstanding that everything was now final, later that same day I received another telephone call from Defendant's counsel in which he informed me that Defendant now required that the cash settlement award (i.e. the settlement award other than the one going to the Current Employees) be paid in two installments (rather than the one agreed upon). Specifically, Defendant explained that it was its desire to pay one installment in January 2007, and one in October 2007, such that the payment of the award would have less of an impact on its revenue statement. I informed Defendant that its last minute request was out of line and unacceptable to Plaintiffs, since the settlement had long been final, and particularly since the EEOC had already considered and rejected Defendant's request that the payment of the settlement award be split at the May 30, 2006 conference. I also pointed out that given the length of time it had taken to identify the appropriate Deferred Payment Vehicle (a term beneficial to his client), any their request to further delay payment of the monetary awards was utterly inappropriate.

30. In order to resolve this issue, the Parties sought, once again, the Court's assistance. (See Letters to Judge Fitzsimmons dated December 21, 2006, attached hereto as Plaintiffs' Exhibit 9, and December 22, 2006, attached hereto as Plaintiffs' Exhibit 10).

31. Although the Consent Decree was final and ready to be sent to Defendant for execution as of December 31, 2006 (see Consent Decree attached hereto as Plaintiffs' Exhibit 13), a conference was scheduled before Judge Fitzsimmons for January 24, 2007. On that date, all Parties appeared at the conference, and I participated by phone. Although Plaintiffs believed that Defendant's request concerning the two installment payment was improper, in an effort to begin disbursement of the money which was by then long overdue, Plaintiffs agreed to accept payment in the manner requested by the Defendant. However, despite Plaintiffs' agreement, Defendant announced at the end of the conference that it now had a "change of heart" concerning the whole settlement, and that it would no longer perform under the terms of the Parties' agreement.

32. Plaintiffs immediately informed Defendant that it was in breach of the settlement reached on May 30, 2005, and requested that Defendant comply with the agreement reached with Plaintiffs. Citing again to its "change of heart," Defendant declined.

33. The following day, Judge Nevas held a status conference, in which all Parties appeared by telephone conference. During that conference, Defendant again represented to the Court that it had had "a change of heart," and there was nothing to be done because it no longer wanted to pay any money at all. Defendant did not dispute that the Settlement was otherwise final and that agreement had been reached even on all details surrounding the Settlement, but simply stated that it still had a right to repudiate the settlement because the Consent Decree had not yet been executed and filed with the Court, and therefore it was only an "agreement in principle."

34. Defendant's breach of its agreement due to this "change of heart" was entirely unjustified and extremely detrimental to Plaintiffs because, as lead counsel on the settlement negotiations since the Fall of 2005, we relied on the May 30, 2006 settlement that we reached before Judge Fitzsimmons and Judge Nevas, and forewent all of Plaintiffs' other options to proceed in this litigation. Instead, we continued to expend significant resources to memorialize the agreement, which was final and ready for execution as of December 31, 2006. (See Plaintiffs' Ex. 14).

35. Absent the May 30, 2006 settlement, Plaintiffs would not have foregone trial, which, in view of the settlement, was never reinstated on the Court's calendar. In fact, absent settlement, we were very keen to see that trial would occur as soon as possible, because having this litigation commenced over six years ago, preservation of the evidence, among other things, has been difficult to maintain. For instance, as a result of the settlement, during the Fall of 2006 I conferred with one of our key witnesses, Luz Andujar, and agreed that in view of the settlement she was free to relocate to Puerto Rico. In addition, because the EEOC wished to file an interlocutory appeal of an order issued by the Court in October 2005, absent the settlement all Parties understood that the EEOC would have proceeded to file the appeal immediately following the May 30, 2006, status conference.

36. Plaintiffs reasonably and justifiably relied on Defendant's agreement to settle on May 30, 2006, since Defendant represented its agreement in Court to the Plaintiffs in front of two federal judges. Relying on Defendant's representations, Plaintiffs, among other things, renounced further court proceedings against Defendant in the case and expended significant time and resources in memorializing the agreement reached with Defendant. Defendant's repudiation of the settlement with Plaintiffs smacks of bad faith, and has caused and continues to cause

Plaintiffs significant prejudice and expense. Unless this Court enforces this settlement, the Plaintiffs and the claimants will be irreparably harmed by Defendant's conduct. For instance, because the Parties already expended significant time in connection with the settlement, and a great deal of time will also be required in connection with the interlocutory appeal, it could take several years before this case could again be scheduled for trial, which would cause Plaintiffs great prejudice in the prosecution of their case.

I declare under penalty of perjury that the foregoing is true and correct.

Executed in Boston, Massachusetts on May 10, 2007.

_____
R. Liliana Palacios-Baldwin
Senior Trial Attorney
Equal Employment Opportunity Commission
Boston Area Office
JFK Federal Building, Room 475
Boston, MA 02203-0506
Tel: 617-565-3188
Fax: 617-565-3196
e-mail: rosa.Baldwin@eeoc.gov

NYA 826153.3