## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

           Plaintiff,

v.

BEAUTY ENTERPRISES, INC., AAA
INDUSTRIAL TEMPORARIES, INC., and
ESSENTIAL TEMPORARIES, INC.,

           Defendants.

-------------------------------------------------------

MIGUEL ANGEL ALVAREZ, WILLIAM
TORRES, HAROLD ACOSTA, and JOSE
LINARES,

           Plaintiff-Intervenors,

v.

BEAUTY ENTERPRISES INC.,

           Defendant.

LUZ M. ANDUJAR,
WALESKA MIRANDA, and EVA DIAZ,

           Plaintiff-Intervenors,

v.

BEAUTY ENTERPRISES, INC., and
ESSENTIAL TEMPORARIES, INC.

           Defendants.

301CV00378(AHN)
May 14, 2007

**MEMORANDUM OF LAW IN
SUPPORT OF PLAINTIFFS' MOTION
TO ENFORCE THE SETTLEMENT
AGREEMENT**

*Oral Arguments Requested*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

    I.    The Litigation................................................................................2

    II.    The Settlement Negotiations.........................................................3

    III.    The Settlement Reached at the Court Conference of May 30, 2006 .....................5

    IV.    The Subsequent Memorialization of the Agreement Reflecting the Terms of The Settlement..........................................................................7

    V.    Defendant's Announcement that It Was Repudiating the Settlement Due to a "Change of Heart"..................................................................10

ARGUMENT .................................................................................................... 11

    I.    Governing Law .................................................................................13

    II.    This Court Has Authority to Enforce the Settlement...............................14

        1.    An Oral Settlement Agreement is Valid and Enforceable ...............................14

        2.    A Settling Party's "Change of Heart" Between the Time of Settlement and the Time Its Terms Are Reduced to Writing is Not a Legal Ground for Repudiation of an Oral Settlement ...........................................22

    III.    The Court Should Sanction Defendant for its Bad Faith Conduct and Award Costs and Attorney's Fees......................................................23

CONCLUSION...................................................................................................... 24

NYA 820492.7

## TABLE OF AUTHORITIES

### Cases

*In re Artha Mgmt., Inc.,*
  91 F.3d 326 (2d Cir. 1996) ................................................................................ 13

*Acot v. New York Medical College,*
  99 Fed. Appx. 317 (2nd Cir. 2004) .................................................................... 17

*Acqarion Water Company of Connecticut v. Beck Law Products and Forms, LLC,*
  98 Conn. App. 234 (Conn. App. 2006) ................................................. 11, 18, 21

*Atherton v. F.D.I.C.,*
  519 U.S. 213 (1997) .................................................................................... 13, 14

*Audubon Parking Assocs., Ltd. P'ship v. Barclay & Stubbs, Inc.,*
  225 Conn. 804 (1993) ......................................................................................... 14

*Baldwin v. Gavin,*
  6 Fed. Appx. 107 (2d Cir. 2001) ........................................................................ 13

*Brown v. Nationscredit Commercial,*
  No. 3:99-CV-592, 2000 WL 888507 (D. Conn. June 23, 2000) .................. 15, 18, 22

*Callen v. Pennsylvania R.R. Co.,*
  332 U.S. 625 (1948) ........................................................................................... 15

*Ciaramella v. Reader's Digest Ass'n,*
  131 F.3d 320 (2d Cir. 1997) ............................................................................... 16

*Consarc Corp. v. Marine Midland Bank, N.A.,*
  996 F.2d 568 (2d Cir. 1993) ......................................................................... 19, 22

*Co-Options, Inc. v. News Am. Mktg. Instore, Inc.,*
  No. X01CV000163095S, 2002 WL 442094 (Conn. Super. Feb. 27, 2002)............. 15

*Customized Transp., Inc. v. Bradford,*
  114 F.3d 1186 (6th Cir. 1997) ........................................................................... 22

*Dal Pozzo v. Basic Mach. Co.,*
  463 F.3d 609 (7th Cir. 2006) ....................................................................... 23, 24

*DAP Fin. Mgmt., Inc. v. MOR-FAM Elec., Inc.,*
  No. 960383305S, 1998 WL 638450 (Conn. Super. Sept. 4, 1998), .................. 15, 16

NYA 820492.7

*DAP Fin. Mgmt., Inc. v. MOR-FAM Elec., Inc.*,
    755 A.2d 925 (Conn. App. 2000).................................................................15, 16

*Digital Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994)..............................................................................15

*Doi v. Halekulani Corp.*,
    276 F.3d 1131 (9th Cir. 2002)....................................................................24

*In re Dragone*,
    318 B.R. 33 (D. Conn. Bkrtcy. 2004)............................................................19

*EEOC v. Kidman*,
    02-1911 (D.C. Ariz. 2004) ...................................................................13, 20

*EEOC v. Kidman*,
    2007 WL 1187962 (9th Cir. Apr. 23, 2007) ...............................................2, 13, 20

*EEOC v. Regal-Beloit Corp.*,
    Docket 06-C-568-S (D.C. Wis. May 1, 2007)................................................20, 21

*Foster v. City of New York*,
    2000 WL 145927 (S.D.N.Y. 2000) .............................................................17

*Fulgence v. J. Ray McDermott & Co.*,
    662 F.2d 1207 (5th Cir. 1981)...........................................................13, 15, 20

*Good v. Pennsylvania R.R. Co.*,
    384 F.2d 989 (3d Cir. 1967)....................................................................15

*Hess v. Dumouchel Paper Co.*,
    154 Conn. 343 (1966)..........................................................................15

*Janneh v. GAF Corp.*,
    887 F.2d 432 (2d Cir. 1989)....................................................................15

*Klein v. Chatfield*,
    166 Conn. 76 (Conn. 1974).....................................................................16

*Maharishi School of Vedic Sciences, Inc. (Conn.) v. Conn. Const. Ass. Ltd*,
    260 Conn. 598 (Conn. 2002)............................................................17, 18, 21

*Meetings & Expositions, Inc. v. Tandy Corp.*,
    490 F.2d 714 (2d Cir. 1974)....................................................................14

NYA 820492.7

*Monaghan v. SZS 33 Associates, L.P.,*
  875 F. Supp. 1037 (S.D.N.Y. 1995) ............................................................ 17

*Monaghan v. SZS 33 Associates, L.P.,*
  73 F.3d 1276 (2nd Cir. 1996) ............................................................... 2, 17

*Montgomery v. Smith,*
  40 Conn. Supp. 358 (Conn. Super. 1985) ................................. 2, 22, 23

*Omega Eng'g, Inc. v. Omega, S.A.,*
  414 F. Supp. 2d 138 (D. Conn. 2004) ................................. 13, 14, 19

*Omega Eng'g, Inc. v. Omega, S.A.,*
  432 F.3d 437 (2d Cir. 2005) ................................................... *passim*

*Sanford v. Alcohol & Drug Recovery Ctrs., Inc.,*
  No. 3:04CV1544, 2006 WL 1821547 (D. Conn. June 30, 2006) ............. 14, 19

*Sartor v. Manchester,*
  312 F. Supp. 2d 238 (D. Conn. 2004) ...................................... 22

*Sicaras v. Hartford,*
  44 Conn. App. 771 (1997) ......................................................... 20

*United States v. Seckinger,*
  397 U.S. 203 (1970) .................................................................. 13

*Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp.,*
  629 F. Supp. 257 (S.D.N.Y. 1986) ............................................. 21

*Winston v. Mediafare Entm't Corp.,*
  777 F.2d 78 (2d Cir. 1985) ......................................................... 16

*Zauner v. Brewer,*
  No. 049135, 1992 WL 205179 (Conn. Super. Aug. 11, 1992) ............. 23

## Statutes

Title VII of the Civil Rights Act of 1964 ........................................................ 2

42 U.S.C. § 1981 ......................................................................................... 2

Conn. Gen. Stat. 46a-60(a)(1) and (4) ........................................................ 2

NYA 820492.7

Plaintiff, the Equal Employment Opportunity Commission ("EEOC"), and Plaintiff-Intervenors, Harold Acosta, Miguel Alvarez, Luz Andujar, Eva Diaz, Jose Linares, Waleska Miranda, and William Torres ("Plaintiff-Intervenors," and together with the EEOC "Plaintiffs"), respectfully submit this Memorandum of Law in Support of their Motion to Enforce the Settlement Agreement, seeking an order by this Court (1) enforcing the settlement of the above captioned litigation reached between Plaintiffs and Defendant Beauty Enterprises, Inc. ("Beauty" or "Defendant," and together with Plaintiffs the "Parties"), at a settlement conference convened by the Honorable Holly J. Fitzsimmons, Magistrate Judge, United States District Court for the District of Connecticut, on May 30, 2006, and (2) directing Defendant to take all necessary and proper steps to effect and comply with the terms of that settlement agreement.

## PRELIMINARY STATEMENT

Plaintiffs seek enforcement of an oral settlement agreement the Parties reached on May 30, 2006, during a settlement conference conducted under the auspices of a federal court, and subsequently memorialized in a writing reflecting the terms of that agreement. This is not a close case. But it is a clear one. A clear case of Defendant reneging on an agreement that was represented to the court as a done deal. The subsequent memorialization of the terms of the Parties' agreement into a consent decree was simply a mechanical step of a *fait accomplit*, and was not an opportunity for Defendant to escape further – and then imminent – legal proceedings.

On January 24, 2007, Defendant informed Plaintiffs and Judge Fitzsimmons that it had had a "change of heart" concerning settlement, and therefore it was repudiating the agreement reached with Plaintiffs. The following day, in a status conference call between the Parties and the Court, Defendant contended that because the writing reflecting the terms of the settlement was never executed, Defendant's "change of heart" concerning settlement of the instant litigation

NYA 820492.7

was sufficient to put an end to the settlement previously reached by the parties. Defendant is simply wrong about that. A settling party's "change of heart" is insufficient as a matter of law to repudiate even an oral agreement to settle. *See, e.g., Omega Eng'g, Inc. v. Omega, S.A.*, 414 F.2d 138, 148 (D. Conn. 2004), *aff'd*, 432 F.3d 437 (2d Cir. 2005); *Montgomery v. Smith*, 40 Conn. Supp. 358 (Conn. Super. 1985).

Defendant cannot now escape from its obligations under the settlement agreement by refusing to sign the formal consent decree, which the Parties understood was subsequently to be reduced to writing and executed. *See, e.g., Omega Eng'g*, 414 F.2d at 148; *EEOC v. Kidman*, 2007 WL 1187962 (9th Cir. Apr. 23, 2007) (slip copy). Defendant's unwarranted repudiation is even more aberrant under the circumstances of this case, since the agreement was reached under the aegis of a federal court and immediately communicated to the judge presiding this case. *See Monaghan v. SZS 33 Associates, L.P.*, 73 F.3d 1276, 1282-83 (2nd Cir. 1996). Indeed, it was only because of the Parties' agreement to settle on May 30, 2006, that legal proceedings in this case were not placed back on the Court's calendar at the status conference also held on that date.

Defendant's unjustified refusal to perform under the binding settlement agreement between the Parties has caused, and continues to cause, Plaintiffs significant harm and prejudice, and Plaintiffs respectfully request that the Court enforce the settlement as soon as possible.

## STATEMENT OF FACTS

### I.    The Litigation

This is an employment discrimination case involving allegations of disparate treatment, disparate impact, harassment, retaliation, and discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964, as amended. These claims arise out of Defendant's implementation and enforcement of an English-only policy that discriminated against Defendant's Hispanic employees, monolingual Spanish speakers and non-native English

NYA 820492.7

speakers of Hispanic national origin.  The EEOC initially filed this lawsuit on March 12, 2001, on behalf of current and former employees of Defendant. Plaintiff-Intervenors, which also included some current and some former employees of Defendant, subsequently intervened in the lawsuit as plaintiffs.[1]  In addition to the EEOC's claims, Plaintiff-Intervenors also alleged that the Policy violated 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. 46a-60(a)(1) and (4).  Plaintiffs sought to recover damages and equitable relief enjoining Defendant from continued enforcement of the Policy.

Following several years of discovery, trial of the case was set to begin on September 19, 2005.  However, following an unsuccessful attempt at jury selection on September 15, 2005, the Court adjourned the trial to January 17, 2006.  (See Docket No. 120).

## II.    The Settlement Negotiations

Prior to the originally scheduled trial date, the EEOC had sent Defendant, on behalf of Plaintiffs, a draft settlement agreement (the "Consent Decree") containing the terms of its proposal to settle the case without litigation.  (See Declaration of R. Liliana Palacios-Baldwin ("Baldwin Decl.") ¶ 6).  Although Defendant had never before acknowledged the Consent Decree, following postponement of the trial, on or about October 25, 2005, Defendant sent the EEOC a response to the Consent Decree.  From then on, the Parties began engaging in settlement negotiations. (Baldwin Decl. ¶ 7).

Following a status conference held on November 2, 2005, before Judge Nevas, the Court referred the case to Magistrate Judge Fitzsimmons for a settlement conference between the Parties, given the intent of all Parties to continue settlement discussions in good faith.  Pending

---

[1]      Throughout this memorandum the employees on whose behalf the EEOC brought this lawsuit and the employees who directly intervened in this lawsuit as Plaintiff-Intervenors will be interchangeably referred to as "charging parties" or "class members" or "claimants."

these settlement negotiations, trial of the case was further adjourned to March 28, 2006.  (See Baldwin Decl. ¶ 8).

The Parties appeared before Judge Fitzsimmons in their first settlement conference on December 14, 2005, after making some progress during their own preliminary settlement discussions. (Baldwin Decl. ¶ 9).  Following this first conference, the Parties believed that the negotiations had been productive and that there existed true potential to reach settlement.  (Id.)  Accordingly, the Parties continued settlement discussions during the months following, and on February 14, 2006, the Parties jointly filed a motion to adjourn the trial pending continued settlement negotiations.  (See Baldwin Decl. ¶ 10).  The motion was granted, and in view of the settlement negotiations no new date was set for trial.  (See Baldwin Decl. ¶ 10).

During the time granted by the Court to continue settlement negotiations, the Parties met several times and exchanged various draft settlement proposals, which were included primarily in two documents: a revised draft of the Consent Decree and a revised language policy (the "Revised Policy") that was proposed to replace the contested English-only policy. (See Baldwin Decl. ¶¶ 10-12).  The Parties also met to discuss further certain issues over which they appeared to have incompatible positions.  The primary points of the negotiation dealt with replacement of Defendant's English-only policy with a language policy that would be acceptable to all parties, and monetary relief for the aggrieved class of employees.  (See Baldwin Decl. ¶ 11).

On April 10, 2006, the Plaintiffs sent Defendant a revised draft of the Consent Decree and Revised Policy, and met to discuss it on April 14, 2006.  At that meeting, despite the Parties' advancement on the policy issue, the Defendant stated that it required that as part of the settlement those four claimants who were still employed by Defendant resign or forego their portion of the settlement award entirely.  (Baldwin Decl. ¶ 12).  This request was viewed by

Plaintiffs as a deal-breaker because of its retaliatory nature towards the four claimants that were still employed by Defendant (the "Current Employees"). (Baldwin Decl. ¶ 12).

On April 19, 2006, the Parties informed Judge Fitzsimmons of this latest development, communicated to her that they were at impasse and that they would confer with the Court concerning reinstating the case on calendar for trial.[2] On May 5, 2006, the Parties conferred with the Court concerning the impasse reached in their settlement discussions and, although Plaintiffs' objective was to move the court proceedings forward as expediently as possible (as evidenced by the filing of the motion for reconsideration), they agreed to meet in Court for a final settlement conference. (See Baldwin Decl. ¶ 13). As a result, another – final – settlement conference was scheduled to take place before Judge Fitzsimmons on May 30, 2006. (Baldwin Decl. ¶ 14). A status conference before Judge Nevas was also scheduled for that same date, following the settlement conference. (Baldwin Decl. ¶ 14).

## III.    The Settlement Reached at the Court Conference of May 30, 2006

As scheduled by the Court, on May 30, 2006, the Parties convened before Judge Nevas and Judge Fitzsimmons for the settlement conference and the status conference regarding this litigation. Present at the conference were three of Defendant's representatives, Robert Cohen (Defendant's President and Chief Executive Officer), Larry Sussman (one of Defendant's Vice Presidents), Rocco Piccirillo (another Vice President of Defendant), as well as Defendant's counsel of record, Richard Robinson. (Baldwin Decl. ¶ 15). Plaintiffs appeared through their lawyers, R. Liliana Palacios-Baldwin and Elizabeth Grossman for the EEOC, and Valeria Calafiore, Jackson Chin, and Barbara Gardner for their respective Plaintiff-Intervenors. (Id.).

---

[2]    In view of the Parties' decision to reinstate the case on the Court's calendar for further proceedings, on May 26, 2006, Plaintiffs filed a motion for reconsideration of the Court's October 25, 2005 Order on the disparate impact jury instruction. (See Docket Nos. 139, 155).

There were only two outstanding issues in the settlement negotiations: (1) the total monetary relief figure to be received by the aggrieved class members, and (2) Defendant's stated requirement that the Current Employees either resign or forego their settlement award. (Baldwin Decl. ¶¶ 16-17). Except for these two issues, all Parties otherwise confirmed both at the beginning and at the conclusion of this conference that the last Consent Decree circulated by the EEOC (see Plaintiffs' Ex. 3) was acceptable, apart for minor edits that needed to be implemented to conform it with previously reached agreements, as well as the selection of individuals to assume the roles required by the Consent Decree.[3]  (Baldwin Decl. ¶ 17).

Following various discussions, the Parties conferred in Judge Nevas' courtroom, and with the assistance of both Judge Nevas and Judge Fitzsimmons they resolved the two aforesaid outstanding issues between them, and agreed that they had now reached settlement on all material terms.

The settlement reached that day and confirmed with Judge Nevas and Judge Fitzsimmons, included the following:

- In exchange for Plaintiffs' agreement to forego trial and other proceedings against Defendant in this case, Defendant agreed to pay Plaintiffs an aggregate amount of $325,000 in full settlement of this litigation. Plaintiffs also agreed that the specifics of distribution of that amount amongst the various class members would be kept confidential. In addition, Plaintiffs also agreed to defer receipt of the payment of the settlement money for the four Current Employees of Defendant, namely Alvarez, Diaz, Oliveras and Perez, until a date after their employment with Defendant concluded, so long as the settlement awards would be put in some investment vehicle in the individuals' names at or around the time the entire settlement amount was to be paid. As the Parties' were in agreement that none had sufficient knowledge at that time about the appropriate deferred payment vehicles, they agreed to work

---

[3]     By that date, the Parties had also agreed to a mutually acceptable Revised Policy to replace Defendant's contested English-only policy (see Plaintiffs' Ex. 11) resolving what had been the crux of this litigation.

NYA 820492.7

collaboratively to research and later select the most appropriate mechanism to effect this term ("Deferred Payment Vehicle").[4]

- Defendant would implement a Revised Policy, in accordance with a draft circulated between the Parties during the conference. (Plaintiffs' Ex. 11).

- A Consent Decree memorializing the settlement would be drafted, executed, and filed with the Court. The Parties agreed that the draft Consent Decree exchanged between the parties prior to the May 30, 2006 settlement conference was the document to be adopted to memorialize the settlement, subject only to minor revisions concerning non-material details. For instance, the Parties agreed that they would work out later the selection of the proper trainer/independent consultant as provided for in the Consent Decree draft.

(See Baldwin Decl. ¶¶ 17-19). On these terms, the Parties shook hands and agreed that these terms constituted the Parties' settlement ("Settlement"), which they would file with the Court as soon as they had fully memorialized it in a final Consent Decree. (Baldwin Decl. ¶¶ 18-20).

In view of the Parties' Settlement, the Court never reinstated the case on its calendar for further proceedings and trial, and no order was ever issued on Plaintiffs' pending Motion for Reconsideration.[5] (Baldwin Decl. ¶ 20). Relying on Defendant's agreement that day, Plaintiffs never sought to reinstate the proceedings and instead continued expending significant time and resources to memorialize the Parties' agreement.

## IV. The Subsequent Memorialization of the Agreement Reflecting the Terms of the Settlement

In the months following, the Parties redrafted the Consent Decree to reflect the Settlement reached on May 30, 2006. In addition, the Parties took time to identify the most

---

[4]     On May 30, 2006, the Parties discussed the possibility of an annuity as a potential Deferred Payment Vehicle and Defendant agreed it would take the lead to investigate this possibility and share its findings with Plaintiffs as soon as possible. Indeed, over the months following, the Parties all expended significant time and effort in trying to identify the best possible investment vehicle to effect this term. After contemplating annuities, certificates of deposit, and promissory notes, Defendant successfully identified a company sponsored 401k as an acceptable Deferred Payment Vehicle on November 2006. Plaintiffs agreed that this option was acceptable for three of the four Current Employees. (Baldwin Decl. ¶ 25). Defendant also agreed that Ms. Perez, one of the four Current Employees, would get her money at the time of the payments to all the former employee claimants, because she was not eligible for the 401k solution. (Id.)

NYA 820492.7

adequate Deferred Payment Vehicle, and an adequate independent consultant/trainer as required by the Decree. On July 24, 2006, the Parties provided an update to the Court, indicating that they were hoping to file the final Consent Decree within the next two or three weeks. (See Baldwin Decl. ¶¶ 21-23, Plaintiffs' Ex. 6). Shortly thereafter, the EEOC provided Defendant with a revised Consent Decree that needed only to be updated with the selection of the Deferred Payment Vehicle, the individual awards to be provided to each class member, and the selection of the various individuals to fulfill the roles required by the Consent Decree. (See Baldwin Decl. ¶ 22, Plaintiffs' Ex. 12).

On August 29, 2006, Plaintiffs informed the Court that they were still actively involved in "trying to close two different parts of the Decree – [Defendant] is trying to ensure selection of the consultant and [Plaintiffs] are trying to get the [Current Employees] to meet with a financial planner/advisor so they can suggest some alternatives for their awards." (See Baldwin Decl. ¶ 24, Plaintiffs' Ex. 7).

Some more time passed due to the difficulty in finding an adequate vehicle in which to transfer the settlement awards for the Current Employees. In November 2006, Plaintiffs agreed to Defendant's proposal of using individual 401k accounts sponsored by Defendant as the Deferred Payment Vehicle. (See Baldwin Decl. ¶¶ 25-28; Plaintiffs' Ex. 14). Thus, the money to be paid to the Current Employees would be deposited in their respective 401k accounts, with the exception of Ms. Perez, one of the four Current Employees, who was going to be paid up-front. (Id.) On December 11, 2006, Plaintiffs informed the Court that they intended to file the Consent Decree before the end of the year. (See Baldwin Decl. ¶ 27.)

---

[5]    Indeed, the Court agreed that in light of the Settlement, once the Consent Decree was filed, it would vacate its Order dated October 25, 2005. This agreement was reflected in the revised Consent Decree as well. (Baldwin Decl. ¶ 20, Plaintiffs' Exhibits 12, 13).

NYA 820492.7

On December 21, 2006, the Parties confirmed that everything was final: the Deferred Payment Vehicle had been identified, the different roles required to be staffed by the Consent Decree were selected, and the Consent Decree, which was otherwise uncontested, would quickly be ready for execution once these details were reflected. (See Baldwin Decl. ¶¶ 26-28). Because the amount of disbursement to two of the Current Employees exceeded the 401k maximum contribution amount for the 2006 tax year, Defendant agreed that it was ready to start funding the 401k accounts of the Current Employees by the end of December 2007, and then the remainder on October 2007. (See Baldwin Decl. ¶ 25-29).

Later that same day, however, Defendant requested that Plaintiffs accept payment of the Settlement money that was to be paid directly to the class members (i.e. excluding the payments that would be made to the Current Employees 401k accounts) in two installments, rather than the single installment originally agreed upon. (See Baldwin's Decl. ¶ 29).

Plaintiffs were taken aback by this request, which had already been made by Defendants and rejected by Plaintiffs on May 30, 2006. (See Baldwin's Decl. ¶ 29). Thus, Plaintiffs asked that Defendant comply with the terms of its original agreement, and pay the Settlement at once. When Defendant refused, the Parties invoked the assistance of Judge Fitzsimmons in resolving this newly presented matter. (See Baldwin's Decl. ¶¶ 29-30). In response to Plaintiffs' communication to Judge Fitzsimmons, Defendant represented to the Court that it believed a two-installment payment was part of the Settlement reached on May 30, 2006, and confirmed that everything else was final, and that it had "not had a change of heart about settling." (See Baldwin's Decl. ¶ 30, and Plaintiffs' Exhibits 9-10).

- 9 -

All else being final, Judge Fitzsimmons scheduled a settlement conference to be held on January 24, 2007, to determine only whether the Parties had previously agreed to a one or two installment payment of the Settlement money. (See Baldwin's Decl. ¶ 31).

## V.    Defendant's Announcement that It Was Repudiating the Settlement Due to a "Change of Heart"

On January 24, 2007, Defendant's representatives and counsel, as well as Plaintiffs' counsel appeared before Judge Fitzsimmons.  Following several discussions about whether or not the Parties had previously agreed to a one or two installment payment, Plaintiffs agreed to accept payment of the Settlement money in two installments, as requested by Defendant. (See Baldwin's Decl. ¶ 31).

Although Plaintiffs' agreement eliminated the last outstanding detail preventing execution of the Settlement, Defendant announced to Plaintiffs and to Judge Fitzsimmons that it had had "a change of heart" and that it was repudiating the Settlement.  (See Baldwin Decl. ¶ 31).  Despite Plaintiffs request that Defendant immediately comply with its agreement, Defendant refused.  (Id. at ¶ 32).

The following day, Judge Nevas held a status conference, in which all Parties appeared by telephone.  During that conference, Defendant again represented to the Court that it had had "a change of heart," and there was nothing to be done because it no longer wanted to pay any money at all.  (Id. at ¶ 33).  Defendant did not dispute that the Settlement was otherwise final and that agreement had been reached on all details surrounding the Settlement, but simply stated that it still had a right to repudiate the Settlement because the Consent Decree had not yet been executed and filed with the Court.[6]  (Id.).

---

[6]    Subsequently, Defendant maintained that "though there had been a settlement in principle and preliminary agreements were reached on almost all issues, but that the parties never reached a settlement to which they

## ARGUMENT

"It is an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d 437, 445 (2d Cir. 2005).[7]    Where the parties have mutually assented to the terms of a contract, the agreement is binding, even if it needs to be reduced to writing, and even if the writing is not signed. *See, e.g., Acquarion Water Company of Connecticut v. Beck Law Products and Forms, LLC,* 98 Conn. App. 234 (Conn. App. 2006).    The evidence in this case firmly establishes the existence of a binding settlement agreement between the Parties, followed by a belated "change of heart" by Defendant:

1.  The parties arrived at a Settlement in this case at the May 30, 2006 conference (the "May 2006 Conference"), in which Defendant and its counsel were present and represented before two federal judges and numerous other parties that they <u>had authority</u> to enter into a settlement and fully understood what they were agreeing to settle.  (Baldwin Decl. ¶ 15).

2.  The Settlement reached at the May 2006 Conference, albeit oral, <u>contained all material terms of the agreement</u> between the Parties, leaving only minor details to be worked out and to be memorialized in a revised version of the Consent Decree, to reflect all of the material terms of the Parties' agreement.  (Baldwin Decl. ¶¶ 17-19).

---

were bound."  Def.'s Opp. to Motion to File Documents Under Seal, Docket No. 165.  As discussed herein, Defendant is simply wrong about that, because the evidence and the law dictate otherwise.  *See, e.g.,* Maharishi School of Vedic Sciences, Inc. (Connecticut v. Connecticut Constitution Associates Ltd. Partnership, 260 Conn. 598 (Conn. 2002) (enforcing agreement in principled communicated to the court, following which the parties continued negotiating); *Aquarion Water Company of Connecticut v. Beck Law Products and forms, LLC,* 98 Conn. App. 234, 236-37, 239-40 (enforcing "settlement in principle" although the parties had not signed the settlement agreement).

[7]   In *Omega,* a case with facts strikingly similar to the ones here, the Second Circuit affirmed enforcement of a settlement that had been reached before a magistrate judge, to whom the case had been referred to for settlement discussions and who, together with the parties, reported his understanding that settlement had been reached to the judge presiding the case.  432 F.3d 437.

3.  It was only by virtue of the Parties' Settlement that the instant litigation was no longer reinstated on the Court's calendar for trial, and that Plaintiffs agreed to forego their right to proceed against Defendant, and agreed that one of their key witnesses could move outside of the jurisdiction.  (See Baldwin Decl. ¶¶ 20, 34).

4.  The revised Consent Decree, i.e. the written instrument reflecting the terms of the Settlement, was final as of December 31, 2006, and the only outstanding issue preventing execution of the written document was the acceptance by Plaintiffs of Defendant's request to pay the Settlement money in two installments rather than one. (Baldwin Decl. ¶ 31).

5.  The settlement conference held on January 24, 2007 before Judge Fitzsimmons ("January 2007 Conference") was convened to determine one single issue, namely whether Plaintiffs were going to accept the two-installment payment term proposed by Defendant, which Plaintiffs did accept at that conference. (Id.).

6.  Notwithstanding, during the course of the January 2007 Conference, Defendant announced to Plaintiffs and to Judge Fitzsimmons that it was repudiating the Settlement because it had had "a change of heart," and it no longer wished to perform a material term of the Settlement, namely the payment of the Settlement award.  (Id.).

7.  In a status conference between all Parties and Judge Nevas, held on January 25, 2007, Defendant, through its counsel, confirmed that the reason for its repudiation of the Settlement was its "change of heart" about paying any money at all to the class members.  (Baldwin Decl. ¶ 32).

Under these facts, which cannot legitimately be disputed, the law is clear that Defendant is bound by the terms of the Settlement reached with Plaintiffs, and that Defendant did not have

NYA 820492.7

an option to repudiate the agreement at the January 2007 Conference, even if a written instrument reflecting the terms of the Settlement had not yet been formally executed and filed with the Court.    Accordingly, the Settlement reached by the parties in this case should be enforced.  Not only does this Court have authority to issue an order mandating enforcement of the Settlement, but the governing law requires such enforcement.

**I.      Governing Law**

The enforceability of a settlement agreement in a federal question case is governed by federal precedent.[8]   *See In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996); *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir. 1981) ("federal law determines the validity of oral settlement agreements in employment discrimination actions brought pursuant to Title VII.").[9]

Where the law of the forum state does not appear to critically conflict with federal law, however, a court need not decide which law must apply if the result under both laws would be the same. *See Omega Eng'g, Inc. v. Omega, S.A.*, 414 F.2d 138, 148 (D. Conn. 2004), *aff'd*, 432 F.3d 437 (2d Cir. 2005) (stating that the factors that guide a court's inquiry into whether parties intended to be bound by an unexecuted settlement agreement are similar under both Connecticut law and federal common law).  *See also e.g. Baldwin v. Gavin*, 6 Fed. Appx. 107 (2d Cir. 2001) (table decision) (not addressing choice of law issue, but affirming oral settlement reached by the parties in a case of employment discrimination arising under both Connecticut and federal law).

---

[8]      Cases throughout the various jurisdictions are somewhat inconsistent on the issue of whether state or federal law applies in a Title VII action to enforce a settlement agreement.   *See, e.g., EEOC v. Kidman*, Civ. 02-1911 (D.C. Ariz. Sept. 14, 2004) (memorandum decision) (enforcing EEOC Consent Decree), *aff'd*, 2007 WL 1187962 (9th Cir. Apr. 23, 2007) (slip copy).  Plaintiffs submit that this is not an issue here, because, as discussed *infra*, the result would be the same under either federal law or Connecticut state law, which is the law of the state that would otherwise apply in this case.

[9]      *See also cf. United States v. Seckinger*, 397 U.S. 203, 209 (1970) (the interpretation of contracts involving the federal government and/or federal rights is governed by federal law).  *But see Atherton v. F.D.I.C.*, 519 U.S. 213, 218 (1997) (stating that cases in which judicial creation of a special federal rule would be

- 13 -

NYA 820492.7

This is such a case. Connecticut law and federal law do not seem to materially differ, and both would require enforcement of the Settlement under the circumstances presented here.

## II.    This Court Has Authority to Enforce the Settlement

A district court has authority to summarily enforce a settlement agreement reached in a case that is pending before it. *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974) (citations omitted); *Omega Eng'g, Inc.*, 414 F. Supp. 2d at 145 (district court "retains jurisdiction, prior to the dismissal of the case, to enforce a settlement agreement in a case over which it presided"); *Brown v. Nationscredit Commercial*, No. 3:99-CV-592, 2000 WL 888507, at *1 (D. Conn. June 23, 2000) ("The power of a trial court to enter a judgment enforcing a settlement agreement has its basis in the policy favoring the settlement of disputes and the avoidance of costs and time-consuming litigation.") (table decision).

Summary enforcement is "essential to the efficient use of judicial resources," and "preserves the integrity of settlement as a meaningful way to resolve legal disputes." *Brown*, 2000 WL 888507, *1.    *See also Audubon Parking Assocs., Ltd. P'ship v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 812 (1993) (when parties agree to settle a lawsuit they are effectively contracting for the right to avoid trial). A court has authority to summarily enforce even an oral settlement. *See, e.g., Sanford v. Alcohol & Drug Recovery Ctrs., Inc.*, No. 3:04CV1544, 2006 WL 1821547, at *1 (D. Conn. June 30, 2006) (slip copy).

In deciding whether a settlement agreement must be enforced, a court must determine (1) whether there exists an enforceable agreement, and (2) whether the party against whom enforcement is sought is excused from performance. The burden of showing unenforceability rests on the party attacking the settlement, who must establish that the contract he made is

---

justified are few and restricted, and that a pre-condition to application of federal common law is a showing that state law would conflict with a federal policy or interest).

"tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." *Brown*, 2000 WL 888507, at *1 (quoting *Callen v. Pennsylvania R.R. Co.*, 332 U.S. 625, 630 (1948)).

As discussed further below, there can be no legitimate dispute that a complete, valid and enforceable Settlement between the Parties existed.  Therefore, the single dispositive issue before this Court is whether Defendant, as party to an oral settlement, which was subsequently fully memorialized in a writing, albeit one that was not yet executed, was entitled to repudiate its agreement on the grounds that it "had a change of heart" between the time of the settlement and the time that its terms are reduced to writing.

## 1.   An Oral Settlement Agreement is Valid and Enforceable

A settlement agreement pursuant to which parties agree to discontinue litigation constitutes a contract that, once entered into, is both binding and conclusive, even in the absence of a writing.  *See, e.g., Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir. 1989), *abrogated on other grounds by Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867 (1994); *Co-Options, Inc. v. News Am. Mktg. Instore, Inc.*, No. X01CV000163095S, 2002 WL 442094 (Conn. Super. Feb. 27, 2002); *Fulgence*, 662 F.2d at 1209 ("federal law does not require … that the settlement be reduced to writing.  Absent a factual basis rendering it invalid, an oral agreement to settle a Title VII claim is enforceable against a [party] who knowingly and voluntarily agreed to the terms of the settlement or authorized his attorney to settle the dispute."); *Good v. Pennsylvania R.R. Co.*, 384 F.2d 989 (3d Cir. 1967).

Under Connecticut law, whether the parties in fact concluded a settlement agreement is determined by the "intention of the parties manifested by their words and acts."  *Hess v. Dumouchel Paper Co.*, 154 Conn. 343, 347 (1966).  This factor is "controlling and is the key

NYA 820492.7

consideration." *DAP Fin. Mgmt., Inc. v. MOR-FAM Elec., Inc.*, No. 960383305S, 1998 WL 638450, at *3 (Conn. Super. Sept. 4, 1998), *aff'd*, 755 A.2d 925 (Conn. App. 2000)(table decision).

Under Connecticut law, the parties' intent is determined by considering three factors: (1) the language used in the agreement, (2) the circumstances surrounding the transaction, including the motives of the parties, and (3) the purposes which the parties sought to accomplish. *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d at 444 (citing *Klein v. Chatfield*, 166 Conn. 76 (1974) (the "*Klein* test").)  The Second Circuit has also applied a slightly different test to determine intent in cases arising under New York law, which includes consideration of the following factors: (1) whether either party expressly reserved the right not to be bound until a writing was agreed; (2) whether there has been a partial performance of the settlement contract; (3) whether all material terms have been agreed; and (4) whether agreements of this type are generally committed to writing.  *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985) (the "*Winston* test"); *Ciaramella v. Reader's Digest Ass'n*, 131 F.3d 320, 323 (2d Cir. 1997).  The *Winston* test is clearly not applicable here, because, as discussed *supra,* this case is governed by Connecticut law or by relevant federal precedent. *See Omega,* 432 F.3d at 444.  In any event, the evidence in this case would require enforcement of the settlement agreement either under the *Klein* test or the *Winston* test.[10]

First, under the *Klein* test, there is ample evidence to conclude that the Parties intended to be bound by the settlement reached at the May 2006 Conference, and that the Consent Decree was only to serve the purpose of memorializing the agreement.  (See, e.g., Baldwin Decl. ¶¶ 11, 17-20, 33).  The circumstances under which the Settlement was reached do not support an

---

[10]      Although Plaintiffs discuss the *Winston* factors in the interest of completeness, they maintain that the *Klein* test is the only test applicable here.

assertion that the agreement reached at the May 2006 Conference was not binding.  For example, during the May 2006 Conference before Judge Nevas and Judge Fitzsimmons, Defendant unequivocally communicated to the Court that it understood the binding nature of the agreement, and represented in front of all present in the courtroom that it understood and agreed to the terms of the Settlement,[11] which, as discussed above, covered all material terms including the Settlement money, in the amount of $325,000, the Revised Policy, an agreement that the Settlement would be memorialized in the Consent Decree that was to be filed with the Court, and an agreement that the Parties would work out the mechanics of certain details concerning certain terms of the Settlement, such identification of the Deferred Payment Vehicle and of an independent consultant/trainer.  (*Id.*).  It was in reliance on the reached Settlement, that Plaintiffs forewent pursuing any other proceedings in the case, including trial.  *See, e.g., Monaghan v. SZS 33 Associates*, L.P., 875 F. Supp. 1037 (S.D.N.Y. 1995), *aff'd*, 73 F.3d 1276 (2nd Cir. 1996).  On these facts alone, *Omega* requires that this Court enforce this Settlement.  *See Omega*, 432 F.3d at 445.

That additional details were left to be negotiated outside of the courtroom is not inconsistent with the existence of a binding settlement between the Parties.  *See, e.g., Maharishi School of Vedic Sciences, Inc. (Connecticut) v. Connecticut Constitution Associates Ltd. Partnership*, 260 Conn. 598 (Conn. 2002) (enforcing settlement, even following agreement

---

[11]    *See, e.g., Monaghan v. SZS 33 Associates, L.P.*, 73 F.3d 1276, 1282-83 (2nd Cir. 1996) (enforcing agreement reached by the parties who "were together in court … [where] although a contemporaneous record was not made, they discussed a proposed settlement with the judge."); *Acot v. New York Medical College*, 99 Fed. Appx. 317, 318 (2nd Cir. 2004) (unpublished) (enforcing oral agreement reached before administrative law judge, on the grounds that the party against whom enforcement was sought, "while represented by counsel, affirmatively stated on two occasions, in response to the administrative law judge's questioning, that she agreed to the terms of the agreement and understood that the settlement would terminate her federal lawsuit."); *Foster v. City of New York*, 2000 WL 145927, *4 (S.D.N.Y. 2000) ("numerous oral representations in status conferences before Judge Buchwald and this Court leave no doubt that the parties reached an agreement in principle … and that …the motion to enforce the settlement must be granted.")

- 17 -

parties continued negotiations); *Acquarion Water Company*, 98 Conn. App. At 240 (rejecting argument that the "court is precluded from finding the existence of an enforceable agreement if the parties engaged in further negotiations subsequent to the time of the agreement.[] We know of no authority that precludes contracting parties from engaging in subsequent negotiations to clarify or to modify the agreement that they had earlier reached…"); *Brown*, 2000 WL 888507, at *2.

Similarly, that the Parties agreed to memorialize their agreement in a subsequent writing also has no bearing on the existence of a valid settlement, because as the Second Circuit explained in *Omega*, while the Parties envisioned a moment of signing or execution of the agreement, there is nothing in the agreement establishing that the obligations imposed by the contract "were *contingent upon* signing." *Omega*, 432 F.3d at 445 (emphasis in original.) Indeed, as the evidence shows, the details that the parties left to be worked out subsequently were very minor and only incidental to the material terms of the Settlement. For instance, the Deferred Payment Vehicle simply concerned the mechanics of payment of that portion of the Settlement money that Defendant requested be paid to the Current Employees after their employment with Defendant concluded. Similarly, the issue surrounding the identification of an independent consultant/trainer simply dealt with the mechanics of a term agreed upon in the Settlement, and that indeed was already part of the draft Consent Decree the Parties had at the May 2006 Conference. Defendant's letter to Judge Fitzsimmons dated December 22, 2006 clearly confirms such intention, (see Plaintiffs' Ex. 10), and establishes that the agreed upon settlement was soon to be complete and ready for execution and filing with the Court, the only impediment being Defendant's then renewed request to disburse the Settlement award in two, rather than one, installment. (See Baldwin Decl. ¶¶ 23-24). Further, like in *Omega*, Defendant's

NYA 820492.7

motive in negotiating the Settlement was to avoid imminent proceedings, including a trial, which it successfully avoided. *See Omega*, 432 F.3d at 445. (*See, e.g.*, n. 2 *supra*, and Baldwin Decl. ¶ 13).

All of these factors leave little doubt that the contractual relation between the Parties was established at the May 2006 Conference, and that the Settlement reached then, as subsequently memorialized, must be enforced.

The enforceability of the Settlement is apparent even under the four *Winston* factors. For instance, Defendant did not in any way reserve the right to be bound only upon execution of a writing, and indeed represented to the Court at the May 2006 Conference that it understood and agreed to be bound by the Settlement. *See, e.g., In re Dragone*, 318 B.R. 33, 36 (D. Conn. Bkrtcy. 2004) (even the reservation of a right to review the final written documents is insufficient to make the agreement non-binding, as that merely preserves the right to ensure that the written document matches the settlement reached). Partial performance of the agreement also occurred, since Plaintiffs renounced continuing the litigation and imminent proceedings in the case, and in view of the Settlement the case was never reinstated on the Court's calendar. *See Id.* ("[I]n contemplation of the Settlement, the parties did not proceed with the scheduled hearing on the motion to sell. That is a form of partial performance.").

As the evidence demonstrates, it is indisputable that all material terms of the Settlement had been agreed to, and that as of December 31, 2006 the written instrument memorializing the agreement was ready for execution, pending only a technical detail concerning disbursement of the Settlement award due to Defendant's last minute request to pay in two rather than one installment. *See, e.g., Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 574 (2d Cir. 1993) ("If the court can see from the writings or correspondence that the minds of the parties

- 19 -

have met, that a proposal has been submitted by one party which has been accepted by the other, and that the terms of the contract have been in all respects definitely agreed upon, one of the parties cannot evade or escape from his obligation by refusing to sign the formal contract, which the parties understood was subsequently to be drawn and executed.").

Lastly, it is well established that agreements of this type are generally memorialized only following a successful agreement between the Parties, since a writing is not required to render the settlement valid, and the writing can subsequently be filed with the court. *See, e.g.*, *Fulgence*, 662 F.2d at 1209; *Sicaras v. Hartford*, 44 Conn. App. 771, 777-78 (1997) (there is no requirement that a settlement be in writing or signed by the parties). *See also EEOC v. Kidman*, 02-1911 (D.C. Ariz. 2004) ("failure to complete the formal stipulation papers does not mean that a settlement was not in fact reached, as Federal law does not require that the agreement be in writing."), *aff'd*, 2007 WL 1187962 (9th Cir. Apr. 23, 2007).

For instance, in *EEOC v. Kidman*, the EEOC faced a similar circumstance where the Defendant unjustifiably backed away from its agreement to settle with the EEOC and the other plaintiffs in that case, alleging that there existed no enforceable agreement between the Parties, because, among others, the settlement reached at a court conference was not in writing. *Id.* The court flatly rejected Defendant's argument, and held that a valid and enforceable agreement existed, and that "the Court must enforce the terms of a settlement agreement where there is an agreement on the material terms. Even if the [Defendants] later changed their minds as to the material terms and their desire to enter into the agreement." *Id.* at 11. In *EEOC v. Kidman*, like in this case, the terms of the agreement were not read into the record but were to be finalized by counsel; the parties had represented to the court that a settlement had been reached and that "all

that remained was finalizing the settlement documents," the parties "left the settlement conference intent on finalizing the terms of [the] settlement agreement." *Id.* at 7.

In another recent case, a district court in Wisconsin held that an oral settlement reached with the EEOC before the court's grant of a motion for summary judgment in favor of defendant, and executed after the court's decision, was binding on defendant. *See EEOC v. Regal-Beloit Corp.*, Docket 06-C-568-S (D.C. Wis. May 1, 2007) (Memorandum Decision). In upholding the validity and enforceability of the settlement agreement, the court rejected Regal-Beloit's arguments that the settlement was invalid because the defendant did not know at the time of its execution of the consent decree that the court had granted the motion for summary judgement in its favor. *Id.* Indeed, the court found that the oral settlement agreement was final prior to the issuance of the court's decision, and therefore valid and enforceable. *Id.*

Whether Defendant, in an effort to escape its obligations, now seeks to characterize the Settlement as a non-binding agreement, by use of words such as "agreement in principle," is legally irrelevant and does not affect the validity and enforceability of the Settlement between the Parties. *See, e.g.*, *Maharishi School of Vedic Sciences,* 260 Conn. 598 (enforcing agreement reached in principle); *Aquarion Water,* 98 Conn. App. 234 (enforcing settlement in principle); *Vari-O-Matic Mach. Corp. v. N.Y. Sewing Mach. Attachment Corp.*, 629 F. Supp. 257, 259 (S.D.N.Y. 1986) (enforcing settlement based on "agreement reached in principle").[12]

---

[12]   *Vari-O-Matic* reinforces the notion that even if the Court's were to accept Defendant's newly devised characterization of the Settlement as being only an "agreement in principle," (see Def. Opposition to Motion to Seal, Docket No. 165), the agreement is still enforceable.

For the foregoing reasons, this Court should find that the Settlement constitutes a valid agreement to terminate the instant litigation, and that the agreement is enforceable and binding on Defendant.[13]

**2.  A Settling Party's "Change of Heart" Between the Time of Settlement and the Time Its Terms Are Reduced to Writing is not a Legal Ground for Repudiation of an Oral Settlement**

Once a settlement agreement has been reached, it cannot be repudiated by a settling party simply because that party has had "a change of heart."  *See Omega Eng'g, Inc. v. Omega, S.A.,* 432 F.3d at 445.  This is true even if the agreement is oral, and if the parties intend to execute a written agreement in the future, and one party changes its mind between the time of the oral settlement and the time of the written agreement.  *Consarc Corp.*, 996 F.2d at 574; *Sanford,* 2006 WL 1821547 (slip copy); *Montgomery v. Smith*, 40 Conn. Supp. 358 (Conn. Super. 1985) (enforcing oral settlement following one party's repudiation of it between the time of agreement and the time of execution of the written instrument reflecting the terms of the agreement); *Brown*, 2000 WL 888507, at *2 ("settlement is still binding even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time those terms are reduced to writing"); *Sartor v. Manchester*, 312 F. Supp. 2d 238, 244 (D. Conn. 2004) (same); *Fulgence*, 662 F.2d at 1208 ("If a party to a Title VII suit who has previously authorized a settlement changes his mind when presented with the settlement documents, that party remains bound by the terms of the agreement.").

In *Montgomery*, for instance, the parties agreed to forego trial, after reaching an oral settlement agreement.  *Montgomery*, 40 Conn. Supp. at 359.  Before the parties' settlement terms

---

[13]    Alternatively, even if this Court found that enforcement was not required absent an executed agreement – and it is – the Settlement nonetheless should be enforced on equitable or quasi contractual grounds, such as under principles of equitable or promissory estoppel. *See, e.g., Customized Transp., Inc. v. Bradford*, 114 F.3d 1186 (6th Cir. 1997) (enforcing oral settlement agreement on promissory estoppel grounds).

could be stated for the record, the defendant "changed his mind and would not go through with the settlement." *Id.* The court concluded that the plaintiff had the right to enforce the settlement agreement, even if there was no formal stipulation on the record. *Id.* at 361. *See also Zauner v. Brewer*, No. 049135, 1992 WL 205179, at *3 (Conn. Super. Aug. 11, 1992) ("The fact that the plaintiff has had a change of heart as to the terms of the agreement is of no import here. She readily concedes that, at the time of the agreement and at the time of the reporting of the same to the court, she did consent to said terms.").

By Defendant's own admission, this is exactly what happened in this case. After agreeing to the Settlement, causing the case to be removed from the Court's trial schedule, and Plaintiffs to proceed as if the case was no longer going to be tried, Defendant had a "change of heart" and no longer desired to pay any amount of the Settlement award. This conduct however is insufficient as a matter of law to excuse Defendant's performance, and this Court should enforce the Settlement reached by the Parties against Defendant.

## III.    The Court Should Sanction Defendant for its Bad Faith Conduct and Award Costs and Attorney's Fees.

For the reasons set forth in this memorandum, Defendant's post-settlement obstructionism in refusing to execute the Settlement and otherwise comply with the terms of its agreement with the Plaintiff was unjustified and in bad faith, and has necessitated this motion to enforce the Parties' Settlement, causing Plaintiffs undue burden and expense. (See Baldwin Decl. ¶ 35). Accordingly, Plaintiffs respectfully request that the Court assess sanctions against Defendant either pursuant to 28 U.S.C. § 1927 or pursuant to the inherent power of the court. *See, e.g., Dal Pozzo v. Basic Mach. Co.,* 463 F.3d 609 (7th Cir. 2006).

Section 1927 provides that "[a]ny attorney … who so multiplies the proceeding in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess

costs, expenses, and attorney's fees reasonably incurred because of such conduct. 28 U.S.C. § 1927. Some cases suggest that either subjective or objective bad faith is a requirement of a sanction order under this provision. *Dal Pozzo*, 463 F.3d at 614. Plaintiffs submit that Defendant acted in bad faith in repudiating the Settlement on grounds as frivolous as stating that it had "a change of heart." Clearly Plaintiffs did not renounce proceeding to trial and did not expend all the time, effort, and money that they did simply because they thought they were engaged in a playful exercise with Defendant, at the expense of both Plaintiffs and the Court. Plaintiffs recognize and appreciate that the Court has itself expended significant resources in supporting the Parties' settlement. Defendant's conduct is objectively unreasonable and vexatious and clearly justifies the imposition of sanctions. *Id.*; *see also*, *e.g.*, *Doi v. Halekulani Corp.*, 276 F.3d 1131 (9th Cir. 2002) (affirming imposition of sanction on party that repudiated and failed to execute written instrument memorializing oral settlement agreement).

On the same grounds, Plaintiffs request that the Court also assess against Defendant all costs and attorney's fees associated with this enforcement proceeding.[14]

## CONCLUSION

For the foregoing reasons, Plaintiffs request that the Court grant this motion and declare that Defendant is bound by the Settlement, and required to take all necessary and proper steps to effect and comply with its terms.

---

[14] Plaintiffs will submit a record of their costs and attorney's fees upon completion of all proceedings associated with Plaintiffs' motion to enforce the Settlement.

- 24 -

WHEREFORE, the parties respectfully request that this Motion be granted.

Dated:    May 14, 2007
          New York, New York

Respectfully submitted,

By: _____

Elizabeth Grossman (CT17589)
Rosa Palacios-Baldwin
U.S. Equal Employment Opportunity
Commission
33 Whitehall Street, 5th Floor
New York, NY 10004-2112

Valeria Calafiore (PHV0494)
Clifford Chance US LLP
31 West 52nd Street
New York, NY 10019

Jackson Chin (PHV0493)
Puerto Rican Legal Defense & Education Fund
99 Hudson Street
New York, New York 10013

Barbara E. Gardner (CT07623)
843 Main Street, Ste. 1-4
Manchester, Connecticut 06040

*Attorneys for Plaintiff and Plaintiff-
Intervenors.*

NYA 820492.7