UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | |
| Plaintiff, | |
| v. | 301CV00378(AHN)<br>July 13, 2007 |
| BEAUTY ENTERPRISES, INC., AAA INDUSTRIAL TEMPORARIES, INC., and ESSENTIAL TEMPORARIES, INC., | **AFFIDAVIT OF LARRY SUSSMAN** |
| Defendants | |
| MIGUEL ANGEL ALVAREZ, WILLIAM TORRES, HAROLD ACOSTA, and JOSE LINARES | |
| Plaintiff-Intervenors | |
| v. | |
| BEAUTY ENTERPRISES, INC., | |
| Defendant. | |
| LUZ M. ANDUJAR, WALESKA MIRANDA, and EVA DIAZ, | |
| Plaintiff-Intervenors | |
| v. | |
| BEAUTY ENTERPRISES, INC., and ESSENTIAL TEMPORARIES, INC. | |
| Defendants. | |

I, Larry Sussman, being duly sworn do hereby depose and say as follows:

1.  I am over the age of eighteen, believe in the obligation of an oath and make this affidavit on the basis of my own personal knowledge.

2.  I am the Vice-President for Trade and Finance at Beauty Enterprises, Inc.

3.  I am making this affidavit principally to state my recollection of certain events in which I participated with adversary counsel in the above-captioned case.

4.  One such event is the May 30, 2006 court conference. I attended that conference, and it is definitely not my understanding that a final, binding settlement agreement was reached and announced to Judge Fitzsimmons at that conference.

5.  I know that the parties had been negotiating a settlement since the end of October 2005, that the EEOC had been demanding that Beauty pay money to settle the case and that Beauty was willing to pay some money in this regard. However, I also know that Beauty was totally unwilling to have the four still employed class members receive any settlement funds and continue working for it. The EEOC would have nothing of this, and so the May 30th conference was called to help the parties overcome this obstacle to settlement.

6.  I know that Judge Nevas broke the impasse that day with his "let them stay and forego payment now, but pay them when they leave" solution. I certainly thought that we would be able to finalize the settlement in due course after that, which is what we at Beauty wanted to happen. But I also know there were still a number of items to work out, including the vehicle for "paying later," and it was certainly my impression and intent that no one be bound until the

2

Consent Decree document that the EEOC insisted on and the parties were negotiating was finalized, signed and ordered by the Judge.

7.  I also know that at the May 30th conference, we agreed in principle to pay $325,000 to settle the case. I know that with everyone present I demanded that Beauty be allowed to pay this money in two installments over two successive fiscal years. I demanded this because I did not want Beauty's financial statement profits to be reduced dramatically in a single year even by something as non-recurring as the settlement of a once in a lifetime case. I wanted the "hit" spread over two years. I remember the EEOC agreeing to this.

8.  I came to court with counsel for the January 24, 2007 conference. When we had gathered in the room with the other lawyers (or some of them) before the conference itself began, Rick Robinson told adversary counsel that Beauty had decided not to settle and to go to trial. What happened after that was largely an effort to convince Beauty's owner, Bob Cohen, to change his mind and settle the case.

_____
Larry Sussman

Subscribed and sworn to before me this 13th day of July, 2007

_____
Commissioner of the Superior Court

Hartford/65094.1/RCR/241082v1

3