1

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
EQUAL EMPLOYMENT OPPORTUNITY.   Case No. 3:01-CV-00378
                             .   (AHN)
COMMISSION,                  .
                             .   Bridgeport, Connecticut
             Plaintiff,      .   May 14, 2008
                             .
      v.                     .
                             .
BEAUTY ENTERPRISES, INC.,    .
                             .
ET AL.,                      .
                             .
             Defendants.     .
. . . . . . . . . . . . . . .
```

ORAL ARGUMENT ON MOTION TO COMPEL
AND MOTION FOR PROTECTIVE ORDER
BEFORE THE HONORABLE ALAN H. NEVAS
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For Plaintiffs Eva Diaz,     Clifford Chance, US, LLP
Harold Acosta, Jose          By: VALERIA CALAFIORE, ESQ.
Linares, Waleska Miranda      31 West 52nd Street
and Luz Andujar:             New York, New York 10019

For Plaintiff EEOC:          Equal Employment
                             Opportunity Commission
                             By:  JEFFREY BURSTEIN, ESQ.
                             One Newark Center
                             Newark, New Jersey 07102

Court Monitor:               MS. RITA PAYTON

Proceedings recorded by electronic sound recording.
Transcript prepared by transcription service.
_____

BOWLES REPORTING SERVICE
P.O. BOX 607
GALES FERRY, CONNECTICUT 06335
(860) 464-1083

APPEARANCES (CONTINUED):

For Defendant Beauty          Pullman & Comley
Enterprises, Inc.:            By:  RICHARD ROBINSON, ESQ.
                             90 State House Square
                             Hartford, CT 06103

1        (Proceedings commenced at 3:45 p.m.)

2            THE COURT:  ... and we received another

3    motion for leave to take deposition of a non-party

4    witness in Florida.

5            You gotten a copy of that, Mr. Robinson?

6            MR. ROBINSON:  I did, Your Honor.

7            THE COURT:  All right.  Before we begin, let

8    me just try to lay some groundwork here.

9            This case is supposed to go to trial in

10   September.  It's been scheduled for a long, long time,

11   and in going through these most recent submissions,

12   including the one this morning, even if I granted a

13   portion of what you're seeking -- what the interveners

14   are seeking, I don't see how this case is ever going to

15   go to trial in September, so I want that to be clear to

16   everyone.

17           This case has been hanging around for a long

18   time.  It was filed in '01.  Seems to me these people,

19   including the EEOC plus the interveners should have

20   their day in court.  Let's get this thing resolved, and

21   this continuing of more discovery, and more

22   depositions, and more interrogatories, I don't see how

23   it's going to further the interests of the plaintiffs,

24   and even putting aside the interests of the defendant,

25   just how -- The interests of the plaintiffs, it seems

 1   to me, is to get this case resolved.

 2          It's not going to be resolved through

 3   mediation.  We've tried that.  We failed.  We thought

 4   we had an agreement, we don't.

 5          So we've got to try the case, and let's get

 6   it tried, but this new round of discovery which the

 7   interveners are seeking, seems to me, is -- I'm not

 8   suggesting to counsel that she's -- she filed these

 9   motions to be dilatory, but the affect of it is that

10   it's dilatory, and that's sort of a preface to whatever

11   it is that plaintiffs have to say, and whatever Mr.

12   Robinson has to say.

13          So let's move ahead.  New counsel -- There's

14   new counsel here, I guess, for the EEOC.  Let me --

15          MR. BURSTEIN:  Yes, Your Honor.  Jeffrey

16   Burstein for the plaintiff, EEOC.

17          THE COURT:  Okay.

18          You've filed an appearance now, Ms. --

19          MR. BURSTEIN:  Yes, Your Honor.

20          THE COURT:  -- Lilian's out of the case, so

21   you're replacing her?

22          MR. BURSTEIN:  That's correct, Your Honor.

23          THE COURT:  Okay.

24          And I take it from your -- from the agency's

25   point of view, you're ready to try the case in

1    September, or not?

2            MR. BURSTEIN:  Well, we're going to go ahead

3    in September.  We do have additional discovery.  We had

4    a stipulation that we entered into with defendant.

5    There are depositions that are scheduled to start on

6    Monday of next week, that we intend to take, and so

7    there is some more discovery.

8            I was told by Mr. Robinson that certain

9    discovery that I was expecting, in terms of

10   supplemental interrogatories and document requests,

11   while they hadn't been fully furnished as of the

12   beginning of this week, were sent to the mail, to me,

13   so I should be receiving them before the deposition

14   next week.

15           So, we fully intend to go ahead in September,

16   but we still have some outstanding issues relating to,

17   primarily individual claimants who are still employed

18   at Beauty Enterprises, and things that may have

19   occurred since the time of the first trial in 2005.

20           MR. ROBINSON:  And we stipulated, Your Honor,

21   after it became clear that we were going to trial, and

22   there was talk about what, if any, additional discovery

23   would be taken, discussions from my part was that if

24   there were new incidents or allegations of

25   discrimination or retaliation involving the charging

1   parties or claimants or interveners, and they were

2   identified to me, then limited discovery for the

3   purposes of exploring those allegations would be

4   appropriate, and it would be appropriate without

5   amending the pleadings, without supplementing the

6   discovery, and to identify and pin down specifically

7   what the new claims are, and the EEOC and Beauty

8   Enterprises have had no difficulty whatsoever, making

9   arrangements for these things, complying with

10  discovery, or working through to comply with discovery

11  related to those limited topics.

12          We're here today on a different front.

13          THE COURT:  So the depositions that Mr.

14  Burstein referred to are going to go forward next week

15  and the --

16          MR. ROBINSON:  Those are the ones that have

17  been scheduled -- Well, when you began your remarks --

18  your introduction, I think you neglected to mention,

19  but I'm sure you're aware, that we filed a motion for a

20  protective order concerning noticed depositions of a

21  variety of individuals, depositions noticed by the

22  plaintiff/interveners, and one of the concerns that led

23  to us having this hearing today, is that the EEOC and

24  Beauty Enterprises had agreed on the limited

25  depositions they wanted to take, and we're doing them

1    next Monday and Tuesday.  There will be four of them,

2    and then they'll be relatively brief.  They should be

3    relatively brief.

4            The issue became what Ms. Calafiore's

5    participation would be.  I was perfectly willing to

6    allow her to participate within the general scope of

7    the inquiry, but not to convert those depositions into

8    the kind of discovery that she's apparently intending

9    to, and hoping to conduct, and I told her we would

10   object to that.  She wouldn't agree to the limitation,

11   so I guess that's why we're here.

12           THE COURT:  Ms. Calafiore?

13           MS. CALAFIORE:  Your Honor, first of all,

14   good afternoon.

15           THE COURT:  Good afternoon.

16           MS. CALAFIORE:  My co-counsel, unfortunately

17   couldn't be here today, but I'm here on behalf of

18   plaintiff/interveners.

19           I'm gonna address first, your two concerns,

20   if you allow me to.  You said your first concern wasn't

21   until -- if we proceed with discovery, this case may

22   not be ripe for trial in September.

23           As far as I'm concerned, we're working very

24   hard to prepare for the trial, despite the fact that

25   we're pursuing discovery, which should have already

1    been provided to us contemporaneously, and as Your

2    Honor knows, we represent these clients on a pro bono

3    basis, so we definitely have no interest whatsoever, to

4    extend these proceedings anymore than needed to.  We

5    are not trying to, you know, implement some kind of

6    dilatory practice at all, so we are ready -- preparing

7    for trial.

8             At the same time, Your Honor, there are

9    things that I highlight in the motion to compel that

10   are highly concerning, and this has nothing to do with

11   the wanting to get from the defendant, things that we

12   wouldn't normally be entitled to, and there's the -- I

13   described in the motion, we have done everything since

14   our conference here with Your Honor in November.

15            We have been extremely diligent in trying to

16   work with the defendants, and trying to find a way that

17   we could accommodate them.  We have not been able to

18   reach a stipulation, despite the fact that we asked for

19   that stipulation several times, but he said, "I'm not

20   gonna stipulate with you, anything."  All he wanted to

21   give us was what had already been given to the EEOC

22   which, by the way, Your Honor, we've been trying to get

23   stuff from the EEOC.

24            We worked with the former EEOC lawyer,

25   Palacios, for the last three years, trying to get

1    things, and even -- and she was incredibly helpful, but

2    unfortunately, there were situations where she could

3    not help us because she was just one person, she

4    couldn't make copies.

5          So with new lawyer person, we were able to go

6    to the EEOC last week, just to give you an example, and

7    select additional documents that were never provided to

8    our client.

9          As Your Honor knows, before the trial -- The

10   first trial was scheduled in 2005.  We addressed with

11   Your Honor, the issue of the defendant never having

12   answered the complaint.  He put an answer in three

13   years later.  He had never, up until that date,

14   produced anything, not one page, to our clients,

15   nothing at all.

16         The fact that he claims that somehow the EEOC

17   has given us everything is not true.  The EEOC has

18   given us some documents, but unfortunately, despite our

19   diligence, and I can't even begin to tell you how much

20   money our firm has spent to actually collect

21   everything, put everything electronically, trying to

22   figure out what it is that we have, what it is that

23   we're missing, and finally, when we've put it all

24   together, the defendant was just, like, so incomplete.

25         Even if you were to just look at the EEOC

1    request, they did not respond to anything.  As I

2    mentioned in the motion to compel, for instance,

3    electronic documents were already within those

4    requests.  They did not produce one single e-mail.

5           Now, I have knowledge, from new witnesses,

6    that they, in fact, were using e-mails.  The defendant

7    itself has agreed, in response to one interrogatory,

8    that they, in fact, did not retain e-mails for at least

9    two years, during a period in which this litigation was

10   pending.

11          So, I'm really apologetic for the fact that

12   we're here on a discovery issue.  I don't want to waste

13   this Court's time at all, but I feel that I owe it to

14   our client to try to seek these documents, which

15   normally, every defendant in a litigation in the United

16   States is obliged to produce, and they just refuse to

17   produce them.

18          They have given us 400 documents recently

19   which, when you look at them, it's -- Okay, I don't

20   want to be difficult, but these documents are so

21   incomplete we can't discern even -- Just to give you

22   another example, on -- we have an issue concerning a

23   forklift test.

24          They gave us some forklift exams with their

25   grades.  They didn't give us any documents concerning

1    how do you discern what's a passing grade, what's a

2    failing grade, nothing.  They didn't give it to us.

3    They didn't give it to the EEOC.  We went through all

4    of the EEOC's files.  It was Bates numbered documents

5    that we were able to receive, because finally, the

6    defendant has given us those files in March, and

7    there's nothing in there.  The defendant claims that we

8    are supposed to (unintelligible) some kind of

9    deposition.  Deposition doesn't tell us exactly what

10   was going on with those tests.

11            Yes, the deposition does tell us that they

12   received documents from a company outside of Beauty

13   Enterprises, which told us how to administer these

14   exams.

15            So, as I said, this is just one example of

16   many situations that I've highlighted in the motion to

17   compel.

18            I went through the motion to compel again.  I

19   tried to withdraw as many requests and interrogatories

20   as possible, in an effort to be extremely cooperative,

21   which is what I've really tried to do with the

22   defendant throughout the last five months.

23            For instance, had I known that the defendant

24   was intending to take deposition now, I would have

25   filed a motion in January, and saved these five months,

1    and not be now, in May -- the middle of May, and have

2    to come before Your Honor and request that they produce

3    the documents that they haven't produced, because it

4    seems to me that our cooperation, and the hours we

5    spent on the phone, and the hours we've spent waiting

6    because defendant's counsel would tell us, "Oh, I'm in

7    Florida this week.  I can't give it to you," and we're

8    always very patient which, in fact, some kind of game

9    by which we would be delayed until now, and we wouldn't

10   be able to argue to the Court that they, in fact,

11   haven't produced what they are suppose to produce to

12   us.

13          And as Your Honor knows, after the first

14   trial in 2005, it was quite unfortunate we weren't able

15   to select a jury, but we would have pursued this very -

16   - as vigorously as possible on behalf of our client.

17   It's our obligation.

18          I can't just close an eye and -- I wish I

19   could, but I can't, because he answered in August of

20   2008, three years later, and had I known the settlement

21   we had wasn't a settlement, we would have used the two

22   years that apparently were just wasted, to pursue that

23   discovery, and right now, I find myself in a situation

24   where we're really working hard to follow those tasks,

25   and yet, he's being obstructive.

1             Just to move on to the issue, for instance,
2    of the depositions next week, we were all in agreement
3    about this date.
4             THE COURT:  Who's being deposed next week?
5             MS. CALAFIORE:  Next week, is -- for certain,
6    is Mr. Cohen, Mr. Sussman, Mr. Lopes and, as of
7    yesterday, Mr. Pineros.
8             What happened is, as I explained in the
9    opposition to the protective order, we agreed to the
10   dates, and then we agreed -- I personally agreed with
11   defendant's counsel that we would serve formal notices
12   of deposition, and because we couldn't come to an
13   agreement as to scope, we would then -- he would then
14   file a protective order to try to limit the scope.
15            Now, his idea of limiting the scope, and this
16   is why I couldn't agree, is that we can't ask anything
17   from a certain date on when, in fact, in April of 2003
18   they produced, in response to our discovery request,
19   new documents going back, for instance, to this
20   forklift exam, which is a 2001 issue.
21            Now, I have this new documents that they
22   should have produced before, but yet, I wouldn't be
23   able to ask these witnesses anything about these
24   documents.
25            A separate example, the defendant hasn't

1    produced complete files of our clients.  As I stand

2    here today, we have no records, except for very

3    scattered documents of what our own clients were

4    getting paid.  I mean, that's the minimum that we ought

5    to get in any kind of litigation involving some kind of

6    employment claims, and yet they think that that's,

7    like, somehow, you know, asking too much.

8              The other issue, which is very, very --

9              THE COURT:  I don't understand that.

10             Why do you need from -- I mean, it would be

11   helpful, of course, but can't -- Your clients know what

12   they were being paid, don't they?

13             MS. CALAFIORE:  Your Honor, my clients --

14             THE COURT:  They filed tax returns.  They get

15   W2s.

16             MS. CALAFIORE:  Your Honor, my clients have

17   worked at this company, at least a couple of them, for

18   over 20 years.  Actually, one of them for over 20

19   years, close to 29 years this year.  The other one has

20   worked there 17 years, and then I have a couple of

21   clients that have worked there for three years, two

22   years, one year.  I need to see, from the company's

23   records, what they were getting paid.

24             In addition, I have reason to believe that my

25   clients' pay may have been affected after they filed

1    the complaint, and during this whole issue about

2    (unintelligible), as well.  So, I need to understand

3    how, in fact, they were paying these people, what was

4    the process of deciding what their wages were, whether

5    they were, in fact, also trying to discriminate in that

6    regard?

7           For instance, one other example that I

8    indicated in the motion relates to my client, Eva Diaz,

9    who still works at the company.  Ms. Diaz reached her

10   25th year anniversary, so to speak, at the company, I

11   think it was right before the -- in 2004, I think it

12   was.  I have the correct date in the motion.

13          Now generally, as we understand it, what the

14   company does when they've reached this milestone

15   anniversary, they give a bonus, and they give some

16   special recognition to that -- to the individuals.  Our

17   client was not recognized.  She wasn't -- She didn't

18   receive a bonus, and I feel that I must inquire into

19   what's going on there, because that's evidence that

20   they were, in fact, affecting her wages.  In fact,

21   there is a case law that recognizes a bonus as wages.

22          So, I'm not trying to ask them for what I'm

23   not entitled to.  I don't -- I have no interest

24   whatsoever, in looking at documents that don't pertain

25   to our clients' claim.  We are extremely busy, and

1    really, Your Honor, working around the clock to make

2    sure that these clients get the best possible

3    representation they can, but I don't know what else to

4    do, and I feel that despite our efforts over the last

5    five months, which wasn't very much after Your Honor

6    decided not to grant our motion to enforce a

7    settlement, we're back at Square 1, where we've

8    received scattered documents, new documents which are

9    old --

10    THE COURT:  But if the case had gone to trial

11    in September of 2005, you wouldn't have a -- you

12    wouldn't have any of this that you're now seeking.  The

13    case would have been tried in 2005, and --

14    MS. CALAFIORE:  I understand, Your Honor.

15    THE COURT:  So I don't -- I'm puzzled by why

16    it's suddenly necessary for all of this information,

17    which you wouldn't have had, or hadn't asked for, --

18    MS. CALAFIORE:  Because new things --

19    THE COURT:  -- or hadn't sought in September

20    2005?

21    MS. CALAFIORE:  Well, first of all, we didn't

22    have an answer.  As you know -- As Your Honor knows,

23    they responded to our complaint in August of 2005, so I

24    think that, right there, would entitle us to at least

25    be able to seek information.

1          I mean, all the sudden, they are denying our

2    claims.  We have claims that are additional to what the

3    EEOC has.  That's the whole purpose of having

4    interveners as a right, because they represent their

5    own interests.

6          So, I agree with Your Honor that if we had

7    gone to trial we may have never discovered what we

8    ended up discovering, that to date -- their wages may

9    have been affected, as well as other things, but the

10   fact of the matter is that we didn't go to trial, and

11   we did spend two years -- I -- Had I known we would be

12   here today, yes, in hindsight, during the settlement

13   negotiations, I would have pursued this discovery then,

14   but I know that while we were doing the settlement,

15   Your Honor would probably not have allowed us to pursue

16   this kind of discovery, and that I think we're trying

17   to do it in as expediency a fashion as possible, and

18   trying to find a way to agree with the defendant, but

19   he's really withholding documents.

20         It's, frankly, impossible for me to think

21   that he has decided he's not gonna produce or search

22   for any electronic documents, when all of the rules in

23   the world require him to have a litigation hold.

24         I just -- I feel like maybe our clients will

25   need to file a claim for spoliation of documents.  I

1  don't know what else to do, Your Honor, but when he

2  admits that he, in fact, did not retain documents, and

3  he doesn't want to provide any proof as to what he

4  searched, I don't know what else I'm expected to do,

5  you know, unless, you know, I'm gonna be subject to

6  some kind of malpractice claim because, frankly, it's

7  not -- In every other case I've been on, it's not --

8  just not permissible that I decide on behalf of my

9  clients, that I'm not gonna search their files because

10  I don't think this case is about documents.  I have

11  never heard of that before and, of course, you know, my

12  years of experience are not very extensive, but maybe

13  I'll hear that again.  I hope not.  I hope that

14  something that's --

15          THE COURT:  Well, let's try to -- Mr.

16  Robinson mentioned the depositions next week, --

17          MS. CALAFIORE:  Yeah.

18          THE COURT:  -- which you plan to attend, --

19          MS. CALAFIORE:  Yes, Your Honor.  I --

20          THE COURT:  -- and apparently, at those

21  depositions, you want to be able to participate and

22  question the witnesses after Mr. Burstein is

23  questioned; is that correct?

24          MS. CALAFIORE:  Well, actually, we noticed

25  the --

1              THE COURT:  Is that a fair statement?

2              MS. CALAFIORE:  -- deposition.  We even set

3     up for the court reporter, just to show Your Honor that

4     we -- we're actually in this all together.

5              Yes, I would like -- You know, I don't care

6     who goes first.  We would like to --

7              THE COURT:  So tell me --

8              MS. CALAFIORE:  Yes.

9              THE COURT:  Just tell me now, the areas of

10    your inquiry.

11             Where are you going?  What are you -- What is

12    it you're seeking to --

13             MS. CALAFIORE:  We're not gonna reask the

14    same questions that were asked in previous depositions

15    insofar as, you know, we're not gonna repeat the whole

16    thing, but we will need to inquire into areas that are

17    relevant to our clients' claims.

18             THE COURT:  For example?  Give me an example.

19             MS. CALAFIORE:  For example, wages.  For

20    example, I noticed the deposition of Mr. Carabetta, who

21    has -- who is the comptroller of Beauty.  He's never

22    been deposed, and in some of the new documents that

23    they provided, the -- it seems like Mr. Carabetta was

24    in charge of -- or at least had knowledge about how

25    wages were set, et cetera, et cetera.

1           In addition, Mr. Carabetta, who is not one of

2    the four deponents that we already discussed, but he

3    has been noticed for deposition, he was -- this new

4    witness that we have, has provided us evidence that --

5    I mean, not provided us physical evidence, but has

6    informed us that Mr. Carabetta has information about

7    health insurance and other issues affecting wages,

8    which would be relevant to our clients, so I'd like to

9    be able to explore issues pertaining to our claims, and

10   proceed with the deposition.

11           It's not gonna affect anyone.  If Your Honor

12   wants to exclude them at trial, you can --

13           THE COURT:  Okay.

14           What's the problem with that, Mr. Robinson?

15           MR. ROBINSON:  Well, I'd like to be heard,

16   generally, because what's being portrayed begins with

17   assumptions that are just totally unwarranted.  She

18   stands up here as if she has some right to do what she

19   did, and she has absolutely no right, whatsoever.

20           Then she complains about my voluntary efforts

21   to try to get her some of the things she wants, that

22   either were given to the EEOC and she should have had,

23   or relate to the two or three incidents that the EEOC

24   is inquiring into, and complains about it like I'm a

25   discovery miscreant.

1          I'm not a discovery miscreant.  If I were a

2    discovery miscreant, you would have heard about it a

3    long time ago in this case.  Somehow, some way, with

4    her predecessors from PRLDEF, in the case all along, in

5    the case all along, they participated in all of the

6    depositions.

7          Nobody ever called me up and said, "Hey,

8    Rick," you know, you -- "I know you answered the EEOC's

9    complaint, and I know ours really mirrored the EEOC's

10   complaint," with a tack on, "certainly the factual

11   allegations, with a tack on for a 1981, a tack on for

12   the state (unintelligible) act," just -- you know, a

13   different cause of action, "why did you file an

14   answer?"  Nobody said that, and obviously, the failure

15   to file an answer wasn't an excuse for her predecessor

16   to conduct the discovery that she wants to conduct now.

17         What she is doing is trying to conduct

18   discovery years after the discovery deadline closed,

19   and the ground -- and what she really wants to do is

20   conduct the discovery that her predecessors failed to

21   conduct.

22         Apparently, she's looked at the discovery

23   that the EEOC conducted, and finds that want -- and

24   she's -- and certainly, because her predecessors

25   attended virtually every deposition, had every

1    opportunity to file their own interrogatories, had

2    every opportunity to file requests for production, and

3    didn't, and it was a prudent decision not to, because

4    the EEOC was doing an excellent job in the case, we're

5    all working cooperatively, and there were no problems

6    in getting information.

7         Now, we -- And layered on top of that now, is

8    the big firm, New York lawyers' view that Beauty

9    Enterprises is the functional equivalent of General

10   Motors, and that this case is like an anti-trust case,

11   or like a patent case, and there's got to be reams and

12   reams of documents, and there's got to be all sorts of

13   e-mails going for us.

14        We didn't have litigation holds on e-mails

15   back in 2001.  That little old AOL system that a few

16   guys had, and Bob Cohen still screws around with the

17   AOL system today, to e-mail some personal things, which

18   is most of what he does in his office, dealing with

19   personal things.  I just don't know where to begin.

20        The EEOC said, "Enter into a stipulation to

21   reopen the discovery period."  She's filed discovery

22   without even attempting to file a motion to reopen the

23   discovery period, and now -- and to save the Court the

24   grief of going through, one by one, each and every one

25   of these 48 interrogatories, 48, the 25 limit, you've

1    got five clients, she says, but these are all common

2    interrogatories that -- in demand, and then, if you

3    begin to count the subparts, I mean, you're getting way

4    over three figures, in terms of information that's

5    wanted.

6         Doesn't matter to her.  Doesn't matter.  She

7    has her own rights.  She creates her own rights, and

8    asks you to enforce them when the federal rules and

9    your own orders deny her those rights, and we're

10   entertaining all this stuff.  It's absurd.  It's

11   ridiculous.

12        We were ready to try this case in 2005.  I

13   cooperated with the EEOC to give them additional

14   information today, on things that are clearly relevant.

15        She talks about Eva Diaz as if -- and the

16   incident where she didn't get her pin.  I knew about

17   the incident where she didn't get her pin.  We're going

18   to be inquiring.  That's part of our stipulation.  That

19   happened after the discovery period, at or about the

20   time of the aborted trial.  Fine.  I know about that

21   allegation.  They told me about it.  I addressed it in

22   discovery.  I addressed it in discovery with her.

23        As a matter of fact, let me tell you the

24   level of cooperation I get from her.  I go to the

25   client and I say, "You know, when the Eva Diaz incident

1    came up, I didn't take careful notes," and they sort of

2    explained to me what this 25-year reward is, and

3    employees who were there 25 years, if they're female,

4    they get a pin -- a diamond pin.  If they're men, they

5    get a watch, and there's a ceremony where the

6    recipients come in together with the supervisors and

7    Mr. Cohen in the conference room, and he gives it to

8    them and says a few words.

9          Nobody at Beauty remembered -- There was

10   something that she didn't get.  There's no question

11   about it, but we don't -- She didn't attend the

12   ceremony.  She wasn't invited to the ceremony.  Nobody

13   there can remember whether she got the pin.  I called

14   her up, and I said, "What's the allegation?"  Is --

15   "Because here's the problem."  She says, "I'm not

16   telling you.  Why should I tell you?  I'm gonna depose

17   this one.  I'm gonna depose that one.  I'm gonna find

18   out.  I have no obligation to tell you."

19          I said, "Valeria, cooperate with me.  I'm

20   trying to get you information about your own

21   allegation, but you haven't told me what your

22   allegation is.  I don't want to guess at it."

23          THE COURT:  Relax, Mr. --

24          MR. ROBINSON:  I've had a tough week, you

25   know.  I had a tough week, and this is just part of it.

1          In terms of the -- She talks about wages.  We

2     don't put their wages in their personnel files.  They

3     have everybody's personnel files.  Nobody ever asked me

4     for wage information in the earlier part -- the pre-

5     aborted trial part of the case.  Nobody complained

6     about the absence of wage information because there's

7     no allegation of any discrimination, in terms of wage

8     payments or wage establishment, and there's none now.

9     There's none now.

10          This is a fishing expedition for new

11    allegations, and if they wanted to fish, and they had

12    any right to fish at all, the fishing should have been

13    done four or five years ago.  The --

14          THE COURT:  Let me ask you this question, Mr.

15    Robinson, and Ms. Calafiore, you can respond.

16          Let's assume that the Court says today, or in

17    a ruling, that, "It's too late.  You had plenty of

18    time.  I want to get this case tried.  I'm not going to

19    permit any of this."  What's to prevent Ms. Calafiore,

20    at the time of trial, and let's assume we go forward in

21    September, from issuing subpoenas -- trial subpoenas to

22    your client and his staff, seeking the same

23    information, ordering them to -- or subpoenaing them to

24    -- duces tecum, to bring all this information to -- and

25    bring it to court when they testify, and then she would

1    say, "Well, I need time to look at it," or if the Court

2    didn't give her time to look at it, she could start

3    fishing through it, and while they're on the witness

4    stand, during the course of the trial, in the presence

5    of the jury, essentially conducting discovery?  Is that

6    a possibility?

7            MR. ROBINSON:  What's to prevent her?

8            THE COURT:  Pardon?

9            MR. ROBINSON:  What's to prevent her?

10           THE COURT:  Yes.

11           MR. ROBINSON:  My objection, and hopefully,

12   your sustaining the objection, that this is discovery

13   that should have been conducted during the period when

14   discovery was open.  They had every opportunity in the

15   world to conduct that discovery, and now this is just

16   an attempt to -- In a case where each side has

17   presented their exhibit lists, their witness lists,

18   everything, the only thing that remains open are two or

19   three new identified allegations.

20           If she's gonna fish around at trial for

21   evidence of wage discrimination when (a) it's not

22   alleged, (b) it's never been identified in any

23   discovery, as a claim of discrimination, as a claim of

24   retaliation, it's never been, then I think that in your

25   role as the manager of the trial and the enforcer of

1    the rules, that you just wouldn't let that happen, not

2    in your courtroom.

3            MS. CALAFIORE:  May I respond, Your Honor?

4            THE COURT:  Sure.

5            MS. CALAFIORE:  I'm gonna start by saying

6    that Mr. Robinson, I think generally, has been very

7    successful in -- not successful, at least -- but has

8    always attempted to use his intimidatory behavior, even

9    representing to us what this Court would do, apparently

10   knows very well, in his mind, how this Court would

11   rule, and I guess that's his tactic to try to make us

12   give up when something is so obvious, that his client

13   has withheld relevant and discoverable documents.

14           What happened -- In 2005, and I will

15   acknowledge this, at that time, we had not realized how

16   many documents he'd withheld.

17           Now, apparently, he's trying to cover up for

18   something that's completely unjustified under any rule.

19   That's why, to me, it's frankly unbelievable that he

20   has the face to appear before this Court and tell this

21   Court that we're doing something outside of the rules,

22   when he is the one that even suggested we proceed this

23   way.

24           So, I feel that if this Court decides to let

25   the defendant get away with a number of things,

```
 1   including withholding documents that should have been
 2   produced, or selectively producing, at the eleventh
 3   hour, documents of which we're not even allowed to
 4   question witnesses, except at trial, without -- with
 5   causing major disruption at the trial, and preventing
 6   us from properly preparing for the trial, I feel it's
 7   not the outcome that should be had, especially when we
 8   are faced here, with people that have extremely limited
 9   financial means, and have tried their best to find
10   legal --
11             THE COURT:  Well, for example, this isn't a
12   wage case, is it?
13             MS. CALAFIORE:  Your Honor, let me address
14   this point.
15             Defense counsel claims that we can only raise
16   wages if we have an equal payout claim, and this is --
17             MR. ROBINSON:  I never said that.
18             MS. CALAFIORE:  -- completely untrue.  Yes,
19   that's --
20             MR. ROBINSON:  No, I didn't say that at all.
21             MS. CALAFIORE:  Your Honor, --
22             THE COURT:  Let her finish.
23             MS. CALAFIORE:  We have numerous claims,
24   including disparate treatment.  Whether the conduct of
25   the defendants against our clients affects the wages,
```

1    it's completely discoverable.  It's part of claims,

2    always has been part of our claims, and it has nothing

3    to do with having to disclose to the defendants, every

4    second, minute, what exactly we're gonna prove at the

5    trial.

6            I mean, I have never heard of that, but it

7    seems that the defendant again misrepresents our

8    conversations, because the -- it's -- but I'm not here

9    to discuss about his conduct.  I just want to stay

10   focused on our claims, and our claims include disparate

11   treatment, retaliatory discharge, retaliatory conduct

12   of different kinds, and there is no obligation under

13   the rules that we detail every little fact that we

14   think may have been -- that -- in which we think they

15   have been affected.

16           The way this clearly were affected, as it

17   stands today, we discovered this fact now, they

18   withheld documents.

19           They actually, Your Honor, produced selective

20   documents as --

21           THE COURT:  Is your complaint broad enough to

22   include --

23           MS. CALAFIORE:  Yes.

24           THE COURT:  -- these claims?

25           MS. CALAFIORE:  Yes, Your Honor, and, in

1    fact, he never filed the motion to dismiss.  So our

2    complaint is very broad.  He --

3              THE COURT:  Well, where in your complaint do

4    you make these allegations?

5              MS. CALAFIORE:  We are --

6              MR. ROBINSON:  And more important, where, in

7    the discovery that I filed, "Give me all the

8    allegations of retaliation and discrimination."

9              Is there a single mention --

10             MS. CALAFIORE:  You know --

11             MR. ROBINSON:  Well, I'm sorry.  I'm sorry.

12             MS. CALAFIORE:  I'm sorry, I'm still talking.

13             MR. ROBINSON:  There is a single --

14             THE COURT:  Let her finish.

15             MS. CALAFIORE:  Your Honor, he's never served

16   us with any discovery, despite us even making available

17   to him --

18             THE COURT:  No, my question --

19             MS. CALAFIORE:  -- our clients' --

20             THE COURT:  My question, Ms. Calafiore,

21   was --

22             MS. CALAFIORE:  I'm not --

23             THE COURT:  -- where in your complaint, are

24   there allegations with respect to wage discrimination

25   and --

```
 1              MS. CALAFIORE:  We have (unintelligible)
 2    allegations concerning retaliation and --
 3              THE COURT:  Concerning what?
 4              MS. CALAFIORE:  Retaliation and disparate
 5    treatment, and the way our clients have been affected
 6    on the basis of national origin could affect the wages.
 7    I believe --
 8              THE COURT:  But --
 9              MS. CALAFIORE:  -- I can put in a brief --
10              THE COURT:  -- I'm focusing --
11              MS. CALAFIORE:  Yes.
12              THE COURT:  -- on the wage issue -- question
13    now.
14              MS. CALAFIORE:  Yes.
15              THE COURT:  Where, in the complaint, does it
16    say that?
17              MS. CALAFIORE:  I don't believe we talked
18    about the wages, but we have the claims that govern our
19    complaint, which broadly discuss retaliation and
20    disparate treatment, among other things, on the
21    basis --
22              THE COURT:  Well, where -- What does the
23    complaint say about retaliation and disparate
24    treatment?
25              MS. CALAFIORE:  I'm sorry.  I have -- If you
```

1    can give me a moment, I will look.

2              THE COURT:  Where is it?

3         (Pause.)

4              MS. CALAFIORE:  For instance, Your Honor,

5    just -- I'm pulling one claim just randomly out of our

6    complaint filed on November 30, 2001, on behalf of

7    Plaintiff Interveners Luz Andujar and Waleska Miranda,

8    page 10:

9              "Sixth cause of action.  Defendants'

10             discriminatory action are in violation of

11             Connecticut state law."

12             This claim is broad enough that it could

13   encompass whatever discriminatory conduct it -- the

14   defendant's actions permitted and, Your Honor, let me

15   explain why that is, because if that wasn't true, then

16   in a -- in an employment discrimination case,

17   eventually it would be put in that unfair position of

18   having to investigate and uncover every little thing

19   that the defendant's employer is doing quite covertly.

20             In fact, in this case, they even got rid of

21   documents and, Your Honor, I have an additional example

22   that I'd like to bring to your attention, just to show

23   you the extent of the withholding of documents, which

24   is really, really unjustified in connection with this

25   case.

1          So I'm -- I have -- Can you actually pull --

2    just go through the complaint while I continue -- try

3    to -- We'll show you additional example of claims, and

4    I'm happy to put in a brief to Your Honor, explaining

5    why our -- we should be entitled to look into wages, as

6    well.

7          In addition, Your Honor, we have damages that

8    would be affected by the wages.  So we have to

9    understand exactly how these people were paid.

10          They have produced to us, personnel files

11    that are completely incomplete.  It looks like they

12    extracted things from the personnel file, and the

13    reason we know that is because from other documents

14    that they produced, for instance, they were able to do

15    print -- computer printouts showing all of the

16    warnings, or showing portions of the payments.

17          In addition, for instance, we have claims

18    here.  There's one employee, he's not my client, but

19    one employee has been affected, in terms of the extra

20    time  -- overtime that he's being permitted to work

21    and, in fact, my clients, right now, for various

22    reasons, is only able to work 13 hours, and just like,

23    brief --

24          THE COURT:  And your claim is that this all

25    relates to --

```
 1              MS. CALAFIORE:  Retaliation --
 2              THE COURT:  -- retaliation --
 3              MS. CALAFIORE:  -- or disparate treatment.
 4              THE COURT:  -- because --
 5              MS. CALAFIORE:  For instance --
 6              THE COURT:  -- because they are plaintiffs in
 7    this lawsuit?
 8              MS. CALAFIORE:  In addition to that, but also
 9    because we believe that they discriminated against
10    people of Hispanic or Puerto Rican origin.
11              In addition, Your Honor, just to give you
12    another example, recently, three months ago, our
13    client, Eva Diaz, who still works there, as Your Honor
14    knows, was not permitted to go and work overtime on a
15    Saturday, when the rest of the warehouse was.  She
16    specifically asked, and she was not permitted to go,
17    and I believe that that's part of the retaliation and
18    disparate treatment again, at least with regards to our
19    client.
20              So, to say, at this point, that, "No, we're
21    not even" --
22              THE COURT:  But that's a fact that you have
23    to prove.  You would prove it, I assume, by her
24    testimony.
25              MR. ROBINSON:  And I don't have any problem
```

1   with her asking questions at the deposition on that

2   subject.  She told me about that, or the EEOC told me

3   about that.  I know about that.  We -- I responded to

4   her in an e-mail, I think, I think --

5           THE COURT:  So this could be --

6           MR. ROBINSON:  -- or to Lilly in an e-mail.

7           THE COURT:  The -- This could be resolved

8   next week?

9           MR. ROBINSON:  That's not a problem.  That's

10  not a problem.

11          MS. CALAFIORE:  Your Honor, actually, there

12  are various other events --

13          THE COURT:  Well, let me just ask --

14          MS. CALAFIORE:  Yes.

15          THE COURT:  -- Mr. Robinson, as long as we're

16  talking about -- He said, "That's not a problem."

17          Is -- Are there ways that we could cut

18  through all of this and resolve a lot of these issues,

19  Mr. Robinson, if, at the deposition next week, you took

20  a softer line, in terms of your objections to Ms.

21  Calafiore's efforts to go beyond what you might

22  consider to be the limits of what she should be

23  permitted to do, but if you were able to agree that she

24  could do that, wouldn't that help move this thing

25  along?

1           MR. ROBINSON:  Well, it would also help move

2     this thing along if I forfeited all my rights -- all my

3     client's rights.

4           You know, I'm trying to be --

5           THE COURT:  I didn't ask -- I didn't -- That

6     wasn't the question I asked you.

7           MR. ROBINSON:  I know, but I'm trying to be

8     as cooperative as I can be --

9           THE COURT:  Well, why don't you answer the

10    question that I asked you?

11          MR. ROBINSON:  I don't know how to -- I mean,

12    if I were more cooperative, if I gave her more than

13    what I want to give her at the deposition, wouldn't

14    that help?

15          THE COURT:  Yes.

16          MR. ROBINSON:  It wouldn't help me.  It

17    wouldn't help my client.  It would help her.

18          I don't know -- I don't know what -- Help

19    what?

20          I mean, it makes -- may life -- make life

21    easier for you.  I -- You know, I want to make life

22    easier for you.

23          THE COURT:  Well, I'm interested in that, as

24    well.

25          MR. ROBINSON:  I tried to make life easier

1   for you.

2          MS. CALAFIORE:  Your Honor, if I may propose

3   a solution, which I've already addressed with

4   defendant's counsel?  My idea, all along, was that, let

5   us inquire into things that you haven't given us, that

6   you should give us.  You have all the right to object

7   at the trial.

8          We're not gonna take up -- The EEOC's only

9   gonna have very limited questions.  We're not gonna

10  take up more than the time that we would normally be

11  allowed to, you put in your objections, and we move

12  forward and get ready for the trial, and this is not

13  gonna affect anyone.

14         We would be able to take our depositions in

15  an orderly fashion.  We would also seek to have some

16  supplementation of records that they have given us in a

17  scattered fashion, including what I would --

18         THE COURT:  But if he's not -- If Mr.

19  Robinson is not willing to be more forthcoming than

20  he's indicated he intends to be, what would happen, I

21  guess, is that at the deposition you would start to

22  pursue these lines of inquiry, and he'd instruct his

23  client not to answer.  He'd object.

24         MR. ROBINSON:  Well, but I --

25         MS. CALAFIORE:  No --

1          MR. ROBINSON:  If I may?

2          MS. CALAFIORE:  I'm sorry.  I was gonna

3     answer first.

4          MR. ROBINSON:  Well, I may have something

5     that's helpful.

6          If she wants to inquire into what she claims

7     to be missing documents, that's okay.  I'll -- I don't

8     have a problem with expanding the scope of the

9     deposition to include that.

10          THE COURT:  Okay.

11          What about expanding the deposition to permit

12     her to inquire about these wage issues?

13          MR. ROBINSON:  No.  No.  The --

14          MR. BURSTEIN:  Your Honor -- I'm sorry.  Go

15     ahead.

16          MR. ROBINSON:  The only wage issue I remember

17     is the one that she mentioned that was in the case in

18     the beginning, where one of the charging parties, not

19     her client, claimed that they were deprived of some

20     overtime that they otherwise were entitled to.  That's

21     my memory.  It's going back a long time.

22          There has been no claim of wage-based

23     retaliation or discrimination.

24          MS. CALAFIORE:  There --

25          MR. ROBINSON:  Don't you think --

1          THE COURT:  Well, let me hear from Mr.

2    Burstein.

3          MR. BURSTEIN:  I want to correct the record

4    on that, insofar as there are two members of our class

5    who are continued employees at the defendant, who we've

6    identified to Mr. Robinson, and we have claims of

7    retaliation, and I will make the representation right

8    now, that my inquiries in the depositions of at least

9    some of the witnesses, will have some bearing on wages,

10   on the failure to make an individual a full-time Beauty

11   Enterprise employee, as opposed to a temporary

12   employee, which has a direct impact on wages.

13          So those are areas of inquiry, and I want to

14   make it clear, before we even start next week, that

15   EEOC believes, first of all, that it's within the four

16   corners of our stipulation with the defendant, and we

17   intend to inquire into, and we don't think we're at all

18   precluded by the fact that the EEOC complaint filed in

19   2001, while it mentions retaliation, doesn't

20   specifically mentioned wages.

21          So I just wanted to make the record clear

22   that this is an area, at least with reference to the

23   two individuals who are current employees who we've

24   identified to Mr. Robinson, that we also intend to get

25   into next week.

```
 1              MR. ROBINSON:  Well, I am -- I understand the
 2      allegation about the temporary employee who wasn't made
 3      permanent, and certainly, they're entitled to determine
 4      from us, what would have happened to her economically,
 5      had she been made a permanent employee.
 6              THE COURT:  Will all of this be through Mr.
 7      Carabetta?
 8              MR. ROBINSON:  I -- No.
 9              THE COURT:  He's not the person that has the
10      answers?
11              MR. ROBINSON:  Well, he might, but he's not
12      one of the four who's being deposed.
13              MS. CALAFIORE:  He's objecting to his
14      deposition.
15              MR. ROBINSON:  He's not one of them.  The
16      EEOC didn't notice his deposition.
17              MS. CALAFIORE:  I noticed --
18              MR. ROBINSON:  The depositions that are going
19      forward are the ones the EEOC noticed.
20              MS. CALAFIORE:  The EEOC didn't notice any.
21              MR. ROBINSON:  We -- Or the EEOC arranged and
22      wanted.  Ms. Calafiore's participation in the
23      scheduling of those depositions was, as is normally the
24      case, she's a party, she's entitled --
25              THE COURT:  So who's being deposed next week?
```

1            MR. ROBINSON:  Ms. -- Larry Sussman and Paul

2    Lopes, one of the assistant supervisors, on Day 1.  Bob

3    Cohen and Fabian Pineros on Day 2.

4            THE COURT:  Well, are those people who have

5    -- Just to go back to Mr. Burstein's point, are those

6    people in a position to respond to the line of inquiry

7    regarding wages, that Mr. Burstein identified that he's

8    -- intends to pursue?  Are they going to be able --

9    Will -- Do they have the information, the knowledge?

10   If he pursues --

11           MR. ROBINSON:  They can.  I mean, Larry

12   Sussman can.  He can have the information, but I

13   frankly didn't anticipate from -- nor would --

14           THE COURT:  Well, he's telling you now, he's

15   going --

16           MR. ROBINSON:  Yeah.  Well, I'd make sure

17   that Mr. Sussman has information regarding the

18   permanent of the -- the attempt to the permanent issue.

19           MS. CALAFIORE:  Your Honor, may I be heard

20   further?

21           THE COURT:  Sure.

22           MS. CALAFIORE:  My co-counsel has pointed out

23   that factual and legal allegations in our complaint

24   that go to wages, and kindly reminded me of one of our

25   clients, Mr. Harold Acosta, who, from the very

1    beginning, had a claim including wages.

2            This person was a forklift driver for years,

3    for, like, over 20 years, and 16 of those years were

4    spent at Beauty.

5            After the filing of the complaint, they

6    forced on him, this forklift exam on which they don't

7    want to give us any information about, and they don't

8    want to -- I mean, they produced (unintelligible)

9    additional information, and after he failed the exam,

10   he was demoted to a janitorial position, and his wages

11   were decreased from $12 an hour to $9 an hour.

12           In the complaint pertaining to him, we have

13   an allegation, Allegation Number 29 of the complaint,

14   filed on May 22nd, 2002, which says:

15               "Upon information and belief,

16               (unintelligible) at Beauty (unintelligible)

17               similar exams were reassigned to more

18               (unintelligible) positions with a decrease in

19               pay.  Acosta's health and well-being suffered

20               immediately."

21           So from the inception, Plaintiff/Intervener

22   Mr. Harold Acosta had factual allegations concerning

23   wages.  I can list all the others.  I can put in a

24   brief, as Your Honor prefers.

25           These issues were always there.  Whether --

1   The defendant has decided not to disclose this

2   information because they're not -- obviously, they're

3   not helpful to his client, but that's not the

4   defendant's call and, Your Honor, just to exemplify

5   further, defendant's counsel approach is that if he

6   tells me what happened, I'm supposed to go with that

7   and I shouldn't inquire further because he's telling me

8   what happened --

9           MR. ROBINSON:  I didn't say that.

10          MS. CALAFIORE:  -- and the -- Your Honor, he

11  always does that, and despite -- I've been so patient

12  in trying, because he's (unintelligible) always to

13  scream on the phone, which makes it very difficult, as

14  well, and that --

15          THE COURT:  Mr. Robinson screams at you on

16  the phone?

17          MS. CALAFIORE:  Yes, Your Honor, --

18          THE COURT:  That's --

19          MS. CALAFIORE:  -- which is it's fine.

20          THE COURT:  I can't believe that.

21          MS. CALAFIORE:  I know.  It's fine.

22          What concerns me though, about the screaming,

23  is that we end up spending all this time and money to

24  go to the depositions, and he's gonna throw one of his

25  dramatic fit, and then we're not gonna be able to

1    proceed orderly, and actually conduct this discovery

2    parallel with the trial preparation, and all that I'm

3    asking is that he disclose to us, things that he's

4    withheld so far, and that's all, Your Honor.

5            In addition, as I -- We can -- I don't know

6    if Your Honor had a chance to review the motion I filed

7    yesterday.  I tried to file it as soon as possible from

8    discovery of the information --

9            THE COURT:  You're talking about the lady in

10   Florida?

11           MS. CALAFIORE:  Yes, Your Honor, and I know

12   opposing counsel hasn't had a chance --

13           THE COURT:  What is that all about?

14           MS. CALAFIORE:  Your Honor, Ms. Sherry Baker-

15   Lawrence has information relevant to our clients and

16   the claims in this case, and she has agreed to testify

17   at the trial if she can travel.  We don't know yet but,

18   you know, potentially, she would be a cooperative

19   witness.

20           THE COURT:  Who is she?

21           MS. CALAFIORE:  She's a fictitious former

22   employee of Beauty Enterprises.

23           THE COURT:  "Fictitious"?

24           MS. CALAFIORE:  Yes.

25           MR. ROBINSON:  May I address this?

```
 1              MS. CALAFIORE:  Yes, Your Honor.
 2              MR. ROBINSON:  May I tell you who she is?
 3              MS. CALAFIORE:  I'm sorry.  Your Honor, --
 4              THE COURT:  No, let her finish.  Let her
 5   finish.
 6              MS. CALAFIORE:  Ms. Sherry --
 7              THE COURT:  What do you mean, "Fictitious"?
 8              MS. CALAFIORE:  In the sense that she
 9   apparently had a relationship with Mr. Cohen, and Ms.
10   Baker-Lawrence was also employed by Beauty Enterprises,
11   so --
12              THE COURT:  You mean he put her on the
13   payroll?
14              MS. CALAFIORE:  Yes, and so she's given us --
15   She has a lot of knowledge about this case.
16              In fact, Your Honor, just to show this Court
17   how cooperative we've been, we've learned that Mr.
18   Cohen has waived the privilege by disclosing to non-
19   parties, information that -- about his conversation
20   with his lawyer, and we have not filed a motion to get
21   the discovery of those documents.
22              However, that defendant has never, not in
23   eight years of this litigation, produced a privilege
24   log about anything and --
25              THE COURT:  So what are you telling me, that
```

1    this is --

2              MS. CALAFIORE:  I'm telling Your Honor --

3              THE COURT:  Well, just a minute, that this

4    lady is a former girlfriend of his?  Is that what

5    you're saying?

6              MS. CALAFIORE:  She's a former -- Yes, she's

7    a former girlfriend who was also a Beauty Enterprise

8    employee but never actually worked there, and --

9              THE COURT:  Is she from Hartford or Florida?

10             MS. CALAFIORE:  She's actually from somewhere

11   else, but she currently lives in Florida.  She -- I

12   believe she's from Washington state.  She lived in

13   Hartford for a period of time.  You know --

14             THE COURT:  So what is it that you want to

15   elicit --

16             MS. CALAFIORE:  -- we've learned --

17             THE COURT:  -- from her, that somehow or

18   other, in the course of the relationship between her

19   and Mr. Cohen, --

20             MS. CALAFIORE:  We --

21             THE COURT:  -- she told -- or he told her

22   things about the manner in which --

23             MS. CALAFIORE:  Your Honor, --

24             THE COURT:  -- the business was conducted and

25   -- that bear on --

```
 1              MS. CALAFIORE:  Yes.

 2              THE COURT:  -- the issues in this case?

 3              MS. CALAFIORE:  Yes, Your Honor, and I'm

 4     happy to make an offer of proof at the right time, but

 5     I believe it could spoil the upcoming depositions.

 6              In addition, what happened is that on Friday,

 7     she received -- she has been sued by Mr. Cohen in a

 8     matter that's completely unrelated to our case, and

 9     apparently, on Friday, she received a settlement of

10     that case where Beauty Enterprises is not involved at

11     all.

12              In fact, Your Honor, Mr. Robinson knows about

13     that case because we even sent him the complaint.  He

14     asked and he claimed that he couldn't get it from his

15     own client, so I, out of courtesy, sent it to him --

16              THE COURT:  Where is that case pending, in

17     Florida?

18              MS. CALAFIORE:  In Florida.

19              MR. ROBINSON:  This is the complaint.

20              Would you like to see the complaint?

21              MS. CALAFIORE:  It has nothing to do with

22     our --

23              MR. ROBINSON:  It has everything to do with

24     it.

25              May I approach?
```

1          (Pause.)

2               MR. ROBINSON:  It's an attempt to embarrass,

3     disgusting, reprehensible attempt to attempt to

4     embarrass a old man who has -- who's lonely.

5               MS. CALAFIORE:  I don't know what you mean

6     by, "Old man" but, Your Honor, the fact of the matter

7     is that this witness has agreed to provide -- has

8     relevant information, and I -- as I said, I'm happy to

9     make an offer of proof.  I'd prefer to wait until the

10    time is right to make the offer of proof.

11              She's cooperating with us.  He's again --

12    Defendant is again trying to prevent us from making our

13    case, Your Honor, and this is just unacceptable.

14              We have a witness that is trying to be

15    dissuaded into testifying by offer of money.  All of a

16    sudden on Friday, she received this settlement, which

17    lists Beauty Enterprises, who's not even part of the

18    case at all, as a settling party, and requiring her

19    basically to not speak about anything.

20              I don't know how that's permissible, Your

21    Honor.  I know we're asking -- She's agreed to being

22    deposed.  All we're asking is to be able to take a

23    preservation deposition and get her testimony, and if

24    the defendant wants to object at the trial or, you

25    know, before the trial, he's not prevented from doing

1   that.

2        (Pause.)

3            THE COURT:  So this is a witness that you

4   want to depose, and if she's unavailable, you want to

5   have her testimony --

6            MS. CALAFIORE:  Yes, Your Honor.

7            THE COURT:  -- offered at the time of trial?

8            MS. CALAFIORE:  Yes, Your Honor.

9            THE COURT:  Without the jury having an

10  opportunity to see her?  How old is she?

11           MS. CALAFIORE:  I think she must be -- I am

12  not sure.  I guess I shouldn't speculate.  I assume

13  she's probably in her 60s.

14           MR. ROBINSON:  She's in her mid 50s.

15           MS. CALAFIORE:  Your Honor, I'm hoping that

16  she'd be able to attend at the trial, but this

17  settlement would probably -- She believes that the

18  settlement would prevent her from testifying, and what

19  my concern is, is that the defendant will keep trying

20  this, or that she may be unable to travel.  She doesn't

21  have any kind of financial means.

22           I don't know what's gonna happen, and right

23  now we are able to do this in an orderly fashion.  It's

24  not gonna hurt anyone.  She's gonna give a trial

25  deposition, which is very common, and he can object at

1    the trial.

2            THE COURT:  So you -- You're going to go to

3    Florida to take her deposition, and Mr. --

4            MS. CALAFIORE:  Yes, Your Honor.

5            THE COURT:  -- and Mr. Robinson would go to

6    Florida, or I -- or Mr. Cohen's represented by counsel

7    in Florida?

8            MS. CALAFIORE:  Yeah, he has counsel in

9    Florida.

10            MR. ROBINSON:  Well, that's -- Mr. Cohen's

11    represented by counsel, but Beauty Enterprises, I

12    represent Beauty Enterprises.

13            MS. CALAFIORE:  That's strange, Your Honor,

14    because I have the settlement here, and apparently,

15    Beauty Enterprises is represented by that counsel, as

16    well.

17            MR. ROBINSON:  My understanding, and I

18    haven't seen that -- She knows more than I do about

19    this case, because apparently, for obvious -- for

20    reasons that are altogether obvious, Ms. Sherry Baker-

21    Lawrence is cooperating with her.

22            We have a -- There's a confidentiality

23    provision that's sought, that's standard in agreements

24    like this, probably a nondisparagement too, that

25    doesn't prevent anybody from testifying pursuant to a

1    lawful subpoena, or a court order, or anything of that

2    order -- anything of that nature.  There's no

3    prohibition on her testifying.  We couldn't do that,

4    and we wouldn't do that.  That's absurd.  For her to

5    even suggest that --

6           MS. CALAFIORE:  Your Honor, --

7           MR. ROBINSON:  -- is reprehensible.

8           MS. CALAFIORE:  Your Honor, --

9           MR. ROBINSON:  Your Honor, if I may, this is

10    -- You know, at first, she said, "Do you have any

11    objection to our taking Sherry Baker-Lawrence's

12    deposition?", and I said, "You bet I do."  And she

13    says, "Well, I'm gonna file a motion."  I said, "Be my

14    guest."

15           So I get the motion over the e-mail this

16    morning, and I look at it, and it's a, I guess, de bene

17    esse, the term -- that's the term for taking a

18    deposition to preserve testimony, and my initial

19    thought was, "Well, gee, I mean, she wants -- It's a

20    witness.  I can't object to a witness.  You know, maybe

21    I could object to the testimony, but not the witness."

22           So I asked one of my associates to just take

23    a quick look at some of the cases, and apparently the

24    federal rules treat these de bene -- There's no special

25    treatment under the federal rules for de bene esse

1    depositions, that they are Rule 32 depositions, and

2    they're subject to the discovery deadlines.

3            Obviously, there may be circumstances where

4    someone's about to die, where the discovery deadline

5    could be extended, and the deposition taken to preserve

6    testimony for presentation here, but you really have to

7    make a showing to get one of these if there's

8    objection, as there is here, and you have to make a

9    showing -- a real showing of unavailability.

10            All the documents that have been submitted to

11    you say she's a cooperative witness.  She's willing to

12    come up and testify, et cetera, et cetera, et cetera.

13    So I don't know -- Obviously, she's not within the

14    subpoena power, but she's cooperating.  She's very

15    happy to retaliate, to borrow a phrase, against Bob

16    Cohen, who perhaps grew upset because he was defrauded,

17    and she took money from him, and she did other things

18    that are listed in the document, but she's cooperating.

19    So, on that basis, there's -- there hasn't been a

20    sufficient showing of unavailability to warrant it.

21            Moreover, if at this late date you're going

22    to even entertain the idea of allowing this deposition,

23    then it -- the cases seem to suggest she has to make a

24    showing, Ms. Calafiore has to make a showing, that

25    there's really a need for this witness, that she just

can't say, "She has information that's relevant to the

case."  She's got to tell you what it is.  She's got to

tell you the basis for it, and that has to be part of

your -- I have to have the ability to respond to that,

and that has to be part of the consideration.

MS. CALAFIORE:  Your Honor, if I may respond?

It seems like there is a trend here that every time the

defendant tries to withhold anything from the case,

there's no showing required, but whenever we seek to

get something, there's this massive, big showing that

we have to make.

Your Honor, in fact, what the law is, is that

if a witness is outside of the subpoena power of the

Court, the plaintiffs, or the party who seeks to depose

the witness, has a right, potentially, subject, of

course, to Your Honor's discretion, to take the

deposition.  I have made my showing.  I believe I can

make a further showing, if Your Honor requires.  I'm

very happy to do so.  I think that --

THE COURT:  Well, the matter is not ripe

because you just filed this motion yesterday.

MS. CALAFIORE:  Yes, Your Honor.

THE COURT:  Mr. Robinson, of course, has --

is going to respond, --

MS. CALAFIORE:  Of course.

1          THE COURT:  -- and so it's not ripe.  So I

2    suppose we shouldn't spend anymore time on this until

3    he responds, and then we'll have to make a -- the Court

4    will have to make a determination as to what -- whether

5    she's going to be deposed or she's not going to be

6    deposed.

7          So let's put that aside --

8          MS. CALAFIORE:  Yes.

9          THE COURT:  -- and get back to try to resolve

10   these other issues here.

11         MS. CALAFIORE:  So, Your Honor, just to

12   clarify on the deposition side, what's going on, so we

13   served, I believe, seven deposition notices, four of

14   which include depositions of individuals who that you

15   see (phonetic), and the defendant have stipulated to

16   depose, and these individuals are Mr. Cohen, Mr.

17   Sussman, Mr. Lopes, and now Mr. Pineros, who was agreed

18   to yesterday.

19         So that leaves -- What the plaintiffs would

20   request is that within the bounds of the deposition

21   time that we're normally allowed, within the seven-hour

22   day, and hopefully less, because we don't intend to

23   make this longer.  We want to get in and out, get the

24   information we're entitled to, and move on.

25         We would request that we be allowed to make

1    -- to question the witnesses, and that the defendant be

2    only permitted to instruct the witness not to answer

3    only if it's privileged information, and then if

4    there's any other objection, to take those up with the

5    Court before the trial, so that we can move forward,

6    and it's not gonna hurt them because Your Honor is not

7    gonna allow the information into evidence.  If there's

8    nothing the defendant has withheld or is withholding,

9    there is no reason not to proceed in this way, and,

10   Your Honor, I represent personally, to this Court, that

11   we are going to try to make these depositions as quick

12   to -- as possible.

13        With regards to the three outstanding

14   depositions that the EEOC and the defendants have no

15   agreement over, which we've noticed, this includes the

16   deposition of Mr. Carabetta, the controller, Mr. Ross

17   Smith, and Mr. Tom Buonocuore, who are two supervisors,

18   both of whom have had dealings affecting our clients,

19   including our client who currently works there, Ms. Eva

20   Diaz, and that we would proceed in the same fashion,

21   and hopefully, if we can have shorter depositions, we

22   would be able to question these witnesses back to back.

23        In addition, with regards to moving to the

24   motion to compel, I'd like to present to Your Honor, a

25   couple of additional demonstrative evidence as to --

1  which really clarifies the extent of the defendant's

2  unjustified withholding of documents, and if I may

3  approach the bench, I unfortunately didn't have enough

4  time to make copies, so I'm gonna show --

5          THE COURT:  Who are the managing supervisors?

6          MS. CALAFIORE:  Ross Smith and Tom

7  Buonocuore.

8          THE COURT:  Are they noticed for next week?

9          MS. CALAFIORE:  They've been noticed with

10  a --

11          THE COURT:  But weren't they previously

12  deposed?

13          MS. CALAFIORE:  They were previously deposed,

14  Your Honor.  I believe that, in fact, just to clarify

15  something that defendant has said before, our prior

16  counsel who was representing plaintiff/intervener never

17  received --

18          THE COURT:  Who was the prior counsel?

19          MS. CALAFIORE:  PRLDEF, but there was another

20  counsel except --

21          THE COURT:  But isn't PRLDEF still in this

22  case?

23          MS. CALAFIORE:  Yeah.  No, there was a

24  different lawyer.  Her name was Evette Soto-Maldonado.

25  She never received a lot of the notices of deposition.

1    In fact, our understanding is that -- I mean, we're

2    happy to explore this further, that the defendant and

3    the EEOC would disagree amongst themselves.

4            For years, the defendant has not even

5    considered --

6            THE COURT:  Well, wait a minute.  Let me

7    just --

8            MS. CALAFIORE:  Yes.

9            THE COURT:  -- understand.

10           Your co-counsel was PRLDEF?

11           MS. CALAFIORE:  Yes, Your Honor.

12           THE COURT:  So who has primary responsibility

13    for the representation of these parties?

14           MS. CALAFIORE:  I've been --

15           THE COURT:  PRLDEF, or you?

16           MS. CALAFIORE:  No, I've been lead counsel

17    since I've been on the case from --

18           THE COURT:  You've been lead counsel?

19           MS. CALAFIORE:  Since we've been on the case

20    in 2005 -- in the summer of 2005, I've taken the lead

21    in conducting -- doing a lot of the work, mostly

22    because our firm generally supports non-profit

23    organizations because we tend to have more resources,

24    so we work together to try to help them in cases that

25    they are involved with, and that's the only reason why

```
 1   we've conducted a lot more of the work --
 2           THE COURT:  So you're saying that --
 3           MS. CALAFIORE:  -- but we were in the case
 4   since August -- basically July/August 2005.
 5           THE COURT:  So what you're -- Are you
 6   suggesting that PRLDEF didn't do things that they
 7   should have done?
 8           MS. CALAFIORE:  No, I'm not suggesting that
 9   at all.  I'm suggesting --
10           THE COURT:  Well, it sounds like that.
11           MS. CALAFIORE:  No, Your Honor.
12           The fact of the matter is that PRLDEF was
13   doing the best they could, but the defendants never
14   answered the complaint, and it seems to me, unjustified
15   that the defendant is allowed to walk free after not
16   respecting his own deadline, claiming that somehow we
17   have to pick up the phone and inform him --
18           THE COURT:  Well, but, Ms. Calafiore, I mean,
19   if a lawyer is involved in a lawsuit, and obviously
20   there are levels -- different levels of ability and
21   competence amongst lawyers, we all know that, and if
22   PRLDEF didn't do the job that perhaps you think they
23   should have done --
24           MS. CALAFIORE:  I -- Not -- I'm sorry to
25   interrupt but --
```

1              THE COURT:  I -- I'm --

2              MS. CALAFIORE:  Yeah.

3              THE COURT:  Those are my words, not your

4    words.

5              Now you come along and say, "Well, they

6    didn't do this.  They didn't do that.  They didn't ask

7    for that."  And now I want to -- "That's what I want to

8    pursue now."  Isn't that, in effect, what's happening

9    here?

10             MS. CALAFIORE:  No, Your Honor.  I think

11   what's happening is that when defendant fails to answer

12   complaint, the remedy for that is that if you're going

13   to trial, the allegations are deemed true.  When we

14   asked this Court for that remedy, this Court declined

15   to grant us that remedy and ordered the defendant to

16   respond.  In fact, within two weeks --

17             THE COURT:  No, but, for example, on the

18   question of a deposition, let's assume PRLDEF takes the

19   deposition of certain people at Beauty Enterprises --

20             MS. CALAFIORE:  Uh-huh.

21             THE COURT:  -- two, or three, or four years

22   ago, whenever it is.  Then you come along, and you look

23   at those depositions, you say, "Well, they should have

24   asked this.  They should have asked that.  Why didn't

25   they do this?  Why didn't they do that?  Now I'm going

1    to do that."

2            MS. CALAFIORE:  That's -- Yeah.  No,

3    that's --

4            THE COURT:  Doesn't that affect what's going

5    on now?

6            MS. CALAFIORE:  No.  No.  No.  No, Your

7    Honor.  That's what the defendant wants you to believe

8    is going on.

9            In fact, I think PRLDEF did an excellent job

10   in representing our clients.  What happened is that the

11   defendant withheld documents.  New documents that

12   they've produced to us in April of 2003, dating back,

13   for instance, with this whole issue of the forklift

14   exam, were never produced in the case, and yet -- so

15   essentially, what they're saying is, "If we are good

16   defendant and we managed hiding documents, and nobody

17   finds out, we should be rewarded for that," and now,

18   Your Honor, they found out that we were withholding

19   documents, and they shouldn't be allowed to inquire

20   into that.

21           That's basically what he's doing.  I'm trying

22   to hide --

23           THE COURT:  What do you mean by, "Withholding

24   documents"?

25           MS. CALAFIORE:  They withheld a series of

1  documents dealing with events that concerned previous

2  depositions, like this forklift --

3          THE COURT:  Well, they withheld them --

4          MR. ROBINSON:  Have her identify one single

5  document --

6          MS. CALAFIORE:  I can.

7          MR. ROBINSON:  -- that we withheld.

8          MS. CALAFIORE:  I will.  I will, Your Honor.

9  I'm happy to.  In fact, I brought the ridiculous --

10          MR. ROBINSON:  She brought the documents we

11  withheld.  Somehow, she got them.  I -- You know, it's

12  amazing.

13          MS. CALAFIORE:  Your Honor, in April of 2003,

14  they produced all these new documents, never -- excuse

15  me, 2008, in April of 2008, thank you, they produced

16  these documents which were never produced before, which

17  is astonishing that they actually thought that they

18  were gonna get away with not producing these documents

19  completely within the EEOC request and, Your Honor, I

20  tried to keep the motion to compel to a limited extent.

21          I'm happy to attach all of the documents

22  showing why we should be allowed to inquire into events

23  that were inquired into before, and I understand that

24  defendants' counsel is trying to protect his client

25  after having done such a good job at hiding things, but

1    I feel that, Your Honor, it's not fair to our clients,

2    who have tried -- I've been in this case for eight

3    years, and unfortunately, unbeknownst to them, they

4    didn't know that that's what was going on.  It's not

5    something that PRLDEF or anyone else, or the EEOC could

6    have prevented.  In fact, as the EEOC represented, the

7    wages were always in the case.

8         THE COURT:  If it weren't too late in this

9    whole sequence of events, the suggestion that I'd make

10   is that these depositions should be held here in the

11   courthouse, give you a room somewhere, and you can take

12   the depositions here, and every time you have a

13   problem, if I had the time and the inclination, which I

14   don't, you'd come in and we'd resolve the issue.

15        I mean, that's -- You're so at loggerheads

16   here.  You're so far apart, and you obviously are not

17   getting along, and it's infecting and affecting this

18   whole lawsuit, and it's very troublesome, and I don't

19   know how to resolve this.  I really don't.

20        MS. CALAFIORE:  I think, Your Honor, that's a

21   great idea, if we could --

22        MR. ROBINSON:  What's a great idea?

23      (Pause.)

24        MS. CALAFIORE:  If -- To hold the -- I mean,

25   I think it's a really brilliant idea actually, because

1    if we hold the depositions here, we can save the

2    objections, move onto the -- with the depositions, save

3    the objections, then at the end --

4            THE COURT:  When are these depositions

5    scheduled for?

6            MS. CALAFIORE:  Next week.

7            THE COURT:  What day?

8            MS. CALAFIORE:  Basically, Monday and --

9    Sorry, I have the schedule --

10            MR. ROBINSON:  Monday and Tuesday.

11            MS. CALAFIORE:  Monday and Tuesday and --

12            THE COURT:  I'm not available on Monday.

13            MS. CALAFIORE:  We can change them to --

14    subject to your availability.  We're perfectly happy

15    to, because we think it's really the only way, and then

16    we could wait until the end of the day, save all of the

17    objections, and only come to you once with all of the

18    objections.

19        (Pause.)

20            THE COURT:  Well, if you could change the

21    depositions to Tuesday and Wednesday, and hold them

22    here, I'll give you a conference room, we could do it.

23            MS. CALAFIORE:  I think we're -- It would be

24    fine with us.  I don't know about the defendants.

25            THE COURT:  Mr. Robinson?

```
 1            MR. ROBINSON:  I think we can do it.  I'm not
 2   sure.  I mean, I can't be sure, but I know Mr. --
 3            THE COURT:  Mr. Burstein, what about you?
 4            MR. ROBINSON:  Mr. Burstein --
 5            MR. BURSTEIN:  I have no objection,
 6   whatsoever, Your Honor, with that solution.
 7            MS. CALAFIORE:  And the other thing, that
 8   would leave essentially two days for four witnesses,
 9   which we could try to certainly do to accommodate this
10   Court, and what about the additional three witnesses,
11   because we have --
12        (Pause.)
13            MS. CALAFIORE:  These additional witnesses,
14   Your Honor, go directly --
15            THE COURT:  Who are the three?  Tell me
16   again, who are the three.
17            MS. CALAFIORE:  (Unintelligible) I'm sorry.
18   Ross Smith, Tom Buonocuore and John Carabetta.  I'm --
19            THE COURT:  They're all employees of Beauty
20   Enterprises?
21            MR. ROBINSON:  Yes, and they've all been --
22   and except for John Carabetta, they've all been deposed
23   with the --
24            MS. CALAFIORE:  But, Your Honor --
25            MR. ROBINSON:  -- and if they -- If they
```

1    represent -- If she represents that they have

2    information concerning the Eva Diaz claimed retaliation

3    incident, the Madeleine Perez failure to be -- acquire

4    a permanent position from her temporary position, and

5    the Eva Diaz overtime issue, and there's one other --

6            MS. CALAFIORE:  Your Honor, --

7            MR. ROBINSON:  -- plus documents, which I've

8    agreed to allow her to inquire into, allegedly withheld

9    documents, then fine, but they don't.

10           I -- Judge, I've had nothing but cordial,

11   cooperative relations with the EEOC in this case.  As

12   much as I was sorry to Ms. Palacios-Baldwin gone from

13   this case, it appears that I'm having good relations

14   with Mr. Burstein, and we're working cooperatively to

15   make these things happen.

16           You draw whatever inferences you want to draw

17   from that.

18           MS. CALAFIORE:  Your Honor, I believe that

19   Mr. Robinson's tactic to make us appear as we're, you

20   know, being difficult, is quite thoughtful, however --

21           THE COURT:  "Thoughtful"?

22           MS. CALAFIORE:  Yeah, because I think it's

23   his way to hide the fact that they did not produce what

24   they were supposed to produce, and I'm very, very sorry

25   to be here before this Court today about this matter.

1          As I said before, I tried very hard to fight

2     him on -- to find ways such that we could come to an

3     agreement, and frankly, I feel that if I was

4     representing his client, I would be concerned about

5     being disbarred because I could never even think about

6     withholding documents that I think aren't helpful, or

7     not instructing our clients that if there's a pending

8     litigation, especially one that apparently Mr. Cohen

9     likes to talk about so much, they don't have to retain

10    things and, in fact, they even admitted to that, Your

11    Honor.

12          So I am sorry --

13          THE COURT:  Mr. Carabetta's the comptroller,

14    correct?

15          MS. CALAFIORE:  Yes, Your Honor.

16          THE COURT:  He's never been deposed?

17          MS. CALAFIORE:  No.

18          MR. ROBINSON:  He's never been deposed.

19          MS. CALAFIORE:  I mean, additionally, Mr.

20    Smith --

21          THE COURT:  You noticed him for a deposition?

22          MS. CALAFIORE:  Yes.

23          THE COURT:  Well, you can produce him, can't

24    you?

25          MR. ROBINSON:  I can produce him if it -- if

1    -- Well, of course I can produce him, but the more

2    important issue is what the scope of the deposition is

3    going to be --

4              THE COURT:  But that --

5              MR. ROBINSON:   -- not the -- She talks

6    about --

7              THE COURT:  Well, let's deal -- What's the

8    scope of the deposition of Mr. Carabetta?

9              MS. CALAFIORE:  It's gonna be the financial

10    information of -- relating to our clients to different

11    things.  I don't have the full list --

12              THE COURT:  Well, just --

13              MS. CALAFIORE:  Generally, we're going --

14    Well, Mr. Carabetta have two roles, as we understand

15    it.  One of -- One was just being the comptroller, and

16    the second one was, at least for a period of time,

17    being in charge of the Equal Employment Opportunity

18    complaint, so we're gonna inquire down those lines;

19    wages, health insurance.

20              Apparently, Mr. Carabetta also has had

21    dealings concerning health insurance with certain

22    employees, so we would inquire into that.

23              MR. ROBINSON:  But that's not in the case,

24    Judge.  That's not --

25              MS. CALAFIORE:  I'm sorry, --

1          MR. ROBINSON:  -- in the case.

2          MS. CALAFIORE:  -- Your Honor, we -- as we --

3    I read before, an excerpt of the complaint.  I'm happy

4    to read it again.

5          Our client, including Eva Diaz, as recently

6    as three months ago, was denied a medical -- was denied

7    the opportunity to take advantage of her --

8          MR. ROBINSON:  Overtime.

9          MS. CALAFIORE:  -- health benefits, in

10   addition to the overtime, without any reason, Your

11   Honor, whatsoever, and it doesn't -- If they have

12   nothing to hide, I'm gonna be as swift as possible.

13   I'd like to inquire into these areas which are within

14   the job of Mr. Carabetta, as well as, you know, his

15   role in getting complaints --

16         THE COURT:  Wouldn't it be easier, Mr.

17   Robinson, to produce Mr. Carabetta, let him answer

18   these questions now?

19         Certainly, during the course of the trial

20   he's going to be a witness.

21         MR. ROBINSON:  No, he's not.  He wasn't a

22   witness on the original list.  There was no need for

23   him.  The only wage claim she brought out -- she

24   identified to you in her complaint, involved Harold

25   Acosta.

1          She told you her side of the Harold Acosta
2    story.  Believe me, there's another side of the Harold
3    Acosta story, and somehow, some way, she knew that his
4    wages went from $12 an hour to $9 an hour, because he
5    -- after flunking the exam twice, that OSHA made us
6    take, because he --
7          MS. CALAFIORE:  He made that --
8          MR. ROBINSON:  -- complained to OSHA, brought
9    OSHA in, and they found that we hadn't been testing our
10   people.  So we tested our people.  He flunked twice,
11   the only person to flunk.
12          We wanted him to pass.  We passed him
13   answers.  We did everything we could do to get this guy
14   to pass a test.
15          So now, what are we supposed to do?
16          We could have fired him.  We didn't fire him.
17   We found the best job we could for him, and paid him
18   something that was consistent with our salary schedule,
19   and so he said, "I'm retiring," --
20          MS. CALAFIORE:  Your Honor, --
21          MR. ROBINSON:  -- and he retired, and she
22   says, "$12 to $9."
23          What's she gonna ask Mr. Carabetta?  "Was it
24   $12?  Was it $11?"  They know what it is.  It's $12 to
25   $9.  There's no issue about that.

1          EEOC --

2          MS. CALAFIORE:  Your Honor -- You know, I

3     often suggest to Mr. Robinson that a career in

4     Hollywood might be suitable for him, in case he gets

5     tired of being a lawyer, --

6          MR. ROBINSON:  You'll be my agent.

7          MS. CALAFIORE:  -- but he knows very well

8     that this issue was always in the case.

9          In addition to our new witness, Your Honor,

10    we've learned that she's been treated differently, for

11    instance, that --

12         THE COURT:  Who's your new witness, the lady

13    in Florida?

14         MS. CALAFIORE:  Yes, Your Honor.

15         She has been given the opportunity of health

16    insurance and wages that were far beyond anything that

17    was ever given to our client once he was demoted to a

18    janitorial position.

19         THE COURT:  Ms. Calafiore, you know, that's

20    going to become an issue in this case?  Some girlfriend

21    in Florida who --

22         MS. CALAFIORE:  It's not a girlfriend, Your

23    Honor.  She was an employee.  I have her W2, and she

24    was an employee, and frankly, I don't care --

25         THE COURT:  But what did she do there?  What

1   was her job?

2          MS. CALAFIORE:  She wasn't working there.

3   She was just --

4          THE COURT:  She wasn't?

5          MS. CALAFIORE:  She wasn't formally working

6   there.

7          THE COURT:  So she was not an employee?

8          MS. CALAFIORE:  She was an employee on the

9   paper, yes.

10         THE COURT:  Yeah, but she didn't work there?

11         MS. CALAFIORE:  She received a salary, and

12  she received health benefits that were denied to our

13  client, in an extremely dire situation after he was

14  demoted, Your Honor.

15       (Pause.)

16         MS. CALAFIORE:  In addition, Your Honor, Ross

17  Smith and Tom Buonocuore are two supervisors who have -

18  - still have dealings with Eva Diaz who, as Your Honor

19  knows, is -- she's still working at the company, and

20  they have been involved personally in other instances

21  of discrimination that has happened to Ms. Diaz

22  recently.  So --

23         MR. ROBINSON:  If she wants to tell me --

24  Excuse me.

25         If she had the courtesy to -- I'm not

1    insisting on a supplement to the interrogatory answers

2    concerning how they've been discriminated against, or

3    if there are continuing acts of discrimination or

4    retaliation.  I'm not asking for that.  I could.  I'm

5    not.

6              Call me up.  Tell me, "Rick, we have this

7    allegation."  I'm going -- "I'd like to take discovery

8    about it."  I'd probably say, "Yes."  I'd give her our

9    position, and then she could take the discovery, and

10   I'd tell her who was in -- would be involved, and she

11   could take that discovery but, you know, she's gonna

12   hide the ball.

13             How am I gonna prepare John Carabetta for

14   health insurance?  What am I gonna tell him, "John,"

15   you got to know about -- "there's an allegation about

16   health insurance.  I don't quite know what it is.  I

17   don't know who's involved, you know, but she's gonna

18   ask you some questions about health insurance, and

19   maybe you'll know, and maybe you won't know, but

20   there's nothing I could do to prepare you for that"?

21             THE COURT:  Well, if he doesn't know, he

22   doesn't know.

23             MR. ROBINSON:  Right, but -- and then it's

24   just a big waste of time.

25             MS. CALAFIORE:  Your Honor, not even a

1    30(b)(6) deposition requires that he -- the level of
2    detail that --
3                THE COURT:  All right.
4                So let's -- Mr. Robinson, he'll produce Mr.
5    Carabetta, and you can ask him what you want to ask
6    him.
7                MS. CALAFIORE:  Okay.
8                THE COURT:  If he knows, he knows.  If he
9    doesn't know, he'll tell you he doesn't know.
10                MS. CALAFIORE:  Right.
11                THE COURT:  Who else?  Who were the others?
12                MS. CALAFIORE:  Mr. Ross Smith and Tom
13    Buonocuore.
14                THE COURT:  They're floor foremen.  They
15    would --
16                MS. CALAFIORE:  Supervisors, yeah.
17                THE COURT:  -- supervisor.
18                What about them, Mr. Robinson?
19                MR. ROBINSON:  They've been deposed already.
20    I've had no --
21                THE COURT:  Who deposed them, Ms. Palasios?
22                MR. ROBINSON:  And -- Ms. Palasios.  I know
23    that Evette Soto-Maldonado, her predecessor, was at
24    least one of those depositions.
25                THE COURT:  And did PRLDEF participate in

1    that deposition?

2            MR. ROBINSON:  Yeah.  Well, I don't know if

3    they asked questions --

4            THE COURT:  Well, but they were there?

5            MR. ROBINSON:  Oh, yeah.

6            MS. CALAFIORE:  Are you sure?

7            MR. ROBINSON:  I'm not --

8            MS. CALAFIORE:  Okay.

9            MR. ROBINSON:  She -- He wasn't at --

10           MS. CALAFIORE:  Before you make up --

11           MR. ROBINSON:  I know he wasn't -- she wasn't

12   at Buonocuore's.

13           MS. CALAFIORE:  Before you make the

14   representation to the Court, I hope you're sure about

15   what you're saying.

16           MR. ROBINSON:  Is this the set-up for

17   impeachment?

18           THE COURT:  So, if they testified, they'd

19   only be testifying about things that happened post-

20   2005?

21           MS. CALAFIORE:  Your Honor, --

22           THE COURT:  Because they've already been

23   deposed with respect to --

24           MS. CALAFIORE:  Your Honor, this goes back to

25   the issue -- If I may --

1          THE COURT:  No.

2          All right, --

3          MS. CALAFIORE:  -- approach the bench --

4          THE COURT:  -- here's what I'm going to do.

5   Produce them, but you can only talk to them about

6   events that occurred subsequent to their previous

7   depositions.

8          MS. CALAFIORE:  Your Honor, if I may approach

9   the bench, I'd like to show this Court --

10          THE COURT:  That's my ruling.

11          MS. CALAFIORE:  I just -- For the record,

12   Your Honor, I'd like to show this Court that in April

13   of 2008 the defendant has produced a list of forklift

14   exams which were not produced before, despite being

15   within discovery requests of the EEOC, which include an

16   exam, for instance, dating back to 1993, that they

17   always have kept hidden from this case, despite the

18   relevance.

19          So if Your Honor makes a ruling that prevents

20   me from inquiring into documents that they've recently

21   produced, I am stuck with the -- with basically having

22   their selection of documents, and not even being able

23   to ask about it.

24          So all of that I would asking --

25          MR. ROBINSON:  She can -- If I produced

1    documents to the EEOC in connection with their recent

2    discovery requests, --

3              THE COURT:  Can ask them.

4              MR. ROBINSON:  -- that's -- she could ask

5    about that.

6              THE COURT:  Ask about.

7              Okay?

8              MS. CALAFIORE:  Yes.

9              And I would also request that the defendant

10   at least produce all of the documents relating to the

11   forklift exams, which are -- have not been produced.

12   Only --

13             MR. ROBINSON:  What documents haven't been

14   produced?

15             MS. CALAFIORE:  I have detailed in the --

16             MR. ROBINSON:  No, you haven't.

17             What documents have not been produced?

18             MS. CALAFIORE:  Your Honor, there's three

19   additional documents that I would like to show this

20   Court.

21             THE COURT:  Just tell me what they are.

22             MS. CALAFIORE:  Okay.

23             One document is -- It's not Bates numbered.

24   It was in the possession of the EEOC, and this document

25   deals with the disciplinary action, and lists a series

```
 1   of offenses, and the consequences for each offense.
 2              MR. ROBINSON:  That's one of the EEOC's
 3   exhibits in an exhibit book.  It's --
 4              MS. CALAFIORE:  Exactly, Your Honor.
 5              MR. ROBINSON:  -- that we produced to them --
 6              MS. CALAFIORE:  No.
 7              MR. ROBINSON:  -- that is in this case.
 8              MS. CALAFIORE:  No.
 9              MR. ROBINSON:  I think it's part of the court
10   file.
11              MS. CALAFIORE:  Your Honor, exactly.  They
12   did not produce it to the EEOC with Bates number --
13              THE COURT:  But it's -- But you've got it.
14              MS. CALAFIORE:  No.  No.  No.
15              THE COURT:  I mean, if it's -- if you've got
16   it, it's been produced to someone.
17              MS. CALAFIORE:  Exactly, but my point is
18   since the --
19              THE COURT:  So what's the problem?
20              MS. CALAFIORE:  The problem is that they did
21   not produce it -- They --
22              THE COURT:  But they produced it.  You have
23   it.  You're holding it in your hand.
24              MS. CALAFIORE:  I understand, but they only
25   gave us one copy of something that we don't know where
```

1    it came from at all, because it was in there, just

2    without having any idea --

3              MR. ROBINSON:  In where?  In where?

4              MS. CALAFIORE:  It was in the exhibit file,

5    but they never used it --

6              MR. ROBINSON:  In the exhibit book.

7              MS. CALAFIORE:  -- with the Bates number.  I

8    don't even know what -- where the other versions of

9    this are.

10             MR. ROBINSON:  Maybe we didn't do Bates

11   numbering back then.  I don't know but, I mean, you

12   have the document.

13             Is this a forklift document we didn't

14   produce, --

15             THE COURT:  I don't understand, --

16             MR. ROBINSON:  -- that was in an exhibit

17   book?

18             THE COURT:  -- Ms. Calafiore.

19             If you've got the document, what is it that

20   you want?

21             MS. CALAFIORE:  I'd like to receive --

22             MR. ROBINSON:  And you got it from us.

23             THE COURT:  Just a minute.

24             MS. CALAFIORE:  Your Honor, I'd like to

25   receive additional versions of this document which, by

1   the way, is also illegible, so I'd like to get at least

2   an original that --

3           THE COURT:  Well, how do you know they exist?

4   How do you know the documents exist?

5           MS. CALAFIORE:  We asked, but they answered

6   that there weren't any, so -- and then we find this

7   document which was one of our exhibit, but he claims

8   there aren't any.

9           In addition, Your Honor, he doesn't want to

10  produce, for instance, newsletters that have talked

11  about our litigation and our clients.  He just feels

12  like, "I'm not gonna produce those to you."

13          I don't think these gonna affect, you know,

14  the litigation, or where we're going, except that it

15  complies with his duty to give us this information,

16  which may have information about our claims.

17          MR. ROBINSON:  We gave them -- We -- She has

18  these documents we didn't produce.  They're right in

19  her hands.

20          MS. CALAFIORE:  Your Honor, the --

21          MR. ROBINSON:  I don't understand this.

22          MS. CALAFIORE:  Your Honor, they didn't give

23  it to us.  We were able to obtain these from the

24  EEOC --

25          THE COURT:  So what is it that you're

 1   suggesting, that there are other documents given to the

 2   EEOC?  Weren't they available to you?

 3          MS. CALAFIORE:  No.  Some of them were.

 4          THE COURT:  Why not?

 5          MS. CALAFIORE:  Some of them were.  They --

 6   We never received --

 7          THE COURT:  No.  No.  No, why weren't they?

 8   Couldn't you have -- I mean, you had a cooperative

 9   agreement with --

10          MS. CALAFIORE:  Sure.  Sure.

11          THE COURT:  -- Ms. Palasios, and you were

12   working together.

13          MS. CALAFIORE:  Right.

14          THE COURT:  So if he produces material and

15   documents for the EEOC, she was sharing them with you,

16   wasn't she?

17          MS. CALAFIORE:  Yes, of course, but --

18          THE COURT:  So what's the problem?

19          MS. CALAFIORE:  -- unfortunately, we didn't

20   have the full load of documents, and Ms. Palasios was

21   in Boston, so it's -- it was very easy for the

22   defendant to have produced this documents to us, as

23   well as the --

24          THE COURT:  Did you ever go to Boston to look

25   at the EEOC files, to see what they had in their files,

in term --

MS. CALAFIORE:  I have not personally gone to Boston but I believe --

THE COURT:  Well, has somebody done that?

MS. CALAFIORE:  I believe somebody has done that.

THE COURT:  Who, PRLDEF?

MS. CALAFIORE:  Yes.

MR. ROBINSON:  My memory, and I -- you have to check the docket sheet on this, is that the -- PRLDEF intervened.  I know, you got to check me on this, I'm not sure, but they didn't intervene right away, and I have some memory that we produced our documents.  There was a request for production from the EEOC, and we produced the documents before PRLDEF entered the case.

When Ms. Calafiore told me that she didn't have all the documents that we produced to the EEOC, I instructed my associate to make sure that she had every document that we produced to the EEOC.  So there are numerous sources through which she should have every document that the EEOC has.

It's interesting that during the course of -- Until Ms. Calafiore got in the case, no PRLDEF lawyer called me and said, "Hey, Rick," you -- "I know you

1    produced documents to the EEOC.  You didn't produce

2    them to us."

3              I assumed that they had -- that when they got

4    in the case, they got whatever the EEOC had from the

5    EEOC, and they were fine with that.

6              MS. CALAFIORE:  Your Honor, the importance of

7    the Bates number, which may look like a small detail,

8    but what happened is that the EEOC received from the

9    defendant, some documents without a control number.

10             Now, what we received from the EEOC and from

11   -- except recently, we were able to get more documents,

12   but what we received from the defendant were the

13   documents that were produced to the EEOC with a control

14   number.  The defendant never gave us what he may have

15   given the EEOC, which are pages like this, without

16   nothing, so we have no way of knowing what was given,

17   outside of those Bates numbers.  That's why it's a --

18   it's an important detail.

19             I'm not suggesting --

20             THE COURT:  But what -- Why is it his

21   obligation to do that for you?  Isn't it your

22   obligation or responsibility, if you have to, to go to

23   Boston and say to Mr. Burstein, "Give me everything you

24   got from Mr. Robinson," and go through it, and see

25   what's there?

1          MS. CALAFIORE:  Your Honor, it is our

2    obligation, but unfortunately, I mean, we cannot get

3    everything that the government has.  They have their

4    own -- I'm the -- I'm sure Mr. Burstein can speak to

5    that.  We can get certain documents, and Mr. Burstein

6    has been extremely helpful.

7          We went to New York, I think it was last

8    week, to look again, at the files, make sure we had

9    everything, make sure -- and that's why we dropped some

10   of the interrogatories --

11         THE COURT:  Well, I'm not going to order him

12   to produce documents and materials that may very well

13   already be in the possession of a co-plaintiffs.

14         MS. CALAFIORE:  Your Honor, according to the

15   defendant, he's now given us everything that he's given

16   the EEOC, and I can reassure this Court that there are

17   a lot of documents that have not been produced, and the

18   reason I know that is because he's produced these

19   somewhat scattered things that show that they have the

20   files.

21         THE COURT:  Well, when you're deposing some

22   of these company officials next week, maybe you can ask

23   them.

24         MS. CALAFIORE:  Your Honor, in addition,

25   though, I don't --

1          THE COURT:  See what they know about it.

2          MS. CALAFIORE:  I don't believe that the

3    defendant has done a search of their e-mails, as they

4    were required to and, in addition, Your Honor, with

5    regards to the e-mails that they have destroyed,

6    they're -- for two years, as they admitted that they

7    haven't retained these documents, if Your Honor's not

8    gonna order a search of this electronic discovery, I'd

9    like to move at least to have an inference of the

10   evidence that they destroyed was adverse to them, and

11   I'm happy to put in papers to that effect.

12         THE COURT:  Well, how do you know they

13   destroyed it?

14         MS. CALAFIORE:  Well, first of all, they

15   admitted that they didn't retain them.  So that's the

16   equivalent of destroying them.  They weren't --

17         THE COURT:  They didn't retain the e-mails?

18         MS. CALAFIORE:  Yes, Your Honor, and I --

19         THE COURT:  In the sense --

20         MS. CALAFIORE:  They admitted --

21         THE COURT:  Let -- Just let me understand,

22   because I'm not --

23         MS. CALAFIORE:  Uh-huh.

24         THE COURT:  -- I'm not a terribly computer-

25   literate person, but I have a basic knowledge.

```
 1              So when you say, "They didn't retain the e-
 2    mails," do you mean that they didn't make copies?  They
 3    didn't print out copies of the e-mails?
 4              MS. CALAFIORE:  No.
 5              THE COURT:  Is that what you mean?
 6              MS. CALAFIORE:  No, that's not what I mean,
 7    Your Honor.
 8              THE COURT:  What do you mean, that --
 9              MS. CALAFIORE:  It means that they didn't
10    save them.  Normally, the way it --
11              THE COURT:  So if they got an e-mail from
12    somebody, in making some kind of an inquiry, or they
13    sent an e-mail to somebody, and whatever the issue was,
14    they considered it to be resolved, they deleted it.
15              MS. CALAFIORE:  Yes.
16              THE COURT:  So that's what you mean?
17              MS. CALAFIORE:  That's what it means, and
18    they can read their response to the interrogatory --
19              THE COURT:  Okay.
20              So is that what you mean?
21              MS. CALAFIORE:  Yes.
22              THE COURT:  Okay.  So --
23              MS. CALAFIORE:  And, in addition, --
24              THE COURT:  So if they deleted it, it's gone
25    -- Well, it's not gone --
```

```
1            MS. CALAFIORE:  Yes.
2            THE COURT:  -- because we all know that it's
3    never gone, it's always there, and people can retrieve
4    it, but that's not -- that's --
5            MS. CALAFIORE:  It's a quite expensive
6    exercise.
7            THE COURT:  Very expensive, and very --
8            MS. CALAFIORE:  Right.
9            THE COURT:  -- difficult process but -- I
10   understand that.
11           MS. CALAFIORE:  And, in addition, Your
12   Honor, --
13           THE COURT:  But so what is it that you want
14   this Court to do with respect to the deleted e-mails?
15           MS. CALAFIORE:  With respect to the deleted
16   e-mails, I would request an inference -- an adverse
17   inference that they -- the documents they deleted may
18   have contained information that was favorable to us.
19           MR. ROBINSON:  How --
20           THE COURT:  Why --
21           MS. CALAFIORE:  Your Honor --
22           THE COURT:  Why would that be an -- a proper
23   inference?
24           MS. CALAFIORE:  Your Honor, --
25           THE COURT:  I mean, in the course of the day,
```

```
 1   do you delete e-mails that you get?
 2            MS. CALAFIORE:  Your Honor, there is an
 3   obligation on the --
 4            THE COURT:  No, I'm asking you.
 5            Do you delete e-mails that you get --
 6            MS. CALAFIORE:  No, Your Honor.
 7            THE COURT:  If somebody sends you an e-mail
 8   and says, "Valeria, would you please do (a), (b), (c),
 9   and (d)?", and you write back and say, "Okay.  Here it
10   is," do you keep that?
11            MS. CALAFIORE:  Your Honor, there is a
12   difference if there is a litigation pending, and as we
13   all know, on the e-mail -- I'm reading now, from
14   Plaintiff's First Request for Production of Documents
15   to Defendant Beauty Enterprises, this was a request
16   dated --
17            THE COURT:  I'm not going to give any
18   instruction about an adverse inference with respect to
19   deleted e-mails.  I'm going to tell you that right now.
20   I'm not going to do it.
21            MS. CALAFIORE:  Well, Your Honor, I guess we
22   have our objection on the record, so --
23            THE COURT:  You have your objection on the
24   record.
25            MS. CALAFIORE:  With regards to this
```

1    document, this was a document request served by the

2    Equal Employment Opportunity Commission on August 3,

3    2001.  It defined the term "document" as included any

4    computer tapes, disks, drafts, (unintelligible),

5    communication of any nature.  It already included any

6    electronic communication.

7         The defendant has not produced one single

8    document from the computers except from, like, one

9    scattered computer printout that contains a series of

10   warning.  So we'd like at least to know what searches

11   they've conducted, and whether they've retained e-mails

12   of that sort, because I --

13        THE COURT:  So when there at depositions next

14   week, ask them.

15        MR. ROBINSON:  Yeah, she --

16        THE COURT:  Ask them.

17        MR. ROBINSON:  I understand that the idea of

18   electronic discovery, exfoliation of evidence is very

19   current.  There are a lot of seminars.  We had an in-

20   house stuff on all of this.

21        MS. CALAFIORE:  It's nothing to do with the

22   seminars.

23        MR. ROBINSON:  It's very, very current, and I

24   understand how lawyers can think that there are all

25   sorts of e-mails with hidden stuff.

1                This case goes back to 2001.  The supervisors
2      who are on the floor, they don't have computers, you
3      know, sending e-mails to each other.
4                The only people who would have e-mails -- who
5      really used e-mail that have any relevance to this
6      case, are Mr. Sussman, Mr. Piccirillo, and Mr. Cohen,
7      and believe me, they weren't e-mailing each other
8      about, "How are we gonna discriminate against
9      Hispanics?  How we're going to enforce the English-only
10     rule, what are we gonna do."  This case isn't about
11     that kind of stuff.
12               THE COURT:  Okay.
13               What's next?
14               MS. CALAFIORE:  I think that's all for today.
15               THE COURT:  Okay.
16               MS. CALAFIORE:  So just --
17               THE COURT:  So you're going to try to make
18     arrangements to have these depositions here Tuesday and
19     Wednesday of next week, correct?
20               MS. CALAFIORE:  Right.  I don't think two
21     days are gonna be enough for all these people.
22               THE COURT:  For what?
23               MS. CALAFIORE:  I don't think, Your Honor,
24     two days are gonna be enough for seven people.
25               MR. ROBINSON:  We're not gonna do the seven

 1  people in two days.  We're gonna pick dates for the
 2  others.
 3          MS. CALAFIORE:  I don't -- Okay.
 4          So I guess we'll confer with this Court as to
 5  the other dates that may be --
 6          THE COURT:  Yep.
 7          MS. CALAFIORE:  We could even do it all next
 8  week if you --
 9          THE COURT:  When you're here next week, we'll
10  talk.  I'm sure I'll see you, and we'll talk about
11  other days.
12          MS. CALAFIORE:  Yes.
13          THE COURT:  Okay?
14          MR. ROBINSON:  But the ruling as to scope is
15  that people who have been deposed already, I mean --
16          MS. CALAFIORE:  The ruling is that the Judge
17  is gonna rule on the days of the depositions, as I
18  understood the Judge to say.
19          MR. ROBINSON:  But your ruling is that the --
20  in general terms, the inquiry with respect to people
21  who've already been deposed, is in events post their
22  deposition?
23          THE COURT:  Correct.
24          MS. CALAFIORE:  Your Honor, how does that
25  address the new documents that they have produced,

1    because once I show the document, I will need to

2    inquire --

3            MR. ROBINSON:  I'll --

4            MS. CALAFIORE:  -- as to what --

5            MR. ROBINSON:  That's an additional scope.

6            THE COURT:  That's a different issue.

7            MR. ROBINSON:  I've agreed that you can talk

8    to --

9            MS. CALAFIORE:  Okay.

10            MR. ROBINSON:  -- people about --

11            THE COURT:  He's already said that with

12    respect to those documents, you could inquire.

13            MR. ROBINSON:  Right.

14            MS. CALAFIORE:  Okay.

15            Your Honor, on one more thing --

16            THE COURT:  I'm talking -- He -- What he's

17    talking about and what I have said was generally, the

18    general questions you're going to ask are only going to

19    be post whenever their depositions -- their last

20    depositions were.

21            MR. ROBINSON:  And I'm reserving the right to

22    object and instruct --

23            THE COURT:  Correct.

24            MR. ROBINSON:  -- the witness not to answer

25    if the question has already been asked at the previous

1    deposition.

2             THE COURT:  Correct, and --

3             MS. CALAFIORE:  So --

4             THE COURT:  -- and if -- I would suggest, Mr.

5    Robinson -- Well, you're -- I'm not going to suggest --

6             MR. ROBINSON:  Well, this is --

7             THE COURT:  -- and I will be here --

8             MR. ROBINSON:  This isn't a second bite at

9    the apple to find another statement that may be

10   inconsistent with the, you know --

11            THE COURT:  Yeah, I understand.  That's why I

12   stopped saying what I was about to say, because that is

13   -- that could be a problem for you or for your clients,

14   and I understand that, so I held back on that.

15            Okay.

16            MS. CALAFIORE:  Your Honor, just to --

17   Because we have four witnesses in two days, to the

18   extent one deposition will run over, because it's a lot

19   of witness to do in two days, especially since we have

20   -- We understand that Barbara Gardner, who represents

21   two more plaintiff/interveners will also be

22   participating, so can we have an agreement that if one

23   deposition run over, since normally we would be allowed

24   seven hours, we can postpone it to a following date to

25   be agreed upon with the Court?

1          THE COURT:  Yes.  That's what we talked

2   about.

3          MR. ROBINSON:  I'm not -- I have no objection

4   to that.

5          THE COURT:  Yeah, okay.

6          MS. CALAFIORE:  And, Your Honor, with regards

7   to the motion to compel production, I assume we'll hear

8   from you, because this address the protective order at

9   the deposition.

10          THE COURT:  The motion to compel production

11   with respect to this -- Where is that, Ms. Calafiore?

12          MS. CALAFIORE:  I can provide you a copy,

13   but --

14      (Pause.)

15          THE COURT:  Let me -- Yeah, all right.  Let

16   me suggest this.

17          I know it's difficult, but -- because you're

18   not getting along, but is it possible for you to try to

19   be civil to one another and try to resolve this, try to

20   work it out, kind of talk to each other?  Can you do

21   that?

22          MR. ROBINSON:  We tried to do that.

23          MS. CALAFIORE:  I tried.  He yells.

24          MR. ROBINSON:  Well, I yell because I get --

25          THE COURT:  Maybe Mr. Burstein can mediate.

1           MR. ROBINSON:  -- I get frustrated --

2           MR. BURSTEIN:  Your Honor, I have a hard

3    enough job filling Ms. Palasios' shoes.  I think I'll

4    pass on that.

5           MR. ROBINSON:  I get frustrated when she

6    attempts --

7           MS. CALAFIORE:  To do my job.

8           MR. ROBINSON:  Yeah, to do her job as she

9    sees it, which is to conduct all the discovery that she

10   thinks should have been conducted from the beginning of

11   the case, by both the EEOC and her co-counsel and

12   predecessors.  Now she wants to do it all over again,

13   and I get a little frustrated by her attempts to do

14   that.

15          I -- Rather than simply saying, "Forget about

16   it.  You have no right.  I'm objecting."

17          THE COURT:  Well, --

18          MR. ROBINSON:  I've tried to work things out

19   with her --

20          MS. CALAFIORE:  Actually, Your Honor, --

21          MR. ROBINSON:  -- and she's still not

22   satisfied.

23          MS. CALAFIORE:  -- to show this Court how

24   cooperative we were, we waited five months,

25   accommodating all of the different points of

1    defendant's counsel --

2            THE COURT:  Look, maybe -- it may very well

3    be that as a result of the -- during the course of the

4    depositions next week, some of these questions may get

5    answered, may be resolved, may be -- and maybe some of

6    these issues will go away.  So let's wait and see.

7            MS. CALAFIORE:  Yes, Your Honor.

8            THE COURT:  Okay?

9            MS. CALAFIORE:  Thank you.

10            THE COURT:  All right.

11            The -- What -- Now, what are we going to do

12    about this other -- Well, you're going to respond to

13    this motion to take this lady in Florida's --

14            MR. ROBINSON:  May I have the complaint?

15            THE COURT:  Yes.

16        (Pause.)

17            THE COURT:  Is she represented by counsel?

18            MS. CALAFIORE:  Yes, Your Honor.

19            THE COURT:  Have you talked to her counsel?

20            MS. CALAFIORE:  Yeah.  Her counsel does not

21    seek to be involved in this case, and she's fine with

22    us deposing her.

23            THE COURT:  And so that means you're going to

24    have to go to Florida to depose her?

25            MS. CALAFIORE:  Yeah, we can -- Yeah.  It's

1    gonna be a very --

2         MR. ROBINSON:  "Yeah," what?  We don't have

3    to go, or we do have to go?

4         MS. CALAFIORE:  We do have to go.  We can --

5    We're happy, if Your Honor, to try and set up a

6    telephonic deposition if defendant's counsel cannot go.

7    We would be going anyways, but -- or if defendant

8    cannot find -- or Florida counsel, which he seems to

9    have, but we're happy to address that technicality of

10   the trouble as much as possible.

11        MR. ROBINSON:  But if this is a de bene esse

12   deposition, I would assume that you'd want to --

13        THE COURT:  Well, I -- you're going to --

14   Let's -- We're not going to resolve that today, so Mr.

15   Robinson has to respond to this motion, and we'll have

16   to take it up in due course.

17      (Pause.)

18        THE COURT:  Anything else?

19        MS. CALAFIORE:  No, Your Honor.

20        THE COURT:  Mr. Burstein?

21        MR. BURSTEIN:  Nothing, Your Honor.

22        THE COURT:  Mr. Robinson?

23        MR. ROBINSON:  No, thank you, Your Honor.

24        THE COURT:  See you next week, okay?

25        MS. CALAFIORE:  Thank you.

1          (Proceedings concluded at 5:35 p.m.)

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

C E R T I F I C A T E

I certify that the foregoing is a correct transcript
from the electronic sound recording of the proceedings
in the above-entitled matter.


/s/                              May 24, 2008
STEPHEN C. BOWLES