ROUGH DRAFT - NOT A FINAL

Page 1

1  UNITED STATES DISTRICT COURT

2  FOR THE DISTRICT OF CONNECTICUT

   ----------------------------------------x

3  EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

4            Plaintiff,

5        -vs-

6  BEAUTY ENTERPRISES, INC., AAA INDUSTRIAL

   TEMPORARIES, INC., ESSENTIAL TEMPORARIES,

7  INC.,

8            Defendant.

   ----------------------------------------x

9  MIQUEL ANGEL ALVAREZ and WILLIAM TORRES,

10           Plaintiff-Intervenors,

11       -vs-

12 BEAUTY ENTERPRISES, INC.,

13           Defendant.

   ----------------------------------------x

14

            June 05, 2008

15          10:00 a.m.

16

17      Deposition of      taken by the Plaintiff,

18 pursuant to notice, held at The United States District

19 Court, Lafayette Street, Bridgeport, Connecticut, before

20 Anita T. Shemin, a Certified Shorthand Reporter and Licensed

21 Shorthand Reporter within and for the

22 State of Connecticut.

23

24

25

Page 2

1   A P P E A R A N C E S:

2   JEFFREY C. BURSTEIN, ESQ.

3   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

4   Newark Area Office

5   1 Newark Center

6   21st Floor

7   Newark, New Jersey 07102

8

9   CLIFFORD CHANCE

10  Attorneys for Plaintiff Intervenors

11  31 West 52nd Street

12  New York, New York 10019-6131

13  BY:  VALERIA CALAFIORE, ESQ.

14  and

15  Rita E. Rodriguez,Intern

16  and

17  Tamara Schmidt, Intern

18

19  PULLMAN & COMLEY, LLC

20  Attorneys for Defendant

21  90 State House Square

22  Hartford, Connecticut 06103

23  BY:  RICHARD C. ROBINSON, ESQ. also present:  Larry Sussman

24

25

ROUGH DRAFT - NOT A FINAL

Page 4

1    Ross C. Smith

2    52 hillcrest road

3    glastonbury,ct 06033

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

ROUGH DRAFT - NOT A FINAL

Page 5

1    (          , a witness having been sworn to tell the truth

2    was examined and testified as follows: EXAMINATION BY Miss

3    BY MS. CALAFIORE:

4       Q    Good morning, Mr. Smith.  My name is

5    Valeria Calafiore; to my right are my colleagues,

6    Rita Rodriquez and Tam ra Schmit.  We are with the

7    law firm of Clifford Chance.

8              As you may know we represent is the

9    plaintiff intervenors in this case entitled E O CV

10   Beauty Enterprises.

11             Do you know why you are here to day?

12      A    Yes.

13      Q    Yes?

14      A    To be deposed.

15      Q    Are you familiar with the case of E O V

16   Beauty Enterprises?

17      A    Yes.

18      Q    As you may know I am going to be asking

19   you some questions about the case, I know you have

20   already been deposed in this case in 2003.

21             Before I go on to ask you some

22   questions, I want to explain to you some of the

23   rules that we are going to be observing throughout

24   this deposition.

25             So if I ask you a question and you do

ROUGH DRAFT - NOT A FINAL

Page 22

1    Q    Does Mr. A.m. I  N speak English?

2    A    Yes.

3    Q    Does he read English?

4    A    As far as I know, yes.

5    Q    He can read and write?

6    A    As far as I know.

7    Q    Q.

8    Q    And as part of your job, have you had

9    authority since 2003 to enforce the policies of

10   Beauty Enterprises?

11   A    Yes.

12   Q    And do you regularly discipline employees

13   if they commit violation s of these policies?

14   A    Yes.

15   Q    And does that happen often?

16   A    As often as necessary, as often as they

17   violate policies.

18   Q    If an employee says a bad word, just one,

19   is that a reason to, would that be a reason for

20   discipline?

21        MR. ROBINSON:  Under what circumstances?

22   Q    Any?

23        MR. ROBINSON:  Any.

24   Q    If an employee says a bad word to you?

25   A    One bad word?

Page 23

1    Q    Yes?

2    A    No.

3    Q    I am sorry.  Do you have an objection?

4         MR. ROBINSON:  I am trying to narrow the
5    question so it doesn't include circumstances
6    where the use of the bad word is, they are
7    having a private conversation.  Calafiore I am

8    sorry, do you have an objection I really would

9    like you to re frain from making speaking

10   objections.

11        MR. ROBINSON:  It is not an objection, it
12   is an exhortation, a request of you to be more
13   specific in your question.

14   Q    The witness has already answered.  I will

15   be happy to explore this further.

16        MR. ROBINSON:  Go ahead.

17   Q    You said if it is just one word, you would

18   not discipline that particular employee.  Now, let's

19   say  the employee tells you a bad word in a foreign

20   language  cabrone or maricone, one or the other,

21   would that be a reason for discipline?

22             I am sorry, could you not, I am

23   sorry, you need to instruct your client 's

24   representative not to make gestures, please?

25        MR. ROBINSON:  I don't needs to instruct

Page 24

1    him to do anything.
2        MR. SUSSMAN:  I was raising my hands to
3    scratch an itch.
4    Q    I want to make it your clear we have a
5    such or here I understand he might be under a lot of
6    pressure with the vice president to provide what he
7    may be presuming as Correct testimony.  I am really
8    trying to focus with him and I keeps turning around
9    to look for something, so, so if you have an
10   objection, I don't need suggestions, do you have an
11   objection.
12       MR. ROBINSON:  I want to hear the question
13   again.
14   Q    The question was?
15       MR. ROBINSON:  I want to, are you
16   withdrawing it.
17   Q    No.
18       MR. ROBINSON:  I want to hear the
19   question.
20           (Requested portion read back).
21       MR. ROBINSON:  I object to the question on
22   the ground that it is ambiguous, it includes
23   all possible -- Calafiore you made your
24   objection.
25       MR. ROBINSON:  Maybe it will help you.

ROUGH DRAFT - NOT A FINAL

Page 25

1    MS. CALAFIORE:  No, no, no, I am really

2    inviting you from re frain from makesing

3    speaking objections, you have stated your

4    objection for the record.  Mr. Smith, you can

5    answer now.

6        MR. ROBINSON:  It is an all of question,

7    if, if, if -- are does it include people

8    calling him a --

9        MS. CALAFIORE:  I am asking you, you

10   stated for your objection for the record S.

11       MR. ROBINSON:  If you can answer the

12   question, answer the question, if you cannot

13   answer the question because it is ambiguous ask

14   letter to explain what she means.

15       MS. CALAFIORE:  I am sorry, I already

16   explained to the witness what the rules of this

17   deposition are.  So Mr. Smith do you want me to

18   read the question again.

19   A    Yes, please.

20                (Requested portion read back)

21   A    No.

22   Q    Now, among the 30 employee is that you

23   supervise, approximately 30, right?

24   A    Correct.

25   Q    How many checkers do you have?

1      A      Longer than me.

2      Q      Do you know if she has been there for more

3   than 20 years?

4      A      No.

5      Q      Do you know how much Doroles makes?

6      A      No.

7      Q      You don't?

8      A      No.

9      Q      Do you have authority to decide wage

10   increases?

11      A      What do you mean by decide.

12      Q      Do you have authority to recommend that

13   one of your checkers receive a wage increase?

14      A      Yes, recommend, yes.

15      Q      And you don't know how much, would you

16   know how much each of your checkers makes?

17      A      No.

18      Q      So how do you decide what wage increase to

19   recommend if you don't know how much they make?

20             MR. ROBINSON:  That, objection, it assume

21       is that he recommend a specific wage increase

22       which has not been established, yet.

23       Q      Why don't you explain to me how you go

24   about recommending wage increases?

25             MR. ROBINSON:  Ask him what he with means

Page 28

1      when he recommendations a wage in crease sure,

2      go ahead.

3           A    I would ask to speak with my superior s

4      Fabian Pineros or Tom.

5           MR. ROBINSON:  Are you recommending a

6      specific number or are you just saying she

7      should get an in crease, that is the question.

8           A    No, I would just say let's see what she

9      makes, maybe she means something more, she is worthy

10     of something more.

11          Q    And how often do you do that?

12          A    How often do I recommend it?

13          Q    Yes?

14          A    Not very often.

15          Q    Do you review the files of each employee a

16     couple of times a year to decide whether you need to

17     recommend an in crease?

18          A    No.

19          Q    Is it just based on your ob servance  of

20     that employee's work?

21          A    Yes.

22          Q    I am trying to understand how you go about

23     deciding that it is the right time to recommend a

24     wage increase?

25          MR. ROBINSON:  Well --

ROUGH DRAFT - NOT A FINAL

Page 29

1        Q      Do you understand the question, Mr. Smith?

2        A      It is kinds of vague.

3        Q      Okay can you explain to me how you decide

4   to recommend a wage increase for an employee, what

5   are the factor is that you take into consideration

6   to decide Miss Doroles Haskins, for instance,

7   deevery a wage increased to?

8            MR. ROBINSON:  Well, objection.  I think

9        it has been established through the witness is

10       that there is a --

11           Calafiore I am sorry, I really request

12       that you stop from making speaking objections

13       and describe to the witness what other people

14       have said, that is improper, and I don't want

15       to educate the witness about what other people

16       have said.

17           MR. ROBINSON:  Because you want to trick

18       him.

19           MS. CALAFIORE:  I am sorry, do you have an

20       objection, I don't want to trick .

21           MR. ROBINSON:  My objection is you are

22       trying to trick the witness.

23       Q      Mr. Smith, now you can answer.  Could you

24   explain to me the parameters of recommending wage

25   increases for the employees that you supervise?

Page 30

1          MR. ROBINSON:    Objection.

2      Q    Go ahead?

3      A    If I observe someone does outstanding

4  work, outstanding work, outstanding work, then I

5  might discuss it with my supervisors.

6      Q    Could you tell me what do you mean by

7  outstanding work?

8      A    Far above and beyond what they would

9  normally do.

10      Q    Do you remember recommending wage

11  increases during the last year?

12      A    No.

13      Q    You don't?

14      A    No.

15      Q    Do you remember recommending wage

16  increases during its last three years?

17      A    Yes.

18      Q    Could you tell me what those were?

19      A    Yes.

20          MR. ROBINSON:   What was what was are.

21          MS. CALAFIROE: the wage increases that he

22      recommended.

23          MR Robinson:   That could be answered 25

24      cents.

25          MS. CALAFIORE:   The witness testified that

ROUGH DRAFT - NOT A FINAL

Page  31

1          he remembers.

2          Q    Can you tell me the instances during which

3      you recommended a wage increase?

4          A    Specific instances?

5          Q    Yes?

6          A    No.

7          Q    Is there anything that would help refresh

8      your memory?

9          A    No.

10          Q    Let me take your checkers one by one?

11              MR. ROBINSON:  I want to take a break.

12          Q    (By Ms. Calafiore)

13              MS. CALAFIORE:  There is a question

14      pending.

15              MR. Robinson no, you haven't.  Calafiore

16      we haven't been going for even an hour.

17              MR. ROBINSON:  What are the hours.

18          Q    Mr. Smith do you need a breaks.

19              MR. ROBINSON:  I need a break.  Calafiore

20      I am sorry, I would like to continue because we

21      have two witnesses today, and we have been

22      going for only 45 minutes.

23              MR. ROBINSON:  I need a break.  Calafiore

24      it makes no sense if the witnesses doesn't need

25      a break.

ROUGH DRAFT - NOT A FINAL

Page 32

1    MR. ROBINSON:  I am in the room, too, I

2    counte.

3         MS. CALAFIORE:  Are you going to confer

4    with the  witness about his testimony, I object

5    right now.

6         MR. ROBINSON:  What I am going to do with

7    my witness is, is privileged communication.

8         MS. CALAFIORE:  You cannot confer with the

9    witness during S.

10        MR. ROBINSON:  I am going to have

11   privilege had communication with my witness.

12        MS. CALAFIORE:  Let the record reflect

13   that opposing , counsel is requesting a breaks

14   despite the fact that the witness does not need

15   a break and we are requesting to finish this

16   line of questions and it is only going to take

17   about five minute and I object S.

18        MR. ROBINSON:  And my break is going to

19   take five minute, too, we are going to take it

20   right now.

21        MS. CALAFIORE:  Before we take is the

22   break I would like to remind you whatever is

23   discussed about his testimony is discovery

24   able.

25        MR. ROBINSON:  No, it is not.

ROUGH DRAFT - NOT A FINAL

Page 33

1          MS. CALAFIORE:  Yes, it is.

2          MR. ROBINSON:  No, it isn't.

3          (Recess taken) ) s.

4      Q    Mr. Smith, we just took a break, while we

5   were questioning you about wage increases to your

6   employees.

7              At the request of your counsel,

8   despite the fact that you did not want a break,

9   could you tell me.

10         MR. ROBINSON:  Despite the fact that who

11      didn't want the break.

12         MS. CALAFIORE:  Mr. Smith.

13     Q     Can you tell me if you discussed your

14   testimony with your counsel during the break.

15         MR. ROBINSON:  Objection, instruct him not

16      to answer.

17         MS. CALAFIORE:  Could you answer.

18      Can we go off the record for a second.

19         MR. ROBINSON:  No.

20         MS. CALAFIORE:  I am sorry, I just needtor

21      tell my colleague s something.

22         MR. ROBINSON:  You can whisper  to your

23      colleagues.

24         MR. ROBINSON:  No, I object we are not

25      going off the record.  You can leave the record

Page 34

1    on and walk out of the room and talks to them.

2    Q

3         MS. CALAFIORE:  R IT A can you take a list

4    of all of the questions that he instructed him

5    not to answer on so we can take them to the

6    judge.  If you want to what is the record for

7    these things, but --

8    Q    (Waste ).

9    Q    So, Mr. Smith, did you speak to

10   Mr. Sussman about your testimony during the break?

11   A    No.

12   Q    I heard some people screaming during the

13   break, who was screaming?

14   A    I don't know.

15   Q    Was it in your meeting, it sound like

16   Mr. Robinson was screaming; shouting, is that a

17   better word?

18   A    Not that I know of.

19   Q    That what is we heard from here, you

20   didn't hear it.

21        MR. ROBINSON:  Objection, move that that

22   be strik   en.  Go ahead.

23   Q    Mr. Smith, did you discuss with your

24   counsel the wage increases during the break?

25        MR. ROBINSON:  Objection, instruct him not

Page 35

1    to answer.

2        Q    Let's get Baker to the question that we

3    asked you, you said that during during the last

4    three years you did recommend some wage increases,

5    correct?

6        A    Yes.

7        Q    Can you tell me to whom?

8        A    David blanks.

9        Q    Who?

10       A    David blanks.

11       Q    What does he do?

12       A    He was a F E D E X, he did ship F E D E X.

13       Q    Is that his title?

14       A    Yes.

15       Q    How long has he been at Beauty?

16       A    How long hasn't he be at Beauty.

17       Q    How long has Mr. Blanks been employed at

18   Beauty Enterprises?

19       A    I don't know exactly.

20       Q    Do you have an idea as to whether it is

21   more than five years?

22       A    It is less than five years.

23       Q    Less?

24       A    Yes.

25       Q    How much of a wage increase did you

ROUGH DRAFT - NOT A FINAL

Page 40

1    Q     When was that approximately?

2          MR. ROBINSON:  He answered it.

3    A     I said, I don't remember exactly when he

4    started workings with me on the CVS orders.

5    Q     Is there any record of the wage increase

6    that you recommended?

7          MR. ROBINSON:  Any record anywhere in the

8    world?  Are.

9    Q     Yes, any are where in the world ?

10         MR. ROBINSON:  Of his recommendation or

11   what happened with picture.

12   Q     Of your recommendation and what happened

13   to it Robinson be that is two?

14   A     It would be of what happened but there is

15   no record of my recommendation, no.

16   Q     Do you make the recommendation verbally?

17   A     Yes.

18   Q     And then if it gets approved, is the

19   approval placed in the personnel file S?

20         MR. ROBINSON:  Objection it assume is that

21   there a personnel file for these please.

22   Q     Is there a personnel file for the temp

23   employees?

24   A     Not at Beauty Enterprises.

25   Q     So where -- once you approve the wage

ROUGH DRAFT - NOT A FINAL

Page 41

1   increase, how does that work, when you have a temp

2   employee, who does it get communicated to?

3        MR. ROBINSON:  Whether does what get

4   communicated to.

5        Q    The wage increase?

6        MR. ROBINSON:  The.

7        Q    (By Ms. Calafiore)

8        MS. CALAFIORE:  I am sorry, the witness is

9   perfectly capable of letting me know if he

10  doesn't understand the question.

11       Q    Mr. Smith, we discussed in the beginning?

12       A    I don't understand, because I said the

13  approval goes.

14       MR. ROBINSON:  W H O A.

15       MS. CALAFIORE:  Let me finish I am going

16  over my instruction in the beginning so that we

17  can proceed.

18       Robinson then don't say anything until she

19  finish s her speech.

20       Q    We discussion at the beginning of the

21  deposition if you don't understand a question you

22  can ask me, you can say I don't understand, I am

23  notly to trick you at all.  You ask me and I will

24  try to rephrase it in a way that is understandable

25  to you so that you can give me an answer S I would

ROUGH DRAFT - NOT A FINAL

Page 42

1   request, however, that every time you answer, you

2   stop looking at your counsel, or at Mr. Sussman.

3   You focus on the question, there is no right or

4   wrong answer, okay to these questions.

5                 You just have to answer truthfully to

6   what you know, if you don't recall you tell me you

7   don't recall that is a perfectly fine answer just

8   tell believe that you don't recall or you don't

9   understand and I will rephrase it; but, please don't

10  look at your counsel before responding to my

11  questions, okay S.

12                MR. ROBINSON:  Now, here is my.

13                MS. CALAFIORE:  if your counsel has an

14        objection he will state it, for the record and

15        then you can go on and answer.  The only

16        exception to that is when he instructs you not

17        to answer which should be very rare.

18                MR. ROBINSON:  Now here is my objection to

19        her speech answer and her lecturing my client.

20        First of all, I am not looking at his face when

21        he testify s if he is turning to me, I am not

22        seeing him.  You are suggesting that there is

23        some sort of signalling or approval process or

24        disapproval process going on, and there is

25        none.  If he, if he is looking to his left I

ROUGH DRAFT - NOT A FINAL

Page 43

1    have no idea why he is looking to his left.

2        MS. CALAFIORE:  Is the the witness s

3    appears to be clearly I intimidated.

4        MR. ROBINSON:  Asking him that.

5        MS. CALAFIORE:  He is  Concerned about

6    giving the write or wrong answer, there is no

7    right or wrong answer here, it is about

8    answering to your personal knowledge, do you

9    understand that.

10    A    Yes, I do.

11        MR. ROBINSON:  Let me make, I let you make

12    your speech with urine striction s I am

13    objecting to them, I am making my little speech

14    for the record then I will finish and then if

15    you want to make another speech you can, but

16    then we can go on; okay.

17        This witness is not intimidated he has

18    been through this before, he doesn't need any

19    projection from you of what might happen to him

20    if he gives an answer, that is helpful to your

21    cause, nothing is going to happen to him, if he

22    gives an answer that is helpful to your cause;

23    okay nothing is going to happen to him and he

24    knows that, and he doesn't needs to hear it

25    from you.

Page 44

1       And the problem with some of your
2    questions.
3          MS. Calafiore:  Okay, do you have an
4    objection now.
5          Mr. Robinson:  No, I am making a speech,
6    the problem with, please give me the courtesy
7    of making a speech as I gave you the courtesy
8    you can object to my speech after I finish.
9          MS. CALAFIORE:  You instruct -- Robinson
10   be will you please stop,.
11         MS. CALAFIORE:  I want you not to in
12   structs him.
13         MR. ROBINSON:  I am not instructing him in
14   any way, shape or form all I am saying is that.
15         MS. CALAFIORE:  You repeat the same thing
16   over and over again S.
17         MR. ROBINSON:  I don't get a chance to get
18   it out so how Could I repeat the same thing
19   over and over.  Some of your questions are very
20   ambiguous so when the witness understands it,
21   he may understand it in one way away that you
22   did month necessarily intend, when I am
23   breaking in to.
24         MS. Calafiore:  I don't need to you
25   break?

ROUGH DRAFT - NOT A FINAL

Page 45

1    MR. ROBINSON:  Let believe finish.

2    MS. CALAFIORE:  If you have an objection.

3    MR. ROBINSON:  Let me finish, please.

4    When I am breaking in, I am trying to make the

5    question - less ambiguous than before.

6    MS. CALAFIORE:  Okay.

7    MR. ROBINSON:  So we can be sure that his

8    understanding of the question and your

9    understanding of the question means the same

10   thing.

11   MS. CALAFIORE:  I don't  want to proceed,

12   Rick, I don't want.

13   MR. ROBINSON:  if you don't want that I

14   assume that you want to trick is the witness.

15   MS. CALAFIORE:  Are you done, this is what

16   is continuing a lot of time we have the rules,

17   you state cure be objection for the record is

18   the witness proceeds with his answer.

19

20

21   MR.  Robinson:  We have rules for me and

22   we have rules four apparently they don't apply

23   to me they apply to me.  I don't buy that, I

24   finished, have you, have you, been able to get

25   my statement for the record not withstanding

Page 46

1    all of the  interrupttiions that I have

2    received.  Fine,  I am finished, you can object

3    to it and ask your next question.

4         Calafiore also.

5    Q    Mr. Smith, let's go become back to to what

6    we were discussing the temps, do you know whether

7    abouts pays the temp employees directly?

8    A    We don't pay them directly.

9    Q    Who pays them?

10   A    Their agencies.

11   Q    So when you recommend a wage increase, to

12   whom is that wage increase communicated to.

13         MR.  Robinson to whom is the

14   recommendation communicated to.

15   Q    Yes.

16   A    My recommendation, I told you it, I

17   communicate it to Fabian.

18   Q    But you don't participate temp directly so

19   you are not going to apply?

20         MR. ROBINSON:  Ask ask him if he knows

21   what Fabian does, then.

22         Ms.  Calafiore:  I am sorry, do you have

23         an objection, I ask the question I want to

24         request.

25         MR. ROBINSON:  You can but it is a bad

Page 47

1      question I know where you are going you are

2      just not asking the right questions to get

3      there and you are wasting time continuing a lot

4      of time by doing that.

5      Q     Mr. Smith, do you know what Fabian does

6   with that recommendation.

7            MR. Robinson:   That a girl.

8      A    I assume s he calls.

9            Ms.CALAFIORE:    Also did you say that

10   a girl.

11           Mr.  Robinson:   Yes.

12           MS. CALAFIORE:  You think you are very

13      funny, don't you.

14           MR.ROBINSON:  no, I don't.

15      Q    Do you know what Mr. Smith does with it?

16      A    What Mr. Smith does with it he.

17           MR. ROBINSON:   Mr. Pineros.

18      Q    Mr. Pineros does --

19      A    I assume she calls the agencies and

20   reports it to them.

21      Q    And why are you smiling?

22      A    Because you called, you said, do you know

23   what Mr. Smith does with that.

24      Q    Do you think this is in the a serious

25   proceeding, Mr. Smith S?

ROUGH DRAFT - NOT A FINAL

Page 50

1    a name other than a wage increase.

2         Q    Okay.  Do you have a limit as to how many

3    wage increases you can recommend per year?

4         A    Not that I know of.

5         Q    Okay.

6         Q    Let's move to?

7              MS.LaMARCA:  Ultimatety Monber do you

8         recall making any recommendation for a wage

9         increase for lag  PHALTty since 2003.

10        A    No.

11        Q    Do you remember recommending a wage

12   increase since 2003 for fear R A fly?

13        A    No.

14        Q    How do you pronounce her name?

15        A    Fire Flea.

16        Q    You don't remember doing it?

17        A    No, I just said, no.

18        Q    Let the record reflect that the witness

19   advise again laughing?

20              MR. ROBINSON:  Laughing?

21              MS. CALAFIORE:  Yes.  He is obviously not

22        take this seriously.

23        Q    Mr. Smith,?

24              MR. ROBINSON:  You know, hold on a second.

25        Stop, stop and, if you are going to abuse my

1    witness and make speeches, and, and comment on,

2    comment on where he moves his head and whether

3    he smiles, or whether she finds something you

4    do humor trust then I am going to take him out

5    of here, okay.

6        MS. CALAFIORE:  Maybe you should

7    instruct --

8        MR. ROBINSON:  You have to show respect to

9    my witnesses Houston lecturing my witness if

10   you have a problem you can go and  talk to me

11   and bring your colleague s and I will talk to

12   him if I think there is something that is

13   needed I don't need you lectureing my witness

14   about what he should and shouldn't do whether

15   he can smile or not smile.  Or whether he

16   offends your tender sensibilities.

17       MS. CALAFIORE:  Mr. Robinson, first of all

18    if anyone has been disrespectful throughout

19   this proceeding it is you calling opposing

20   counsel that a girl.

21       MR. ROBINSON:  You find that offensive.

22   Calafiore and being division respectful I would

23   request that maybe.

24       MR. ROBINSON:  You make a lots of

25   requests.

1      Q      By whom at star lift equipment?

2      A      I don't know.

3      Q      Did star lift equipment provide the exam

4    directly to you?

5      A      No.

6      Q      To whom?

7      A      Tom Buoncore.

8      Q      And then, what did Tom Buoncore do with

9    the exams that he sevened from Star Lift?

10            MR. ROBINSON:  Since 2003.

11     A      Administered to the drivers.

12     Q      Did Tom Buoncore administer the test

13   directly?

14     A      Yes, he gives the test, yes.

15     Q      Okay now, how many tests have you taken

16   forklift test?

17            MR. ROBINSON:  Since 2003.

18     Q      Ever.

19            I am sorry you just produced this

20   document that we had an agreement with the judge

21   that I could inquiry into anything relating to

22   documents that you just produced to us and all of

23   the forklift exam S have been produced to us in

24   April 2008.  I am perfecty within the scope of my

25   examination to question him at length about the

ROUGH DRAFT - NOT A FINAL

Page 63

1   forklift exams without any date limit ation if you

2   have a problem with that rather than interrupt this

3   now and come back tomorrow when the judge is here.

4          MR. ROBINSON:  I just want to ask you a

5   question, refresh my memory as to what forklift

6   we gave you.

7          MS. Calafiore:  I am not going to refresh

8   your memory you are not it witness.

9          MR. ROBINSON:  You are unbelievable, you

10  are just the most unprofessional uncooperative

11  lawyer that I have dealt with in 36 years of

12  practicing law.

13         Calafiore if anyone can use its word

14  unprofessional.

15         Robinson can I see what I --

16         Calafiore I am here to depose the witness

17  not to refresh your memory, I am going to give

18  you a copy of the exhibit that  is I have

19  prepared for this witness, and, and.

20         Robinson we are going to take a break I am

21  going to look in my file and see what the stuff

22  is.

23         Calafiore sure, let's take a break.

24         (Brief Recess) ).

25  Q    Mr. Smith, we are talking about the

ROUGH DRAFT - NOT A FINAL

Page 92

1        objection.

2        Q      What is is the level of language skill

3    required in order to be in compliance with the

4    English only rule.

5            MR. ROBINSON:   Objection it assumes that

6    he is the one that establishes a standards or

7    been made aware of a standard.   Are.

8            MS. CALAFIORE:   He has authority to

9    discipline workers.

10           Robinson no question about that.

11           MS. Calafiore:   He must know what is

12   enough.

13           MR. ROBINSON:   Assumptions are always

14   dangerous.   That is why you could lay a

15   foundation, if you would like, but you are the

16   boss of your own deposition.

17       Q     We have been established that you have to

18   discipline workers for violations of the English

19   only rule, correct?

20       A     Yes.

21       Q     What is your understanding of how much

22   English they have to speak in order to be in

23   compliance with the rule?

24           MR. ROBINSON:   W H O A, W H O A, the rule

25   does n't require them to speak English D

Page 93

1    Calafiore that is not an objection you are

2    instructing.

3         MR. ROBINSON:  It is an absurd question,

4    that is an absurd question.

5         MS. CALAFIORE:  Again, you are coaching

6    the witness as to what other people have said.

7         MR. ROBINSON:  That is unfair question.

8         Ms.          Calafiore:  There is no being

9    objection in the rules for fairness.

10        MR. ROBINSON:  You are right and you

11   certainly are driving a truck through the

12   failure of there to be a fairness exception.

13        MS. CALAFIORE:  Mr., Robinson do you have

14   an objection to state for the record I again

15   request that you rye frain from making speaking

16   objections.

17        MR. ROBINSON:  The speak English only rule

18   in the work place does not require employees.

19        MS. CALAFIORE:  I request that you s stop

20   coaching the witness.

21        MR. ROBINSON:  I am not coaching him.  You

22   are asking dumb misleading questions and you

23   are refuse ing to accept any assistance was

24   soever in making the questions appropriate and

25   proper.

ROUGH DRAFT - NOT A FINAL

Page 94

1      MS. CALAFIORE:  Could you read the

2    question again, please.

3                   (Requested portion read back)

4                   Calafiore I am going to request

5                   that.

6      MR. ROBINSON:  I am not granting any of

7    your request.

8    Q    I am requesting that you pay for all of

9    the page is that cover your objection:

10     MR. ROBINSON:  Request not accepted.  You

11    ask a dumb question like that where everybody

12    in the whole case knows what the English only

13    rule is and you try to confusion the witness by

14    asking a question that is nonsensical, that is

15    inconsistent with the English only rule that

16    can't possibly be a violation of the English

17    only rule and you are trying to trick the

18    witness S.

19     MS. CALAFIORE:  Let is the record reflect

20    that did the opposing counsel is coaching the

21    witness.

22     MR. ROBINSON:  Go ahead and ask your next

23    question, Calafiore let the record reflect that

24    opposing counsel is coaching is the witness and

25    constantly making speaking objections despite

Page 95

1        the fact.

2             MR. ROBINSON:  The record will reflect

3        what the record refects it doesn't need you to

4        summarize it for the record.  In Correctly.

5             MS. CALAFIORE:  Are you done.

6             MR. ROBINSON:  Am I done, yes.

7             MS. CALAFIORE:  Could you read the

8        question, please.

9                  (Requested portion read back).

10       Q    Do you understand that question?

11       A    No, I don't.

12       Q    You said you haven't received any training

13  on how to enforce the English only rule, correct.

14            MR. ROBINSON:  Since 2003.

15       Q    Since 2003?

16       A    Yes.

17       Q    So how do you know when to enforce the

18  rule, could you give me your understanding of, of

19  when you decide this is a violation and this is not

20  a violation?

21            MR. ROBINSON:  Objection, that has been

22       asked and answered and I instruct him not to

23       answer because it has been asked and answered

24       three times, it has been asked and answered at

25       his prior deposition.

ROUGH DRAFT - NOT A FINAL

Page 96

1    Q    Do you have an understanding as to how

2   much English a workser must speak in order to comply

3   with the rule?

4          MR. ROBINSON:  Objection.  Eight

5          mischaracterization of the rule.  Go ahead.

6    Q    You can answer?

7    A    I don't understand that, what do you mean.

8    Q    Do you have an understanding of what level

9   of skill is required from a worker, what level of

10  English language skill is required of a worker to be

11  in compliance with the rule.

12         MR. ROBINSON:  If you want to ask him what

13         level of skill or proficiency is required to

14         work at Beauty Enterprise, that is fine.  But,

15         but if, if you are asking him what level of

16         English you never have to be able to comply

17         with the rule you don't have to speak, and you

18         are in compliance with the rule you don't need

19         to know any English, you just keep with your

20         mouth shut.

21   A    That is it, you can keep your mouth shut

22  if you understand me and do your job that is all you

23  need to do.

24   Q    To your knowledge, does Beauty actually

25  give an English language test before hiring

Page 98

1      A    None that I can think of.

2      Q    Any of the temporary workers?

3      A    None that I can think of me me.

4      Q    And when you say that they don't always

5    understand what you say (B R E S L A K S K I).

6      Q    How do you know that that is because of

7    their language skill?

8           MR. ROBINSON:  That is a good question.

9           Me me?

10     A    Because the way they look at me, like.

11          MR. ROBINSON:  No, but -- the question is,

12    how do you know it is because of their language

13    skill or the level of language skill and not

14    because you haven't made yourself clear or

15    because, because they are D U M B.

16     A    I don't know, it could be any of any of

17    those.

18     Q    Can they speak English to you in a way

19    that you understand?

20     A    Yes.

21     Q    What is their language of origin?

22          MR. ROBINSON:  Whose.

23     Q    Fira Flea and B OR I S?

24     A    Russian.

25     Q    When you think they haven't quite

ROUGH DRAFT - NOT A FINAL

Page 101

```
 1        A    I don't understand.

 2        Q     do you agree with this rule?

 3        A    That it is a good rule?

 4        Q    Yes?

 5        A    Yes.

 6        Q    And how do you feel about this lawsuit?

 7        A    I think it is a waste of money and time.

 8        Q    Does has anyone told that you that this

 9   lawsuit would affect the profit sharing plan?

10        A    I don't understand the question.

11        Q    Has anyone ever told you or at least since

12   2003, that because of this lawsuit, because of this

13   lawsuit that your profit sharing plan with Beauty

14   would be affected?

15             MR. ROBINSON:  The contribution to the

16   plan would be  effected, that is the question

17   you want to.

18             A have I been told?

19        Q    Yes?

20        A    Yes.

21        Q    Who told that you?

22        A    The person that hands out the profit

23   sharing sheets.

24        Q    Who is that?

25        A    John Carabetta.
```

ROUGH DRAFT - NOT A FINAL

Page 107

1    Q    How much how much is that increase

2    generally?

3    A    Whatever it is company decides.

4    Q    And have you recommended that E VA Diaz

5    receive that wage increase since 2003?

6    A    We only two exceptions, I only discuss

7    exceptions.

8    Q    I don't know what that means, I am sorry.

9         MR. ROBINSON:  You know exactly what that

10        means.

11   Q    Mr. Smith?

12   A    Something different than what the company

13   describes or prescribes, I should say.

14   Q    I am sorry, could you explain that a

15   little better, I really do not understand?

16        MR. ROBINSON:  Explain what a little

17        better.

18   Q    What these exceptions are?

19   A    Exceptions would be something different

20   than what the company prescribed.

21   Q    Meaning that you give them a little more

22   or a little less?

23   A    Than the prescription, correct.

24   Q    Okay.

25   Q    And has that happened with regards to any

ROUGH DRAFT - NOT A FINAL

Page 113

1    Q    So you didn't know your yearly salary or

2    monthly salary?

3    A    No.

4    Q    Mr. Carabetta would know?

5    A    Well.

6    Q    Correct?

7    A    I image he could look it up.

8    Q    And how is your salary -- do you know what

9    your salary was last year?

10   A    No.

11   Q    What other compensation other than your

12   salary do you receive?

13           MR. ROBINSON:  He gets the same

14   compensation that everybody else, the same

15   benefits you are W A St.ing time with these

16   questions.

17   Q    What other compensation do you receive

18   other than your salary?

19   A    Profit sharing.

20   Q    Anything else?

21   A    Sure, medical benefits, sick time,

22   vacation time, personal time.

23   Q    You said you have been at the company for

24   18 years, correct?

25   A    Correct.

ROUGH DRAFT - NOT A FINAL

Page 114

1      Q     Did you ever receive a of service award

2    when you reached 15 years with the company A A?

3      A     No.

4      Q     You didn't?

5      A     No.

6      Q     Did you receive any other award from the

7    company during your 18 years?

8      A     Yes.  I received a pin  at five and ten.

9      Q     What kind of opinion?

10     A     Beauty Enterprise that I proudly aware on

11   my suit.

12     Q     Do you receive any commissions?

13     A     No.

14     Q     Do you receive a bonus?

15     A     Yes.

16     Q     How much of a bonus do you ever?

17     A     Three week's salary.

18     Q     And to your knowledge, do other employee s

19   receive the same bonus?

20     A     Yes.

21     Q     Three weeks salary?

22     A     No.  That is according to a schedule.

23     Q     Could you tell me what that schedule is?

24           MR. ROBINSON:  You know the schedule, what

25   does his knowledge have to do with it.

Page 115

1        MS. CALAFIORE:  Do you have an objection

2    for the record,.

3        MR. ROBINSON:  Yes we are talking about

4    conevering time and you are W A St.ing time.

5    Q    Can you tell me what that schedule is?

6    A    When you get to a certain point you get

7    another amount.

8    Q    When do you first start getting four weeks

9    salary as a bonus?

10   A    I don't know.

11   Q    When do you start getting three weeks

12   salary?

13   A    After ten years -- no, after 15 years, I

14   don't know, one of those, ten or 15, I don't know.

15   Q    Okay.

16        MS. CALAFIORE:  I am happy to take a break

17    and let you go I may have a couple of other

18    questions, if you want to get started, Jeff.

19        MR. BURSTEIN:  I want to get started.

20        MS. CALAFIORE:  I don't think I have any

21    more questions for today, but I will let my

22    colleague go and if I have any remaining

23    questions I will ask at the end of that.

24        MR. BURSTEIN:  Burstein.

25    Q    Good afternoon Mr. Smith my name is

Page 1

1    UNITED STATES DISTRICT COURT

2    FOR THE DISTRICT OF CONNECTICUT

     ----------------------------------------x

3    EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

4              Plaintiff,

5         -vs-

6    BEAUTY ENTERPRISES, INC., AAA INDUSTRIAL

     TEMPORARIES, INC., ESSENTIAL TEMPORARIES,

7    INC.,

8              Defendant.

     ----------------------------------------x

9    MIQUEL ANGEL ALVAREZ and WILLIAM TORRES,

10             Plaintiff-Intervenors,

11        -vs-

12   BEAUTY ENTERPRISES, INC.,

13             Defendant.

     ----------------------------------------x

14

               June 06, 2008

15             10:15 a.m.

16

17      CONTINUED Deposition of John Carbetta taken by the

18   Plaintiff, pursuant to notice, held at The United States

19   District Court, Lafayette Street, Bridgeport, Connecticut,

20   before Anita T. Shemin, a Certified Shorthand Reporter and

21   Licensed Shorthand Reporter within and for the

22   State of Connecticut.

23

24

25

ROUGH DRAFT - NOT A FINAL

1   A P P E A R A N C E S:

2   JEFFREY C. BURSTEIN, ESQ.

3   U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

4   Newark Area Office

5   1 Newark Center

6   21st Floor

7   Newark, New Jersey 07102

8

9   CLIFFORD CHANCE

10  Attorneys for Plaintiff Intervenors

11  31 West 52nd Street

12  New York, New York 10019-6131

13  BY:  VALERIA CALAFIORE, ESQ.

14  AND

15  Tamara Schmidt, Intern

16

17  PULLMAN & COMLEY, LLC

18  Attorneys for Defendant

19  90 State House Square

20  Hartford, Connecticut 06103

21  BY:  RICHARD C. ROBINSON, ESQ. also present:  Larry Sussman

22

23

24

25

ROUGH DRAFT - NOT A FINAL

Page 3

1    continued EXAMINATION BY Miss Calafiore

2        Q    Good morning Mr. Carabetta?

3        A    Good morning.

4        Q    How are you today?

5        A    With good.  How are you.

6        Q    Good, thank you.  We are continuing

7    yesterday's deposition, the same rules apply, if you

8    would like me to go over them again I will be paper

9    me to otherwise I would like to continue from what

10   we were discussing yesterday concerning is the

11   profit sharing plan before I do that, let me ask you

12   this are, did you discuss your testimony?

13          MR. ROBINSON:  He didn't discuss it with

14   anybody, he went to bed, he had dinner and he

15   went to bed Calafiore I am sorry, Mr. Calafiore

16   did you discuss your testimony with anyone

17   after we concluded the deposition yesterday.

18       A    No.

19               No.

20       Q    What about today?

21       A    No.

22       Q    Did you drive down with Mr. Sussman today?

23       A    No.  In.

24       Q    Did your review any documents concerning

25   this review any documents concerning your deposition

ROUGH DRAFT - NOT A FINAL

Page 8

1    you remember?

2        A    The financial statements will show it.

3        Q    For each year?

4        A    Yes.

5        Q    I see.

6             Have you had any suggestion at all

7    with either Mr. Sussman or Mr. Cohen concerning the

8    contributions to be made to the profit sharing plan?

9        A    Only that.

10       Q    By Beauty.

11       Q    Generally.

12            MR. ROBINSON:  You mean ever.

13            MS. CALAFIORE:  Yes.

14            MR. ROBINSON:  Since 2003.

15       Q    Since 2000, I would want to go become to

16   2000 with him.  He has never been deposed?

17            MR. ROBINSON:  I don't care if he has

18   never been deposed.  He can have been deposed.

19            MS. CALAFIORE:  Do you have an objection.

20            MR. ROBINSON:  2003.

21       Q    Let's start with 2003, do you recall?

22       A    I am sorry, what was the question.

23       Q    Do you recall having any discussions with

24   either Mr. Sussman or Mr. Cohen or Mr. Picirello

25   concerning how much money Beauty Enterprise was

Page 13

1    deposition of Mr. Carabetta went very smoothly.
2    All I am trying to do today.
3         Calafiore : I do not appreciate your
4    constant interruptions.
5         MR. ROBINSON:  I am not interrupting your
6    flow.
7         Calafiore:  Can we interrupt I want to go
8    to the job, this is absurd, I need to be able
9    to have a flow with the witness and I would
10   like to you stop interrupting.
11        MR. ROBINSON:  You can have a flow with
12   the witness.
13        MS.  Calafiore:  I don't work for you
14   Rick, if you do not appreciate my questions
15   make your objections for the records and let me
16   pursue the line of questions.  I would like to
17   be able to continue without constant
18   interruptions about how you think I should
19   phrase a question.
20        MR. ROBINSON:  You are so  offended by
21   what I am telling you, there is no request.
22        MS. CALAFIORE:  Can we interrupt, please.
23        MR. Robinson: Go call the judge, go run to
24   the teacher.
25                    MS. Calafiore:  Also could you

Page 14

1          please.

2          MR. ROBINSON:  Go by yourself.  You can't

3     even characterize this letter properly.

4               Off the record.

5               (Brief Recess).

6     Q    (By Ms. Calafiore)

7          MS. CALAFIORE:  For the record the judge

8     is currently not here, so until the judge gets

9     here I would like to continue the deposition

10    without your constant interruptions and to the

11    extent you continue interrupting like that I am

12    really going to move for you to pay all of the

13    pages of this depositions, that are covered

14    with your I am per continue component

15    objections, so I request that you let me

16    request question its witness, if you have an

17    objection just state it unless you instruct him

18    not to answer please let me move forward,.

19    Q    Mr. Carabetta?

20         MR. ROBINSON:  I object to your statement,

21    I object to your threats, I object to your

22    requests, and I object to your mischaracterize

23    rise.  Plaintiff's Exhibit 3 one.  All I am

24    doing is suggesting to you how you could

25    characterize rise it if you don't if you want

Page 24

1    A    Yes.

2    Q    I would like to speak about the English

3  only rule?

4         MR. ROBINSON:  Are you through with this.

5    Q    For now, yes.  That Beauty Enterprise has,

6  are you familiar with that rule?

7    A    Yes.

8    Q    Could you tell me what you know about the

9  rule, please?

10   A    Basically the rule is that while you are

11 working you must speak English.

12   Q    And do you know when this rule was first

13 adopted?

14   A    No.

15   Q    When you started in 1984, did you know

16 about this rule?

17   A    I don't remember.

18   Q    Did anyone tell you that there was an

19 English only rule at Beauty Enterprise when you

20 applied for a job there?

21        MR. ROBINSON:  I object, it is beyond the

22 scope of this deposition.  beyond  the allow

23 able scope of discovery in this deposition.

24   Q    You can answer?

25   A    Did anybody tell me about the English only

ROUGH DRAFT - NOT A FINAL

Page 27

1    this determination of what discipline to give for

2    infarctions of the English only rule?

3         A    The discipline would be, M E T E D the

4    same as breaking any other rule.

5         Q    So it is the progress sive discipline to

6    be imposed for infarctions of Beauty Enterprise's

7    policies is the same for any policy?

8         A    Yes.

9         Q    Yes?

10        A    Yes, as far as I know.

11        Q    Have you ever disciplined anyone for

12   violations of the English only rule A    No.

13        Q    Have you ever heard any employee at Beauty

14   Enterprise speak English, speak languages other than

15   English outside of lunch breaks?

16             MR. ROBINSON:   Since 2003.

17             MS. CALAFIORE:  No.

18             MR. ROBINSON:   Objection, beyond the scope

19   of the deposition.

20        Q    Since 2000.  Robinson be objection

21   accident beyond the scope of the deposition?

22             MS. CALAFIORE:  Are you instructing him

23   not not to answer.

24             MR. ROBINSON:  No.

25        Q    So you can answer.

ROUGH DRAFT - NOT A FINAL

Page 34

1      MR. ROBINSON:  Objection, calls for a
2      conclusion on the part of the witness.
3      A    As far as I know there are no exceptions.
4      Q    Okay.
5           Did anyone ever give you any training
6      concerning the English only rule.
7      MR. ROBINSON:  Objection, beyond the scope
8      of the desposition, unless it is 2003 forward.
9      Q    You can answer.
10     A    No.
11     Q    Do you give training to any of the
12     employees you work one concerning the English only
13     rule?
14     A    No.
15     Q    Do you recall an in stance in 2001 when a
16     tape of an in interview Mr. Cohen did with a radio
17     talk to her concerning the English only rule was
18     played at Beauty Enterprise?
19     MR. ROBINSON:  I am going to object at
20     this point and I think maybe we betted go see
21     the judge.
22     MS. CALAFIORE:  Okay.  What is your
23     objection accident by the way so I can write it
24     down?
25     MR. ROBINSON:  You want the grounds this