```
              UNITED STATES DISTRICT COURT
                DISTRICT OF CONNECTICUT

EQUAL EMPLOYMENT OPPORTUNITY    :
COMMISSION, et al.,             :
    Plaintiffs,                 :
                                :
     v.                         :    Civil NO. 3:01CV378(AHN)
                                :
BEAUTY ENTERPRISES, INC.,       :
    Defendant.                  :
```

RULING ON PLAINTIFF-INTERVENORS' RENEWED EMERGENCY MOTION TO

COMPEL DISCOVERY

In their renewed emergency motion to compel discovery [doc. # 233], plaintiff-intervenors seek responses to several discovery requests they propounded to the defendant, Beauty Enterprises, Inc. ("BEI"). These requests seek, among other things, information and documents pertaining to forklift examinations, wages, awards, and new hires. For the reasons stated below, the motion is granted in part and denied in part.

STANDARD

Discovery of matters "relevant to the subject matter involved in the action" is appropriate. See Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes means information that is reasonably calculated to lead to the discovery of admissible evidence. See Daval Steel Prods. v. M/V Fakredine, 951 F.2d 1357, 1367 (2d Cir. 1991). "This is especially the case with regard to discrimination claims, where the imposition of unnecessary discovery limitations is to be avoided." Chan v. NYU Downtown Hosp., No. 03 Civ. 3003(CBM), 2004 WL 1886009, at *4

(S.D.N.Y. Aug. 23, 2004) (citations omitted).  Additionally, "whether a specific discovery request seeks information relevant to a claim or defense will turn on the specific circumstances of the pending action. . . ." 6 James Wm. Moore, et al., Moore's Federal Practice § 26.41[6][c] (3d ed. 2002)(citing Fed. R. Civ. P. 26(b)(1) advisory committee note (2000)).  To modify the scheduling order with respect to the discovery period, a party must show good cause.  See Fed. R. Civ. P. 16(b); Grochowski v. Phoenix Constr. Co., 318 F.3d 80, 86 (2d Cir. 2003) ("[a] finding of good cause [to extend scheduling order deadlines] depends on the diligence of the moving party").

## DISCUSSION

The court assumes the parties' familiarity with the facts of this case.  The issues in the current motion relate to outstanding discovery requests and BEI's objections thereto.  The court follows the parties' organizational method and addresses each discovery request based on the types of information sought.  As a preliminary issue, however, the court addresses BEI's blanket objections and arguments opposing production of the information plaintiff-intervenors seek.

First, BEI argues that it has no duty to respond to plaintiff-intervenors' discovery because the discovery period is closed.  For many reasons, too numerous to list, nothing about this case has followed what might be considered a "typical"

2

litigation sequence.  As BEI is well aware, after the initial trial date in 2005 passed, many aspects of this case changed while the parties engaged in settlement negotiations, which resulted in a settlement that ultimately collapsed.  Thereafter, the court allowed the plaintiff-intervenors and the EEOC to engage in additional discovery, including depositions, in preparation for the current trial date of September 15, 2008.  Many of the documents and information sought in the plaintiff-intervenors' motion involve issues that surfaced during those recent depositions, and plaintiff-intervenors restrict their requests primarily to those issues.  Plaintiff-intervenors have diligently pursued the production of these items, but BEI has refused to produce them.  Thus, plaintiff-intervenors have demonstrated good cause to re-open discovery and should receive the documents and things responsive to this request.  In addition, the court believes that, for purposes of judicial efficiency, the limited discovery plaintiff-intervenors seek is proper.  Currently, the case is set for trial in less than two months' time and BEI cannot be allowed to refuse these requests only to have them renewed at trial, when plaintiff-intervenors may subpoena record-keepers to produce the documents they now seek.

    Next, BEI argues that plaintiff-intervenors have violated Fed. R. Civ. P. 33(a)(1) because plaintiff-intervenors propounded

48 interrogatories, which exceed the limit of 25 set forth in Rule 33.  Rule 33 states that "a party may serve on any other party no more than 25 written interrogatories. . . ."  There are five plaintiff-intervenors and therefore theoretically they are entitled to serve a total of 100 interrogatories on BEI, see St. Paul Fire & Marine Ins. Co. v. Birch, Stewart, Kolasch & Birch, LLP, 217 F.R.D. 288, 289 (D. Mass. 2003), though in practice that may prove to be unduly burdensome.  See 8A Wright & Miller Fed. Prac. & Proc. § 2168.1 (noting that "in some instances nominally separate parties should be considered one party for purposes of the 25-interrogatory limitation").  However, the court need not address the propriety of plaintiff-intervenors serving more than 25 interrogatories on BEI, because they have substantially limited the number of requests in their pending motion to nine, seeking information responsive only to interrogatories 4, 17, 30, 31, 32, 35, 37, 40, and 44, respectively.  Hence, BEI's argument on this issue is moot.

In addition, BEI did not raise the argument that plaintiff-intervenors violated Rule 33 until after it had responded to some of the interrogatories.  To preserve its objection under Rule 33, BEI had to "object to the number of interrogatories before responding" to the interrogatories; "[o]therwise the responding party could selectively respond to the interrogatories and thereby strategically omit the most prejudicial information."

Herdlein Technologies, Inc. v. Century Contractors, Inc., 147 F.R.D. 103, 104-05 (W.D.N.C. 1993). Therefore, BEI's objection to the number of interrogatories is waived.

Finally, BEI argues that it has "adequately and completely responded" to plaintiff-intervenors' discovery requests. Blanket objections that interrogatories are "overly broad or unduly burdensome" or providing a few scattered documents from files do not amount to adequate and complete responses based on the liberal discovery standard in employment cases. See generally Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 657 (1989) (superseded on other grounds) (holding that in employment discrimination cases, "liberal civil discovery rules give plaintiffs broad access to employers' records in an effort to document their claims"); Pisacane v. Enichem America, Inc., No. 94CIV.7843(JFK), 1996 WL 391865, at *4 (S.D.N.Y. July 12, 1996) (noting that "plaintiffs in employment discrimination actions should be afforded broad and liberal discovery in their attempts to uncover indirect evidence of discrimination"); Finch v. Hercules, Inc., 149 F.R.D. 60, 62 (D. Del. 1993) ("the necessity for liberal discovery to clarify the complex issues encountered in litigation seeking to redress employment discrimination has been widely recognized"). In addition, though BEI states repeatedly that certain requests are "overly broad or unduly burdensome," BEI has "failed to demonstrate the nature and extent

5

of the actual burden it would face in making the full production." See Khan v. Sanofi-Synthelabo, Inc., No. 01Civ.11423JSMDF, 2002 WL 31720528, at *4 (S.D.N.Y. Dec. 3, 2002) (citing In re In-Store Advertising Sec. Lit., 163 F.R.D. 452, 455 (S.D.N.Y. 1995) ("If a party resists production on the basis of claimed undue burden, it must establish the factual basis for the assertion through competent evidence."). The deponents in the recent depositions referenced several documents and other information in their testimony that BEI has yet to produce but which appear to be relevant to the claims in this case. Whether the information will be admissible at trial remains to be determined, but based on the facts presently before the court, plaintiff-intervenors are entitled to discover a majority of the information they seek. Specific limitations are addressed below.

    A.   <u>Forklift</u>

Based on court-authorized depositions of BEI employees conducted in June and July 2008, plaintiff-intervenors have determined that the following items exist: 1) a forklift training video; 2) a forklift training manual; 3) document(s) showing the minimum passing score for the forklift exams administered to Harold Acosta ("Acosta"); 4) records of communications with Starlift Equipment concerning the forklift exam; 5) records showing which individuals at Starlift Equipment explained to BEI

supervisor Tom Buonocore how to administer the forklift exam and other documents from Starlift Equipment to BEI regarding the exam; 6) records of all forklift accidents at BEI, including an accident involving Roger McCormick during the last five years.

Acosta, a former forklift operator and plaintiff-intervenor, was removed from his position after he failed forklift examinations administered by BEI. It appears that plaintiff-intervenors learned of the existence of these documents and things related to the forklift exams for the first time during the most recent depositions. If they exist, they are clearly relevant to Acosta's claims.

However, the court fails to see, nor have plaintiff-intervenors described, how all forklift accidents in the history of BEI would be relevant to Acosta's claims. Accordingly, the court limits the accident record to be produced to the last five years. Any and all documents and things described above that are in the possession of BEI shall be produced to plaintiff-intervenors.

    B.   <u>Wage Setting Process</u>

Interrogatory 30 asks BEI to "identify all individuals in charge of setting wages at Defendant and describe the wage setting process for all hourly workers permanent and temporary, from January 1, 1998 to present." The plaintiff-intervenors also seek documents responsive to the interrogatory, including wages

for hourly workers and supervisors.  BEI asserts a blanket objection that the request is overly broad and unduly burdensome and does not pertain to the English-only policy at issue.

This case involves discrimination and retaliation against workers for their failure to speak English in the workplace.  One manner in which an employer could retaliate against an employer could be through wage reduction and disparity.  Indeed, "[i]n employment discrimination cases, plaintiffs 'may employ liberal civil discovery rules to obtain broad access to employer's records in order to generate a statistical analysis to show the disparate impact of an employer's personnel policies." Khan, 2002 WL 31720528, at *4 (S.D.N.Y. Dec. 3, 2002) (citing Avillan v. Digital Equip. Corp., No. 91 Civ. 8594, 1994 WL 198771 at *2 (S.D.N.Y. May 17, 1994).  This information therefore is relevant to the claims in this case and shall be produced in full.

    C.   Employee Awards

Interrogatories 31 and 32 seek information pertaining to awards, gifts, or other benefits bestowed upon employees for years of service or for other reasons. Specifically, plaintiff-intervenors seek: 1) documents relating to bonuses paid since 2001; 2) lists of employees eligible for length of service awards; 3) invoices showing amounts paid for 25-year service awards since 2003; and 4) a copy of the check that BEI supervisor Tom Buonacore received for his 20-year service award.  BEI again

objects that the interrogatories are overly broad and do not pertain to the English-only policy, but acknowledges that it previously provided information responsive to these interrogatories regarding one of the plaintiff-intervenors.

Another way that an employer could retaliate against a worker who failed to adhere to a company policy would be to withhold a perk, award or other non-monetary benefit.  This is likewise relevant to the plaintiff-intervenors' claims and BEI shall produce the requested information.  See Khan, 2002 WL 31720528, at *4; Hollander v. American Cyanamid Co., 895 F.2d 80, 84 (2d Cir. 1990) (noting that "[e]vidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive").  However, the yearly eligible employee list request is limited to 2001 to the present.

    D.   BEI Financial Information

BEI vice president Larry Sussman testified at his deposition that he prepared preliminary financial statements for the fiscal year ending September 30, 2007, that BEI made cash advances to another business owned by Cohen, and that BEI has suffered a loss in only one year since it began operations.  Plaintiff-intervenors seek documents relating to these statements.  Because

9

BEI's contributions to its employee profit-sharing plan ostensibly are linked to BEI's income, and BEI already has produced some documents responsive to this request, BEI shall produce the remaining documents plaintiff-intervenors seek in their request.

  E. <u>BEI Newsletters</u>

In interrogatory 40 and document request 25, plaintiff-intervenors seek information about and copies of BEI's company newsletter since 1998. Plaintiff-intervenors noted in their previous motion to compel that there were articles regarding this case that BEI published in its newsletter. Such articles could be relevant to the plaintiff-intervenors' claims. The court therefore limits the scope of the request to include only copies of and information about BEI newsletters that contain references to this litigation and the English-only policy.

  F. <u>Employees With 20+ Years' Experience</u>

In interrogatory 44, plaintiff-intervenors seek information and documents relating to all employees who had 20 or more years of service with BEI, as well as each employee's position, discipline, wages, and current employment status with BEI from 1998 to the present. BEI again asserts a blanket objection that the interrogatory and document request are overly broad and do not pertain to the English-only policy.

While the court will restrict the time period of the

requests to 2001 to the present, this information is relevant to the plaintiff-intervenors' claims regarding retaliation and disparate treatment for failure to adhere to the English-only policy. See, e.g., Hollander, 895 F.2d at 84-85 (recognizing that "[b]ecause employers rarely leave a paper trail - or "smoking gun" - attesting to a discriminatory intent, disparate treatment plaintiffs must often build their cases from pieces of circumstantial evidence").

    G.   New Hires

Interrogatory 4 and document request 3 seek information regarding new hires from January 1, 1998 and whether the new hires are still employed with BEI. In their motion, plaintiff-intervenors further limit their request to new hire information from September 2001 to November 2001, because it specifically pertains to plaintiff-intervenors Harold Acosta and Waleska Miranda's claims. BEI shall produce the information plaintiff-intervenors seek within the limited three-month time period in 2001.

    H. Litigation Hold

Plaintiff-intervenors argue that BEI should produce information related to the litigation hold in this case because several BEI supervisors stated that they were not instructed to preserve documents related to this case. BEI states that the only document responsive to the request would be a letter from

11

BEI's counsel to BEI supervisors advising them to implement a litigation hold.  BEI argues that the contents of this letter are protected by the attorney-client privilege.

While the court agrees that the communication is privileged, BEI will provide to plaintiff-intervenors, pursuant to Local Rule 37, the date on which the letter was sent and the names of the recipients of the letter.

    I.    <u>Settlement</u>

Plaintiff-intervenors seek information and documents relating to the settlement discussions and negotiations within BEI.  BEI argues that this information is confidential and is protected by the attorney-client privilege.

Indeed, the plaintiff-intervenors do not provide an adequate explanation for their need for this information, and it seems that such information would be either confidential or protected by the attorney-client privilege.  Accordingly, plaintiff-intervenors' motion is denied with respect to this request.

    J.    <u>Discussions Related to This Litigation</u>

Plaintiff-intervenors also request that BEI identify individuals who have had discussions regarding this litigation and possible settlement of the case.  Specifically, plaintiff-intervenors determined during the recent depositions that BEI representatives have failed to search emails, corporate minutes or other records for responsive documents.  In addition,

deponents revealed that there is a tape of a radio talk show interview of Cohen discussing this case, and that the tape was played in BEI's warehouse for its employees. "Potentially discoverable evidence, of course, includes electronically stored information, such as email communications between and among the parties." Baker v. Gerould, No. 03-CV-6558L, 2008 WL 850236, *1-2 (W.D.N.Y. Mar. 27, 2008); see Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("electronic documents are no less subject to disclosure than paper records") (quoting Rowe Entm't, Inc. v. William Morris Agency, Inc., 205 F.R.D. 421, 428 (S.D.N.Y. 2002)). In addition, Sussman testified that there are corporate minutes that contain references to this case.

Insofar as the requested documents and things are not privileged, BEI shall produce them. Insofar as the documents sought are privileged, such as those pertaining to settlement discussions, BEI shall produce a privilege log in accordance with Local Rule 37.

K.   Individuals with Relevant Knowledge

Plaintiff-intervenors list twenty individuals in document request 27(2) and seek their personnel files. BEI objects that this request is overly broad, unduly burdensome and not related to the English-only policy. While personnel files should not be produced normally in discovery, they are highly relevant to a plaintiff's claims in an employment discrimination case. See

Ladson v. Ulltra East Parking Corp., 164 F.R.D. 376, 377 (S.D.N.Y. 1996) (noting that in a discrimination lawsuit, "[t]he Court is at a loss to see why current employees' files might not provide information about hiring and promotion that could be relevant or could lead to the discovery of relevant evidence"); Culkin v. Pitney Bowes, Inc., 225 F.R.D. 69, 72-73 (D. Conn. 2004) (holding that the plaintiff's discovery request for personnel files in a FMLA discrimination suit was "sufficiently narrowly tailored and, as such, not unduly burdensome nor overly oppressive" because the request involved only the office in which the plaintiff was employed and was limited to a period of only four years). Accordingly, BEI shall produce the complete personnel files for the individuals listed in document request 27(2).

Plaintiff-intervenors also seek documents regarding BEI's English-only policy that were prepared by BEI supervisors and managers. Since the English-only policy is central to the issues in this case, there is no reason that, if such documents exist, they should not be produced. Therefore, BEI shall produce these documents authored by the individuals listed in document request 28(2).

L.   Plaintiff-Intervenors' Files

Plaintiff-intervenors request a complete copy of their personnel files. To date, plaintiff-intervenors state that BEI

has produced only certain documents from their files. The same reasoning regarding fellow employees' personnel files applies here. See Ladson, 164 F.R.D. at 377 (holding that the defendant employer must produce entire personnel files and was not allowed to simply select documents that it deemed relevant); Culkin, 225 F.R.D. at 72-73. Plaintiff-intervenors are entitled to receive a complete copy of their personnel files and BEI shall produce them.

    M.    Profit Sharing Plan

Plaintiff-intervenors request documents regarding BEI's profit-sharing plan, including how it determines each employee's share and any changes in the plan since May 2000. This is related to the requests discussed above, i.e., information about BEI's financials as well as perks and benefits provided to its employees. This information is relevant to the plaintiff-intervenors' claims of retaliation and disparate treatment. Accordingly, BEI shall produce the requested documents.

## CONCLUSION

For the foregoing reasons, the plaintiff-intervenors' renewed emergency motion to compel discovery [doc. # 233] is GRANTEd in part and DENIED in part. Where the court has ruled that BEI must respond to plaintiff-intervenors' document requests and interrogatories, BEI shall provide all responses, documents and things to plaintiff-intervenors by August 28, 2008.

SO ORDERED this the 8th day of August 2008, at Bridgeport, Connecticut.

```
            _____/s/_____
            Alan H. Nevas
            United States District Judge
```