UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al._____Plaintiffs<br><br>vs.<br><br>BEAUTY ENTERPRISES, INC., et al.<br><br>_____Defendants | CIVIL ACTION<br>NO. 301-CV-378 (AHN)<br><br><br>August 22, 2008 |

**DEFENDANT BEAUTY ENTERPRISES' MOTION IN LIMINE TO PRECLUDE PLAINTIFF-INTERVENORS FROM OFFERING AS EVIDENCE AT TRIAL TESTIMONY FROM THE DE BENE ESSE DEPOSITION OF SHERRY BAKER LAWRENCE**

Defendant Beauty Enterprises, Inc. ("BEI") moves in limine for an order precluding Plaintiff-Intervenors (Harold Acosta, Luz Andujar, Eva Diaz, Jose Linares and Waleska Miranda) from offering into evidence any of the testimony from their *de bene esse* deposition of the non-party witness, Sherry Baker-Lawrence. Preclusion, or at least some other appropriate remedy, is necessary because Plaintiff-Intervenors' counsel chose to conduct the deposition without BEI's counsel present. As explained in detail below, Plaintiff-Intervenors' counsel knew that BEI's counsel wanted to attend the deposition, object to any objectionable questions and cross-examine the witness. She further knew that largely as a result of a combination of misleading conduct and a deliberate failure to communicate on her part, BEI's counsel would be two hours late for the deposition. (The deposition was to begin at 11:00 a.m. on August 5th. BEI's counsel was scheduled to arrive at approximately 1:00 p.m. and in fact, arrived at 12:45 p.m.). Under the circumstances, there was no legitimate reason for Plaintiff-Intervenors'

counsel to proceed in BEI's counsel's absence. Worse yet, even though Plaintiff-Intervenors' counsel proceeded and concluded her direct examination at or about 12:15 p.m., she failed to wait the mere half hour for BEI's counsel to arrive so that he could at least conduct his cross-examination. Plaintiff-Intervenors' counsel simply left and took her witness with her. Not only would it be patently unfair for Plaintiff-Intervenors to be permitted to use the deposition as evidence under these circumstances, it would also be severely prejudicial to BEI. Accordingly, BEI asks the Court to intervene and protect it from this prejudice by granting the present Motion.

In support of this Motion, BEI states as follows:

1.  The Court granted Plaintiff-Intervenors' motion to allow them to depose Baker-Lawrence *de bene esse*. Thereafter, on July 18, 2008, counsel resolved their issues concerning the deposition's starting time, and the deposition was set for Tuesday, August 5, 2008 at 11:00 a.m. in Fort Lauderdale, Florida.

2.  Because BEI's counsel was on trial on Monday, August 4, 2008 in Middletown Superior Court (Value Health Care Services, LLC v. Termini), he could not fly to Florida (from Hartford) during the day that Monday. Moreover, there was no flight Tuesday morning, August 5th, that would have landed in Fort Lauderdale at a time that would have enabled BEI's counsel to arrive at the deposition by 11:00 a.m. Consequently, BEI's counsel bought tickets for an evening flight to Fort Lauderdale on Monday the 4th, a 7:15 p.m. U.S. Air flight from Bradley, with a plane change in Charlotte.

3. Ultimately, BEI's counsel did not take this Monday evening flight because he reasonably believed that a settlement had been reached with the Plaintiff-Intervenors that day, Monday, August 4th.

4. The events culminating in this seeming settlement began the day after the Court's July 28, 2008 settlement conference. As the Court will recall, BEI's counsel reported at this conference that his client – or, more accurately, BEI's owner - was unwilling to settle. Almost immediately thereafter, counsel and others talked further with BEI's owner and were successful in changing his mind about settlement. As a result, on Tuesday, July 29, 2008 at 5:03 p.m., BEI's counsel e-mailed a global settlement proposal to all counsel on the plaintiffs' side, including Plaintiff-Intervenors' counsel. Plaintiff-Intervenor's counsel asked for clarification thirteen minutes later, at 5:16 p.m.. At 5:31 p.m., BEI's counsel e-mailed the clarification to all counsel on the plaintiffs' side. The proposal, as clarified, required Plaintiff-Intervenor Eva Diaz, as well as at least two of the EEOC's Charging Parties still working at BEI, to be paid their portion of the settlement sum on a deferred basis - when they left BEI.

5. By e-mail dated Wednesday, July 30, 2008 at 7:40 p.m., Plaintiff-Intervenors' counsel invited BEI to settle with her clients separately from the EEOC. By e-mail dated July 31, 2008 at 12:51 p.m., counsel made a dollar demand. "In the old deal we were getting $125,000 for our five plaintiff-intervenors. We would recommend to our clients a new deal for the aggregate sum of $225,000." At this point, though, counsel was unwilling to accept a deferral of Eva Diaz' portion. Likewise, the EEOC's counsel was unwilling to accept a deferral for his "clients" still working at BEI.

6. After communicating with counsel via e-mail on Friday August 1st (at 2:59

3

p.m.) to suggest a possible alternative to the deferred payment requirement, Plaintiff-Intervenors' counsel e-mailed the following message to BEI's counsel at 4:30 p.m. that day:

"Rick

We are willing to do the deal for our five people at $225 [thousand] non-negotiable, with deferred payment for Eva Diaz. We would require that your client pay for the cost associated with putting the money (and maintaining it) in escrow during the time that Eva remains employed at Beauty. As I explained to you by phone, we have made a much lower request than we believe we are entitled to only to move things along and get the deal done today. So this offer is only valid if we can get something on record with the court today.

As I told you we have a draft settlement [agreement] ready that we could circulate shortly after we get the deal on the record. Our settlement would not require any agreement concerning the English only policy.

I look forward to hearing from you.

Valeria Calafiore"

7.      Thirty-four minutes later, at 5:04 that Friday evening, BEI's counsel responded via e-mail.

"Believe it or not, you're not the problem. We would agree to what you've sought in the context of a global settlement. Jeff [the EEOC's counsel] made a couple of new demands that could be problematic. I've just presented them to Larry [Sussman, a BEI Vice-President] and with dread, he's going to discuss them with Bob [Mr. Cohen, BEI's owner]. I'll get back to you as soon as I hear. Do you know if the court is still open for us?"

8.      After Plaintiff-Intervenors counsel checked with the Court, determined it was not open and so advised BEI's counsel, BEI's counsel went home. The next day, Saturday, August 2nd, he flew to Washington, D.C. for the weekend to attend a wedding. During the weekend, BEI's counsel confirmed to Plaintiff-Intervenors' counsel that BEI would do the $225K deal, with deferred payment for Eva Diaz without a global settlement. Plaintiff-Intervenors' counsel then proposed that if BEI were willing to pay

4

an additional $20K (in addition to the $225K), Eva Diaz would leave BEI's employ at the end of the year. At BEI's counsel's request, Plaintiff-Intervenors' counsel confirmed that this additional $20K was at BEI's option, that if BEI were unwilling to accept the "$20K for year end departure" proposal, the parties still had a deal at the $225K, with deferral for Eva Diaz.

9. Later that weekend, Plaintiff-Intervenors counsel advised BEI's counsel that she had changed her position. The extra $20K was now part of the deal and integral to it. BEI would have to pay $245K to settle with the Plaintiff-Intervenors (with payment to Eva Diaz deferred until she left, but with her promising to leave at year end). After checking with his client, BEI's counsel reported to Plaintiff-Intervenors' counsel that the demand for the extra $20K was rejected.

10. BEI's counsel flew back to Hartford (from Washington) Sunday afternoon, August 3rd. He then drove to his office, arriving shortly after 5:00 p.m. Waiting for him were e-mails from Plaintiff-Intervenors' counsel attaching proposed settlement agreements. Included in the second of these e-mails were these statements:

* ". . . I was able to change my flight to Florida at a great expense and am really not happy about this, but I did it relying on your word that you would be able to get this done tonight." (BEI's counsel never gave his word that he could negotiate the language of the agreements and obtain BEI's signatures on Sunday evening. In fact, he told her that this was logistically impossible.)

* "After talking to my clients I hope to be able to be able to complete the settlement for $250K, which totals $5K more than we previously discussed. I say I "hope" because my clients are now focused on the fact that the settlement awards will be taxable to them, so they are unhappy. I told them the deal was already done, but if my understanding is incorrect then I will certainly require more to convince some of them to sign."

* "Finally, I know you very much appreciate the fact that I moved my flight tomorrow, but it goes without saying that if we don't have this finalized and signed before the depositions, we will obviously have to proceed with them."

5

11. From his office that Sunday evening, BEI's counsel called Plaintiff-Intervenors' counsel to tell her that he did not have the extra $20K and that, in substance, he would see her in Florida on Tuesday. He then left for home.

12. On his drive home, BEI's counsel received a call on his cell phone from Plaintiff-Intervenors' counsel. She was frantic, and it was difficult to discern the point she was attempting to make or even what she was attempting to say. BEI's counsel asked her to get to the point. She then said that Eva Diaz needed the extra $20K to pay for her COBRA benefit (continuation of her group health insurance at BEI for 18 months following her termination), explaining how important this was for her given her husband's age and the couple's financial condition. She seemed to be pleading for the additional $20K. BEI's counsel responded, saying that while he knew he could not get the $20K for her, he would try to persuade BEI to pay the COBRA, that he could not do this that night, but that he would be in the office before 7:00 a.m. the next day, Monday, August 4th, that the owner and the management team at BEI would arrive at work around 9 or 9:30 that morning, that he would talk to them then and be back to her as soon as he could.

13. At 7:35 a.m. on Monday, August 4th, BEI's counsel e-mailed Plaintiff-Intervenors' counsel with his comments on the proposed settlement agreements. The e-mail includes this statement; "I'm waiting to hear from Larry on COBRA . . ."

14. BEI's counsel spoke with his client shortly after 10:00 that morning. It agreed to pay nine months of COBRA for Eva Diaz. BEI's counsel then called Plaintiff-Intervenors' counsel and left a message. He followed up with an e-mail to her at 10:51 a.m. He used the e-mail because he knew that Plaintiff-Intervenors' counsel has a

6

Blackberry and checks it constantly. The e-mail message stated:

"I left you a voice mail – we will do 9 months of COBRA (the max is 18). I'm assuming we have a deal and will not fly to Florida unless I hear from you otherwise. I have to go to court. I'm late to meet the client. E-mail Christine Collyer (counsel's associate), who will e-mail another associate of mine whom I'm taking to court now. Or leave a voice mail – or just let me know one way or another."

15. Within the next few minutes, either BEI's counsel was able to reach Plaintiff-Intervenor's counsel on her cell phone, or Plaintiff-Intervenor's counsel called BEI's counsel from her cell phone. Plaintiff-Intervenor's counsel was boarding the plane to travel to Florida. Other than telling him that she was boarding the plane that moment, there was nothing that Plaintiff-Intervenors' counsel said that BEI's counsel could understand. (There was too much noise at Plaintiff-Intervenors' counsel's end.) Be that as it may, BEI's counsel expected Plaintiff-Intervenors' counsel to be in touch with him one way or another that afternoon as to whether the proposal for 9 months of COBRA would conclude the deal and whether the Florida depositions would be going forward. And given Plaintiff-Intervenors' Sunday evening call, in which she practically begged for the money so that Eva Diaz could pay her COBRA, BEI's counsel certainly expected that the 9 months proposal would have concluded the deal.

16. Unfortunately and inexplicably, Plaintiff-Intervenors' counsel was incommunicado the entire afternoon. BEI's counsel (through his associate) made several attempts to reach her on her cell and through her assistant. At one point, Plaintiff-Intervenors' counsel's assistant assured BEI's counsel's associate that Plaintiff-Intervenors' counsel would be calling her (the associate) within fifteen minutes. This never happened.

7

17. At 5:53 p.m., after returning to his office from court and having still not heard from Plaintiff-Intervenors' counsel, BEI's counsel sent Plaintiff-Intervenors' counsel the following e-mail message, with a copy to the EEOC's counsel):

"It's 5:53 p.m. Valeria, I assumed the e-mail I sent to you just before 11 this morning is correct and that the matter is settled as between our clients. It would have been nice of you simply to confirm this or to respond to our numerous attempts to get to you to confirm that my assumption is correct. I'm not going to Florida tonight under these circumstances. There is no need for me to incur the expense or to travel until 1 in the morning for nothing. In an abundance of caution, I got the best flight I could get for the next day – tomorrow morning. Unfortunately, it isn't direct. It's a Southwest flight leaves Hartford at 6:45. It goes to Orlando. We don't get into Fort Lauderdale until noon. I don't want to take this flight either, since I believe we've settled. (Jeff, if I don't settle with you, we'll do these depositions ourselves in the next few weeks.) Valeria – I'm going home. I'll be in my car with the cell 860-729-4307. Then I'll be home – 860 521 747. If I don't hear from you tonight, I'm taking your silence as evidencing that we've settled – and I'm not going to fly down tomorrow. Jeff, if I hear from Valeria, I'll call you on your cell."

18. Despite this e-mail, Plaintiff-Intervenors' counsel never called.

19. That evening, while at home, BEI's counsel spoke to the EEOC's counsel. The EEOC's counsel asked whether BEI's counsel had seen the latest e-mail from Plaintiff-Intervenors' counsel. He said he had not, that Plaintiff-Intervenors' counsel knew he had no Blackberry or similar device, that he had specifically asked her to call him, leaving her numbers for him that she already had to make it easy for her to call and that she had failed to do so. He further told him that the e-mail was certainly not an attempt to communicate, but to make a record. The EEOC's counsel then described the e-mail message – and BEI's counsel told the EEOC's counsel that he would be going to Florida the next day at 6:45 a.m.[1]

---

[1] The e-mail, sent at 6:54 p.m., stated, "I have never confirmed any settlement to you at all. I told you I needed to speak to Eva after your last offer this morning at 10:40. I called you back repeating again to you that I was on my way to Florida, in fact you heard the last call for my flight to Florida, and that we were going forward with the depositions. I also told you

8

20. As previously noted, BEI's counsel arrived at the deposition site at 12:45 p.m. only to be told that the deposition was over and that Plaintiff-Intervenors' counsel and her witness had left at about 12:15 p.m.

21. Had Plaintiff-Intervenors' counsel deigned to call BEI's counsel before 5:53 p.m. Monday afternoon as he requested in his e-mail at 10:51 that morning and conveyed to him the message that she ultimately conveyed in her 6:54 p.m. e-mail, BEI's counsel would not have cancelled his Monday evening flight and would have gone straight to the airport from court to catch that flight.  And he would have been at the deposition the next morning on time, thus obviating the need for this motion  Indeed, if Plaintiff-Intervenors' counsel had called BEI's counsel on Monday afternoon and told him what, if anything, was unacceptable about the one arguably open issue between the parties (the 9 months of COBRA as a substitute for the additional $20K), or addressed BEI's counsel's limited comments concerning the language of the proposed settlement agreement, Plaintiff-Intervenors' counsel might well have been able to satisfy her, thus avoiding the necessity for the depositions, this motion and anything else to do with this case.[2]  The fact is, however, that Plaintiff-Intervenors' counsel never called.

22. Even without this call, if Plaintiff-Intervenors' counsel had the courtesy to wait two hours for BEI's counsel to arrive at the deposition, there would have been no

---

that after we finish the depositions we will be able to resume looking at whatever changes you wanted to make to the settlement agreements I sent you over the weekend.  I also repeated to you numerous times that I needed signed agreements in order to cancel these depositions.  You made me spend a lot of money moving my flight in the hopes that you could get me a signed agreement before the weekend, so your representation below seems quite disingenuous.  Our deposition will start tomorrow at 10:30 sharp as planned."

[2] Even if she had called BEI's counsel on Monday evening, as he had asked her to do, the matter would likely have been concluded.

9

need for this motion.³ Plaintiff-Intervenors' counsel had earlier expressed to the Court that she was fearful the deposition would not conclude within the day if it were to start in the afternoon. Yet, her direct examination lasted slightly more than an hour. Even if BEI's counsel were present and objecting to questions (and based on the transcript, he surely would have been objecting to many questions on the grounds of relevance, leading, etc.), this might have caused the direct to take at most another half hour. The point is that the ability to complete the deposition in one day would never have been compromised by a two hour delay in the starting time – and Plaintiff-Intervenors' counsel surely knew this.

23.   Moreover, if Plaintiff-Intervenors' counsel had conducted her ex parte direct examination and waited a mere half hour for BEI's counsel to arrive, BEI's counsel could have conducted a cross-examination, and under those circumstances, may have eliminated the need for this Motion. Even if Plaintiff-Intervenors' counsel is able to conjure up some sort of excuse for not calling BEI's counsel on Monday afternoon, and even if she can manufacture some justification for not waiting two hours to start the deposition, there is nothing she can conjure up, manufacture or say that could begin to justify her leaving the deposition site with the witness, during the lunch hour yet, instead of waiting (or returning from lunch) to see whether BEI's counsel had arrived. The inescapable conclusion is that given the opportunity to depose Baker-Lawrence in BEI's counsel's absence or at least to prevent BEI's counsel from cross-examining Baker-Lawrence, Plaintiff-Intervenors' counsel quickly jumped at the chance.

---

³ Plaintiff-Intervenors' counsel knew that BEI's counsel was taking his Tuesday morning flight because the EEOC's counsel told her this on Tuesday morning.

10

24. Rule 32(a) of the Federal Rules of Civil Procedure governs the use of depositions in court proceedings. One of the principles this Rule articulates is that a deposition cannot be used against a party who was absent or unrepresented at the deposition unless that party had reasonable notice and failed without sufficient justification to attend. See, e.g., *Nash v. Heckler*, 108 F.R.D. 376, 378 (W.D.N.Y. 1985) (party's tactical decision not to attend was insufficient ground to exclude deposition). The authors of Moore's Federal Practice describe this principle one of elemental justice. 7 Moore's Federal Practice 3d Ed., § 32.02[2][b]. Here, BEI did not fail to attend. At worst, it was two hours late (and Plaintiff-Intervenors' counsel knew that he would be two hours late) because Plaintiff-Intervenors' counsel refused to communicate with BEI's counsel despite BEI's counsel's Herculean efforts to have her communicate with him. On this basis alone, the Court should preclude the use of the deposition as evidence at trial.

25. Equally important is that Connecticut has a code of civility governing lawyers' conduct called the "Principles of Professionalism." (Exhibit 1).[4] Plaintiff-Intervenors' counsel's conduct in this instance violated a key principle of this Code. She failed to treat BEI's counsel with "[c]ivility and courtesy [which] are the hallmarks of professionalism and should not be viewed as weakness." Id. Civility and courtesy demanded that she communicate with BEI's counsel on Monday afternoon knowing that he thought the matter was settled or at least readily settle-able at that point and that there was no longer any need for him to travel to Florida. Failing that, civility and courtesy demanded that she call BEI's counsel at home on Monday evening, rather

---

[4] Both the Federal Bar Association and the American Bar Association have drafted their own guidelines governing attorney conduct which contain similar language. (Exhibits 2 and 3).

11

than sending an e-mail to his office that she knew he would not see that evening. At the very least, BEI's counsel could have confirmed the information he had e-mailed to her that afternoon – that if worse came to worse, and the matter was not settled, he would be two hours late for the deposition the next day, and the two lawyers could have discussed the matter. Civility and courtesy under the circumstances demanded that Plaintiff-Intervenors' counsel wait the two hours for BEI's counsel to arrive at the deposition that Tuesday. And failing that, civility and courtesy at a bare minimum demanded that Plaintiff-Intervenors' counsel remain with her witness at the deposition site for the half or three quarters of an hour she would have had to have waited for BEI's counsel to arrive

26.     At least one Connecticut trial judge has stated that "[a]t the commencement of the deposition, if one expected to attend is absent, the scheduling attorney should call to ascertain whether there has been a delay … before proceeding with the deposition or before filing motions with the court against anyone in attendance." *Cejas v. Allstate Insurance Co.,* 2004 Conn. Super. LEXIS 3055, **7-8 (Oct. 12. 2004). The judge in that case called this a "standard professional courtesy" that is "the hallmark of the respectable and respectful practice of law." Id. at *8. Implicit in this is that scheduling counsel should accommodate adversary counsel if there is a legitimate justification for his absence or delay in arriving, rather than taking unfair advantage of the situation.

27.     A United States District Court decision evidences the behavior expected of scheduling counsel in situations of this sort. *Gilmore v. Marine Drilling Management Company*, 2002 U.S. Dist. LEXIS 20847 (October 28, 2002). There, the defendant

sought to strike the deposition testimony of a witness on the ground that plaintiff's counsel conducted the deposition without the defendant's attorney present.  The plaintiff had noticed the deposition for 11 a.m.  All parties except the defendant's attorney were present for the deposition at the scheduled time.  Plaintiff's attorney called the defendant's attorney's office and was told that the attorney was on his way to the deposition.  Plaintiff's attorney left his cell phone number with the law firm and asked that someone contact him with an update as to the defendant's attorney's estimated time of arrival.  No one contacted him.

Finally, after waiting almost 40 minutes, the witness, who had been subpoenaed to the deposition, started to complain that he was missing work to attend a deposition that was not taking place.  At 11: 38 a.m., plaintiff's attorney reluctantly started the deposition and stated for the record the reasons for the delay.[5]  The deposition concluded after 5 to 7 minutes of examination.  At 11:45 a.m. and after plaintiff's attorney finished his examination, the defendant's attorney appeared.  The parties went back on the record and stated the reason for the defendant's attorney's delay.  Defendant's attorney then cross-examined the witness for 30 minutes.

Subsequently, the defendant moved to strike the deposition testimony because his attorney was "hampered from effectively cross-examining the witness" because his attorney was not present during plaintiff's attorney's examination.  Id.  The defendant further claimed that the plaintiff's attorney acted unprofessionally by conducting the deposition without the defendant's attorney present.

---

[5] Plaintiff-Intervenors' counsel made no statements for the record regarding BEI's counsel's "absence."

The court rejected the charge of unprofessional conduct, noting that the plaintiff's attorney had called the defendant's attorney's office, asked that someone contact him with the time the defendant's attorney was expected to arrive, checked his own messages and waited almost 40 minutes before starting the deposition in defense counsel's absence. Clearly, the plaintiff's attorney's behavior was consistent with courtesy expected of him under the circumstances.

Next, the court had to decide whether the defendant's attorney's cross-examination of the witness was hampered because he was not present during the plaintiff's attorney's examination. The court examined the witness's testimony during both examinations and found that defendant's attorney's absence during plaintiff's attorney's seven minute examination was not harmful because the defendant's attorney "covered in depth the issues raised" during the plaintiff's attorney's examination. Id.

For each of these reasons, the court refused to strike the deposition.

There simply is no comparison between the courtesy plaintiff's counsel displayed in *Gilmore* and the behavior – the discourtesy – that Plaintiff-Intervenors' counsel exhibited in this instance. And of course, defense counsel in *Gilmore* was not deprived of his critical right to cross-examine, as defense counsel was here.

28.    It should be readily apparent that BEI would be prejudiced if Plaintiff-Intervenors were able to use the Baker-Lawrence deposition as evidence. Baker-Lawrence's testimony is harmful to BEI – and BEI maintains that much of it is untrue. Cross-examination would have cast doubt on the credibility of this testimony and the credibility of Baker-Lawrence as well. Without this cross-examination, the jury may not have a sufficient basis to be persuaded that her testimony is false.

29. While preclusion is mandated here, there are alternative remedies that would be satisfy BEI. One is that BEI be accorded the right to object to questions asked on direct and be given the opportunity to cross-examine Baker-Lawrence at a continued deposition in Florida. Plaintiff-Intervenors and/or their counsel should be required to pay BEI's expenses for this second Florida trip. Another is that Plaintiff-Intervenors be allowed to introduce only those portions of the deposition in which the witness discusses Mr. Cohen's supposed animus towards Hispanics, with BEI's counsel allowed to attack Baker-Lawrence's credibility through Mr. Cohen.

30. The Court should require Plaintiff-Intervenors or their counsel to pay the expenses BEI incurred in filing this motion, including, but not limited to its attorneys' fees.

For the foregoing reasons, Defendant Beauty Enterprises, Inc. respectfully requests that this Court preclude the use of the subject deposition as evidence or grant the alternative relief requested.

                      THE DEFENDANT,
                      Beauty Enterprises, Inc.

                      By:   /s/ Richard C. Robinson
                             Richard C. Robinson (ct04321)
                             Christine Collyer(ct26859)
                             Janée Woods Weber (ct27265)
                             Pullman & Comley, LLC
                             90 State House Square
                             Hartford, CT 06103
                             Telephone (860) 424-4300
                             Fascimile (860) 424-4370
                             Its Attorneys

## CERTIFICATION

I hereby certify that on August 22, 2008, a copy of the foregoing Defendant's Motion for Protective Order was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.

R. Liliana Palacios
Trial Attorney
EEOC
JFK Federal Building, Room 475
Government Center
Boston, MA. 02203-0506

Nora Curtin
Senior Trial Attorney
EEOC, New York District Office
33 Whitehall Street
New York, NY 10048

Barbara E. Gardiner
843 Main Street, Suite 1-4
Manchester, CT 06040

Julia Morris Paul
Marte, Plepler, Falkenstein, Keith,
Meggers & Paul, P.C.
113 East Center Street
Manchester, CT. 06040

Jackson Chin
Associate Counsel
Puerto Rican Legal Defense
& Education Fund
90 Hudson Street
New York, New York 10013

Valeria Calafiore
Clifford Chance US
31 West 52nd Street
New York, NY 10019

                                                <u>/s/ Richard C. Robinson</u>
                                                Richard C. Robinson (ct04321)

Hartford/65094.1/RCR/321679v1