UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, et al.<br><br>Plaintiffs,<br>v.<br><br>BEAUTY ENTERPRISES, INC., et al.<br><br>Defendants. | 3:01CV00378 (AHN)<br>August 25, 2008 |

**DECLARATION OF VALERIA CALAFIORE IN SUPPORT OF PLAINTIFFS-INTERVENORS' OPPOSITION TO DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE THE *DE BENE ESSE* DEPOSITION OF MS. SHERRY BAKER-LAWRENCE**

I, Valeria Calafiore, declare under penalty of perjury as follows:

1. I am an associate with the law firm of Clifford Chance US LLP, attorneys for Plaintiffs-Intervenors Harold Acosta, Luz Andujar, Eva Diaz, Jose Linares, and Waleska Miranda ("Plaintiffs"). I submit this declaration in support of Plaintiffs' Opposition to Defendant's Motion *in Limine* to Exclude the *De Bene Esse* Deposition of Ms. Sherry Baker-Lawrence.

2. On July 18, 2008, counsel for Defendant Beauty Enterprises, Inc. ("Defendant"), Mr. Richard Robinson, requested a telephonic conference with the Court to discuss the start time of the deposition of non-party witness Ms. Baker-Lawrence, scheduled to take place on August 5, 2008, in Fort Lauderdale, Florida. Mr. Robinson specifically objected to the deposition starting at 11:00a.m. on August 5th on the grounds that there were no afternoon flights available from Hartford to Miami or Fort Lauderdale. The conference was adjourned after Mr. Robinson

learned of the existence of flights that could take him from Hartford to Florida in time for an 11:00a.m. deposition on the morning of August 5th.  Following the conference, Plaintiffs issued a subpoena for the deposition of non-party witnesses Ms. Baker-Lawrence and Mr. Winkler to take place on the agreed upon dates, and duly noticed the depositions to all parties.  Mr. Robinson subsequently confirmed that he was able to schedule a flight to Florida on the evening of August 4, 2008 and had no objections to the deposition schedule.  Attached as Exhibit 1 is a true and correct copy of Plaintiffs' subpoenas and notices.

     3.  On July 30, 2008, Defendant reopened settlement negotiations.  After some back and forth about the proposed terms of a possible new settlement, on August 1, 2008, Plaintiffs indicated they would be willing to go forward with the settlement but that their offer was only "valid if [they could] get something on record with the court" that day.  V.Calafiore email to R.Robinson dated August, 1, 2008, 4:48p.m, a true and correct copy of which is attached herein as Exhibit 2.  I repeated this requirement to Mr. Robinson several times during our telephone conversation.

     4.  On August 2, 2008, Mr. Robinson told me he was not able to reach his client but that he would be able to do so on Sunday and that he thought he could get everything done by Sunday evening, after he returned from a wedding.  Relying on this information, in the early morning of August 3, 2008, I forwarded to Mr. Robinson Plaintiffs' draft settlement agreements.  In the forwarding email, I stated "[i]f I don't have a signed [settlement] by [Sunday, August 3rd], I will travel to Florida as scheduled and we will have to resume our settlement discussions when I return to New York after the depositions."  I again repeated the same message in another email sent the same day.  See V.Calafiore email to R.Robinson dated August, 3, 2008, 4:48p.m, a true and correct copy of which is attached herein as Exhibit 3.  I repeated the need for signed

agreements by Sunday night in another email I sent Mr. Robinson the same day (Sunday, August 3rd). Id. I made the same point to Mr. Robinson several times during phone calls. In those calls, I told Mr. Robinson that I had changed my flight to Monday morning at 11:00a.m. in the hope that he would send us signed settlement agreements by Sunday evening, but that if no signed agreement was forthcoming, I would be taking that flight. Mr. Robinson seemed to fully understand that once I left to Florida we would have to resume any settlement negotiations after the scheduled depositions were completed.

5. As of August 4, 2008, I still had not received signed settlement agreements for the five Plaintiffs. In the early morning of August 4th, Mr. Robinson sent a series of emails detailing his objections to various terms of the draft settlement agreements I had sent him. Then, in an email Mr. Robinson sent at 10:51, Mr. Robinson made a counter-offer on behalf of Defendant. See August 4, 2008 emails from R.Robinson, a true and correct copy of which is attached herein as Exhibit 4.

6. I received the counter-offer when I was already at the airport and about to board my flight to Florida. After receiving that email on my Blackberry I immediately called Mr. Robinson on his mobile phone and left him a voicemail confirming that we did not have a deal, that I was boarding the plane to Florida, where I was going to take the previously scheduled and duly noticed depositions, and that settlement discussions would have to resume after the depositions were over. Then I called Mr. Robinson at his office and was able to reach him there and again repeated to him the same message. During our telephone conversation I did not get any indication whatsoever from Mr. Robinson that he did not understand that I was going to Florida to take the scheduled depositions — i.e., the same message I had been giving him throughout the weekend — or that he could not hear me properly.

7. Even assuming Mr. Robinson could not hear what I said to him on the phone, and somehow did not get my voicemail on his mobile phone, I do not understand how Mr. Robinson could have thought, after I got on my flight to Florida on Monday August 4, that there was any possibility that the depositions would not go ahead as scheduled. Obviously, I was not going to Florida for any other purpose than to take the depositions.

8. After landing in Fort Lauderdale I called Mr. Jeffrey Burstein, counsel for the Equal Employment Opportunity Commission ("EEOC") to tell him I was in Florida for the scheduled depositions, that I would be unavailable most of the afternoon because of meetings and that we would resume any settlement negotiations after returning to New York. Upon information and belief, Mr. Burstein subsequently spoke to Mr. Robinson in the early afternoon and reiterated to him that the depositions were going forward as scheduled and that Mr. Burstein was also going to participate in the depositions as scheduled.

9. Inexplicably, in his email of August 4, 2008, 6:03p.m., Mr. Robinson purports to have never spoken to me or Mr. Burstein about the depositions that day, and claims that he still had to hear back from me, (see emails dated August, 4, 2008, 4:48p.m, a true and correct copy of which is attached herein as Exhibit 5), when in fact I had already told him in the morning that I would only be able to discuss the settlement again after the depositions. This was not a new position on my side. Indeed, after our morning call there was nothing left to discuss between me and Mr. Robinson.

10. At no time did Mr. Robinson request a postponement of the deposition of Ms. Baker-Lawrence. Nor — to my knowledge — did Mr. Robinson contact the Court to seek a postponement of Ms. Baker-Lawrence's deposition.

11. On August, 5, 2008, at 10:00a.m. I arrived at the offices of Greenberg Traurig in Fort Lauderdale with a colleague, for the scheduled deposition of Ms. Baker-Lawrence. The non-party witness, Ms. Baker-Lawrence, the court reporter, the videographer and Mr. Burstein, counsel for the EEOC had already arrived. Even though the witness was already there and ready to testify, at my insistence we waited one hour and began the deposition at the noticed time, 11:00a.m. When I finished questioning the witness, I turned the witness over to counsel for the EEOC, Mr. Burstein. However, Mr. Burstein had no questions for the witness and since nobody else was present to question the witness, Ms. Baker-Lawrence was excused. See Ms. Baker-Lawrence deposition dated August 5, 2008, a true and correct copy of which is attached herein as Exhibit 6. Ms. Baker-Lawrence was informed that she might be subject to examination by Defendant's counsel.

12. Following the completion of Ms. Baker-Lawrence's deposition and her departure, I remained at the offices of Greenberg Traurig until approximately 12:40p.m. to confer with Mr. Burstein and with other people there. Contrary to Defendant's representations, I did not have any control over the non-party witness who appeared for the deposition under subpoena and left the deposition alone, not with me.

13. I subsequently called the offices of Greenberg Traurig at approximately 1:10pm that same day, August 5th, concerning some other business and was put in touch by the receptionist with Mr. Robinson who had just arrived. Unfortunately, Mr. Robinson's conduct over the phone made it impossible to continue the call, and I resumed the conversation by email. See August 5, 2008 email, a true and correct copy of which is attached herein as Exhibit 7.

NYA 902464v1

14. At no time during August 5 or August 6 did Mr. Robinson ever request that we again make ourselves available to try and get Ms. Baker-Lawrence back to the office so that Mr. Robinson could depose her.  Upon information and belief, Ms. Baker-Lawrence also did not receive any request by Mr. Robinson on either August 4th, 5th, or 6th or at any other time thereafter to make herself again available for deposition.  On August 6th, when Mr. Robinson arrived for the deposition of Mr. Winkler he did not mention Ms. Baker-Lawrence to me at all, nor did he in any way request that we extend our stay to again depose Ms. Baker-Lawrence.  Mr. Robinson's only mention of Ms. Baker-Lawrence while we were in Florida was upon his request to the court reporter on August 6th for an expedited transcript of Ms. Baker-Lawrence's deposition, which I understand Mr. Robinson received on August 7, 2008.

I declare under penalty of perjury that the foregoing is true and correct. Executed on August 25, 2008.

_____/s/_____
Valeria Calafiore